FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

2005 NOV 17 P 2:09

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ULLICO INC.,

          Plaintiff,

   vs.

NATIONAL UNION FIRE INSURANCE
   COMPANY OF PITTSBURGH, PA,

AMERICAN INTERNATIONAL
   SPECIALTY LINES INSURANCE CO.,

JOSEPH A. CARABILLO,

JAMES W. LUCE and

JOHN K. GRELLE,

          Defendants.

Civil Action No. 1:05cv1304
TSE/LO

## ULLICO INC.'S COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff ULLICO INC. ("Ullico") for its Complaint for Damages, Declaratory Judgment and Injunctive Relief against defendants NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("National Union") and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY ("AISLIC") (collectively "Insurers") and JOSEPH A. CARABILLO, JAMES W. LUCE, and JOHN K. GRELLE (collectively "Individual Defendants"), states as follows:

### NATURE OF THE ACTION

1.     Plaintiff Ullico is engaged in collateral civil litigation with Individual Defendants, former officers of Ullico, arising out of Individual Defendants' breaches of the

fiduciary duties they owed to Ullico, its subsidiaries, and a number of Ullico-sponsored employee benefit plans (collectively "Underlying Litigation").

2.     Beginning in the late 1990s, Individual Defendants abused their positions of authority and trust within Ullico and in connection with Ullico-sponsored employee benefit plans by engaging in self-dealing designed to unjustly enrich themselves without regard to the duties they owed Ullico, its shareholders, and its sponsored employee benefit plans. Seeking to capitalize on the dramatic rise in the value of Ullico, Individual Defendants put in place a number of stock offers and stock repurchase programs that allowed them to profit disproportionately – compared to other shareholders – from their Ullico holdings and employment. In addition, Individual Defendants formulated, proposed, and implemented deferred compensation programs and amendments to existing pension plans in order to obtain windfall profits for themselves.

3.     Because of the self-dealing of Individual Defendants, Ullico became the subject of multiple state and federal investigations, including investigations conducted by the U.S. Department of Labor, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the Maryland Insurance Administration, and the U.S. Congress (collectively the "Investigations").

4.     Thereafter, the Underlying Litigation was initially brought by several of the Individual Defendants, including Joseph A. Carabillo and James W. Luce, who filed lawsuits against Ullico and the Ullico-sponsored plans. Ullico and the Ullico-sponsored plans then brought counterclaims in the Underlying Litigation against the Individual Defendants arising out of the breach of their fiduciary duties.

2

5.    Subject to certain terms and conditions, Insurers insure Ullico and Individual Defendants under a fiduciary liability, directors' and officers' liability and professional liability insurance policy (collectively "Insurance Policies").

6.    One or more Individual Defendants have requested and, upon information and belief, Insurers have made preferential payments to Individual Defendants relating to the Underlying Litigation under at least one of the policies, even though the conduct of Individual Defendants bars, or potentially bars, them from recovering under that policy for the Underlying Litigation and even though payment to Individual Defendants may serve to reduce sums otherwise due to Ullico under the policies.

7.    In addition, Insurers have failed and refused to pay defense costs due to Ullico for the Underlying Litigation under one or more of the policies and have failed to provide Ullico the most basic information necessary to ensure that its rights are being and will be fully protected under the policies, including information on the amount of payments Insurers heretofore have made under the policies.

8.    Because of this course of conduct by Individual Defendants and Insurers, Ullico brings this action, seeking:

a.    Damages from Insurers arising out of their failure to pay Ullico's defense costs in the Underlying Litigation;

b.    A declaratory judgment with respect to the parties' respective rights and responsibilities under the Insurance Policies for the Underlying Litigation;

c.    A preliminary and permanent injunction barring Insurers from paying and preferentially paying Individual Defendants' purported claims under the policies in the Underlying Litigation; and

d.    Specific performance requiring Insurers to provide Ullico an accounting showing critical information necessary for it to fully exercise its rights under the Insurance Policies.

