## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ULLICO INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:06cv00080 (RJL) |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, | : | |
| and | : | |
| AMERICAN INTERNATIONAL | : | |
| SPECIALTY LINES INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Counterclaim Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ULLICO INC., | : | |
| | : | |
| Counterclaim Defendant. | : | |

### ULLICO INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff/Counterclaim Defendant, Ullico Inc. ("Ullico"), by and through its attorneys, respectfully moves for partial summary judgment pursuant to Fed R. Civ. P. 56(a).  In further support thereof, Ullico incorporates by reference the arguments made in the accompanying Memorandum of Points and Authorities, and states as follows:

1.    Ullico filed a First Amended Complaint against National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), American International Specialty Lines Insurance Company ("AISLIC"), Joseph A. Carabillo ("Carabillo"), James W. Luce ("Luce"), and John K. Grelle ("Grelle"),  which seeks: (a) damages from Insurers arising out of their

failure to pay Ullico's defense costs in certain investigations by the Department of Labor (the "DOL Investigations") and certain lawsuits in which claims were brought by Carabillo, Luce, and Grelle (the "Underlying Litigation"); (b) a declaratory judgment with respect to the parties' respective rights and responsibilities under the insurance policies for the Underlying Litigation; (c) a preliminary injunction barring Insurers from preferentially paying Carabillo's, Luce's and Grelle's purported claims under the policies in the Underlying Litigation; and (d) specific performance requiring Insurers to provide Ullico an accounting showing critical information necessary for it to exercise fully its right under the insurance policies.

2.      In its Answer and Counterclaim, National Union has wrongfully denied coverage under the fiduciary liability insurance policies for Ullico's defense costs related to the Underlying Litigation and the DOL Investigations purportedly because Ullico refused to hire National Union's hand-picked "panel" counsel to defend Ullico in this conflict-rife litigation.

3.      Ullico now seeks partial summary judgment pursuant to Fed. R. Civ. P. 56(a) because there are no genuine issues of material fact, that National Union is obligated to pay Ullico for the costs it incurred in defense of the Underlying Litigation.  The panel counsel requirement does not apply to the Underlying Litigation.

4.      Ullico also seeks partial summary judgment pursuant to Fed R. Civ. P. 56(a) because there are no genuine issues of material fact, that National Union is obligated to pay Ullico for the costs it incurred in the defense of the DOL Investigations.  Any breach of the fiduciary liability insurance policies' panel counsel requirement with respect to DOL Investigations was an immaterial breach.

WHEREFORE, for the foregoing reasons, and the reasons stated more fully in the

accompanying Memorandum of Points and Authorities, Ullico respectfully moves for Partial

Summary Judgment pursuant to Fed. R. Civ. P. 56(a).


ULLICO INC.

__/s/ John F. Anderson_____
By One of Its Attorneys

John F. Anderson
D.C. Bar No. 393764
TROUTMAN SANDERS LLP
1660 International Drive
Suite 600
McLean, VA 22102
(703) 734-4356

Of Counsel:
Timothy W. Burns (*Pro Hac Vice* Admission)
Angela R. Elbert (*Pro Hac Vice* Admission
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, Illinois 60602
(312) 269-8000

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ULLICO INC.,                                :
                                            :
        Plaintiff,                          :
                                            :
    v.                                      :     Civil Action No. 1:06cv00080 (RJL)
                                            :
NATIONAL UNION FIRE INSURANCE               :
COMPANY OF PITTSBURGH, PA, et al.,          :
                                            :
        Defendants.                         :
                                            :
NATIONAL UNION FIRE INSURANCE               :
COMPANY OF PITTSBURGH, PA                   :
and                                         :
AMERICAN INTERNATIONAL                      :
SPECIALTY LINES INSURANCE                   :
COMPANY,                                    :
                                            :
        Counterclaim Plaintiffs,            :
                                            :
    v.                                      :
                                            :
ULLICO INC.,                                :
                                            :
        Counterclaim Defendant.             :

## ULLICO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

**SECTION**                                                                                      **PAGE**

I.      Introduction.................................................................................................... 1

II.     Statement of Undisputed Facts ...................................................................... 5

III.    Standard for Partial Summary Judgment ....................................................... 13

IV.     Argument ........................................................................................................ 14

        A.      National Union is required to pay Ullico's defense costs because the panel
                counsel requirement in Clause 9 does not apply to the Underlying
                Litigation........................................................................................... 14

                1.      Clause 9 of the 2002 Fiduciary Policy does not apply to the
                        Underlying Litigation............................................................ 14

                        a.      The Underlying Litigation does not involve a claim by any
                                government entity ....................................................... 16

                        b.      The Underlying Litigation does not involve a request for
                                coverage for a Voluntary Compliance Loss................................ 17

                        c.      The Underlying Litigation does not involve a class or
                                representative action .................................................. 17

                        d.      The panel counsel requirement does not contain related
                                claims language encompassing the Underlying Litigation .......... 18

                2.      Clause 9 of the 2001 Fiduciary Policy does not apply to the
                        Underlying Litigation............................................................ 19

                        a.      The Underlying Litigation does not involve an agency
                                proceeding or investigation.......................................... 20

                        b.      The Underlying Litigation does not involve a class or
                                representative action .................................................. 20

                        c.      The panel counsel requirement does not contain related
                                claims language encompassing the Underlying Litigation .......... 21

B.  National Union is required to pay Ullico's defense costs in the DOL Investigations because any breach of Clause 9 would have been immaterial, would not have voided National Union's obligations, and would have been properly remedied by damages alone. ..................................... 22

    1.  Any breach of the panel counsel requirement of Clause 9 would have been immaterial .............................................................................. 22

    2.  An immaterial breach would not have operated to void National Union's contractual obligations under its policies .................................. 27

    3.  Any purported breach would have been properly remedied by damages alone ......................................................................................... 28

V.  Conclusion ................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ady v. Jenkins*,
    104 A. 178, 179 (1918) ............................................................................................23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...........................................................................................13, 14

*Athridge v. Aetna Casualty & Surety Co.*,
    351 F.3d 1166 (D.C. Cir. 2003) ...........................................................14, 19, 22 n. 10

*Bahiman v. 3407-9-11 29th St., N.W., Inc.*,
    No. 89-576-LFO, 1990 ......................................................................................27, 28

*Board Of Ed. Of Charles Co., Maryland v. St. Paul Fire & Marine Insurance Co.*,
    420 F. Supp. 491 (D. Md. 1975) ..............................................................................22

*Cameron v. USAA Prop. & Casualty Insurance Co.*,
    733 A.2d 965 (D.C. 2005) .......................................................................................15

*Chase v. State Farm Fire & Casualty Co.*,
    780 A.2d 1123 (D.C. 2001) .....................................................................................15

*Greyhound Lines, Inc. v. Bender*,
    595 F. Supp. 1209 (D.D.C. 1984) ............................................................................23

*Hernandez v. Gulf Group Lloyds*,
    875 S.W.2d 691 (Tex. 1994) .........................................................................23, 24, 27

*Holcomb v. Powell*,
    433 F.3d 889 (D.C. Cir. 2006) ...........................................................................13, 14

*Holman v. Williams*,
    436 F. Supp. 2d 68 (D.D.C. 2006) ...........................................................................13

*Long v. Howard University*,
    439 F. Supp. 2d 68 (D.D.C. 2006) ...........................................................................14

*Mobil Oil Exploration & Producing Southeast, Inc. v. U.S.*,
    530 U.S. 604 (2000) .................................................................................................23

*Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*,
   --- F. Supp. 2d ---, No. 04-1457 (ESH), 2006 WL 2468062 (D.D.C. Aug. 25,
   2006) ..........................................................................................................................14, 24, 25

*Ranes v. American Family Mut. Ins. Co.*,
   569 N.W.2d 359 (Wis. App. 1997)........................................................................................24

*Sigmund v. Progressive N. Insurance Co.*,
   374 F. Supp. 2d 33 (D.D.C. 2005)...................................................14, 15, 19, 22 n. 10

