# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ULLICO INC.,                                        :
                                                    :
            Plaintiff,                              :
                                                    :
      v.                                            :      Civil Action No. 1:06cv00080 (RJL)
                                                    :
NATIONAL UNION FIRE INSURANCE                       :
COMPANY OF PITTSBURGH, PA, et al.,                  :
                                                    :
            Defendants.                             :
                                                    :
NATIONAL UNION FIRE INSURANCE                       :
COMPANY OF PITTSBURGH, PA,                          :
and                                                 :
AMERICAN INTERNATIONAL                              :
SPECIALTY LINES INSURANCE                           :
COMPANY,                                            :
                                                    :
            Counterclaim Plaintiffs,                :
                                                    :
      v.                                            :
                                                    :
ULLICO INC.,                                        :
                                                    :
            Counterclaim Defendant.                 :

## AFFIDAVIT OF PATRICK MCGLONE
## IN SUPPORT OF ULLICO'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Patrick McGlone, being first duly sworn on oath, deposes and states as follows:

1.      I am an attorney licensed to practice in the State of Virginia and the District of

Columbia. I am an Associate General Counsel for the Plaintiff/Counterclaim Defendant, Ullico

Inc. ("Ullico"), in this lawsuit.

2.      As Associate General Counsel for Ullico, I am generally responsible for

overseeing litigation matters involving Ullico and am responsible for overseeing this insurance

coverage matter. I am familiar with the facts of this case; with the lawsuits in which claims were

brought by defendants Carabillo, Luce and Grelle (the "Underlying Litigation") and Ullico's use

of outside counsel in the Underlying Litigation; with Ullico's activities in connection with certain investigations by the Department of Labor (the "DOL Investigations"), including its use of outside counsel; and with the collection of invoices for the defense of the DOL Investigations and the Underlying Litigation for submission to Ullico's insurance carriers.

3.    National Union has acknowledged notice of the DOL Investigations and cases encompassed in the Underlying Litigation.  True and accurate copies of correspondence between National Union's coverage counsel and Ullico's broker for coverage, and National Union's coverage counsel and Ullico, dated October 21, 2004 and December 7, 2005 respectively, are attached hereto as Exhibit A.  In addition, true and accurate copies of correspondence between coverage counsel for Ullico and National Union, dated August 3, 2005 and August 23, 2005, are attached hereto as Exhibit B.

4.    Ullico retained defense counsel throughout the DOL Investigations and Underlying Litigation.

5.    Ullico has incurred substantial fees in the defense of the DOL Investigations and Underlying Litigation.  The total for the legal bills for the defense of the DOL Investigations and Underlying Litigation is currently over $7 million.  National Union, to date, has reimbursed Ullico for only $273,382.26 of the defense costs.

FURTHER AFFIANT SAYETH NOT

_____
Patrick McGlone

SUBSCRIBED and SWORN to
Before me this 31st day of
October, 2006.

_____
Cheryl Gilmore
Notary Public, District of Columbia
My Commission Expires 04-14-2009

NGEDOCS: 018151.0601:1335782.1

- 2 -

# EXHIBIT A

# D'AMATO & LYNCH

### LAWYERS

GEORGE G. D'AMATO
LUKE D. LYNCH (1999)
KENNETH A. SAGAT
LUKE D. LYNCH, JR.
ROBERT E. KUSHNER
RICHARD F. RUSSELL
RONALD H. ALENSTEIN
HARRY J. ARNOLD, JR.
PHILIP J. BERGAN
ROBERT W. LANG
NEAL M. GLAZER
ANDREW R. SIMMONDS
JOHN P. HIGGINS
THOMAS F. BREEN
ALFRED A. D'AGOSTINO, JR.
WILLIAM P. LARSEN, III
ROBERT D. LANG
DAVID A. BOYAR
MARY JO BARRY
BARBARA R. SEYMOUR
HARVEY BARRISON

WILLIAM C. BURTON
CHARLES BRAMHAM
BILL V. KAKOULLIS
THOMAS W. HANLON
JOHN H. FITZSIMONS
MICHAEL L. MANIRE
KEVIN J. WINDELS
SAMUEL F. PANICCIA
ROBERT S. FRASER
STEPHEN F. WILLIG
DEBORAH M. COLLINS
NEIL R. MORRISON
PETER A. STROILI
FRANCES BUCKLEY
DAVID J. KUFFLER

LLOYD J. HERMAN
KEVIN P. CARROLL
LAURIE P. BEATUS
LIZA A. CHAFIIAN

70 PINE STREET

NEW YORK, N.Y. 10270-0110

TELEPHONE 212/269-0927
CABLE ADDRESS
DAMCOSH
TELEX 960085 DCOS UI NYK
TELECOPIER: 269-3559

LONDON OFFICE

LLOYD'S
ONE LIME STREET
LONDON EC3M 7HA, ENGLAND

TELEPHONE 0207 816 5977
TELECOPIER 0207 816 7257

RICHARD S. TROSTLE
JAN H. DUFFALO
JAMES E. TOLAN, II
CATHERINE L. CASAVANT
ROY CAPLINGER
ANNEMARIE J. MAZZONE
EDWARD M. ROTH
CHRISTINE TIERNEY
MARIA T. EHRLICH
THOMAS S. DARMODY
RICHARD F. FERRIGNO
HUMPHREY O. UDDON
DEEANNA M. GALLA
JUDY Y. CHUNG
JOHN J. MAALOUF
R. DAVID ADES
ARTHUR STEINBERG
JONATHAN L. KRANZ
INGRID A. SMITH

ARTURO M. BOUTIN
THOMAS ZACHARIA
WENDY L. KALNICK
WILLIAN A. CURRAN, III
TAE S. UM
JOHN C. MUCCIFORI
ANNA E. BONSTEIN
MAXINE K. NAKAMURA
JAMES L. FUCHS
GERARDO LAPETINA
LAURA S. WEINER
DAVID BERGENFELD
EDWARD R. WILSON
JONATHAN ARKINS
JASON B. GRANT
JARED S. KAPLAN
GAVIN J. CURLEY
BRIAN N. MARGOLIES
BRYAN HA
ASSAF RONEN
ALEXANDER K. RAZI

