IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ULLICO INC., | : |
|         Plaintiff, | : |
| v. | : |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., *et al.* | : |
| | : Civil Action No. 1:06cv00080 (RLJ) |
|         Defendant, | : |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., *et al.* ULLICO, Inc., *et al.,* | : |
|         Counter-Plaintiff | : |
| v. | : |
| ULLICO INC. | : |
|         Counter- Defendant. | : |

**DEFENDANT JOHN K. GRELLE'S OPPOSITION
TO ULLICO INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. of Civ. P. 56 and Local Rule 56.1, Defendant John K. Grelle, by his attorneys Offit Kurman, P.A., hereby file this Memorandum in Opposition to Ullico Inc.'s Motion for Partial Summary Judgment, and in support hereof, [1] state:

**I.    FACTS NOT IN DISPUTE**

During 2002 and 2003, Ullico Insurance Company ("Ullico") and Ullico's pension plans faced a Department of Labor ("DOL") investigation. In furtherance of its

---

[1] Mr. Grelle reserves his rights to contest Ullico's position on all issues of this litigation, and to incorporate the arguments of co-defendants as they become known.

1

investigation, the DOL issued several administrative subpoenas demanding that Ullico produce a wide variety of documents pertaining to Ullico's pension plans and certain financial practices.

During 2002 and part of 2003, Defendant John K. Grelle ("Grelle") was Ullico's Chief Financial Officer, Joseph A. Carabillo ("Carabillo") was its Chief Legal Officer, and James W. Luce ("Luce") was its Executive Vice President.

Since June 2003, Carabillo, Luce and Grelle's employment relationships with Ullico ended and litigation has ensued.  Mr. Carabillo has instituted two suits against Ullico and Ullico sponsored-benefits plans.  Mr. Luce has instituted three such suits, two of which are pending before this Court.  The actions are identified as:

- *Carabillo v. Ullico Inc.* No. 1:03cv01556 (D.D.C.) ("Carabillo I")(partially dismissed and refiled in the Superior Court for the District of Columbia);

- *Carabillo v. Ullico Inc. Pension Plan & Trust, et al.*, No. 1:04cv00776 (D.D.C.)("Carabillo II");

- *Luce v. The Union Labor Life Auxillary Retirement Benefits Plan, et al.,* No. 1:03cv1014 (E.D. Va.) ("Luce I");

- *Luce v. Ullico Inc., Pension Plan & Trust, et al.*, No. 1:05cv851 (E.D. Va.) ("Luce III");

Ullico has filed counterclaims in both Carabillo cases (one pending in this court, the other in D.C. Superior Court), and has filed two direct actions *Ullico Inc. v. James Luce,* No. 1:04cv01830 (D.D.C.) and *Ullico Inc. v. National Union Fire Insurance Company of Pittsburgh, Pa.*, *et al.,* No. 1:06cv00080 (D.D.C.).  The above-described Luce and Carabillo claims and Ullico's claims/counterclaims will be collectively referred to in this brief as the "Underlying Litigation."

2

**THE INSURANCE POLICIES**

During 2002 and 2003, Ullico and its subsidiaries held an annually renewable Fiduciary Insurance policy issued by National Union Fire Insurance Company of Pittsburgh, Pa. Ullico's "[]First Amended Complaint for Damages, Declaratory Judgment and Injunctive Relief (the "Amended Complaint") in the case *sub judice* claims a right to coverage for Ullico under the National Union Policies. Ullico's "[]Motion for Partial Summary Judgment" (hereinafter referred to as Ullico's "Motion") and Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment" (hereinafter referred to as Ullico's "Memorandum") focus on only two of those policies, specifically:

> (1) Employee Benefit Plan Fiduciary Liability Insurance Policy (Policy Number 874-44-03 (renewal of 473-68-49) Policy Period October 30, 2001 to October 30, 2002 (hereinafter, the "2001-2002 Fiduciary Policy"); and,
>
> (2) Employee Benefit Plan Fiduciary Liability Insurance Policy (Policy Number 495-38-35 (renewal of 4874-44-03) Policy Period October 30, 2002 to October 30, 2003 (hereinafter, the "2002-2003 Fiduciary Policy").