3

## THE PARTIES

9.    Plaintiff Ullico Inc. is a corporation organized under the laws of Maryland, with its principal place of business in Washington, D.C.  Ullico was created in 1987 as a holding company in order to raise capital for its various subsidiaries that provide insurance, pension, health and management and lending services to unions, union members and their families, and benefit funds throughout the United States.

10.    Defendant National Union Fire Insurance Company of Pittsburgh, PA, is a corporation domiciled in Pennsylvania with its principal place of business in New York, New York.  At all times material hereto, National Union was authorized to, and did in fact, transact business in Washington, D.C. and in the Commonwealth of Virginia.

11.    Defendant American International Specialty Lines Insurance Company, is a corporation domiciled in Alaska with its principal place of business in New York, New York.  At all times material hereto, AISLIC was authorized to, and did in fact, transact business in Washington, D.C. and in the Commonwealth of Virginia.

12.    Defendant Joseph A. Carabillo, is a citizen residing in Culpepper, Virginia.  He was employed by Ullico as an attorney in the role of its Chief Legal Officer from March 2, 1987 until he was terminated for cause on May 30, 2003.  Carabillo also served as a fiduciary of various Ullico-sponsored employee benefit plans.

13.    Defendant James W. Luce, is a citizen residing in Great Falls, Virginia.  He was employed by Ullico as an Executive Vice President from February 14, 1983, until his retirement, effective June 1, 2003.  Luce also served as a fiduciary of various Ullico-sponsored employee benefit plans.

14.    Defendant John K. Grelle, upon information and belief, is a citizen residing in Oakton, Virginia or the State of Florida. He was employed by Ullico as a Senior Vice President and Chief Financial Officer of Ullico from January 2, 1996, until his resignation on February 25, 2003. Grelle also served as a fiduciary of various Ullico-sponsored employee benefit plans.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

16.    The amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000.00), and there is complete diversity between the parties.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the Insurers have sold and/or administered contracts of insurance in the District and Individual Defendants reside herein.

## UNDERLYING LITIGATION

### CARABILLO

18.    On May 30, 2003, defendant Joseph Carabillo was terminated from his employment with Ullico for cause.

19.    Because of his termination for cause, Carabillo did not qualify for certain pension benefits from his former employer Ullico.

20.    Thereafter, Carabillo instituted several lawsuits against Ullico and the Ullico-sponsored plans, contending that Ullico attempted an improper termination of his employment in an effort to deny him allegedly earned compensation and vested pension benefits in alleged derogation of his contractual and statutory rights.

21.    Ullico, one of its subsidiaries, and a number of Ullico-sponsored employee benefit plans responded by filing counterclaims in those actions.

## Carabillo I

22.    On July 21, 2003, Ullico was served with a complaint captioned *Carabillo v. Ullico Inc.*, No. 1:03CV01556 (Dist. Ct. D.C.) (Carabillo I), attached hereto as Exhibit A, which alleges that Ullico improperly denied certain benefits to Mr. Carabillo, including counts of ERISA violation for unlawful termination, breach of contract regarding pension benefits, salary and leave and wrongful termination under District of Columbia common law.

23.    In Carabillo I, Carabillo sought (1) compensatory damages of $500,000; (2) punitive damages of $1 million; (3) payment of earned but unused annual leave; (4) payment of full pension benefits (as if he had retired on June 1, 2003); and (4) his costs of bringing the action.

24.    On October 17, 2003, Ullico, one of its subsidiaries, and various Ullico-sponsored employee benefit plans asserted counterclaims against Carabillo and a number of other individuals including the remaining Individual Defendants, attached hereto as Exhibit B. The counterclaim asserted claims under ERISA and state law relating largely to the defendants' conduct with respect to their self-dealing with respect to the repurchase of shares of Ullico's stock, including breach of fiduciary duty claims against Individual Defendants and common law professional negligence claims against Carabillo.