*Stevens v. United General Title Insurance Co.*,
   801 A.2d 61 (D.C. 2002) .................................................................................22, 28 n. 13

*Travis v. Travis*,
   203 A.2d 173 (D.C. 1964) ....................................................................................................23

*Vermont Marble Co. v. Baltimore Contractors, Inc.*,
   520 F. Supp. 922 (D.D.C. 1981)....................................................................................23, 24

## STATUTES AND RULES

Fed. R. Civ. P. 56(c) .....................................................................................................................13

## MISCELLANEOUS

E. Farnsworth, Contracts § 8.16 (3d ed. 1999) ....................................................................23

J. Calamari & J. Perillo, Contracts § 11-22 (2d. ed. 1977).................................................23

J. Calamari & J. Perillo, Contracts § 11-18 (3d. ed. 1987)..........................................27, 28

J. Montelone, *Directors' And Officers' Liability And Insurance: A Changing
   Landscape*, Practising Law Institute, Corporate Law and Practice Course
   Handbook Series, Sept.-Oct 2004, at 363 ....................................................................25

Restatement (Second) of Contracts § 236 (1981) .........................................................27, 28

Restatement (Second) of Contracts § 241 (1981) .........................................................23, 28

14 Leo R. Russ & Thomas F. Segalla, Couch On Insurance § 205:50 (3d ed.
   2005) ....................................................................................................................................25

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ULLICO INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:06cv00080 (RJL) |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, | : | |
| and | : | |
| AMERICAN INTERNATIONAL | : | |
| SPECIALTY LINES INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Counterclaim Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ULLICO INC., | : | |
| | : | |
| Counterclaim Defendant. | : | |
| | : | |

**ULLICO'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff/Counterclaim Defendant, Ullico Inc. ("Ullico"), by and through it attorneys, and

for its Memorandum of Points and Authorities In Support of Its Motion For Partial Summary

Judgment, states as follows:

**I.    Introduction**

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") has

wrongfully denied coverage for Ullico's defense costs related to a succession of government

investigations and civil litigation, which are covered separately under two National Union

Employee Benefit Plan Fiduciary Liability insurance policies, one having a policy period of

October 30, 2001 to October 30, 2002 (the "2001 Fiduciary Policy") and the other having a policy period of October 30, 2002 to October 30, 2003 (the "2002 Fiduciary Policy").  Ullico defended itself against investigations by the United States Department of Labor ("DOL Investigations") as well as actions by former senior officers of Ullico (the "Underlying Litigation").  With total disregard of its contractual obligations under those policies, National Union has refused to provide coverage for the costs of defending the DOL Investigations and Underlying Litigation.[1]  To heap one injury on another, National Union has paid the defense costs of Ullico's opponents in the Underlying Litigation.

National Union asserts in its Answer (Fifth Affirmative Defense) and Counterclaim (Counterclaim I) that Ullico's failure to comply with a purported condition of the 2001 Fiduciary Policy bars coverage for the entirety of Ullico's defense costs – not only those incurred in the DOL Investigations but also those incurred in the Underlying Litigation.  (National Union's Answer at ¶ 94; National Union's Countercl. at ¶¶ 54-60.)[2]  More specifically, National Union argues that Ullico's failure to use panel counsel to defend the DOL Investigations and Underlying Litigation bars coverage for defense costs.

Because the panel counsel requirement does not even apply to the Underlying Litigation and the immaterial nature of any alleged breach of the requirement with respect to the DOL Investigations, National Union's argument lacks merit.[3]  Ullico is entitled to coverage without

---

[1]    In a transparent but half-hearted attempt to avoid bad-faith liability, on the eve of the filing of this motion, National Union sent to Ullico a check for a small portion of its defense costs – a pittance compared to the amount due.

[2]    All citations to National Union's Answer are made as follows: "National Union's Answer at ¶ __."  All citations to National Union's Counterclaim are made as follows: "National Union's Countercl. at ¶ __."

[3]    Ullico believes the purported requirement has been waived, given National Union's agreeing to allow other policyholders to choose their own counsel, or National Union is estopped from asserting it, given National Union's conflicting interests with Ullico in the Underlying Litigation.  Ullico may move for summary judgment on these issues as well after appropriate discovery.

further delay for the costs of defense of the Underlying Litigation and DOL Investigations. Accordingly, Ullico is entitled to summary judgment on this issue.

**A.    Ullico's allegations concerning the nature of disputes for which it seeks coverage**.

In February 1997 Ullico's Board approved an investment of $7.6 million in the predecessor of Global Crossing. (Ullico Compl. Ex. B at Countercl. ¶ 15.)[4] Throughout 1998 and 1999 Global Crossing's value continued to rise dramatically. (*Id.* at ¶ 17.) By the end of 1999, Ullico's unrealized and after tax realized gains on the investment were more than $1 billion, or 85% of Ullico's total stockholders' equity. (*Id.*) Because of the skyrocketing value of Global Crossing stock, the book value of Ullico's stock increased nearly 600% between December 31, 1997 and December 31, 1999. (*Id.*)

Beginning in the late 1990's, four former officers of Ullico, Robert Georgine, former Chairman, President, and CEO ("Georgine"), Joseph Carabillo, former Chief Legal Officer ("Carabillo"), John Grelle, former Chief Financial Officer ("Grelle") and James Luce, former Executive Vice President ("Luce") (collectively hereinafter the "Ullico Officers"), engaged in self-dealing designed to unjustly enrich themselves without regard to the duties they owed to Ullico, it shareholders, and its sponsored employee benefit plans.[5] (*Id.* at ¶¶ 2, 12, 13, 14; Ullico Compl. Ex. B at Countercl. ¶¶ 8-11.) The Ullico Officers, seeking to capitalize on the dramatic rise in the value of Ullico's stock, implemented stock offers and stock repurchase programs that allowed them to reap substantial profits – much greater than any other shareholders – from their Ullico holdings and employment. (Ullico Compl. at ¶ 2.)

---

[4]  All citations to Ullico's First Amended Complaint for Damages, Declaratory Judgment and Injunctive Relief are made as follows: "Ullico Compl. at ¶ __."  All citations to exhibits attached to Ullico's First Amended Complaint for Damages, Declaratory Judgment and Injunctive Relief are made as follows: "Ullico Compl. Ex. __ at __."

[5]  The Ullico Officers, in addition to ignoring the duties they owed to Ullico, its shareholders, and its sponsored employee benefit plans, failed to provide the required disclosures and obtain the required approvals under Maryland law.

The Ullico Officers also manipulated their investments in the Ullico Deferred Compensation Plan by exploiting the pricing mechanism for Ullico stock that had been put in place with respect to the formal redemption program. (Ullico Compl. Ex B at Countercl. ¶¶ 62-67.) This plan provided the Ullico Officers with deferred compensation by "deeming" them to have made certain investments, the value of which would later be paid to them by Ullico. (*Id.*) In December 1999, shortly before the date used to calculate the Ullico stock price for the next year, Carabillo, Grelle and Luce were "deemed" to have purchased Ullico stock at a $53.94 per share. (*Id.*) Shortly after the Ullico share price was set at $146.04 in May 2000, Carabillo, Grelle, and Luce, shifted their "deemed investments" out of Ullico's stock and into other "deemed investment" alternatives. (*Id.*) As a result, Carabillo, Grelle and Luce were able to nearly triple the value of their deferred compensation accounts in less then six months. (*Id.*)

Further, the Ullico Officers, acting as members of the Benefits Committee of the Ullico Inc. Pension Plan and Trust (the "Qualified Plan"), the Ullico Inc. Employees' Life and Health Welfare Plan (the "Welfare Plan"), and the Union Labor Life Auxiliary Retirement Benefits Plan (the "Auxiliary Plan"), acted contrary to their fiduciary duties. (*Id.* at ¶¶ 68-71.) For instance, the Ullico Officers purported to amend the Qualified Plan in a manner that substantially increased their own benefits under the plan. (*Id.*) The Ullico Officers purported to amend the definition of "compensation" to include not just base salary, but also "regularly established annual incentive compensation with no maximum, effective January 1, 2000." (*Id.*) The amount of benefits the Ullico Officers were eligible to receive under the Auxiliary Plan was directly tied to the definition of compensation in the Qualified Plan. (*Id.*) Thus, any increase in the basis for determining "compensation" in the Qualified Plan also had the effect of increasing the amount of their benefits under the Auxiliary Plan. (*Id.*)