COUNSEL

ROBERT M. MAKLA
ALBERT B. LEWIS
CHARLES H. WITHERWAX

VICTOR F. MUSTELIER
ROBERT GILROY
RICHARD G. McGAHREN

PETER J. THUMBER

October 21, 2004

<u>Via Facsimile  212-504-5855 and Mail</u>
Ms. Allison Eisenberg
Frank Crystal & Company
40 Broad Street
New York, NY  10004

|       |                                                        |
|-------|--------------------------------------------------------|
| Re:   | Employee Benefit Plan Fiduciary Liability Insurance    |
|       | Insured:     Ullico Inc. and its Subsidiaries ("Ullico") |
|       | Matter :     Carabillo                                 |
|       | A.I. File No.:   434-003952                            |
|       | Our File No.:   101-69615                              |

Dear Ms. Eisenberg:

We have been retained by AIG Technical Services, Inc. ("AIGTS"), on behalf of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), in connection with the above-referenced matter. Based upon the limited information National Union has received to date, the following will serve to set forth National Union's preliminary coverage position under the Policy after review of: (i) the complaint styled as <u>Joseph A. Carabillo v. Ullico, Inc.</u> filed on July 18, 2003 in the United States District Court, District of Columbia, case no. 03CV01556 ("Carabillo I Complaint"); and (ii) the complaint styled as <u>Joseph A. Carabillo v. Ullico Inc. Pension Plan and Trust, et al.</u> filed on May 13, 2004 in the United States District Court, District of Columbia, case no. 04CV00776 ("Carabillo II Complaint").

National Union issued Employee Benefit Plan Fiduciary Liability Insurance under Policy No. 548-03-72 ("Policy") to Ullico. The Policy has a Policy Period of October 30, 2003 to October 30, 2004. The limit of liability is $5,000,000 in the aggregate for all Loss combined (including defense costs) and there is a $250,000 retention for each covered Claim under the Policy.[1]

---

[1] All capitalized terms shall have the meanings ascribed them by the Policy unless otherwise defined herein.

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 2

### The Carabillo I Complaint

The Carabillo I Complaint alleges claims for breach of § 510 of ERISA, breach of contract and wrongful termination against Ullico, Inc. ("Ullico") by Joseph A. Carabillo ("Carabillo"), the former Chief Legal Officer at Ullico. Carabillo alleges that he was employed with Ullico for approximately sixteen years when he was offered early retirement by Ullico pursuant to an early retirement program that the company's board of directors approved on April 16, 2003. The early retirement program provided for, among other things, early retirement to all employees who had been with the company for at least fifteen years and who were at least 55 years of age at the time of retirement. Carabillo alleges that he accepted early retirement which was to begin on June 1, 2003 and was then put on paid administrative leave in order to allow for another individual to replace him as Ullico's Chief Legal Officer. However, Carabillo alleges that on the eve of early retirement, he was terminated from his employment with Ullico pursuant to a letter sent to his home indicating that the company had lost confidence in him and was, therefore, terminating his employment. Carabillo alleges that Ullico terminated his employment in order to interfere with his pension benefits, which included retirement, health and life insurance benefits.

Carabillo asserts the following causes of action against Ullico: (1) ERISA violations; (2) breach of contract; and (3) wrongful termination. Carabillo seeks the following relief: (1) compensatory damages in the amount of $500,000; (2) punitive damages in the amount of $1,000,000; (3) payment of salary through May of 2003 and payment for earned but unused annual leave; (4) declaratory relief regarding his alleged retired status as of June 1, 2003, along with full benefits retroactive to that date; (5) injunctive relief in connection with the withholding of the benefits he alleges he is entitled to; and (6) attorneys fees and costs of suit.

### Carabillo II Complaint

The Carabillo II Complaint arises out of a claim by Carabillo for failure to pay pension benefits against, among others, the Ullico Inc. Pension Plan and Trust ("Pension Plan"), the Administrator of the Pension Plan ("Pension Plan Administrator") and the Administration Committee of the Pension Plan ("Pension Plan Committee"). Carabillo alleges that when he was terminated from employment by Ullico, he had already elected early retirement pursuant to the early retirement program that was approved by the company's board of directors on April 16, 2003 and offered to Carabillo on April 17, 2003. Carabillo alleges that he accepted the offer of early retirement that was to commence on June 1, 2003 by signing the Election and Release Form and returning it to Ullico's director of corporate benefits by May 8, 2003. Carabillo alleges that by virtue of his having elected to accept early retirement, he is entitled to (i) pension benefits under the Pension Plan; (ii) retiree health insurance and life insurance benefits under the Ullico Inc. Employees' Life and Health Welfare Plan ("Welfare Plan"); and (iii) benefits under the Union Labor Life Auxiliary Retirement Benefits Plan ("Auxiliary Plan"). Ullico allegedly refused to pay him these benefits on account of his being terminated from employment.

Ms. Allison Eisenberg
October 21, 2004
Page 3

Carabillo asserts the following causes of action in the Carabillo II Complaint: (1) Benefits under the Terms of the Qualified Plan, ERISA § 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B); (2) Interest on Retroactive Benefits Under the Terms of the Qualified Plan, ERISA § 502 (a)(1)(B),(3), 29 U.S.C. § 1132 (a) (1) (B), (3); (3) Benefits from the Welfare Plan, ERISA § 502 (a)(1)(B); 29 U.S.C. § 1132 (a)(1)(B); (4) Refund of all COBRA payments made for Continued Coverage under the Welfare Plan with Interest, ERISA § 502 (a)(1)(B),(3), 29 U.S.C. § 1132 (a)(1)(B),(3); (5) Benefits under the Terms of the Auxillary Plan; ERISA § 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B); (6) Interest on Retroactive Benefits from the Auxillary Plan, ERISA § 502 (a)(1)(B), (3), 29 U.S.C. § 1132 (a)(1)(B), (3); and (7) Attorney's Fees and Costs, ERISA § 502 (a)(1), 29 U.S.C. § 1132 (a)(1).  Carabillo seeks the following relief: (1) a declaration that he is eligible to participate in the Early Retirement Program; (2) an award of pension benefits from the Pension Plan pursuant to the Early Retirement Program both prospectively and retroactively to June 1, 2003 with appropriate interest on all retroactive benefits; (3) a declaration that he is eligible to receive retiree benefits from the Welfare Plan; (4) enjoining the Welfare Plan to enroll him as a participant in both its health insurance and life insurance program retroactively to June 1, 2003; (5) an award of a refund of all premiums he has paid for COBRA continuation under the Welfare Plan with appropriate interest thereon; (6) a declaration that he is entitled to participate in the Auxiliary Plan; (7) an award of unreduced pension benefits from the Auxillary Plan both prospectively and retroactively to June 1, 2003 with appropriate interest on all retroactive benefits; and (8) an award of costs and attorneys' fees.