Ex. A (2001-2002 Fiduciary Policy) and Ex. B (2002-2003 Fiduciary Policy); *see* Ullico's Memorandum at pp. 1-2, 8-13.

Ullico's Memorandum asserts that except for one payment of $273,382.26, National Union has wrongly denied Ullico's claim for Ullico's alleged defense costs for the DOL Investigation and the Underlying Litigation under the two Fiduciary Policies. *See* Memorandum (McGlone Affidavit ¶5). Ullico's Memorandum indicates that Ullico believes that it is entitled to coverage under the 2002-2003 Fiduciary Policy, and alternatively, that it is due coverage under the 2001-2002 Fiduciary Policy.

3

Although the terms vary slightly, under both of the subject Fiduciary Policies' "Insurance Agreement" Clauses, the insurer agrees to "pay the Loss of each and every insured arising from a claim against an Insured… for any actual or alleged Wrongful Act by any such insured (or by any employee for whom the insured is legally responsible)…" for claims first made against the insured during the policy period or discovery period. Ex. B (§ 1);  Ex. A (§1).

Clause 2 of the 2002-2003 Fiduciary Policy, titled "Defense Agreement" has three subparts, the last of which states in pertinent part:

> (c) General Provisions…
>
> The Insurer shall advance Defense Costs prior to the final disposition of a Claim, subject to the other provisions of this policy.  Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to the payment of such Loss.

Ex. B (§ 2 (c)) Clause 2 of the 2001-2002 Fiduciary Policy has a substantially identical provision.  Ex. A (§2(c)).

Clause 6 of the 2002-2003 Fiduciary Policy, titled "Limit of Liability (For All Loss Including Defense Costs)," states:

> ***The Limit of Liability stated in Item 3(a) of the Declarations is the limit of the Insurer' liability for all Loss, including Defense Costs,*** under this policy arising out of all Claims first made against the Insured during the Policy Period or the Discovery Period (if applicable). The limit of Liability stated in item 3(b) of the Declarations, if any, shall be an additional Limit of Liability for that part of Loss constituting Defense Costs incurred connection with all Claims first Made against the Insured during the Policy Period or the Discovery period (if applicable).  The Limit of Liability for Defense Costs stated in item 3(b) shall be in addition to and not part of the Limit of Liability stated in item 3 (a) of the Declarations.  Loss constituting Defense Costs shall first reduce the additional Limit of Liability stated in Item  3(b).  ***Should the Limit of Liability stated in item 3(b) of the Declarations become exhausted, or***

4

> *should the Limit of Liability stated in item 3(b) of the Declarations become exhausted, or should the Limit of Liability stated in item 3(b) of the Declarations be stated as "none" then subsequent defense costs will reduce the Limit of Liability stated in Item 3 (a).*
>
> *   *   *   *
>
> Defense Costs, whether incurred under Clause 2(a) (b) or (c) of this policy are not payable by the insurer in addition to the Limit of Liability; except that the separate limit, if any listed in Item 3(b) of the Declarations shall be in addition to the aggregate limit of liability stated in item 3(a) of the Declarations. *Defense Costs are part of the Loss and as such are subject to the Limit of Liability for Loss.*

Ex. B (§6) (emphasis added).

Item 3(a) of the Declarations of the 2002-2003 Policy establishes a policy aggregate limit for all loss of $5 million and there is no additional limit of liability established by Item 3(b). Ex. A (Declarations). This coverage is consistent with the limit of the 2001-2002 Fiduciary Policy. Ex B (Declarations).

Mr. Grelle has sought coverage under the applicable policies for the DOL Investigation and Underlying Litigation and is entitled to ongoing coverage under those policies.