## Carabillo II

25.    On May 6, 2004, Carabillo filed a second complaint, captioned *Carabillo v. Ullico Inc. Pension Plan & Trust, et al.*, No. 1:04CV00776 (Dist. Ct. D.C.) ("Carabillo II"), attached hereto as Exhibit C, against a number of Ullico-sponsored benefit plans and entities, asserting various claims under ERISA for pension benefits and his attorneys' fees and costs for bringing the action.

6

26.     On July 26, 2004, Ullico and its sponsored employee benefit plans brought counterclaims, attached hereto as Exhibit D, under ERISA against Individual Defendants for harm caused by their self-dealing with respect to plan benefits.

## LUCE

### Luce I

27.     On August 8, 2003, Individual Defendant Luce filed a complaint against one of Ullico's subsidiaries and a Ullico-sponsored employee benefit plan in the U.S. District Court for the Eastern District of Virginia, attached hereto as Exhibit E, captioned *James W. Luce v. The Union Labor Life Auxiliary Retirement Benefits Plan, et al.*, No. 1:03cv1014 ("Luce I") asserting various claims under ERISA for pension benefits. Luce I was subsequently transferred to the U.S. District Court for the District of Columbia.

### Luce II

28.     On October 21, 2004, Ullico filed a complaint against Individual Defendant Luce, attached hereto as Exhibit F, captioned *Ullico Inc. v. Luce*, No. 1:04cv01830 (Dist. Ct. D.C.) ("Luce II"), seeking recovery for breaches of fiduciary duties in connection with his participation in a number of stock offer and stock repurchase programs.

### Luce III

29.     On July 21, 2005, Luce filed a complaint against a Ullico-sponsored employee benefit plan and its administrative committee, attached hereto as Exhibit G, captioned *Luce v. Ullico Inc. Pension Plan & Trust, et al.*, No. 1:05cv851 (E.D. Va.) ("Luce III"), seeking recovery for alleged breaches of ERISA in connection with the denial of benefits and rights purportedly owed to Luce. Luce III was subsequently transferred to the U.S. District Court for the District of Columbia and an Amended Complaint was filed, attached hereto as Exhibit H, adding additional defendants.

7

## ULLICO'S INSURANCE PROGRAM

30.    Ullico and its subsidiaries are insured through the Insurance Policies issued to it by National Union (Fiduciary Policy and Directors' & Officers' Liability Policy) and AISLIC (Professional Liability Policy).

### The Fiduciary Policy

31.    National Union issued an Employee Benefit Plan Fiduciary Liability Insurance policy to "Ullico Inc. and its subsidiaries" applicable from October 30, 2002 to October 30, 2003, policy number 495-38-35, which contains $5 million limits of liability after a $50,000 retention (2002-2003) is satisfied ("the Fiduciary Policy"). The Fiduciary Policy is attached hereto as Exhibit I.

32.    The Fiduciary Policy contains the following "Insuring Agreement" provision:

> Solely with respect to Claims first made against an Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy shall pay the Loss of each and every Insured arising from a Claim against an Insured for any actual or alleged Wrongful Act by any such Insured (or by any employee for whom such Insured is legally responsible).

33.    The Fiduciary Policy contains the following "Defense Agreement" provision:

(a)    Insurer's Duty to Defend

> Except as hereinafter stated, the Insurer shall have both the right and duty to defend any Claim against an Insured alleging a Wrongful Act, even if such Claim is groundless, false or fraudulent. . . .

(b)    Insured's Option to Assume Defense

> Notwithstanding the above, the Insureds shall have the right to assume the defense of any Claim made against them. This right shall be exercised in writing by the Named Sponsor [Ullico Inc. and its Subsidiaries] on the behalf of all Insureds within sixty (60) days of the reporting of the Claim to the Insurer pursuant to Clause 8 of the policy. . . .

(c)    General Provisions (applicable to both (a) and (b) above)

The Insurer shall advance Defense Costs prior to the final disposition of a Claim, subject to the other provisions of this policy. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss. . . .

Selection of counsel to defend the Claim made against the Insureds shall be governed by Clause 9 of the policy (if applicable).