II.      **Statement of Undisputed Facts**

    A.      **The undisputed facts concerning the DOL Investigations**.

    Ullico became the subject of multiple state and federal investigations, including investigations conducted by the U.S. Department of Labor. (Ullico Compl. at ¶ 3.) In April 2002, the DOL issued subpoenas for documents relating to the sale and purchase of Ullico stock by ERISA-covered employee benefit plans and fiduciaries with respect to such plans, certain minutes of meetings of the Ullico's Board of Directors, and general corporate information relating to Ullico. *See* Affidavit of Teresa E. Valentine dated October 31, 2006 in support of Ullico's Motion for Partial Summary Judgment ("Valentine Aff.") at ¶ 3; Valentine Aff. at Ex. A. In June 2002, the DOL issued another subpoena to Ullico seeking documents relating to the Qualified Plan's investment in the pooled separate accounts of The Union Labor Life Insurance Company ("Union Labor Life"), the Plan's payments to Union Labor Life for investment management fees related to the Plan's investments in its pooled separate accounts, and the Form 5500 Annual Return/Report of the Employee Benefit Plan. *Id.* The DOL issued additional subpoenas to Ullico in January, March, June and August 2003. *Id.* In July 2005, the DOL Investigations continued with the DOL issuing yet another subpoena requesting additional information about investments by a Ullico plan in Separate Account J, as well as other materials relating to the Separate Account and its management. *Id.*

    National Union has acknowledged notice of the DOL Investigations. *See* Affidavit of Patrick McGlone dated October 31, 2006 in support of Ullico's Motion for Partial Summary Judgment ("McGlone Aff.") at ¶ 3; McGlone Aff. at Ex. A. Ullico hired counsel to defend it in the DOL Investigations and incurred substantial fees in excess of $700,000 in connection with the defense. *See* McGlone Aff. ¶¶ 4-5. National Union has not fully reimbursed Ullico for the costs incurred in the defense of the DOL Investigations. *Id.*

**B.** **The undisputed facts concerning the Underlying Litigation**.

On February 25, 2003, John Grelle, Chief Financial Officer, resigned.  (Ullico Compl. at ¶ 14.)   Robert Georgine, CEO, resigned effective May 8, 2003. (Ullico Compl. Ex. B, Counterclaim at ¶ 82.)  Joseph Carabillo, Chief Legal Officer, was terminated for cause on May 30, 2003 and, James Luce, Executive Vice President, retired June 1, 2003.  (Ullico Compl. at ¶¶ 12-13.)

Unfortunately, the exit of the Ullico Officers did not signal the end of their involvement in Ullico's affairs.  (*Id.* at ¶¶ 19-30; Ullico Compl. Exs. A-H.)  Two of these officers filed actions against Ullico and its sponsored employee benefit plans relating to their allegedly earned compensation and pension benefits.  (Ullico Compl. at ¶¶ 19-30; Ullico Compl. Exs. A-H.)  Ullico has fully defended these actions and asserted defenses and counterclaims that seek to offset any recovery sought by these Ullico Officers.  (Ullico Compl. at ¶ 58; Ullico Compl. Exs. A-H.)

Carabillo instituted several lawsuits against Ullico and contends that the termination of his employment was improper and an attempt to deny him allegedly earned compensation and vested pension benefits in an alleged derogation of his contractual and statutory rights.  (Ullico Compl. at ¶ 21.)  On July, 21, 2003, Carabillo filed a complaint captioned *Carabillo v. Ullico Inc.*, No. 1:03cv01556 (D.D.C.) ("Carabillo I").  (*Id.* at ¶ 23; Ullico Compl. Ex. A.)  Carabillo I alleges that Ullico improperly denied certain benefits to Carabillo, including counts of ERISA violation for unlawful termination, breach of contract regarding pension benefits, salary and leave and wrongful termination under District of Columbia common law.  (Ullico Compl. at ¶ 23; Ullico Compl. Ex. A.)  This suit seeks (1) compensatory damage of $500,000; (2) punitive damages of $1 million; (3) payment of earned but unused annual leave; (4) payment of full pension benefits (as if he had retired on June 1, 2003); and (4) the costs of bringing the action.

(Ullico Compl. at ¶ 24; Ullico Compl. Ex. A.)  In response, Ullico, one of its subsidiaries, and various Ullico-sponsored employee benefit plans asserted defenses and counterclaims against Carabillo.  (Ullico Compl. at ¶ 25; Ullico Compl. Ex. B.)  The defenses and counterclaims asserted claims and defenses under ERISA and state law, including breach of fiduciary duty, unjust enrichment, breach of contract and declaratory judgment, relating to windfall profits and other benefits the Ullico Officers obtained in violation of their fiduciary and contractual duties to Ullico and its shareholders.  (Ullico Compl. at ¶ 25; Ullico Compl. Ex. B.)

On May 6, 2004 Carabillo filed a second complaint against Ullico-sponsored benefits plans and entities entitled *Carabillo v. Ullico Inc. Pension Plan & Trust, et al.*, No. 1:04cv00776 (D.D.C.) ("Carabillo II").  (Ullico Compl. at ¶ 26; Ullico Compl. Ex. C.)  Carabillo II alleged various claims under ERISA for pension benefits, attorneys' fees and costs for bringing the action.  (Ullico Compl. at ¶ 26; Ullico Compl. Ex. C.)  Again, Ullico and its sponsored employee benefit plans responded with defenses and counterclaims, including breach of fiduciary duty, breach of contract and declaratory judgment, in relation to the windfall profits and other benefits the Ullico Officers obtained in violation of their fiduciary and contractual duties to Ullico and its shareholders.  (Ullico Compl. at ¶ 27; Ullico Compl. Ex. D.)

On August 8, 2003, Luce filed his own complaint against one of the Ullico subsidiaries and a Ullico-sponsored employee benefit plan, captioned *James W. Luce v. The Union Labor Life Auxiliary Retirement Benefits Plan, et al.*, No 1:03cv1014 (E.D. Va.) ("Luce I"), asserts various claims under ERISA for pension benefits.  (Ullico Compl. at ¶ 28; Ullico Compl. Ex. E.)  Luce also filed a complaint against a Ullico-sponsored employee benefit plan and its administrative committee, *Luce v. Ullico Inc. Pension Plan & Trust, et al.*, No. 1:05cv851 (E.D. Va.) ("Luce III"), seeking recovery for alleged breaches of ERISA in connection with the denial

of benefits and rights purportedly owed to him.  (Ullico Compl. at ¶ 30; Ullico Compl. Ex. G.)

Both Luce I and Luce III were transferred to the U.S. District Court for the District of Columbia

and an Amended Complaint was filed in Luce III adding additional defendants.  (Ullico Compl.

at ¶¶ 28, 30; Ullico Compl. Ex. H.)  In response, Ullico filed a complaint against Luce, captioned

*Ullico Inc. v. Luce*, No. 1:04cv01830 (D.D.C.), seeking recovery for breach of fiduciary duties in

connection with Luce's participation in a number of stock offer and stock repurchase programs

("Luce II").  (Ullico Compl. at ¶ 29; Ullico Compl. Ex. F.)