## Coverage Evaluation for the Carabillo I Complaint

As an initial matter, please note that the Policy defines "Claim", in pertinent part, as "a civil, criminal or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading…" In that regard, the docket sheet indicates that the Carabillo I Complaint was served upon Ullico on July 18, 2003. On that basis, it appears that the Carabillo I Complaint was first made on July 18, 2003. As you may know, the Policy is a claims-made and reported policy, which provides coverage only for those claims that are first made and reported within the Policy Period of October 30, 2003 to October 30, 2004. To that extent, the Carabillo I Complaint was first made several months before the Policy incepted. Therefore, there is no coverage for the Carabillo I Complaint (Carabillo's claim) under the Policy. However, since the Carabillo I Complaint was made in July of 2003, and without waiver of any of National Union's rights, privileges or defenses, it will be evaluated for coverage under National Union Policy No. 495-38-35 ("02-03 Policy"), which is the prior policy having a term of October 30, 2002 to October 30, 2003.

Please be advised that Exclusion 5 (d) of the 02-03 Policy provides that there is no coverage for any Claim "alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Act** alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time." In that regard, there is no coverage for the Carabillo I Complaint under the 02-03 Policy because the Carabillo I Complaint

Ms. Allison Eisenberg
October 21, 2004
Page 4

arises out of, is based upon or is attributable to the same Wrongful Act alleged or contained in the DOL investigation matter. Therefore, the Carabillo I Complaint will be handled as part of the DOL investigation matter reported to National Union under Policy No. 874-44-03 ("01-02 Policy") which has a term of October 30, 2001 to October 30, 2002 and for which reservation of rights letters were issued on January 15, 2003, August 6, 2003 and January 19, 2004, respectively (the "ROR letters"). The ROR letters are incorporated herein by reference and made a part hereof and National Union further reserves its rights as articulated later in this letter. Since the operative policy for the Carabillo I Complaint is the 01-02 Policy, it is the provisions of that policy that apply to the Carabillo I Complaint.

Please note that the 01-02 Policy defines Wrongful Act, in pertinent part, to mean: "(1) as respects an **Insured**: a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, but only with respect to a **Plan**." In that regard, there is no coverage for the second and third causes of action to the Carabillo I Complaint (breach of contract and wrongful termination, respectively) because these causes of action do not fall within the 01-02 Policy's definition of Wrongful Act or within the scope of coverage afforded. Therefore, a one-third allocation shall apply to any covered Loss associated with the Carabillo I Complaint under the 01-02 Policy.

## Coverage Evaluation for the Carabillo II Complaint

As an initial matter, it is our understanding that the Carabillo II Complaint was made on May 13, 2003. On that basis, it would appear that the claim was made during the policy period of the Policy. However, with respect to the Carabillo II Complaint, Endorsement #12 of the Policy states the following:

> It is understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with: (i) any **Claim(s)**, notices, events, investigations or actions referred to in any of items (1) through (3) below; (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Breach of Fiduciary Duty**, **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way related, directly or indirectly, to any **Event(s)**:

> (1)     United States Department of Labor issued a subpoena relating to the DOL's investigation of investments in the Playa Vista land development (more specifically in the matter of an investigation of the Plumber & Pipefitters National Pension Fund, Bricklayers & Towel Trades International Pension Fund, National Electrical Benefit Fund, and Carpenters Pension Fund for Southern California as per subpoena dated April 25, 2002)

Ms. Allison Eisenberg
October 21, 2004
Page 5

    (2)    United States Department of Labor issued a subpoena directed to the ULLICO, Inc. relating to the investigation of ERISA covered plans that are eligible to purchase ULLICO, Inc. stock. (as per DOL subpoena dated April 11, 2002)

    (3)    United States Department of Labor issued a subpoena to the ULLICO, Inc. Pension Plan and Trust relating to investigation being conducted by DOL to determine whether any person has violated or is about to violate any provision of Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S. C. Section 1134 (a) (1). (as per DOL subpoena dated June 11, 2002)

(hereinafter the "**Events**")

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part in whole, to a related **Breach of Fiduciary Duty** or related **Wrongful Act** alleged in any of the items (1-3) above, regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action, or the same or different claimants, or is brought in the same or different venue, or resolved in the same or different forum.

In that regard, please be advised that there is no coverage under the Policy for the Carabillo II Complaint because the Carabillo II Complaint arises out of the Events (as that term is defined in Endorsement #12 of the Policy). In particular, the Carabillo II Complaint is directly related to the DOL subpoena that is identified as Event (2) of Endorsement #12. Therefore, the Carabillo II Complaint will also be handled as part of the United States Department of Labor ("DOL") investigation reported to National Union under Policy No. 874-44-03 ("01-02 Policy") on October 30, 2002. Again, the ROR letters are incorporated herein by reference and made a part hereof and as further articulated later in this letter. Since the operative policy for the Carabillo II Complaint is the 01-02 Policy, it is the provisions of that policy that apply to the Carabillo II Complaint.

## Terms and Conditions of the 01-02 Policy Applicable to both the Carabillo I Complaint and the Carabillo II Complaint

As an initial matter, the Notice/Claim Reporting Provisions of Section 8(b) of the 01-02 Policy serve to bring both the Carabillo I Complaint and the Carabillo II Complaint within the period of the 01-02 Policy. In that regard, Section 8(b) of the 01-02 Policy provides the following:

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 6

(b) If written notice of a Claim has been given to the Insurer pursuant to Clause 8(a) above, then any Claim which is subsequently made against an Insured and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

Since both the Carabillo I Complaint and the Carabillo II Complaint constitute a Claim alleging Wrongful Acts which are the same as or related to the Wrongful Acts alleged or contained in the DOL investigation, the Carabillo I Complaint and the Carabillo II Complaint will be considered to have been reported when the DOL investigation was reported.