**ULLICO'S CLAIM**

Ullico's Amended Complaint in this case names National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), American Insurance Specialty Lines Insurance Co. ("AISLIC"), Grelle, Carabillo, and Luce as defendants (together, Grelle, Luce, and Carabillo are referred to as the "Individual Defendants"), and sets forth four counts. Count I seeks a Declaration that First Union and AISLIC breached the Fiduciary and D&O policies. Count II seeks a preliminary and permanent injunction against National Union, Luce, Grelle and Carabillo to prevent National Union from paying any further defense costs of the Individual Defendants. Count III seeks specific performance

against National Union and AISLIC to compel them to account for payments made to date under all of the insurance policies. Count IV seeks "a judgment in Ullico's favor against [the Defendants]…declaring the rights and duties of the parties with respect to the Insurance Policies."

Ullico's Motion is now before the court and it includes three affidavits and a number of attachments thereto. The first Affidavit is that of Patrick McGlone, Associate General Counsel for Ullico. Interestingly, paragraph 5 of Mr. McGlone's Affidavit alleges:

> Ullico has incurred substantial fees in the defense of the DOL Investigation and Underlying Litigation. The total for the legal bills for the defense of the DOL Investigations and Underlying Litigation is currently over $7 million. National Union, to date, has reimbursed Ullico for only $273,382.26 of the defense costs.

See Ex. A (McGlone Affidavit) to Ullico's Motion.

## II. **SUMMARY JUDGMENT STANDARDS**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In the first instance, the moving party must provide sufficient factual support that it is entitled to judgment as a matter of law by "identifying… portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.*; *Student Loan*

*Marketing Ass'n v. Riley,* 907 F.Supp. 464, 468 (D.D.C. 1995). In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).

### III. SUMMARY JUDGMENT SHOULD BE DENIED

#### A. Ullico Failed to Make a *Prima Facia* Showing That It is Entitled to Summary Judgment

##### 1. Mr. Grelle has Standing to Oppose Ullico's Motion

Ullico may attempt to challenge the individual Defendants' "standing" to oppose Ullico's Motion for partial summary judgment.[2] Any such objection would be untenable because the relief that Ullico's Motion seeks would affect and prejudice the individual

---

[2] Ullico's Amended Complaint makes contradictory statements about the need to share in coverage. On the one hand, Ullico claims that National Union should not "frustrate the purposes" of the Fiduciary Policies by allowing one insured's request for coverage and denying request of another insured, and on the other hand asks the Court to enjoin coverage to the individual defendants:

**COUNT II**
**PRELIMINARY AND PERMANENT INJUNCTION**

71.   *It would substantially frustrate a principal purpose and basic assumption of the [sic] both of the Fiduciary Policies and the benefit for which Ullico contract to allow National Union to Pay one request for payment of defense costs in preference to another if both were covered under either of the Fiduciary Policies.*

*   *   *   *

WHEREFORE, Ullico demands judgment in its favor against National Union from paying Individual Defendants:

   (a)   *Preliminarily and permanently enjoining National Union from paying Individual Defendants under the 2001 Fiduciary Policy and under the 2002 Fiduciary Policy.*

Amended Complaint at Count II, ¶71 and "Wherefore" clause.

7

defendants, and because the Motion does not indicate that it is addressed towards any particular Defendant.

If granted, the pending motion will affect Mr. Grelle and the other individual defendants' rights under the applicable policy because the coverage limits are $5 million including defense costs. Ullico's astounding request for "over $7 million" in attorney's fees means that the motion may jeopardize the individual defendants' ability to obtaining payment of any outstanding or future defense costs—in fact, this is the stated objective of Count II of Ullico's Amended Complaint. *See* Amended Complaint at Count II. Therefore, while Ullico's pending Motion has not specifically asked the Court for an order to enjoin the Defendants from receipt of further defense coverage costs at this time, the pending motion raises the issue *de facto*, and thus provides Mr. Grelle and the Individual Defendant cause to oppose Ullico's Motion.