34.    The Fiduciary Policy contains a provision relating to defense counsel that states:

9.    **PRE-AUTHORIZED DEFENSE ATTORNEYS**

This Clause 9 applies only to: (1) a Claim brought by any government entity; (2) a request for coverage for a Voluntary Compliance Loss; or (3) a Claim brought in the form of a class or representative action. . . .

35.    The relevant terms defined by the Fiduciary Policy include:

"Insured(s)" means:

(1)    any Natural Person Insured;

(2)    any Plan(s);

(3)    the Sponsor Organization; and

(4)    any other person or entity in his, her or its capacity as a Fiduciary, Administrator or trustee of a Plan and included in the Definition of Insured by specific written endorsement attached to this policy.

* * *

"Natural Person Insured" means any:

(1)    past, present or future natural person director, officer, governor, general partner, management committee member, member of the board of managers or employee of a Sponsor Organization or if applicable, of a Plan, and as to all of the above in his or her capacity as a Fiduciary, Administrator or trustee of a Plan; or

9

(2)    past, present or future natural person in a position equivalent to a position listed in subparagraph (1) of this Definition in the event that the Sponsor Organization is operating in a Foreign Jurisdiction.

\* \* \*

"Plan" means automatically, any qualified plan, fund, trust or program (including, but not limited to, any Person Plan, Welfare Plan, Cafeteria Plan, Dependant Care Assistance Program, Fringe Benefit, and VEBA) or Non-qualified Plan, established anywhere in the world, which was, is or shall be sponsored solely by the Sponsor Organization and a labor organization, solely for the benefit of the employees and/or the directors, officers, governors, management committee members, members of the board of managers or natural person general partners of the Sponsor Organization. . .

\* \* \*

"Subsidiary" means any past, present or future: (1) for-profit entity of which the Named Sponsor has Management Control either directly or indirectly through one or more other Subsidiaries; and (2) not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by the Named Sponsor. The term Subsidiary shall automatically apply to any new Subsidiary acquired or created during the Policy Period.

\* \* \*

"Wrongful Act" means:

(1)    as respects an Insured: a violation of any of the responsibilities, obligations or duties imposed upon Fiduciaries by Employee Benefit Law with respect to a Plan; or any matter claimed against an Insured solely by reason of his, her or its status as a Fiduciary, the Plan or the Sponsor Organization, but only with respect to a Plan; and

(2)    as respects an Administrator, any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a Plan:

    (i)    counseling employees, participants and beneficiaries; or

    (ii)    providing interpretations; or

10

  (iii) handling of records; or

  (iv) activities affecting enrollment, termination or cancellation of employees, participants and beneficiaries under the Plan,

  or any matter claimed against an Insured solely by reason of his, her or its status as an Administrator, the Plan or the Sponsor Organization, but only with respect to a Plan;

 (3) as respects a Natural Person Insured, any matter claimed against him or her arising out of his or her service as a Fiduciary or Administrator of any multiemployer plan as defined by ERISA, but only if such service is at the specific written request or direction of the Sponsor Organization . . . . In no event shall coverage under this policy extend to a Claim against a multiemployer plan itself, its contributing employer(s) or any other fiduciaries or administrators of such plan, other than a Natural Person Insured.

  36. The Fiduciary Policy contains Exclusion 5(a), which bars "Loss in connection with a Claim against an Insured(s):  (a)  arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled."

### Directors' and Officers' Policy

  37. National Union issued a Directors, Officers & Private Company Liability Insurance Policy to Ullico applicable from October 30, 2002 to October 30, 2003, policy number 495-36-84, which contains $10 million limits of liability after fulfillment of the $750,000 retention (except with regard to non-indemnifiable loss) ("D&O Policy").  The D&O Policy is attached hereto as Exhibit J.