National Union has acknowledged notice of the Underlying Litigation.  *See* McGlone

Aff. at ¶ 3; McGlone Aff. at Ex. A.  Ullico hired counsel to defend it in the Underlying Litigation

and incurred substantial fees in connection with the defense in excess of $6 million.  *See*

McGlone Aff. at ¶¶ 4-5.  National Union has not fully reimbursed Ullico for the costs incurred in

the defense of the Underlying Litigation.  *Id.*

C.    **The undisputed facts concerning the 2001 Fiduciary Policy**.

National Union issued the 2001 Fiduciary Policy, Policy No. 874-44-03, to "Ullico Inc.

and its subsidiaries."  (Ullico Compl. at ¶ 32; Ullico Compl. Ex. I.)  The 2001 Fiduciary Policy is

subject to a $5 million limit of liability after a $15,000 retention is met.  (Ullico Compl. at ¶ 32;

Ullico Compl. Ex. I.)  The 2001 Fiduciary Policy contains the following Insuring Agreement:

> This policy shall pay the Loss of each and every Insured arising from a Claim[6]
> first made against an Insured during the Policy Period or the Discovery Period (if

---

[6]  "Claim" means:

    (1)    a written demand for monetary relief; or

    (2)    a written demand for injunctive relief; or

    (3)    a civil or criminal proceeding for monetary or injunctive relief which is
           commenced by:

           (i)     service of a complaint or similar pleading; or

           (ii)    return of an indictment (in case of a criminal proceeding); or

           (iii)   receipt or filing of a notice of charges; or

applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act by any such Insured (or by any employee for whom such Insured is legally responsible).

(Ullico Comp. at ¶ 33; Ullico Compl. Ex. I at Clause 1.)  Further, the 2001 Fiduciary Policy's

Defense Agreement provides:

    (a)    INSURER'S DUTY TO DEFEND

        Except as hereinafter stated, the Insurer shall have both the right and duty to defend any Claim against an Insured alleging a Wrongful Act, even if such Claim is groundless, false or fraudulent.

        * * *

    (b)    INSURED'S OPTION TO ASSUME DEFENSE

        Notwithstanding the above, the Insureds shall have the right to assume the defense of any Claim made against them.  This right shall be exercised in writing by the Named Sponsor[7] on the behalf of all Insureds within thirty (30) days of the reporting of the Claim to the Insurer pursuant to Clause 8 of the policy.

        * * *

    (c)    GENERAL PROVISIONS (applicable to both (a) and (b) above)

        The Insurer shall advance Defense Costs prior to the final disposition of a Claim, subject to the other provisions of this policy.  Such advance premiums by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss. . . .

        * * *

        Selection of counsel to defend the Claim made against the Insureds shall be governed by Clause 9 of the policy (if applicable).

---

    (4)    a formal agency adjudicative proceeding anywhere in the world to which an insured is subject; or

    (5)    any fact finding investigation by the Department of Labor, the Pension Benefit Guaranty Corporation, or similar governmental agency which is located outside of the United States.

(Ullico Compl. Ex. I at Clause 3.)

[7]  Named Sponsor in the 2001 Fiduciary Policy is defined as Ullico Inc. and its subsidiaries.  (Ullico Compl. Ex. I at Declarations, Item 1.)

(Ullico Comp. at ¶ 34; Ullico Compl. Ex. I at Clause 2.)

Clause 9 of the 2001 Fiduciary Policy states:

9.    PRE-AUTHORIZED DEFENSE ATTORNEYS

This clause only applies with respect to (1) an agency proceeding or investigation as defined in either paragraphs (c)(4) or (5) of Clause 3, Definitions, or (2) a class or representative action.

\* \* \*

In the event the Insurer is operating under a duty to defend pursuant to Clause 2(a) of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds.  Upon the written request of the Named Sponsor, the Insurer may consent to a law firm selected by the Named Sponsor, whether or not a Panel Counsel Firm, to defend the Insureds, which consent shall not be unreasonably withheld.  If at any time thereafter a dispute arises between the Insurer and the Insureds involving the defense of a Claim, the Insurer and the Insured shall select a mutually agreeable replacement defense counsel.

In the event the Insureds have assumed the defense of the Claim pursuant to Clause 2(b) of the policy, then the Insureds shall select a Panel Counsel Firm to defend the Insured.  The Insured may select a law firm other than a Panel Counsel Firm at the sole discretion of the Insurer.  In addition, with the express prior written consent of the Insurer, which consent shall not be unreasonably withheld, the Insured may select a Panel Counsel Firm different from that selected by other Insureds if such selection is required due to an actual conflict of Interest or is otherwise reasonably justifiable.

\* \* \*

The list of Panel Counsel Firms may be amended from time to time by the Insurer.  However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Sponsor.  At the request of the Named Sponsor, the Insurer may in its discretion add one or more law firms to the attached list of Panel Counsel Firms for the purpose of defending the Claim made against the Insureds.  The list of Panel Counsel Firms may also be amended to add, with the consent of the Insurer, which consent shall not be unreasonably withheld, a non-Panel Counsel Firm for the purpose of acting as "local counsel" to assist an existing Panel Counsel Firm, which Panel Counsel Firm will act as "lead counsel" in conducting the defense of the Claim, for Claims brought in a jurisdiction in which the chosen Panel Counsel Firm does not maintain an office.

(Ullico Compl. at ¶ 35; Ullico Compl. Ex. I at Clause 9.)

**D.     The undisputed facts concerning the 2002 Fiduciary Policy**.

On the expiration of the 2001 Fiduciary Policy, National Union issued the 2002 Fiduciary

Policy, Policy No. 495-38-35, to "Ullico Inc. and its subsidiaries."  (Ullico Compl. at ¶ 38;

Ullico Compl. Ex. J.)  The 2002 Fiduciary Policy is subject to a $5 million limit of liability with

a $50,000 retention as to defense costs.  (Ullico Compl. at ¶ 38; Ullico Compl. Ex. J.)  The 2002

Fiduciary Policy contains the following Insuring Agreement:

> Solely with respect to Claims first made against an Insured during the Policy
> Period or the Discovery Period (if applicable) and reported to the Insurer pursuant
> to the terms of this policy, and subject to the other terms, conditions and
> limitations of this policy, this policy shall pay the Loss of each and every Insured
> arising from a Claim[8] against an Insured for any actual or alleged Wrongful Act
> by any such Insured (or by any employee for whom such Insured is legally
> responsible).

(Ullico Compl. at ¶ 39; Ullico Compl. Ex. J at Clause 1.)  Further, the 2002 Fiduciary Policy's

Defense Agreement provides:

> (a)     INSURER'S DUTY TO DEFEND

---

[8]  "Claim" means:

> (1)     a written demand for monetary relief, non-monetary or injunctive relief; or
>
> (2)     a civil, criminal or arbitration for monetary, non-monetary or injunctive relief
> which is commenced by:
>
>> (i)      service of a complaint or similar pleading; or
>>
>> (ii)     return of an indictment, information or similar document (in the case of a
>> criminal proceeding); or
>>
>> (iii)    receipt or filing of a notice of charges; or
>
> (3)     a formal agency or regulatory adjudicative proceeding to which an Insured is
> subject; or
>
> (4)     any fact finding investigation by the U.S. Department of Labor, the Pension
> Benefit Guaranty Corporation, or similar governmental agency which is located
> outside of the United States.

(Ullico Compl. Ex. J at Clause 3.)

- 11 -

Except as hereinafter stated, the Insurer shall have both the right and duty to defend any Claim against an Insured alleging a Wrongful Act, even if such Claim is groundless, false or fraudulent.

* * *

(b)    INSURED'S OPTION TO ASSUME DEFENSE

Notwithstanding the above, the Insureds shall have the right to assume the defense of any Claim made against them.  This right shall be exercised in writing by the Named Sponsor[9] on the behalf of all Insureds within sixty (60) days of the reporting of the Claim to the Insurer pursuant to Clause 8 of the policy.

(c)    GENERAL PROVISIONS (applicable to both (a) and (b) above)

The Insurer shall advance Defense Costs prior to the final disposition of a Claim subject to the other provisions of this policy.  Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss. . . .

* * *

Selection of counsel to defend the Claim made against the Insureds shall be governed by Clause 9 of the policy (if applicable).

(Ullico Comp. at ¶ 40; Ullico Compl. Ex. J at Clause 2.)