Please also note the potential application of the following exclusions from the 01-02 Policy to both the Carabillo I Complaint and the Carabillo II Complaint: Exclusion (a) of the Policy precludes coverage for "the gaining in fact of any profit or advantage to which an Insured was not legally entitled." To the extent that both the Carabillo I Complaint and the Carabillo II Complaint uncover activities that have resulted in the gaining of any profit or advantage or for restitution or disgorgement of amounts wrongfully withheld, Exclusion (a) would serve to preclude coverage for all payments made on account of such wrongdoing.

Exclusion (b) of the 01-02 Policy states that there will be no coverage for any Claim "arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act, or any knowing or willful violation of any statute (including, but not limited to ERISA);"

Exclusion (e) of the 01-02 Policy precludes coverage for any Claim "alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation." In that regard, it our understanding that a lawsuit was filed by a participant and/or the DOL in the Ironworkers Pension Plan against an individual named Jacob West, a trustee of that plan and a former Ullico director, as well as against other former Ullico directors. This Ironworkers lawsuit apparently led to the DOL investigations into Ullico and, ultimately, culminated in the Thompson Report. National Union reserves its rights to the extent that the Ironworkers lawsuit constitutes pending or prior litigation under the terms of Exclusion (e) of the 01-02 Policy.

Exclusion (g) of the 01-02 Policy precludes coverage for any Claim "alleging, arising out of, based upon or attributable to any act or omission in his, her or its capacity as a Fiduciary or Administrator of any plan, fund or program other than a Plan as defined in this policy, or by reason of his, her or its status as a Fiduciary or Administrator of such other plan, fund or program."

Ms. Allison Eisenberg
October 21, 2004
Page 7

Exclusion (i) of the 01-02 Policy precludes coverage for any Claim "alleging, arising out of, based upon or attributable to any Wrongful Act as respects the Plan taking place at any time when the Sponsor Organization did not sponsor such Plan or when the Natural Person Insured was not a director, officer, partner or employee or the Sponsor Organization or a Plan."

Also, the 01-02 Policy's definition of Loss does not include, among other things, "(2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which an Insured is not financially liable or which is without legal recourse to the Insured; (6) Benefits, or that portion of any settlement or award in an amount equal to such Benefits, unless and to the extent that recovery of such Benefits is based upon a covered Wrongful Act and is payable as a personal obligation of a Natural Person Insured."

Please be advised that pursuant to Section 2 of the 01-02 Policy entitled Defense Agreement, "the Insurer shall have both the right and duty to defend any Claim against an Insured alleging a Wrongful Act, even if such Claim is groundless, false or fraudulent." The 01-02 Policy also provides, pursuant to its NOTICE provisions that the Insured may elect to assume the defense of the Claim. In such a case, the provisions of Section 2(b) of the 01-02 Policy shall apply, including National Union's right to effectively associate with Ullico in the defense of the Claim.

National Union has been advised that Ullico has retained the law firm of Miller & Chevalier to serve as defense counsel in these matters. In that regard, please be advised that because both the Carabillo I Complaint and the Carabillo II Complaint are related to the DOL investigation, Panel Counsel is required for the defense of these claims pursuant to Section 9 of the 01-02 Policy. Miller & Chevalier is not on the Panel Counsel list and, therefore, National Union does not consent to the retention by Ullico of that firm to serve as defense counsel in these matters. **Please inform us as soon as possible which Panel Counsel law firm has been retained to represent Ullico. National Union does not consent to the retention of a non-panel law firm by Ullico.**

Further, pursuant to Section 2(c) of the 01-02 Policy, "The Insured shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy." On that basis, please provide us with: i) a summary of defense counsel's billing rates, ii) the name of the lead attorney at the law firm assigned to these matters and a summary of that person's expertise and experience in handling ERISA lawsuits and iii) a list of the law firm's staff assigned to this matter and their respective titles. In the event there is any settlement offer or demand in these matters, please immediately provide full particulars to the undersigned and a copy of any document setting forth the proposal. National Union is entitled to a reasonable period of time to review, consider or participate in any settlement discussions prior to any settlement agreement being reached. Also, please arrange for defense counsel to separate the defense fees and expenses rendered in connection with the

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 8


Carabillo I Complaint from the defense fees and expenses rendered in connection with the Carabillo II Complaint.

The coverage provided by the 01-02 Policy is excess of any other valid and collectible insurance. Please forward to us copies of any other insurance policies under which Ullico has reported these claims, along with any corresponding coverage letters received from such insurer(s).

AIGTS on behalf of National Union reserves all of National Union's rights, privileges and defenses under the Policy, the 02-03 Policy, the 01-02 Policy, at law and in equity. To the extent that discovery, new information or other developments may later indicate that other terms, conditions, provisions, exclusions or endorsements of the Policy, the 02-03 Policy and of the 01-02 Policy are applicable in addition to those mentioned above, National Union reserves the right to supplement this letter or its coverage defenses if circumstances so warrant. National Union reserves the right to allocate for any uncovered defendants or for any uncovered causes of action asserted in both the Carabillo I Complaint and the Carabillo II Complaint. National Union also reserves the right to deny coverage for these matters and to recover any payments made under the 01-02 Policy (including Defense Costs) if it is determined that all or part of these matters are not covered under the 01-02 Policy. In this regard, enclosed is a Reimbursement Agreement (the "Agreement") confirming that Ullico acknowledges and agrees to return any sums paid under the 01-02 Policy to the extent it may later be determined by a neutral party that there is no coverage for either the Carabillo I Complaint or the Carabillo II Complaint under the 01-02 Policy. Please arrange for Ullico to execute the Agreement and return an executed original to the undersigned as soon as possible.

If you have any questions or comments concerning the above, please do not hesitate to contact us immediately. We await prompt receipt of the above requested information and thank you in advance for your assistance.

Very truly yours,

Samuel R. Paniccia

Enc. (Reimbursement Agreement)


cc:    (Via Facsimile 703-770-7901)
       Daniel Aronowitz, Esq.
       Shaw Pittman
       1650 Tysons Blvd.
       McLean, VA 22102-4859 (w/enc.)