> 2. The Court Should Deny Ullico's Motion Because it Fails to Competently Distinguish "Defense Costs" and Costs Associated With Prosecuting its Counterclaim in the Underlying Litigation

"Defense costs" are monies expended to develop and put forth a theory that a defendant is not liable or is only partially liable for plaintiff's injuries. *Gelman Sciences, Inc. v. Fireman's Fund Ins.*, 455 N.W.2d 328, 330 (Mich.App. 1990). The general rule is that an insurer who is obligated only to defend claims brought 'against' the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured. *Duke Univ. v. St. Paul Mercury Ins. Co.,* 384 S.E.2d 36, 46 (N.C.App. 1989) (citing J. Appleman, *Insurance Law and Practice* § 4681, at n. 7 (1979)); *accord Morgan, Lewis & Bockius LLP v. Hanover Ins. Co.*, 929 F.Supp. 764, 773 (D.N.J. 1996) (precluding defense costs coverage for counterclaim).

In those cases where costs and expenses, including attorney fees are incurred by an insured under a policy, the costs should be apportioned between those counts of suit against the insured for which there is insurance coverage, and those counts for which there is none. *Continental Cas. Co. v. Board of Educ.,* 489 A.2d 536, 543, 302 Md. 516, 531 (1985); *see also Potomac Elec. Power Co., v. California Union Ins. Co.,* 777 F. Supp 980, 984-85, n.8 (D.D.C. 1992) (adopting reasoning of *Continental Cas.,* requiring apportionment between covered and non-covered claims, and adding "this is not a matter that can be resolved at the summary judgment stage…"). The insured holds the burden of establishing that a given item of legal service or expense was reasonably related to liability so as to render the insurer liable for those expenses incurred as defense costs of the underlying complaint. *Continental Cas.,* 489 A.2d at 546.

The apportionment of costs is a uniquely factual issue. In *Continental Casualty Company v. Board of Education of Charles County,* 489 A.2d 536, 545-46 (1985), Maryland's Court of Appeals held that where an insured seeks coverage for legal fees which may include both defense costs covered under a policy, and legal fees for matters that are not covered under the policy, covered defense costs should be apportioned from non-covered legal fees. The insured in *Continental Casualty* faced a suit that alleged both "wrongful acts" covered by the applicable Directors and Officers policy, and breaches of contract, which were not covered. *Continental Casualty,* 489 A.2d at 543. The court held that the coverage was not measured by the reasonable cost of defending the entire suit, and instead was measured by the costs of defending the claim for which coverage existed. *Id.* Emphasizing the factually detailed analysis that is required to

9

ascertain whether defense work bears a reasonable relationship to a covered claim, the court stated:

> It is not necessary for us on these certified questions, or for the federal court in the Declaratory Judgment Action, to determine whether the above principles would have been a legally valid defense to count VI of the Iorio complaint. If the proof in the Declaratory Judgment Action shows that counsel for the Board did in fact conceive of that legal theory as a defense to count VI while the Iorio suit was pending, ***and if the trier of fact in the Declaratory Judgment Action concludes that it was reasonable for counsel to pursue that theory of defense, then there may be a basis for a factual finding that legal research on Iorio's breach of contract theories is reasonably related to count VI.*** Otherwise, we are not able to speculate on a state of facts which would demonstrate a reasonable relationship between legal research, if any, directed to the liability aspects of the breach of contract legal theories and counts VI or VII.

*Continental Cas.,* 489 A.2d at 545-46, 302 Md. at 535 (emphasis added). The Court of Appeals added that if the insured fails to prove that attorney time was covered under the applicable policy, the insured would be entitled only to nominal damages. *Id.,* 489 A.2d at 546, 302 Md. at 537; *see also Potomac Elec. Power Co.,* 777 F. Supp at 984-85 ("this is not a matter that can be resolved at the summary judgment stage…").