  38. The D&O Policy contains the following insuring agreement:

**COVERAGE A:  INDIVIDUAL INSURED INSURANCE**

This policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors,

Officers or Employees of the Company except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

## COVERAGE B: PRIVATE COMPANY INSURANCE

This policy shall pay the Loss of the Company arising from a:

     (i)     Claim first made against the Company, or

     (ii)     Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-Laws of the Company duly effective under such law which determines and defines such rights of Indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

## DEFENSE PROVISIONS

The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

39. The D&O Policy contains a "Run-Off Endorsement" that contains a "Run-Off Coverage Clause" stating "The Named Entity shall have the right to a period of six (6) years following the Effective Time (herein referred to as the Discovery Period or Run-Off Coverage) in which to give written notice to the Insurer of any Claim(s) first made against any Insured(s) during said 6 year period for any Wrongful Act(s) occurring on or prior to the Effective Time and otherwise covered by this policy."

12

40.    The D&O Policy defines "Wrongful Act" as follows:

(1)    with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company;

(2)    with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company;

(3)    with respect to service on an Outside Entity, any matter claimed against an Individual Insured as defined in definition (i)(2) arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Company.

With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation.

41.    The definition of "Employment Practices Violation(s)" includes "wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract."

### Professional Liability Policy

42.    AISLIC issued a Professional Liability Insurance policy to "Ullico Inc. and subsidiaries" applicable from October 30, 2003 to October 30, 2004, policy number 348-92-35, which contain $5 million limits of liability per each Wrongful Act and in the Aggregate, after a $500,000 retention for each Wrongful Act ("Professional Liability Policy"). The Professional Liability Policy is attached hereto as Exhibit K.

43.    The Professional Liability policy contains the following insuring agreement:

1.    **PROFESSIONAL LIABILITY**

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages resulting from any claim or claims first made against the Insured and reported in writing to the Company during the Policy Period for any Wrongful Act of the Insured or of any

other person for whose actions the Insured is legally responsible, but only if such Wrongful Act occurs prior to the end of the Policy Period and occurs solely in the rendering of or failure to render Professional Service.

## 2.    DEFENSE    COSTS,    CHARGES    AND    EXPENSES (INCLUDED IN THE LIMIT OF LIABILITY)

With respect to any such Wrongful Act for which insurance is afforded by this policy under Insuring Agreement 1. above, the Company shall, as part of and subject to the limit of liability, pay on behalf of the Insured Defense Costs, Charges and Expenses. The Company shall at all times have the right but not the duty to assume the defense of any claim or suit against the Insured, and in the event of the exercise of this right the Insured shall provide the Company with full cooperation.

44.    "Insured" is defined in the Professional Liability policy as "A. the entity or entities named in Item 1 of the Declarations; B. any past, present or future director, officer or employee of any entity named in Item 1 of the Declarations, while acting within the scope of their duties as such." Item 1 of the Declarations of the policy lists the "Named Insured" as "Ullico Inc. and Subsidiaries."

45.    "Subsidiaries," in the Professional Liability policy is defined to mean "a corporation of which the entity or entities named in Item 1 of the Declarations owns on or before the inception date of the Policy Period more than 50% of the issued and outstanding voting stock either directly or indirectly through one or more of its subsidiaries."

46.    The Professional Liability policy defines "Wrongful Act" as "any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted."

47.    The "Employed Lawyers Endorsement" contains the following insuring agreement:

### 1.    PROFESSIONAL LIABILITY

(a)    To pay on behalf of the Employed Lawyer all sums which the Employed Lawyer shall become legally obligated to pay as

14

damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period, arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer, except for such damages which the Named Insured shall indemnify such Employed Lawyer.

(b)    To pay on behalf of the Named Insured all sums which the Named Insured may be required or permitted by law to indemnify an Employed Lawyer for any sum which the Employed Lawyer becomes legally obligated to pay as Defense Costs, Charges and Expenses or damages because of any claim, including claims for Personal Injury, first made against the Employed Lawyer and reported in writing to the Company during the Policy Period arising out of any Wrongful Act of the Employed Lawyer in rendering or failing to render professional services as a lawyer while acting in the course of the said Employed Lawyer's employment by the Named Insured.

48.    The "Employed Lawyers Endorsement" awards coverage to any claim "arising out of the rendering or failure to render professional services as a lawyer, the attorney(s) licensed to practice law (herein "Employed Lawyers", more fully defined) and employed by [Ullico]. . ."