Clause 9 of the 2002 Fiduciary Policy provides:

9.    PRE-AUTHORIZED DEFENSE ATTORNEYS

This Clause 9 applies only to: (1) a Claim brought by any government entity; (2) a request for coverage for a Voluntary Compliance Loss; or (3) a Claim brought in the form of a class or representative action.

* * *

In the event the insurer is operating under a duty to defend pursuant to Clause 2(a) of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds.  Upon the written request of the Named Sponsor, the Insurer may consent to a different Panel Counsel Firm selected by the Named Sponsor to defend the Insureds, which consent shall not be unreasonably withheld.

---

[9]  Named Sponsor in the 2002 Fiduciary Policy is also defined as Ullico Inc. and its subsidiaries.  (Ullico Compl. Ex. J at Declarations, Item 1.)

In the event the insureds have assumed the defense of the Claim pursuant to Clause 2(b) of the policy, then the Insureds shall select a Panel Counsel Firm to defend the Insured. In addition, with the express prior written consent of the Insurer, which consent shall not be unreasonably withheld, the Insured may select a Panel Counsel Firm different from that selected by other Insured if such selection is required due to an actual conflict of Interest or is otherwise reasonably justifiable.

* * *

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Sponsor. At the request of the Named Sponsor, the Insurer may in its discretion add one or more law firms to the attached list of Panel Counsel Firms for the purpose of defending the Claim made against the Insureds. The list of Panel Counsel Firms may also be amended to add, at the sole discretion of the Insurer, a non-Panel Counsel Firm, for the purpose of acting as "local counsel" to assist an existing Panel Counsel Firm, which Panel Counsel Firm will act as "lead counsel" in conducting the defense of the Claim, for Claims brought in a jurisdiction in which the chosen Panel Counsel Firm does not maintain an office.

(Ullico Compl. at ¶ 41; Ullico Comp. Ex. J at Clause 9.)

## III.    Standard for Partial Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006); *Holman v. Williams*, 436 F. Supp. 2d 68, 73-74 (D.D.C. 2006). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247; *Holcomb*, 433 F.3d at 895. A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

In reviewing a motion for summary, the court must view the evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255; *Holcomb*, 433 F.3d at 895.  The non-moving party must establish more than "a mere scintilla of evidence" to support its position.  *Anderson*, 477 U.S. at 252. Instead, the non-moving party must offer "significantly probative" evidence "on which the jury could reasonably find for the non-movant."  *Long v. Howard Univ.*, 439 F. Supp. 2d 68, 74 (D.D.C. 2006).  If the non-moving party fails to do so, summary judgment is appropriate.  *See id.*

## IV.    Argument

### A.    National Union is required to pay Ullico's defense costs because the panel counsel requirement in Clause 9 does not apply to the Underlying Litigation.

#### 1.    Clause 9 of the 2002 Fiduciary Policy does not apply to the Underlying Litigation.

Ullico seeks coverage from National Union, *inter alia*, under the 2002 Fiduciary Policy for the costs Ullico incurred in the defense of the Underlying Litigation.  Under the 2002 Fiduciary Policy, National Union is obligated to provide coverage because the plain language of the panel counsel requirement of Clause 9 does not apply to the Underlying Litigation.

An insurance policy is a contract between the insured and the insurer, and in construing it "[the] court must first look to the language of the contract."  *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.,*  --- F. Supp. 2d ---, No. 04-1457 (ESH), 2006 WL 2468062, at *2 (D.D.C. Aug. 25, 2006).  When construing an insurance contract, the court must "give the words used their common, ordinary and popular meaning."  *Athridge v. Aetna Cas. & Sur. Co.*, 351 F. 3d 1166, 1172 (D.C. Cir. 2003) (internal citations omitted); *Sigmund v. Progressive N. Ins. Co.*, 347 F. Supp. 2d 33, 36 (D.D.C. 2005).  A policy is "not ambiguous merely because the parties do not agree on the interpretation of the contract provision in question."  *Sigmund*, 374 F. Supp. 2d at 36.  Instead, a policy provision is ambiguous only if it is "susceptible to more than one

reasonable interpretation." *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127-1128 (D.C. 2001). If the language of a particular provision is ambiguous, the court must resolve the ambiguity in favor of the insured, "in a manner consistent with the reasonable expectations of the purchaser of the policy." *Sigmund*, 347 F. Supp. 2d at 36 (*citing Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 969 (D.C. 2005)). As drafters of the policy language, insurance carriers are "equipped with able counsel and other experts in the field," and are in a better position to draft clear and unambiguous policies. *Cameron*, 733 A.2d at 968.

Clause 9 of the 2002 Fiduciary Policy states that it "applies only to: (1) a Claim brought by any government entity; (2) a request for coverage for a Voluntary Compliance Loss; or (3) a Claim brought in the form of a class or representative action." (Ullico Compl. Ex. J at Clause 9.) A Voluntary Compliance Loss is defined as "CAP Penalties, Delinquent Filer Penalties and Voluntary Fiduciary Correction Loss." (Ullico Compl. Ex. J at Clause 3.) The 2002 Fiduciary Policy defines CAP Penalties as the following:

> fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees assessed against or collected from an Insured by the Internal Revenue Service (IRS) pursuant to a written agreement to correct an inadvertent Plan defect under an Employee Plans Compliance Resolution System, provided that such agreement to correct such Plan defect was entered into in writing by the Insured with the IRS during the Policy Period (or during the policy period of a policy issued by the Insurer of which this policy is a continuous renewal).

(*Id.*) Whereas, Delinquent Filer Penalties means "penalties assessed by the U.S. Department of Labor or the IRS under a Delinquent Filer Voluntary Compliance Program for inadvertent failure to file Form 5500, provided that the failure to file such Form 5500 occurred during the Policy Period (or during the policy period of a policy issued by the insurer of which this policy is a continuous renewal)." (*Id.*) Voluntary Fiduciary Correction Loss is defined as the following:

> damages, Defense Expenses and Consulting Fees incurred in connection with the U.S. Department of Labor's ("DOL") Voluntary Fiduciary Correction Program as set forth in the Federal Register, resulting from an inadvertent Breach of

> Fiduciary Duty occurring during the Policy Period (or during the policy period of a policy issued by the Insurer of which this policy is a continuous renewal), provided that such compliance with the DOL's Voluntary Fiduciary Correction Program results in the Insured obtaining a "No Action" letter from the DOL; however, Voluntary Fiduciary Correction Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes or tax penalties; (5) any amount for which an Insured is not financially liable or which is without legal recourse to the Insured; (6) Benefits, or that portion of damages equal to such Benefits; (7) matters of which the Insured had knowledge prior to the inception date of this policy or the first policy issued by the Insurer to the Named Sponsor of which this policy is a continuous renewal; or (8) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(*Id.*)

Based on this unambiguous plain language of Clause 9 of the 2002 Fiduciary Policy, the panel counsel requirement applies only to a claim brought by a government entity, a request for coverage for CAP Penalties, Delinquent Filer Penalties or Voluntary Fiduciary Correction Loss, or a class or representative action. Because the cases encompassed in the Underlying Litigation do not involve any of the above mentioned claims, requests for coverage or actions, the panel counsel requirement of Clause 9 of the 2002 Fiduciary Policy does not apply.

> **a.** **The Underlying Litigation does not involve a claim by any government entity.**

The cases encompassed in the Underlying Litigation do not involve a claim brought by any government entity. Carabillo I and Carabillo II are both actions by a private individual against Ullico, it subsidiaries, and Ullico-sponsored benefits plan seeking earned compensation and pension benefits. (Ullico Compl. Exs. A, C.) Similarly, Luce I and Luce III are actions by a private individual against Ullico, its subsidiaries, and Ullico-sponsored benefits plans also seeking benefits. (Ullico Compl. Exs. E, G.) Whereas, Luce II is an action by Ullico against a private individual seeking recovery for breaches of fiduciary duties. (Ullico Comp. Ex. F.)