#187438v1

## REIMBURSEMENT AGREEMENT

THIS REIMBURSEMENT AGREEMENT (the "Agreement") is made between AIG Technical Services, Inc. on behalf of National Union Fire Insurance Company of Pittsburgh, Pa ("National Union"), on the one hand, and Ullico Inc. ("Ullico") on the other hand, effective as of the latest date written at the end hereof.

### R E C I T A L S

WHEREAS, National Union issued its Employee Benefit Plan Fiduciary Liability Insurance Policy No. 874-44-03 (the "Policy") to Ullico which provides, consistent with its terms and conditions, certain fiduciary liability insurance coverage for the policy period October 30, 2001 to October 30, 2002.

WHEREAS, Ullico has provided notice to National Union of (i) the complaint styled as Joseph A. Carabillo v. Ullico, Inc. filed on July 18, 2003 in the United States District Court, District of Columbia, case no. 03CV01556 ("Carabillo I Complaint"); and (ii) the complaint styled as Joseph A. Carabillo v. Ullico Inc. Pension Plan and Trust, et al. filed on May 13, 2004 in the United States District Court, District of Columbia, case no. 04CV00776 ("Carabillo II Complaint") (the Carabillo I Complaint and the Carabillo II Complaint are hereinafter collectively referred to as the "Carabillo Complaints") and National Union has indicated that the Policy potentially covers Ullico for attorneys' fees and costs incurred in connection with the Carabillo Complaints.

#188050v1

NOW, THEREFORE, in consideration of the mutual obligations described below, Ullico, on the one hand, and National Union, on the other hand, hereby agree as follows:

1.    <u>Reimbursement Agreement.</u>    It is agreed and understood that any action done to date or to be done subsequently by or on behalf of National Union or Ullico in connection with the claims asserted by Joseph A. Carabillo in the Carabillo Complaints, including, but not limited to, any review or investigation of the claim or the facts underlying such claim, demand for or acceptance of documentation in support of the claim, meetings regarding the claim, or other action relative to said claim, shall not be construed to be admissions of liability on the claims, nor shall they be construed to waive or modify any of the terms, conditions and provisions of the Policy. It is further understood that any action taken relative to the claim shall not constitute an estoppel or waiver of any kind, nor waive, invalidate, forfeit or modify any of the rights, remedies, liabilities or defenses which either National Union or Ullico may have with respect to the Policy, including the reservation of rights letters issued to date to Ullico by National Union which are incorporated herein by reference.

2.    <u>Defense Fees and Costs.</u>    Subject to the terms and conditions of the Policy and National Union's reservation of rights letter dated October 21, 2004, National Union will pay the reasonable defense fees and costs to Ullico in defense of the Carabillo Complaints. However, such payment of defense fees and costs or other payments under the Policy shall be promptly repaid by Ullico to National Union in the event it is determined that there is no coverage under the Policy for any such payments made under the Policy to protect the interests of Ullico.

2

3.    <u>Reservation of Rights</u>.    The parties hereto agree that each party has reserved all rights, claims and defenses under, or with respect to the Policy.  No defense of waiver, estoppel or statute of limitations in any reserved or future claims by any of the parties to this Agreement shall commence to run until the final termination of the Carabillo Complaints.

4.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed duly executed and binding.

5.    <u>Entire Agreement.</u>    The terms and conditions of this Agreement constitute the entire agreement between the parties and there are no other oral or written understandings or agreements between the parties relating to the subject matter of this Agreement.  Further, this Agreement shall not be construed to modify any of the terms, conditions or exclusions of the Policy or any of the rights of the parties hereto to which they are otherwise entitled by law.

6.    <u>Authority</u>.    The parties and signatories hereto represent and warrant that they have read and understand the entire contents of this Agreement and that they have full and complete authority to execute this Agreement.

IN WITNESS WHEREOF, National Union and Ullico (or their duly authorized representatives) execute this Agreement.

AIG TECHNICAL SERVICES, INC.
on behalf of
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

By:_____

ULLICO

By:_____

3

# D'AMATO & LYNCH

## LAWYERS

## 70 PINE STREET

## NEW YORK, N.Y. 10270-0110

TELEPHONE 212-269-0927
WWW.DAMATO-LYNCH.COM
CABLE ADDRESS
DAMCOSH
TELEX 960085 DCOS UI NYK
TELECOPIER: 212-269-3559

LONDON OFFICE
LLOYD'S
ONE LIME STREET
LONDON EC3M 7HA, ENGLAND
TELEPHONE 0207 816 5977
TELECOPIER 0207 816 7257

GEORGE G. D'AMATO
LUKE D. LYNCH (1899)
KENNETH A. SAGAT
LUKE D. LYNCH, JR.
ROBERT E. KUSHNER
RICHARD F. RUSSELL
RONALD H. ALENSTEIN
HARRY J. ARNOLD, JR.
ROBERT W. LANG
NEAL M. GLAZER
ANDREW R. SIMMONDS
JOHN P. HIGGINS
THOMAS F. BREEN
ALFRED A. D'AGOSTINO, JR.
WILLIAM P. LARSEN, III
ROBERT D. LANG
DAVID A. BOYAR
MARY JO BARRY
BARBARA R. SEYMOUR
HARVEY BARRISON

WILLIAM C. BURTON
CHARLES BRAHNAM
BILL V. KAKOULLIS
THOMAS W. HANLON
JOHN H. FITZSIMONS
MICHAEL L. MANIRE
KEVIN J. WINDELS
SAMUEL F. PANICCIA
ROBERT S. FRASER
STEPHEN F. WILLIG
DEBORAH M. COLLINS
NEIL R. MORRISON
PETER A. STROILI
FRANCES BUCKLEY
DAVID J. KUFFLER

LLOYD J. HERMAN
KEVIN P. CARROLL
LAURIE P. BEATUS
LIZA A. CHAFIIAN

JAN M. DUFFALO
JAMES E. TOLAN, II
CATHERINE L. CASAVANT
ROY CAPLINGER
ANNEMARIE J. MAZZONE
EDWARD M. ROTH
MARIA T. EHRLICH
RICHARD F. FERRIGNO
DEEANNA M. GALLA
JUDY Y. CHUNG
R. DAVID ADES
JONATHAN L. KRANZ
ARTURO M. BOUTIN
WENDY J. KALNICK