As will be addressed *infra,* without any admissible basis, Ullico's Motion fails to properly allocate its allegedly "covered defense costs," if any, from those costs that would not be covered. Therefore, the record in this matter is not suitable for determining the issues at hand and summary judgment must be denied. *See generally Kennedy v. Silas Mason Co.*, 334 U.S. 249, 257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, 1351 (1948) (vacating summary judgment for inadequate record because, "[w]hile we might be able, on the present [inadequate] record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide"); *accord*

*U.S. v. Blackwell*, 224 U.S.App.D.C. 350, 369, 694 F.2d 1325, 1344 (n. 8) (D.C.Cir. 1982).

> 3. The Portions of the McGlone Affidavit Pertaining to Alleged Defense Costs Should Be Disregarded as Incompetent

An affidavit, or portions thereof, may also be stricken for failing to satisfy the requirements of Federal Rule of Civil Procedure 56(e), which states: "Supporting and opposing affidavits shall be made on *personal knowledge,* shall set forth such facts as would be *admissible in evidence,* and shall show affirmatively that the affiant is *competent to testify* to the matters stated therein." Fed. R. Civ. P. 56 (e) (emphasis added).

This court has previously stated:

> A court may strike affidavit statements (1) for which the affiant lacks personal knowledge; (2) that set forth facts inadmissible at of trial; or (3) to which the affiant is not competent to testify. *Id.* The 'requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented,' and [a]n affidavit based merely on information and belief is unacceptable. Thus, statements that are impermissible hearsay, conclusory or self-serving are generally precluded.

*Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 224 F.R.D. 261, 263-64 (D.D.C. 2004) (Lamberth, J.) (citations omitted).

Similarly, the United States Court of Appeals for the 7th Circuit has held:

> Testimony about matters outside [a witness's] personal knowledge is not admissible, and if not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary judgment. Fed.R.Civ.P. 56(e). In fact Rule 56(e) incorporates evidence Rule 602 in words as well as by reference, by stating that "supporting and opposing affidavits shall be made on personal knowledge." It is true that "personal knowledge" includes inferences-all knowledge is inferential-and therefore opinions. But the inferences and opinions ***must be grounded in observation or other first-hand personal experience***. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.

*Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 659 (7th Cir. 1991) (emphasis added).

A party may circumvent the personal knowledge requirement when moving for or opposing summary judgment through certain hearsay exceptions. For example, under appropriate circumstances, one may have a bill admitted as a "memorandum, report, record, or data compilation…" through the testimony of a "custodian or other competent witness" under the business records exception of Fed. R. Evid. 803 (6). Fed. R. Evid. 803 (6).

With respect to the pending Motion, Ullico's claim that it has incurred covered defense costs that have not been paid by National Union is based on a self-serving passage in an Affidavit provided by one of its one employees, Patrick McGlone, Esq. which states:

> Ullico has incurred substantial fees in the defense of the DOL Investigation and Underlying Litigation. The total for the legal bills for the defense of the DOL Investigations and Underlying Litigation is currently over $7 million. National Union, to date, has reimbursed Ullico for only $273,382.26 of the defense costs.

*See* Ex. A (McGlone Affidavit, ¶5) to Ullico's Motion for Summary Judgment (emphasis added). Presumably, Ullico will rely on this passage from Mr. McGlone's Affidavit to assert that the amounts specified in the McGlone Affidavit are defense costs.

Since the Affidavit does not indicate how Mr. McGlone concluded that $7 million in attorney's fees that Ullico allegedly incurred were "defense costs," a fair inference is that he reviewed the bills in question. *See* McGlone Affidavit at ¶¶1-2. However, the bills are hearsay. Mr. McGlone does not claim to have personal knowledge of the actual work that he now characterizes as covered "defense costs." Mr. McGlone's Affidavit

states that he is in-house counsel at Ullico, not that he was ever affiliated with the private law firms that issued the bills in question, or that he rendered some of the legal services in question. *See* McGlone Affidavit at ¶¶1-2. Thus, without personal knowledge, Mr. McGlone is not competent to characterize the $7 million in billed entries as defense work, as opposed to work related to Ullico's affirmative claims. The appropriate witnesses for this issue are the billing attorneys, not Mr. McGlone. As such, Mr. McGlone's Affidavit is inherently speculative, self-serving and inadmissible and should not be considered by the Court.