49.    The "Employed Lawyers Endorsement" amends the definition of "Insured" solely with respect to the coverage granted by this endorsement to include: "any person admitted to practice law who is, was, or becomes employed as a lawyer full time and salaried by the Named Insured."

50.    The "Employed Lawyers Endorsement" amends the definition of "Wrongful Act" solely with respect to the coverage granted by this endorsement to be "any negligent act, error or omission, or any offense contained in the definition of Personal Injury."

## THE INSURERS' BREACH OF THEIR POLICY OBLIGATIONS

51.    Ullico has devoted tremendous amounts of time, resources and money to defend and resolve the Investigations and the Underlying Litigation.

15

52.     Ullico properly notified Insurers of the Investigations and Underlying Litigation and has fulfilled all other conditions precedent to recovery under the Insurance Policies.

53.     Nevertheless, without reasonable justification, National Union has refused to reimburse Ullico for its defense costs for the Investigations and the Underlying Litigation.

54.     In addition, Insurers have refused to provide Ullico the most basic information necessary to protect its rights under the Insurance Policies, including information with respect to how much has been paid to date under the Insurance Policies.

55.     Despite Ullico's insistence that no money be paid to Individual Defendants under the Insurance Policies for the Underlying Litigation, on information and belief, National Union has paid Individual Defendants' defense costs under the Fiduciary Policy for the Underlying Litigation, despite the fact that those claims are, or could be, barred under applicable provisions of the Fiduciary Policy.

## COUNT I
## BREACH OF CONTRACT UNDER THE FIDUCIARY POLICY
### (AGAINST NATIONAL UNION)

56.     Ullico incorporates the averments of paragraphs 1 through 55 as if fully set forth herein.

57.     Ullico has incurred defense costs in defending the Investigations and Underlying Litigation.

58.     National Union, in breach of the Fiduciary Policy, has failed to reimburse Ullico with respect to those defense costs.

59.     As a result of the aforesaid breach, National Union is liable to Ullico for damages, together with the costs and expenses incurred by Ullico in this action, including, but not limited to, reasonable attorneys' fees and pre-judgment and post-judgment interest.

16

**WHEREFORE**, Ullico demands judgment in its favor against National Union:

    (a)      requiring National Union to pay on behalf of Ullico all defense costs and/or expenses incurred by Ullico in the Investigations and Underlying Litigation;

    (b)      for money damages in an amount to be determined, together with pre-judgment and post-judgment interest;

    (c)      for costs of suit;

    (d)      for attorneys' fees; and

    (e)      for such other relief as the Court may deem just and proper.

## COUNT II
## PRELIMINARY AND PERMANENT INJUNCTION

### (AGAINST NATIONAL UNION AND INDIVIDUAL DEFENDANTS)

60.     Ullico incorporates the averments of paragraphs 1 through 55 as if fully set forth herein.

61.     Both Ullico and the Individual Defendants are insured under the Fiduciary Policy.

62.     The Fiduciary Policy does not specify the order of payments when policy proceeds are claimed both by Ullico and the Individual Defendants.

63.     It is a violation of the duty of good faith and fair dealing for National Union to pay one request for payment of defense costs in preference to others, if both are covered under the Fiduciary Policy.

64.     It would substantially frustrate a principal purpose and basic assumption of the Fiduciary Policy and the benefit for which Ullico contracted to allow National Union to pay one request for payment of defense costs in preference to another if both are covered under the Fiduciary Policy.

17

65.    When sums are due to one insured under the Fiduciary Policy, it is a violation of the duty of good faith and fair dealing for National Union to pay claims of another insured if a basis exists for denying coverage of those claims.

66.    When sums are due to one insured under the Fiduciary Policy, it would frustrate the purpose of the Fiduciary Policy to pay claims of another insured if a basis exists for denying coverage of those claims.