Therefore, the panel counsel requirement of Clause 9 of the 2002 Fiduciary Policy does not apply to the Underlying Litigation on this basis.

> **b.     The Underlying Litigation does not involve a request for coverage for a Voluntary Compliance Loss.**

The cases encompassed in the Underlying Litigation do not involve a request for coverage for CAP Penalties, Delinquent Filer Penalties or Voluntary Fiduciary Correction Loss. Carabillo I, Carabillo II, Luce I and Luce III are actions by a private individual against Ullico, it subsidiaries, and Ullico-sponsored benefits plan and do not involve any requests for coverage of penalties or loss assessed by the IRS or DOL.  (Ullico Compl. Exs. A, C, E, G.)  Luce II is an action by Ullico against private individuals seeking recovery for breaches of fiduciary duties and also does not involve any request for coverage of penalties or loss assessed by the IRS or DOL. (Ullico Comp. Ex. F.)  Therefore, the panel counsel requirement of Clause 9 of the 2002 Fiduciary Policy does not apply to the Underlying Litigation on this basis.

> **c.     The Underlying Litigation does not involve a class or representative action.**

The cases encompassed in the Underlying Litigation do not involve a class or representative action.  As stated previously, Carabillo I and Carabillo II are actions filed by a private individual against Ullico, it subsidiaries, and Ullico-sponsored benefits plan that seek to litigate the private individual's rights.  (Ullico Compl. Exs. A, C.)   Similarly, Luce I, II, and III are actions by or against a private individual that seek to litigate the private individual's rights or corporation's rights.  (Ullico Compl. Exs. E-G.)  Therefore, the panel counsel requirement of Clause 9 of the 2002 Fiduciary Policy does not apply to the Underlying Litigation on this basis.

       **d.**     **The panel counsel requirement does not contain related claims
language encompassing the Underlying Litigation.**

Any argument by National Union that the panel counsel requirement of Clause 9 of 2002
Fiduciary Policy applies to the cases encompassed in the Underlying Litigation because they are
claims arising out of or related to the DOL Investigations is without merit. Clause 9 of the 2002
Fiduciary Policy provides "[t]his Clause 9 only applies to: (1) a Claim brought by any
government entity; (2) a request for coverage for a Voluntary Compliance Loss; or (3) a Claim
brought in the form of a class or representative action class or representative action." (Ullico
Compl. Ex. J at Clause 9.) Clause 9 of the 2002 Fiduciary Policy does not contain any language
whatsoever which allows its application based on a claim, requests for coverage or action being
"related" or "arising out of" another claim, requests for coverage or action. (*Id.*) The language
of Clause 9 is clear and unambiguous. Such language applies only to claims brought by a
government entity, request for coverage of CAP Penalties, Delinquent Filer Penalties or
Voluntary Fiduciary Correction Loss, as defined, or a class or representative action.

The 2002 Fiduciary Policy contains related claims language only in the Notice/Claim
Reporting provision. (Ullico Compl. Ex. I at Clause 8(b).) The language of Clause 8 serves to
deem different claims "alleging, arising out of, based upon or attributable to" the same or related
acts to be made during a single policy year, thus, controlling the insurer's overall exposure to
such claims. (*Id.*) Clause 8(b) is in no way pertinent to National Union's defense obligations on
each claim, or in particular, the panel counsel requirement of Clause 9. This is simply
demonstrated by the fact that different claims may arise out of the same or related acts, but these
different claims may require defense counsel of varying skill sets or specializations. Therefore,

the panel counsel requirement of Clause 9 does not apply, as a matter of contract construction or logic, to the Underlying Litigation, and defense costs may not be refused in reliance on it.

> **2.    Clause 9 of the 2001 Fiduciary Policy does not apply to the Underlying Litigation**.

Assuming, *arguendo*, the Court looks to the 2001 Fiduciary Policy for defense costs for the Underlying Litigation, Ullico is still entitled to defense costs for the Underlying Litigation. National Union erroneously asserts that Ullico's refusal to comply with the panel counsel requirement of Clause 9 of the 2001 Fiduciary Policy bars coverage for defense costs of the Underlying Litigation.  (National Union's Answer at ¶ 94; National Union's Countercl. at ¶¶ 54-60.)  The plain language of the panel counsel requirement of Clause 9 of the 2001 Fiduciary Policy is also not applicable to the Underlying Litigation.

Again, when construing an insurance contract, the court must "give the words used their common, ordinary and popular meaning."  *Athridge*, 351 F. 3d at 1172; *Sigmund*, 347 F. Supp. 2d at 36.  A policy is "not ambiguous merely because the parties do not agree on the interpretation of the contract provision in question."  *Sigmund*, 374 F. Supp. 2d at 36.  Instead, a policy provision is ambiguous if it is "susceptible to more than one reasonable interpretation."  *Chase*, 780 A.2d at 1127-1128.  If the language of a particular provision is ambiguous, the court must resolve the ambiguity in favor of the insured, "in a manner consistent with the reasonable expectations of the purchaser of the policy."  *Sigmund*, 347 F. Supp. 2d at 36.

Clause 9 of the 2001 Fiduciary Policy states that "[t]his clause only applies with respect to: (1) an agency proceeding or investigation as defined in either paragraphs (c)(4) or (5) of Clause 3, Definitions, or (2) a class or representative action."  (Ullico Compl. Ex. I at Clause 9.) Paragraphs (c)(4) or (5) of Clause 3 defines an agency proceeding or investigation as "a formal agency adjudicative proceeding anywhere in the world to which an insured is subject" or "any

fact finding investigation by the Department of Labor, the Pension Benefit Guaranty Corporation, or similar governmental agency which is located outside of the United States." (Ullico Compl. Ex. I at Clause 3.)  Based on this unambiguous plain language of Clause 9 of the 2001 Fiduciary Policy, the panel counsel requirement applies only to an agency adjudicative proceeding or a fact finding investigation by the DOL or the Pension Benefit Guaranty Corporation, as well as a class or representative action.  Because the cases encompassed in the Underlying Litigation do not involve any of the above mentioned proceedings, investigations or actions, the panel counsel requirement of Clause 9 of the 2001 Fiduciary Policy does not apply.

### a.    The Underlying Litigation does not involve an agency proceeding or investigation.

The cases encompassed in the Underlying Litigation do not involve agency adjudicative proceedings or fact finding investigations by the DOL or the Pension Benefits Guaranty Corporation.  Carabillo I and Carabillo II are both actions by a private individual against Ullico, its subsidiaries, and Ullico-sponsored benefits plan seeking compensation and pension benefits. (Ullico Compl. Exs. A, C.)  Similarly, Luce I and Luce III are actions by a private individual against Ullico, its subsidiaries and Ullico-sponsored benefits plans also seeking benefits.  (Ullico Compl. Exs. E, G.)  Luce II is an action by Ullico against private individuals seeking recovery for breaches of fiduciary duties.  (Ullico Comp. Ex. F.)  Therefore, the panel counsel requirement of Clause 9 of the 2001 Fiduciary Policy does not apply to the Underlying Litigation.

### b.    The Underlying Litigation does not involve a class or representative action.

Nor do the cases encompassed in the Underlying Litigation involve a class or representative action.  Carabillo I and Carabillo II are actions filed by a private individual against Ullico, it subsidiaries, and Ullico-sponsored benefits plan that seek to litigate the private individual's rights.  (Ullico Compl. Exs. A, C.)   Similarly, Luce I, II, and III are actions by or

against a private individual that seek to litigate the private individual's rights or corporation's rights. (Ullico Compl. Exs. E-G.) Therefore, the panel counsel requirement of Clause 9 of the 2001 Fiduciary Policy does not apply to the Underlying Litigation on this basis.