JOHN C. MUCCIFORI
MOLLY Z. BROWN
MAXINE K. NAKAMURA
GERARDO LAPETINA
LAURA S. WEINER
DAVID BERGENFELD
E. REYNOLDS WILSON
JASON B. GRANT
GAVIN J. CURLEY
BRIAN M. MARGOLIES
ASSAF RONEN
ALEXANDER M. RAZI
ANITA G. BAKER
SOTHEARY JOHNMAF
MELEENA M. BOWERS

COUNSEL

ROBERT M. MAKLA
ALBERT B. LEWIS
PETER J. THUMSER

VICTOR F. MUSTELIER
ROBERT GILROY
RICHARD G. McGAHREN

Direct Dial: (212) 909-2103
E-Mail: SPaniccia@damato-lynch.com

December 7, 2005

Mr. Patrick McGlone
Associate General Counsel
Ullico, Inc.
1625 Eye Street, N.W.
Washington, D.C. 20006

<div style="margin-left:2em">

Re:  Employee Benefit Plan Fiduciary Liability Insurance
Policy No.:  874-44-03  (the "Policy")
Insured:  Ullico Inc. and its Subsidiaries ("Ullico")
Matter :  DOL investigation
A.I. File No.:  434-003376

</div>

Dear Mr. McGlone:

As you know, we have been asked by AIG Domestic Claims, Inc. ("AIGDC"), on behalf of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), to assist it in the above-referenced matter. In that regard, we have received a copy of your November 29, 2005 e-mail to Larry Fine of AIGDC providing information on the June 11, 2002 Ullico Inc. Pension Plan and Trust subpoena and information on the Separate Account J investigation. Please allow this letter to serve as a response to your November 29, 2005 e-mail. Please also allow this letter to supplement National Union's coverage letters for the DOL investigation matter dated January 15, 2003, August 6, 2003 and January 16, 2004, respectively (the "DOL

#224425v1

Mr. Patrick McGlone
December 7, 2005
Page 2

Coverage Letters"). The DOL Coverage Letters are incorporated herein by reference and made a part hereof.

As you know, National Union issued Employee Benefit Plan Fiduciary Liability Insurance under Policy No. 874-44-03 ("Policy") to Ullico. The Policy has a policy period of October 30, 2001 to October 30, 2002. The limit of liability is $5,000,000 in the aggregate for all loss combined (including defense costs) and there is a $15,000 retention for each covered Claim under the Policy.

Please be advised that the subpoena dated June 11, 2002 issued by the DOL to the Ullico, Inc. Pension Plan and Trust was already reported under the Policy. National Union accepted the June 11 Subpoena for coverage under the Policy pursuant to its reservation of rights letter dated January 15, 2003 (the "January 15, 2003 letter"). The January 15, 2003 letter also reserved National Union's rights under several provisions of the Policy, including the Panel Counsel provisions of Section 9 of the Policy.

Please be further advised that the Separate Account J matter that you discuss in your November 29th e-mail may be related to the DOL investigation matter that has already been reported under the Policy. At this time, the Separate Account J matter will be handled as part of the DOL investigation matter, without waiver of any of National Union's rights concerning whether the Separate Account J subpoena is in fact related to the DOL investigation, is an unrelated claim that was not timely reported by Ullico under the Policy or to otherwise deny coverage in whole or in part for Separate Account J. It is our understanding that the Separate Account J subpoena was first issued to Ullico in June of 2002 but National Union has no record of ever having received notice of the Separate Account J matter under the Policy, if it is different from the subpoena issued to the Ullico Pension Plan & Trust subpoena. Therefore, please provide more detailed and additional information (including a copy of the germane documents generated to date in regard to that investigation) about the Separate Account J matter so that National Union and AIGDC may more fully understand the nature of the Separate Account J matter.

AIGDC, on behalf of National Union, reserves all of National Union's rights, privileges and defenses under the Policy, at law and in equity. To the extent that discovery, new information or other developments may later indicate that other terms, conditions, provisions, exclusions or endorsements of the Policy are applicable in addition to those mentioned above, National Union reserves the right to supplement this letter or its coverage defenses if circumstances so warrant.

#224425v1

Mr. Patrick McGlone
December 7, 2005
Page 3

If you have any questions or comments concerning the above, please do not hesitate to contact us immediately.

Very truly yours,

Samuel F. Paniccia

cc: Timothy W. Burns, Esq.

#224425v1

# EXHIBIT B

LAW OFFICES

# NEAL, GERBER & EISENBERG LLP

TWO NORTH LA SALLE STREET
CHICAGO, ILLINOIS 60602-3801
(312) 269-8000
www.ngelaw.com

TIMOTHY W. BURNS                                                    FAX: (312) 269-1747
(312) 269-8470                                                     TBURNS@NGELAW.COM

August 3, 2005

Via Facsimile

Samuel F. Paniccia
D'Amato & Lynch
70 Pine Street
New York, NY 10270-0110

**Re:**    **Confidentiality Agreement and Ethical Screen Concerning Ullico's Coverage Claims for *Carabillo v. Ullico, Inc.*, No. 1:03CV01556 (Dist. Ct. D.C.); *Carabillo v. Ullico Pension Plan & Trust, et al.*, No. 1:04CV00776 (Dist. Ct. D.C.); *Luce v. The Union Labor Life Auxilary Retirement Benefits Plan, et al.*, No. 1:04CV00118 (Dist. Ct. D.C.); *UllicoInc. v. Luce*, No. 1:04CV01830 (Dist. Ct. D.C.); and *Luce v. Ullico Inc. Pension Plan & Trust, et al.*, No. 05-cv-851 (E.D. Va.).**

Dear Sam:

I am following up on our late June meeting and writing in response to an e-mail from your colleague, David Ades, conveying the request of your client to conduct a document review of defense counsel files in the above-referenced litigation ("the Underlying Litigation"), along with documents produced by my client in connection with a Department of Labor investigation and my client's board minutes from 1985 to present.