If the Court disregards the McGlone Affidavit, as it should, Ullico may attempt to invoke the business records exception of Fed. R. Evid. 803(6) to prove that it has unpaid defense costs. *See* Fed. R. Evid. 803 (6) (creating hearsay exception for "[a] memorandum, report, record or data compilation…as shown by the testimony of the custodian or other competent witness…"). However, Rule 803 is an exception for documents. *Id.* Because, Ullico's Motion failed to include any of the legal bills which it claims should be covered, Fed. R. Evid. 803(6) is not applicable, and the bills are not before the Court at this time. However, even if the bills in question had been submitted, a determination as to whether they represent covered defense costs can only be made by the fact finder, and not by the conclusory characterizations of Mr. McGlone.

For Ullico, the ramification of its failure to attach the bills in question is that the Court and the Defendants cannot obtain any insight as to how much, *if any* of the "over $7 million" in remaining legal bills are truly attributable to the defense costs, rather than counterclaims or other legal work.[3] While this omission may help Ullico to shelter the

---

[3] Furthermore, the statement that "the *total for the legal bills* for the defense of the DOL Investigations and Underlying Litigation" is subject to dual construction, and can be interpreted as the total of (1) defense

13

work stated in the bills from an objective determination that the fees sought actually are not attributable to defense work, Ullico's decision to withhold the bills leaves a total void in Ullico's claim that it incurred defense costs for which coverage is due.

Ullico has not met its burden to establish that it actually incurred the type of loss for which coverage would exist. *Potomac Elec. Power Co.,* 777 F. Supp at 984-85, n.8; *Board of Educ.,* 489 A.2d at 545-46, 302 Md. at 537. Because the McGlone Affidavit is not competent proof of Ullico's alleged defense costs, and because Ullico proffered no legal bills or other admissible evidence to establish that it actually incurred *any* covered defense costs, a fundamental question of liability cannot be resolved at this time. Finally, even if the flaws in Ullico's presentation could be overlooked, the relief that the Motion seeks should not be granted because, as the courts in the *Potomac Electric* and *Continental Casualty* cases *supra,* indicate, the analysis and determination of whether Ullico's attorney's fees incurred qualify for coverage as defense costs is for the fact finder to determine, rather than a partisan witness.

### B.    The Court Should Not Enter "Partial Summary Judgment" for Ullico Because Doing So Would Inappropriately Split this Claim and Cause Piecemeal Adjudication

The Amended Complaint contains four counts which revolve around Ullico's claim for payment of attorney's fees. Summarily stated, Ullico asks the court to (1) declare that it is entitled to payment for its attorney's fees under the Fiduciary Policies Counts I and IV); (2) order National Union to pay those fees (Count III); (3) and to preclude payments to the individual defendants (Count II). Simplified even further, Ullico's "claim" is that it wants all of the remaining coverage under the Fiduciary

---

costs for the DOL Investigation plus (2) all costs of the Underlying Litigation, as opposed to (1) defense costs for the DOL Investigation plus (2) defense costs of the Underlying Litigation.

14

Policies.  In addition to the unresolved factual issue regarding what coverage, if any, Ullico is entitled to receive under the applicable policy, the Motion should be denied because Ullico's "Motion for Partial Summary Judgment" improperly seeks to dispose of factual issues of its claim in piecemeal fashion, which is not authorized by Fed. R. Civ. P. 54, 56 (a), and 56(d).