67.    On information and belief, National Union has marketed the benefits of an "in fact" exclusion – like Exclusion 5(a) of the Fiduciary Policy – as allowing National Union to cut off payment for alleged wrongdoers in order to ensure the availability of policy proceeds to defend non-culpable insureds.

68.    Ullico has alleged in the Underlying Litigation that the Individual Defendants' conduct is such that it would bar, or potentially bar, coverage for them under Exclusion 5(a) of the Fiduciary Policy.

69.    Nevertheless, in this case National Union has: (a) on information and belief, paid defense costs of one or more Individual Defendants incurred by a law firm with which National Union has a mutually beneficial relationship in preference to paying the defense costs owed to Ullico; (b) despite the limited amount of policy proceeds available to pay Ullico's covered defense costs, National Union, on information and belief, has paid one or more Individual Defendants' defense costs even though there is a basis, or a potential basis, to deny coverage for those costs; and (c) National Union has failed to give adequate assurances to Ullico that this conduct has not and will not continue to occur.

70.    By these actions, National Union has breached the Fiduciary Policy.

18

71.    National Union's breach provides Individual Defendants with a defense that they could not otherwise afford and encourages them to engage in costly and unproductive litigation with Ullico with no regard for the cost of such litigation.

72.    National Union's breach skews the normal motivations and mechanisms of litigation and makes it necessary for Ullico to continue in unproductive and time consuming litigation which distracts it from its business.

73.    No adequate remedy at law exists with respect to these breaches of the Fiduciary Policy.

74.    Ullico will be irreparably harmed if no injunction is issued.

75.    The balance of hardships with respect to issuing a preliminary or permanent injunction favors Ullico over the Defendants.

**WHEREFORE**, Ullico demands judgment in its favor against National Union and Individual Defendants:

(a)    Preliminarily and permanently enjoining National Union from paying Individual Defendants under the Fiduciary Policy;

(b)    for costs of suit;

(c)    for attorneys' fees; and

(d)    for such other relief as the Court may deem just and proper.

## COUNT III
## SPECIFIC PERFORMANCE

### (AGAINST NATIONAL UNION AND AISLIC)

76.    Ullico incorporates the averments of paragraphs 1 through 55 as if fully set forth herein.

77.    In breach of the implied covenant of good faith and fair dealing with respect to the Insurance Policies, Insurers have refused to provide Ullico with information concerning the payments made by them under the Insurance Policies.

78.    No adequate remedy at law exists with respect to this breach of the Insurance Policies.

**WHEREFORE**, Ullico demands judgment in its favor against National Union and AISLIC:

(a)    Ordering National Union and AISLIC to specifically perform their obligation to provide an accounting to Ullico concerning payments made under the Insurance Policies;

(b)    for costs of suit;

(c)    for attorneys' fees; and

(d)    for such other relief as the Court may deem just and proper.

### COUNT IV
### DECLARATORY JUDGMENT

### (AGAINST ALL DEFENDANTS)

79.    Ullico incorporates the averments of paragraphs 1 through 55 as if fully set forth herein.

80.    Ullico and Individual Defendants have sought coverage under the Insurance Policies for the Investigation and the Underlying Litigation.

81.    Insurers have reserved their rights with respect to a number of purported policy terms, conditions, and exclusions that Insurers contend may bar coverage under the Insurance Policies.

82.    An actual and justiciable controversy exists between the parties with respect to their rights and duties under the Insurance Policies.

20

**WHEREFORE**, Ullico demands judgment in its favor against Insurers and Individual

Defendants:

      (a)    Declaring the rights and duties of the parties with respect to the Insurance Policies;

      (b)    for costs of suit;

      (c)    for attorneys' fees; and

      (d)    for such other relief as the Court may deem just and proper.

ULLICO, INC.

By Counsel

Troutman Sanders LLP
1660 International Drive
Suite 600
McLean, VA 22102
(703) 734-4356

By:                         
      John F. Anderson
      Virginia Bar No. 20710

Of Counsel:

Timothy W. Burns
Angela R. Elbert
Cheryl A. Fender
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, Illinois 60602
(312) 269-8000