**c.     The panel counsel requirement does not contain related claims language encompassing the Underlying Litigation.**

Nevertheless, National Union argues that the panel counsel requirement of Clause 9 of 2001 Fiduciary Policy applies to the cases encompassed in the Underlying Litigation because they are claims arising out of or related to the DOL Investigations. (National Union's Answer at ¶ 94; National Union's Countercl. at ¶¶ 54-60.) This argument is entirely without merit. As mentioned before, Clause 9 of the 2001 Fiduciary Policy provides "[t]his clause only applies with respect to: (1) an agency proceeding or investigation as defined in either paragraph (c)(4) or (5) of Clause 3, Definitions, or (2) a class or representative action." (Ullico Compl. Ex. I at Clause 9.) Clause 9 of the 2001 Fiduciary Policy does not contain any language whatsoever which allows its application based on a proceeding, investigation or action being "related" or "arising out of" another proceeding, investigation or action. (*Id.*) The language of Clause 9 is clear and unambiguous. The panel counsel requirement applies only to an agency proceeding or investigation, as defined, as well as a class or representative action.

Similar to the 2002 Fiduciary Policy, the 2001 Fiduciary Policy contains only related claims language in the Notice/Claim Reporting provision. (Ullico Compl. Ex. I at Clause 8(b).) The language of Clause 8 serves to deem different claims "alleging, arising out of, based upon or attributable to" the same or related acts to be made during a single policy year, thus, controlling the insurer's overall exposure to such claims. (*Id.*) Clause 8(b) is in no way pertinent to National Union's defense obligations on each claim, or in particular, the panel counsel requirement of Clause 9.

**B.     National Union is required to pay Ullico's defense costs in the DOL Investigations because any breach of Clause 9 would have been immaterial, would not have voided National Union's obligations, and would have been properly remedied by damages alone.**

National Union also asserts in its Fifth Affirmative Defense and Counterclaim I that Ullico's purported failure to comply with Clause 9 of the 2001 Fiduciary Policy – that it use panel counsel in the defense of claims asserted against it – bars coverage for the entirety of Ullico's defense costs related to the DOL Investigations.  (National Union's Answer at ¶ 94; National Union's Countercl. at ¶¶ 54-60.) The failure to use panel counsel, however, to the extent it is a breach of the 2001 Fiduciary Policy, is an immaterial breach in the context of the 2001 Fiduciary Policy.  Even if there is a breach of the panel counsel requirement of Clause 9, it does not relieve National Union of its contractual obligations under the 2001 Fiduciary Policy. Ultimately, the appropriate remedy for a breach of the panel counsel requirement of Clause 9 is damages.  Therefore, Ullico is entitled to coverage under the 2001 Fiduciary Policy for defense costs related to the DOL Investigation.

**1.     Any breach of the panel counsel requirement of Clause 9 would have been immaterial**.

An insurance policy is a contract and, thus, fundamental contract principles apply to the parties' performance under the policy.  *See Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 66 (D.C. 2002) (noting that insurance policies are contracts which courts construe applying contract construction principles).   One such fundamental contract principle, the doctrine of material breach, applies with equal force to insurance contracts as to any other contract.  *See Bd. of Ed. of Charles Co., Maryland v. St. Paul Fire & Marine Ins. Co.*, 420 F. Supp. 491, 493 (D. Md. 1975) (applying material breach doctrine to property insurance policy).[10]

---

[10]   Where there is no District of Columbia law on point, District of Columbia courts routinely look to the law of Maryland for guidance.  *Athridge*, 351 F.3d at 1171; *Sigmund*, 374 F. Supp. 2d at 36.

Consistent with the doctrine of material breach, only material breaches, not insubstantial ones, excuse the non-breaching party's duty to continue performing under the contract. *See Travis v. Travis*, 203 A.2d 173, 176 (D.C. 1964); *Ady v. Jenkins*, 104 A. 178, 179 (1918) (Maryland law). When determining the materiality of breach, the court must do so in light of the entire contract, not reading any provision in isolation but instead giving meaning to the contract as a whole. *Vermont Marble Co. v. Baltimore Contractors, Inc.*, 520 F. Supp. 922, 927 (D.D.C. 1981). District of Columbia Courts consider the following factors to determine whether a breach is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Greyhound Lines, Inc. v. Bender*, 595 F. Supp. 1209, 1224 (D.D.C. 1984) (quoting Restatement (Second) of Contracts § 241 (1981)). Courts also consider:

> 1) to what extent, if any, the contract has been performed at the time of the breach. The earlier the breach the more likely it will be regarded as material. 2) A willful breach is more likely to be regarded as material than . . . a breach caused by negligence or by extraneous circumstances. 3) A quantitatively serious breach is more likely to be considered material.

*Id*. (quoting J. Calamari & J. Perillo, Contracts § 11-22 (2d ed. 1977)). Of these factors, the most significant is the extent to which the injured party will be deprived "of the benefit that it justifiably expected." *Mobil Oil Exploration & Producing Southeast, Inc. v. U.S.*, 530 U.S. 604, 635 (2000) (J. Stevens, dissenting) (citing E. Farnsworth, Contracts § 8.16 (3d. ed. 1999)). An insured's breach of a policy provision is not material if the insurer is not deprived of its expected benefit, and therefore suffers no prejudice. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691,

693 (Tex. 1994).  Thus, the less an insurer is deprived of its expected benefit, the less material

the breach.  *Id.*  If the insurer is in the same position as it would have been had the breach not

occurred, the breach is immaterial and the insurer may not avoid its obligation under the policy.

*Id.* at 693-694.  As one court explained, "formulistic" breaches "without consequences to any of

the parties should not be a basis to defeat a right to which the insured has negotiated and paid."

*Ranes v. American Family Mut. Ins. Co.*, 569 N.W.2d 359, 361 (Wis. App. 1997).  A party does

not materially breach an agreement if finding such a breach to be material would "grossly warp"

the purpose of the provision breached and the contract as a whole.  *Vermont Marble Co.*, 520 F.

Supp. at 927-928.

The court in *Hernandez* considered whether an insured's breach of a settlement-without-

consent exclusion provision was a material breach.  *Hernandez*, 875 S.W.2d at 692-694.

Holding that the breach was not material, the court noted that the insurer's expected benefit from

compliance with the provision was the preservation of its subrogation rights.  *Id.* at 693.

Reasoning that not every breach of that provision would deprive the insurer of its subrogation

rights, the court found that on the facts before it, the insurer incurred no loss of those rights.  *Id.*

at 693-694.  Because the insurer remained in the same position as if its insured had complied

with the provision, the court held the breach was immaterial and the insurer was not excused

from its policy obligations.  *Id.; see also Ranes*, 569 N.W.2d at 362 (holding that because insurer

was not prejudiced by breach of notice of settlement provision, insured did not forfeit its rights

under the policy).

Whereas, the court in *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, --- F. Supp. 2d --,

No. 04-1457 (ESH), 2006 WL 2468062, *1 (D.D.C. Aug 25, 2006) considered whether an

insured's breach of the notice provision was material.  In holding that the excess insurers were

entitled to summary judgment, the *Lexington* court explained that the notice provision was the "essence of the contract" and "with its function within the broader context of the policies" allows insurers to exercise their right to investigate claims and to participate in the defense of any claim which might be covered by their policy. *Lexington*, 2006 WL 2468062, at *4-5. The court concluded the failure to give timely notice "effectively limited" the contractual rights to investigate and participate in the defense of the claims. *Id.*

Here, similar to *Hernandez* and in contrast to *Lexington*, there is no material breach since National Union is not deprived of the benefits under the 2001 Fiduciary Policy. In order to determine whether there was a material breach, the critical question that must be asked is what is the purpose of the panel counsel requirement of Clause 9? The purpose of the panel counsel requirement is twofold. First, the panel counsel requirement appears to be intended to provide National Union with savings as to defense costs. *See* J. Montelone, *Directors' And Officers' Liability And Insurance: A Changing Landscape*, Practising Law Institute, Corporate Law and Practice Course Handbook Series, Sept.-Oct. 2004, at 363 (controlling defense expenses through the use of panel counsel); 14 Leo R. Russ & Thomas F. Segalla, Couch on Insurance § 205:50 (3d ed. 2005) (insurer seeks to pay no more than the hourly rate charged by its preferred or panel counsel). The panel counsel requirement in theory, creates savings by limiting the firms that can defend an insured to those firms with which National Union has negotiated favorable billings rates and costs. Second, the panel counsel requirement appears to be intended to insure claims against an insured are defended by competent ERISA counsel. *See* Affidavit of Timothy W. Burns dated October 31, 2006 in support of Ullico's Motion for Partial Summary Judgment ("Burns Aff.") at ¶ 2; Burns Aff. at Ex. A (AIG brochure advertising for its ERISA Liability

Gold Package which distinguishes as an advantage access to top ERISA liability litigators). National Union has not been deprived of either of these benefits.