As you know, both Ullico and Ullico's adversaries in the Underlying Litigation, including Messrs. Carabillo, Luce, Georgine, and Grelle (collectively, "Ullico's Adversaries"), have asserted claims for coverage under policies issued by your clients, National Union Fire Insurance Company of Pittsburgh PA and American International Specialty Lines Insurance Company (collectively, "AIG"), including National Union Employee Benefit Plan and Fiduciary Liability Insurance Policy Nos. 874-44-03 and 495-38-35, National Union Directors, Officers, and Private Company Liability Insurance Policy No. 495-36-84, and American International Specialty Lines Insurance Company Policy No. 279-91-19 (collectively, "the AIG Polices"). In light of AIG's request for sensitive and strategic litigation-related material from Ullico and the fact that AIG potentially owes duties to both Ullico and Ullico's Adversaries under the AIG Policies, Ullico must request that AIG agree to certain confidentiality requirements and ethical screens with regard to its further handling of these claims.

NEAL, GERBER & EISENBERG LLP

Samuel F. Paniccia
August 3, 2005
Page 2

One needs to look no further than AIG's own arguments in *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693 (S.D.N.Y. Dec. 5, 2002), to see the wisdom of erecting an ethical screen. There, AIG argued that Tudor Insurance Company had acted in bad faith by commingling the defense of *potentially* adverse policyholders. According to AIG, "Tudor failed to take appropriate steps to mitigate this conflict, in that it failed to build an internal 'wall' to isolate the defense of [one Tudor policyholder] from the defense of [Tudor's potentially adverse policyholder]." Case law, while admittedly scant, provides some support for AIG's suggested prophylactic. *See, e.g., DiDonato v. Prudential Property and Casualty Ins. Co.*, 1991 WL 338310 (Pa. Com. Pl. June 10, 1991)(vacating arbitration because one Prudential adjuster handled the defense of a third-party claim against its policyholder while adjusting the policyholder's own uninsured motorist claim); *O'Morrow v. Borad*, 27 Cal.2d 794 (1946)(holding it violated public policy for an insurer to defend one policyholder against a second policyholder's claims while defending the second policyholder against the first policyholder's counterclaims).

In light of these concerns, Ullico proposes the following:

1.    AIG will hire and employ separate internal claims handling teams to handle the claim for Ullico's Adversaries (Carabillo AIG Team) and for Ullico (Ullico AIG Team). The current members of each team (as well as any future changes to the team members) shall be fully disclosed to Ullico, Ullico's Adversaries, AIG, and AIG's coverage counsel (described below).

2.    Only the Carabillo AIG Team shall have access to "Carabillo Confidential Information," which shall include all data, reports, interpretations, forecasts, agreements and records and all other information, whether written, oral or otherwise, containing or otherwise reflecting information concerning the Underlying Litigation which is disclosed by Ullico's Adversaries to AIG or that the Carabillo AIG Team learns during the course of representing Ullico's Adversaries or adjusting their claims for insurance coverage, except material filed with a court or otherwise publicly available or material disclosed by Ullico's Adversaries to Ullico, or Ullico to Ullico's Adversaries, in response to discovery obligations in the Underlying Litigation.

3.    Only the Ullico AIG Team shall have access to "Ullico Confidential Information," which shall include all data, reports, interpretations, forecasts, agreements and records and all other information, whether written, oral or otherwise, containing or otherwise reflecting information concerning the Underlying Litigation which is disclosed by Ullico to AIG or that the Ullico AIG Team learns during the course of representing Ullico or adjusting Ullico's claim for insurance coverage, except material filed with a court or otherwise publicly available or material disclosed by Ullico to Ullico's adversaries, or Ullico's Adversaries to Ullico, in response to discovery obligations in the Underlying Litigation.

4.    The Carabillo AIG Team shall not disclose Carabillo Confidential Information to anyone other than Ullico's Adversaries and members of the Carabillo AIG Team without the written consent of Ullico's Adversaries.

NEAL, GERBER & EISENBERG LLP

Samuel F. Paniccia
August 3, 2005
Page 3

5.    The Ullico AIG Team shall not disclose Ullico Confidential Information to anyone other than Ullico and members of the Ullico AIG Team without the written consent of Ullico.

6.    AIG will put in place ethical screens between the Carabillo AIG Team and the Ullico AIG Team that will alert all members of both teams as to the following: (1) the existence of a screen between the two teams; (2) the identity of the current members of each team (with new alerts to be sent as team members change); and (3) that the rules for the screen require each team to abide by paragraphs 1 and 14 herein.

7.    No one in the Carabillo AIG Team shall be present while the Ullico AIG Team is discussing the Underlying Litigation and *vice versa*.

8.    No one on the Carabillo AIG Team shall communicate in any manner any matter related to the Underlying Litigation with anyone on the Ullico AIG Team and *vice versa*.

9.    The Carabillo AIG Team shall not be given access to the Ullico AIG Team files and *vice versa*.

10.    No one on the Carabillo AIG Team shall have any contact with Ullico and no one on the Ullico AIG Team shall have any contact with Ullico's Adversaries, unless specifically agreed upon in advance by all of the relevant parties.

11.    AIG will hire separate coverage counsel to represent its interest with respect to the Carabillo claim and the Ullico claim. D'Amato & Lynch can represent AIG's interests with respect to either Ullico or Ullico's Adversaries, but not both. Coverage counsel is expected to abide by the same ethical screens as explained above.

12.    AIG's separate coverage counsel for these claims will not directly communicate with one another regarding these claims, unless specifically agreed upon in advance by Ullico.

13.    All persons on both AIG teams and coverage counsel who become involved in the Underlying Litigation are required to acknowledge in writing that they have read and understood these procedures and agree to abide by them.

14.    By placing your signature on the line below, you indicate AIG's acceptance of the foregoing agreement and warrant that you are authorized to sign on behalf of AIG.

NEAL, GERBER & EISENBERG LLP

Samuel F. Paniccia
August 3, 2005
Page 4

Please contact me if you have any questions.