Where the factual basis for a portion of a claim is inseparable from the balance of a claim, a court should not enter partial judgment.  In fact, the concept of "partial summary judgment" is a misnomer.  In *In Re Air Crash Disaster Near Warsaw, Poland, v. LOT Policy Airlines,* 979 F. Supp. 164 (S.D.N.Y 1997), the Plaintiffs brought a $3 million suit for negligence against an airline arising out of an airplane crash.  Despite an International Convention that established $75,000.00 in strict liability against the defendant for the crash, the court refused to grant the Plaintiff's motion for "partial summary judgment" for $75,000.00 out of the $3 million in damages that the plaintiffs sought.  *In Re Air Crash Disaster Near Warsaw, Poland,* 979 F. Supp. at 166-67.  The court explained:

> The Federal Rules do not permit entry of a partial judgment.  While Rule 56(a) does allow a party "seeking to recover upon a claim" to move for a summary judgment "upon all or any part thereof[,]" Fed.R.Civ.P. 56(a), a court's partial adjudication of a claim is governed by Rule 56(d) entitled "Case Not Fully Adjudicated on Motion."  *See Biggins v. Oltmer Iron Works,* 154 F.2d 214, 216 (7th Cir.1946) (Rule 56(d) governs when party seeks summary judgment on only part of claim under Rule 56(a)).  That rule provides that if:
>
>> judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court ... shall if practicable ascertain what material facts exist without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy.... Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted

15

accordingly.

> Rule 56(d) authorizes the court to make an order establishing the uncontroverted facts; *it does not permit the court to enter judgment on part of a single claim.* See, e.g., Biggins, 154 F.2d at 217; *In re F & L Plumbing and Heating Co.,* 114 B.R. 370, 375 (E.D.N.Y.1990).
>
> \* \* \* \*
>
> *The principal reason for this construction is the disfavor afforded piecemeal, interlocutory appeals*. Generally, an order must be "final" in order to be appealable.
>
> \* \* \* \*
>
> *Plaintiffs have not construed their demand for $75,000 as a separate claim. Nor could they. The facts underlying plaintiffs' demand for immediate payment are inseparable from their claim that LOT committed willful misconduct* and is in fact liable for damages over and above the $75,000 cap set by the Warsaw Convention. Accordingly, the court has no authority to issue an enforceable judgment on only a portion of plaintiffs' claim.

*In Re Air Crash Disaster Near Warsaw, Poland,* 979 F. Supp. at 166-67 (emphasis added); *see also Biggins v. Oltmer Iron Works,* 154 F.2d 214, 216 (7th Cir. 1946); *Franklin-Mason v. Johnson*, 2006 U.S. Dist. LEXIS 13609 (D.D.C. 2006).

Ullico's First Amended Complaint truly asserts only one claim—Ullico's claim that National Union must pay Ullico's attorneys fees for the DOL and Underlying Litigation under the policies. However, Ullico seeks the same type of piecemeal adjudication of its claim that the court in *In Re Air Crash Disaster* refused to render. As discussed *supra*, none of the questions presented by Ullico's claim can be answered without delving into factual issues that would answer all of the questions presented by this case at once. For example, the sort of item-by-item factual audit of Ullico's legal bills that is necessary to determine what items, if any, are actually covered defense costs

16

under the applicable Fiduciary Policy will simultaneously generate information necessary to what amount of coverage that Ullico is due, if any.[4] For sake of efficiency, this sort of laborious evaluation of Ullico's claim should only occur once, and all issues in this claim—coverage, damages, coverage allocation (discussed *infra* at § III.C.) should be addressed at that time. Clearly, whether coverage exists and the amount of any coverage that may be due are so closely interwoven that it is senseless to segregate them now by a preliminary adjudication.