The use of non-panel counsel does not necessarily deprive National Union of a savings in defense costs. In order to determine whether there would have been a savings in regard to defense costs, a comparison of the difference in billing rates of panel counsel and non-panel counsel for the work performed must be made. However, this assumes that differences in the billing rates even exist. National Union's District of Columbia panel counsel firms include several top-tier law firms.[11] (Ullico Compl. Ex. I at Appendix A; Ullico Compl. Ex. J at Appendix A.) The rates of these top-tier firms most likely will be comparable to, if not greater than, the rates of non-panel counsel. Thus, there may not even be a difference when a comparison is done between the rates and, therefore, there would be no loss of the benefit of savings.

Further, the use of non-panel counsel did not deprive National Union of competent ERISA counsel. Ullico was initially defended in the DOL Investigations by the law firm of Feder, Semo, Clark & Bard, with Joseph Semo acting as lead attorney and, thereafter, by the Groom Law Group, with Thomas S. Gigot acting as lead attorney. Both Mr. Semo and Mr. Gigot are ERISA attorneys with decades of experience in defending ERISA-related litigation. *See* Burns Aff. at ¶ 3; Burns Aff. at Ex. B. More interestingly, the predecessor of the Groom Law Group, of which Mr. Gigot is a partner, is Groom and Nordberg. *Id.* National Union lists Groom and Nordberg as a District of Columbia panel counsel firm. (Ullico Compl. Ex. I at

---

[11] The panel counsel list, or Panel Counsel First(s) as deemed in Clause 9, includes: Arent, Fox, Kintner, Plotkin & Kahn; Arnold & Porter; O'Melveny & Meyers, LLP; and Patton Boggs, LLP.

Appendix A; Ullico Compl. Ex. J at Appendix A.)   Therefore, there is no loss of benefit of competent ERISA counsel.[12]

As a result, National Union, in fact, is in the same position as it would have been had panel counsel been used.  *See Hernandez*, 875 S.W.2d at 693-694.  Thus, in the context of the 2001 Fiduciary Policy the breach of the panel counsel requirement of Clause 9 is immaterial and National Union is not excused from its policy obligations.  *See id.*

Moreover, the very language of the 2001 Fiduciary Policy proves that a breach of Clause 9 is not material.  The policy language of the 2001 Fiduciary Policy allows the addition of a law firm, chosen by the insured to defend a claim, to the list of panel counsel firms.  The language of the 2001 Fiduciary Policy provides "[a]t the request of the Named Sponsor, the Insurer may in its discretion add one or more law firms to the attached list of Panel Counsel Firms for the purpose of defending the Claim made against the Insureds."  (Ullico Compl. Ex I at Clause 9.)  Thus, a breach of Clause 9 cannot be material when the policy language allows, effectively, for the elimination of the panel counsel requirement.

> ### 2. An immaterial breach would not have operated to void National Union's contractual obligations under its policies.

Another fundamental principle of contract law is that a contract may not be rescinded for breach unless the breach is total.  *Bahiman v. 3407-9-11 29th St., N.W., Inc.,* No. 89-576-LFO, 1990 WL 108980, at *2 (D.D.C. July 20, 1990) (citing to J. Calamari & J. Perillo, Contracts §

---

[12]   Additionally, Ullico's decision to engage the services of Feder, Semo, Clark & Bard and the Groom Law Group proved prescient based on National Union's refusal to institute ethical screens and hire separate coverage counsel despite National Union's potentially owing conflicting duties to its insured – Ullico and the Ullico Officers in the Underlying Litigation.  Based on a demand by National Union for Ullico's sensitive and strategic litigation-related materials, Ullico requested that ethical screens be erected between claims handlers handling Ullico's claims and claims handlers handling the Ullico Officers' claims.  *See* McGlone Aff. at ¶ 3; McGlone Aff. at Ex. B.  Further, Ullico requested that National Union hire separate coverage counsel to represent National Union's interest as to Ullico's claims and the Ullico Officers' claims.  *Id.*  National Union refused Ullico's request and took no action at all.  *Id.*

11-18 (3d ed. 1987); Restatement (Second) of Contracts §§ 236, 241 (1981)).[13]  In other words, if a party's breach of contract is immaterial, the aggrieved party may not cancel the contract and may only sue to collect damages resulting from the partial breach.  *Bahiman*, 1990 WL 108980, at *2.  Accordingly, National Union remains bound by its contractual obligations under the 2001 Fiduciary Policy since a breach of the panel counsel requirement of Clause 9 is immaterial.  *See supra* pp. 22-27.

### 3. **Any purported breach would have been properly remedied by damages alone**.

As stated above, if a party's breach of a contract is immaterial, the aggrieved party may only seek damages from the partial breach.  *See Bahiman*, 1990 WL 108980, *2 (citing to J. Calamari & J. Perillo, Contracts § 11-18 (3d ed. 1987); Restatement (Second) of Contracts §§ 236, 241 (1981)).  The same formula which helped determine whether National Union lost the benefit of savings also can be used to determine National Union's damages.  Again, this assumes that differences in the billing rates even exist.  National Union's District of Columbia panel counsel firms include several top-tier law firms.  (Ullico Compl. Ex. I at Appendix A; Ullico Compl. Ex. J at Appendix A.)  The rates of these top-tier firms most likely will be comparable to, if not greater than, the rates of non-panel counsel.  Thus, as with National Union's savings, there may not even be a difference when a comparison is done between the rates and, therefore, no damages.

### V. **Conclusion**

Based on the foregoing, Ullico respectfully requests that this Court enter partial summary judgment, holding that no panel counsel requirement bars Ullico's coverage for the defense costs

---

[13]  Again, an insurance policy is a contract and, thus, fundamental contract principles apply to the parties' performance under the policy.  *See Stevens*, 801 A.2d at 66.

from the Underlying Litigation under the 2002 Fiduciary Policy and the 2001 Fiduciary Policy,

and award such other relief as the Court may deem just and proper.

ULLICO INC.

_ /s/ John F. Anderson_____
By One of Its Attorneys

John F. Anderson
D.C. Bar No. 393764
TROUTMAN SANDERS LLP
1660 International Drive
Suite 600
McLean, VA 22102
(703) 734-4356

Of Counsel:
Timothy W. Burns (*Pro Hac Vice* Admission)
Angela R. Elbert (*Pro Hac Vice* Admission
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, Illinois 60602
(312) 269-8000

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ULLICO INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:06cv00080 (RJL) |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, | : | |
| and | : | |
| AMERICAN INTERNATIONAL | : | |
| SPECIALTY LINES INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Counterclaim Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ULLICO INC., | : | |
| | : | |
| Counterclaim Defendant. | : | |

**ORDER**

UPON CONSIDERATION of Plaintiff/Counterclaim Defendant, Ullico Inc.'s ("Ullico")

Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(a), it is this _____ day of

_____, 2006, hereby:

ORDERED that Ullico's Motion for Partial Summary Judgment seeking coverage from

National Union under the 2002 Fiduciary Policy or the 2001 Fiduciary Policy for the costs Ullico

incurred in the defense of the Underlying Litigation is granted; and it is

FURTHER ORDERED that Ullico's Motion for Partial Summary Judgment seeking coverage from National Union under the 2001 Fiduciary Policy for the costs Ullico incurred in the defense of the DOL Investigations is granted.

Entered this _____ day of _____, 2006.

_____
Richard J. Leon
United States District Judge