Sincerely,

Timothy W. Burns

/TWB

cc:    Patrick McGlone, Esq. (via facsimile)
       Anthony J. Trenga, Esq. (via facsimile)
       Brian A. Hill, Esq. (via facsimile)


AGREED AND ACCEPTED


By:_____


On behalf of _____


Title:_____


NGEDOCS: 1174981.2

*Ullico - Carabillo*

# D'AMATO & LYNCH

### LAWYERS

70 PINE STREET

NEW YORK, N.Y. 10270-0110

TELEPHONE 212/269-0927

CABLE ADDRESS

DAMCOSH

TELEX 960085 DCOS UI NYK

TELECOPIER 269-3559

LONDON OFFICE

LLOYD'S

ONE LIME STREET

LONDON EC3M 7HA, ENGLAND

TELEPHONE 0207 816 5977

TELECOPIER 0207 816 7257

GEORGE G. D'AMATO
LUKE D. LYNCH (1999)
KENNETH A. SAGAT
LUKE D. LYNCH, JR.
ROBERT E. KUSHNER
RICHARD F. RUSSELL
RONALD M. ALENSTEIN
HARRY J. ARNOLD, JR.
PHILIP J. BERGAN
ROBERT W. LANG
NEAL M. GLAZER
ANDREW R. SIMMONDS
JOHN P. HIGGINS
THOMAS F. BREEN
ALFRED A. D'AGOSTINO, JR.
WILLIAM P. LARSEN, III
ROBERT D. LANG
DAVID A. BOYAR
MARY JO BARRY
BARBARA R. SEYMOUR
HARVEY BARRISON

WILLIAM C. BURTON
CHARLES BRAMHAM
BILL V. KAKOULLIS
THOMAS W. HANLON
JOHN H. FITZSIMONS
MICHAEL L. MANIRE
KEVIN J. WINDELS
SAMUEL F. PANICCIA
ROBERT S. FRASER
STEPHEN F. WILLIG
DEBORAH M. COLLINS
NEIL R. MORRISON
PETER A. STROILI
FRANCES BUCKLEY
DAVID J. KUFFLER

LLOYD J. HERMAN
KEVIN P. CARROLL
LAURIE P. BEATUS
LIZA A. CHAFIIAN

RICHARD S. TROSTLE
JAN H. DUFFALO
JAMES E. TOLAN, II
CATHERINE L. CASAVANT
ROY CAPLINGER
ANNEMARIE J. MAZZONE
EDWARD M. ROTH
CHRISTINE TIERNEY
MARIA T. EHRLICH
THOMAS G. DARMODY
RICHARD F. FERRIGNO
HUMPHREY O. UDDOH
DEEANNA M. GALLA
JUDY Y. CHUNG
JOHN J. MAALOUF
R. DAVID ADES
ARTHUR STEINBERG
JONATHAN L. KRANZ
INGRID A. SMITH

ARTURO M. BOUTIN
THOMAS ZACHARIA
WENDY L. KALNICK
WILLIAM A. CURRAN, III
TAE S. UM
JOHN C. MUCCIFORI
ANNA E. BOMSTEIN
MOLLY Z. BROWN
MAXINE K. NAKAMURA
JAMES L. FUCHS
GERARDO LAPETINA
LAURA S. WEINER
DAVID BERGENFELD
EDWARD R. WILSON
JONATHAN ARKINS
JASON B. GRANT
JARED S. KAPLAN
GAVIN J. CURLEY
BRIAN M. MARGOLIES
BRYAN HA
ASSAF RONEN
ALEXANDER M. RAZI

COUNSEL

ROBERT M. MAKLA
ALBERT B. LEWIS
CHARLES H. WITHERWAX

VICTOR F. MUSTELIER
ROBERT GILROY
RICHARD G. McGAHREN
PETER J. THUMSER

August 23, 2005

**Via Facsimile  312-269-1747 and U.S. Mail**

Timothy W. Burns, Esq.
Neal, Gerber & Eisenberg, LLP
Two North LaSalle Street
Chicago, IL 60602-3801

> Re:   Employee Benefit Plan Fiduciary Liability Insurance
> Policy No.   : 874-44-03 (the "Policy")
> Insured:     Ullico Inc. and its Subsidiaries ("Ullico")
> Matter :     Carabillo
> A.I. File No.:  434-003376
> Our File No.:  101-69615

Dear Mr. Burns:

As you know, we have been retained by AIG Domestic Claims, Inc. ("AIGDC"), on behalf of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), in connection with the above-referenced matter.  In that regard, I have received your August 3, 2005 letter and this letter will serve as a reply thereto.

As an initial matter, the case of <u>Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.</u> that you cite to in your August 3rd letter is inapplicable to the instant situation because the <u>Bovis Lend Lease</u> case involved a discovery dispute in which AIG was asserting that it was entitled to confidential information.  In the instant case, however, National Union is not requesting from Ullico information which is subject to the attorney-client privilege.  To the

#215233v1

Mr. Patrick McGlone
August 23, 2005
Page 2

contrary, National Union requests only that it be provided with information that is otherwise publicly available and/or information that, in Ullico's estimation, is necessary for National Union to have in analyzing the claims asserted against Ullico.

Please note that notwithstanding National Union's request from Ullico of non-privileged information, National Union hereby gives assurances to Ullico that any confidential information provided by Ullico to National Union will remain confidential. Also, while National Union appreciates Ullico's confidentiality proposal (as outlined in your August 3 letter), National Union does not believe that Ullico possesses information that will not otherwise ultimately be publicly available concerning the legal proceedings or that will be meaningful in the parties' efforts to reach a resolution of the claims, at this juncture.

You should also note that AIGDC is in the process of identifying a potential mediator in order to conduct a mediation on behalf of all of the parties to the Carabillo, et al. lawsuits for sometime in late August or early September, 2005. Please advise if Ullico would be amenable to participating in a global mediation in an attempt to resolve the litigation. Counsel for the plaintiffs have indicated that they are available to attend a mediation.

AIGDC, on behalf of National Union, continues to reserve all of National Union's rights, privileges and defenses under the Policy, at law and in equity.

If you have any questions or comments concerning the above, please do not hesitate to contact us immediately.

Very truly yours,

Samuel F. Paniccia

cc:    Mr. Patrick McGlone
       Associate General Counsel
       Ullico, Inc.
       1625 Eye Street, N.W.
       Washington, DC 20006

#215233v1