### C. There is No Contractual or Legal Basis for Request to Bar The Individual Grelle Defense Costs

Under the law of the District of Columbia, a court must give effect to the intent of the parties as evidenced by the insurance policy to which they have agreed. *S. Freedman & Sons, Inc. v. Hartford Ins. Co*., 396 A.2d 195, 198 (D.C. 1978). The parties have a right to embody in the policy "whatever terms they desire and it is not the place of the court to make a contract for them." J. Appleman, *Insurance Law & Practice*, §7381.

The Court must interpret an insurance contract objectively, based on the language of the policy and the expectations that the insured reasonably could have formed on the basis of that language. *See Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034, 1041 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 *reh'g denied,* 456 U.S. 951, 102 S.Ct. 2024, 72 L.Ed.2d 476 (1982). In determining the "objectively reasonable" reading of the policy, the Court must give effect to the policy's dominant purpose. *Owens-Illinois, Inc. v. Aetna Casualty and Surety Co.,* 597, F. Supp 1515, 1519 (D.D.C 1984) (citing 2 *Couch on Insurance* 2d § 15.3, at 116 (1984).

---

[4] This statement does not concede the reasonableness of amounts billed for the legal services. Assuming *arguendo* that the fees qualify for coverage, the reasonableness of the amounts billed is yet another factual issue that will need to be adjudicated, and, for efficiency's sake, should be resolved in conjunction with the coverage determination described herein.

17

The Court faces a conflict between the basic rule that it may not re-write this policy for the contracting parties, and the policies themselves which provide neither a formula for dividing the remain coverage, nor any rules to prioritize coverage payments among the insureds. Assuming *arguendo* that only one policy is applicable to cover the defense costs sought by Ullico, the Fiduciary Policies in this case are claims-made policies subject to an aggregate limit (including defense costs) of $5 million dollars, and the Court will have to allocate the remaining coverage. Ex. A and B at Declarations ¶ 3(a).[5] The Individual Defendants and Ullico have competing claims to this $5 million in coverage, and Ullico's claim could (if proven) exhaust that coverage. Therefore, the Court should also deny Ullico's Motion because allocation is yet another complicated task that is wound up in the issues of whether Ullico is entitled to any further coverage, and, if so, what amount—these issues should all be decided together.

D.  **Request for Delayed Adjudication**

The preceding discussion highlights the many factual issues that Ullico's Motion raises. Consequently, Defendant Grelle seeks to delay the adjudication of Ullico's motion so that the parties can obtain Ullico's legal bills and conduct discovery on the issues of what portion of them, if any, would constitute attorney services covered by the applicable policies as defense costs. *See* Ex. D. (Rule 56 (f) Affidavit).

---

[5] Ullico's Memorandum implies that the 2002-2003 policy is the one applicable to the coverage issues that Ullico's Motion raises, and only argues in the alternative that the 2001-2002 policy is applicable. Memorandum at 14, 19.

**V.     CONCLUSION**

For the foregoing reasons, Defendant John Grelle respectfully requests that this Honorable Court deny Ullico's Motion for Partial Summary Judgment.

Respectfully submitted,

12/5/2006                    /s/
Date                             Timothy C. Lynch, Unified Bar No. 461651
                                 tlynch@offitkurman.com
                                 (301) 575-0336
                                 Offit Kurman, P.A.
                                 8171 Maple Lawn Boulevard, Suite 200
                                 Maple Lawn, Maryland 20759


                                 /s/
                                 Eric J. Pelletier, Unified Bar No. 454794
                                 epelletier@offitkurman.com
                                 (301) 575-0339
                                 Offit Kurman, P.A.
                                 8171 Maple Lawn Boulevard, Suite 200
                                 Maple Lawn, Maryland 20759

                                 *Attorneys for Defendant John Grelle*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2006 a true and correct copy of John K. Grelle's Opposition To Ullico Inc.'s Motion For Partial Summary Judgment was served electronically upon counsel of records via electronic case filing or otherwise as filed  LCvR 5.4 of the Local Rules

                                 /s/
                                 Eric Pelletier

I:\53\530038\001\86\Opposition to Summary Judgment.4.doc

19