## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ULLICO INC.,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **Civil Action No. 1:06cv00080 (RJL/AK)** |
| | : | |
| **NATIONAL UNION FIRE INSURANCE** | : | |
| **COMPANY OF PITTSBURGH, PA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANT/COUNTERCLAIM PLAINTIFF NATIONAL UNION'S
## CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant/Counterclaim Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, hereby cross-moves for partial summary judgment and states as follows:

1.     Plaintiff/Counterclaim Defendant Ullico, Inc. ("Ullico") commenced suit in this litigation against National Union, American International Specialty Lines Insurance Company ("AISLIC"), Joseph A. Carabillo ("Carabillo"), James W. Luce ("Luce") and John K. Grelle ("Grelle"). Ullico's First Amended Complaint alleges four causes of action against National Union and the other Defendants, and seeks a judgment: (1) awarding damages to Ullico for National Union's and AISLIC's alleged breach of contract under three separate insurance policies – the 2001 Fiduciary Policy, the 2002 Fiduciary Policy and a Directors & Officers liability insurance policy; (2) "[p]reliminarily and permanently enjoining National Union from paying Individual Defendants under the 2001 Fiduciary Policy and under the 2002 Fiduciary Policy;" (3) requiring National Union and AISLIC "to specifically perform their obligation to

provide an accounting to Ullico concerning payments made under the Insurance Policies;" and (4) "[d]eclaring the rights and duties of the parties with respect to the Insurance Policies."

2.      As set forth in the accompanying Memorandum in Opposition to Ullico's Motion for Partial Summary Judgment and in Support of National Union's Cross-Motion for Partial Summary Judgment, the 2002 Fiduciary Policy does not provide coverage for any of the claims at issue in the DOL Investigation and resulting Underlying Litigation, and is simply not applicable at all.

3.      Accordingly, National Union cross-moves for partial summary judgment, and seeks an Order dismissing all of Ullico's claims for damages, injunctive relief, specific performance and declaratory relief under the 2002 Fiduciary Policy.

WHEREFORE, for the foregoing reasons and for the reasons more fully detailed in the accompanying Memorandum in Opposition to Ullico's Motion for Partial Summary Judgment and in Support of National Union's Cross-Motion for Partial Summary Judgment, National Union respectfully moves for partial summary judgment pursuant to Fed. R. Civ. P. 56(a) and Local Rule 56.1.

Dated: December 5, 2006                         Respectfully submitted,


                                    By:    _____/s/_____
                                           David J. Farber (415899)
                                           Shannon W. Conway (477863)
                                           2550 M Street, N.W.
                                           Washington, D.C. 20037
                                           Telephone: (202) 457-6000
                                           Facsimile: (202) 457-6315

                                           *Counsel for Defendant/Counterclaim
                                           Plaintiff National Union Fire Insurance
                                           Company of Pittsburgh, PA*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ULLICO INC.,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : **Civil Action No. 1:06cv00080 (RJL/AK)** |
| | : |
| **NATIONAL UNION FIRE INSURANCE** | : |
| **COMPANY OF PITTSBURGH, PA, et al.,** | : |
| | : |
| **Defendants.** | : |

## MEMORANDUM IN OPPOSITION TO ULLICO'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF NATIONAL UNION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

**PATTON BOGGS LLP**
David J. Farber (415899)
Shannon W. Conway (477863)
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Counsel for National Union Fire Insurance*
*Company of Pittsburgh, PA*

4845362

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................ 1

COUNTERSTATEMENT OF GENUINE ISSUES AND UNDISPUTED FACTS .............. 3

    Facts Not in Dispute.......................................................................................... 4

        *The 2001 Fiduciary Policy and the DOL Investigation Claim* ...................... 4

        *The 2002 Fiduciary Policy*.......................................................................... 6

        *The DOL Investigation's Aftermath*............................................................ 6

        *The Underlying Litigation between Ullico and its Former Officers and Directors* ............................................................................................... 8

            *The Carabillo I Complaint* ...................................................................... 8

            *The Carabillo II Complaint*..................................................................... 9

        *National Union's Payment to Ullico for Defense Fees and Costs*................. 9

    Facts in Dispute............................................................................................. 10

ARGUMENT ............................................................................................................. 11

    I.  Standard on a Motion for Summary Judgment........................................... 11

    II.  Ullico's Motion is Moot............................................................................. 12

    III. The 2002 Fiduciary Policy Does Not Provide Ullico with Coverage......... 13

        *A.  Ullico's Attempt to Morph the Related Claims into Separate and Distinct Claims Contravenes its Own Admonition of Policy Construction*....................... 13

        *B.  In the Alternative, Issues of Material Fact Remain as to Whether the Claims Against Ullico Fall With Exclusion 5(d) of the 2002 Fiduciary Policy, Thereby Precluding Summary Judgment*................................................. 16

    IV. Ullico's Refusal to Comply with the 2001 Fiduciary Policy's Panel Counsel Provisions Precludes Coverage.................................................... 17

# TABLE OF CONTENTS (cont'd)

**Page**

A. *Defense of the DOL Investigation Triggered the 2001 Fiduciary Policy's Clause 9 Panel Counsel Provision* ....................................................................... 17

B. *Defense of the Underlying Litigation is Subject to the Clause 9 Panel Counsel Provision*....................................................................................... 18

    1. The matters are issue in the Underlying Litigation are clearly "with respect to" the very same matters at issue in the DOL Investigation ............ 18

    2. Courts routinely enforce the panel counsel requirement ................................ 20

C. *There is No "Immateriality" Exception, and Even if There Was, There Remain Disputes of Material Fact that Would Preclude Partial Summary Judgment in Ullico's Favor* ................................................................................. 22

    1. Ullico concedes plain policy wording must be applied as written. No materiality exception applies ................................................................. 22

    2. Whether Ullico's breach was "immaterial" is a disputed issue of fact.......... 24

CONCLUSION ............................................................................................................. 27

Proposed Order

## TABLE OF AUTHORITIES

**Page**

*AB Recur Finans v. Nordstrom Ins. Co. of N. Amer.,*
    130 F. Supp. 2d 596 (S.D.N.Y. 2001)................................................................ 16

*Ady v. Jenkins,*
    104 A. 178 (1918)............................................................................................ 24

*Amalgamated Transit Union v. Hinton,*
    511 A.2d 433 (D.C. 1986) .............................................................................. 24

*American Mut. Liability Ins. Co. v. Beatrice Companies, Inc.,*
    924 F.Supp. 861 (N.D.Ill. 1996) .................................................................... 23

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................... 11, 12

*Bradley Corp. v. Zurich Ins. Co.,*
    984 F. Supp. 1193 (E.D.Wis. 1997)............................................................... 23

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)................................................................................... 11, 12

*Century Indem. Co. v. Aero-Motive Co.,*
    318 F.Supp. 2d 530 (W.D.Mich. 2003) ......................................................... 23

*Certainteed Corp. v. Federal Ins. Co.,*
    913 F.Supp. 351 (E.D.Pa. 1995) .................................................................... 17

*District-Realty Title Ins. Corp. v. Ensmann,*
    767 F.2d 1018 (D.D.C. 1985) ........................................................................ 24

*First Financial Ins. Co. v. LaPointe,*
    No. 04CV0413, 2005 WL 2218973 (S.D.N.Y. Sept. 12, 2005) ..................... 15

*Goodheart-Willcox Co. v. First National Ins. Co. of N. Amer., Inc.,*
    No. 000c0411, 2001 WL 501194 (N.D.Ill. May 8, 2001) .............................. 14

*Gresham v. American Gen. Life Ins. Co. of New York,*
    135 A.D.2d 1121, 523 N.Y.S.2d 282 (1987) ................................................. 23

*Greycoat v. Liberty,*
    657 A.2d 764 (D.C. 1995) .............................................................................. 26

*Greyhound Lines, Inc. v. Bender,*
    595 F.Supp. 109 (D.D.C. 1984)..................................................................... 24

## TABLE OF AUTHORITIES (cont'd)

**Page**

*Hernandez v. Gulf Group Lloyds,*
   875 S.W.2d 691 (Tex. 1994) ........................................................................ 24

*In re Molten Metal Technology, Inc.,*
   271 B.R. 711 (D.Mass. 2002) ...................................................................... 17

*In re Spiegel Inc.,*
   No. 03-11540, 2006 WL 2577825 (S.D.N.Y. Aug. 16, 2006).......................... 19

*In re Williams Companies ERISA Litigation,*
   21 F.R.D. 416 (N.D.Okla. 2005).................................................................... 22

*Massachusetts Mut. Life Ins. Co. v. Russell,*
   473 U.S. 134 (1985)...................................................................................... 22

*Mobil Oil Exploration & Producing Southeast, Inc.,*
   530 U.S. 604 (2000)...................................................................................... 26

*Mount Vernon Ins. Co. v. Creative Housing Ltd., et al.,*
   88 N.Y.s2d 347 (N.Y. 1996) .......................................................................... 14

*Nat'l Assn. of Government Employees v. Campbell,*
   593 F.2d 1023 (D.C. Cir. 1978) .................................................................... 11

*Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.,*
   445 F. Supp. 2d 37 (D.D.C. 2006) ........................................................... 14, 23

*New York State Urban Development Corp. v. VSL Corp.,*
   738 F.2d 61 (7th Cir. 1984)........................................................................... 21

*Philadelphia Indemnity Ins. Co. v. Maryland Yacht Club, Inc.,*
   129 Md.App. 455, 742 A.2d 79 (Md.Ct.Sp.App. 1999) .................................. 14

*Ranes v. American Family Mutual Ins.,*
   569 N.W.2d 359 (Wis. App. 1997)................................................................. 24

*Scottsdale Ins. Co. v. American Empire Surplus Lines Ins. Co.,*
   791 F.Supp. 1079 (D.Md. 1992) .................................................................... 23

*Sigmund v. Progressive Northern Ins. Co.,*
   374 F. Supp. 2d 33 (D.D.C. 2005) ................................................................ 14

## TABLE OF AUTHORITIES (cont'd)

**Page**

*Spears v. Nationwide Mutual Ins. Co.,*
   354 F. Supp. 2d 144 (D.D.C. 2003) ............................................................................... 14

*Sphinx Int'l, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA,*
   No. 01cv1462, 2002 WL 33804169 (M.D.Fla. Nov. 25, 2002) ................................. 20, 21

*Steinberg v. Paul Revere Life Ins. Co.,*
   73 F. Supp. 2d 358 (S.D.N.Y. 1999) ............................................................................... 23

*Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.,*
   832 F.2d 1037 (7th Cir. 1987) ......................................................................................... 21

*Travis v. Travis,*
   203 A.2d 173 (D.C. 1964) ............................................................................................... 24

*U.S. Underwriters Ins. Co. v. Val-Blue Corp.,*
   85 N.Y.2d 821 (1995) ...................................................................................................... 15

### Other Authorities

17A Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 254:11 (3d ed. 2005) ... 16

H.R. Comm. on Education and the Workforce, 108th Cong., Report
   on Investigation of Ullico Inc. (Comm. Print 2003) ................................................. 6

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ULLICO INC.,                              :
                                          :
      **Plaintiff**                   :
                                          :
      v.                             :   Civil Action No. 1:06cv00080 (RJL/AK)
                                          :
NATIONAL UNION FIRE INSURANCE             :
COMPANY OF PITTSBURGH, PA, et al.,        :
                                          :
      **Defendants.**                :


## MEMORANDUM IN OPPOSITION TO ULLICO'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF NATIONAL UNION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant/Counterclaim Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), by and through its undersigned counsel, hereby respectfully submits this Memorandum in Opposition to Ullico, Inc.'s ("Ullico") Motion for Partial Summary Judgment and in Support of National Union's Cross-Motion for Partial Summary Judgment.

### INTRODUCTION

Ullico's motion is a mishmash of internal contradiction, misdirection and unfortunate assumption. Ullico's papers are unclear and confusing in that its "motion" seeks some undefined "coverage" under two unspecified insurance policies, its "memorandum" only addresses application of the "panel counsel" requirements in National Union's insurance policies, and its proposed "Order" seeks a third relief – coverage under two unspecified "Fiduciary" policies. The sum of Ullico's papers, however, seek partial summary judgment on the question of whether its willful refusal to comply with the "panel counsel" requirements of National Union's 2001 and 2002 Fiduciary Policies is a total bar to coverage.

The Court may readily dismiss Ullico's request for any coverage, much less coverage in violation of the panel counsel requirements, under the 2002 Fiduciary Policy. As even Ullico concedes, that policy contains a crystal clear provision barring coverage for claims that "allege, arise out of, are based upon or attributable to" the facts or Wrongful Act alleged in any previously-reported claim. Not wanting to face the problem, Ullico simply ignores the fact that in the "Underlying Litigation," the claims that Mssrs. Georgine, Carabillo, Grelle and Luce have alleged against Ullico all arise out of, are based upon, and are attributable to the Department of Labor investigation of Ullico (the "DOL Investigation") that was reported and accepted under National Union's 2001 Fiduciary Policy. Thus, while Ullico's brief simply assumes, without briefing, that the 2002 Fiduciary Policy applies, it plainly does not. For this reason, National Union respectfully requests that this Court grant National Union's request for partial Summary Judgment and enter an Order dismissing all of Ullico's claims as they related to the 2002 Fiduciary Policy.

Once the 2002 Fiduciary Policy is disposed of, the only remaining issue is whether Ullico may willfully refuse to comply with the panel counsel provisions of the 2001 Fiduciary Policy and still avail itself of the policy's coverage. Ullico's motion on this point, however, must be denied. First, the issue is moot because Ullico concedes that National Union has reimbursed Ullico for covered defense fees and costs under a full reservation of rights. While Ullico bemoans the reimbursement amount, it has failed to brief the reasonableness or appropriateness of such reimbursement. Second, and even if National Union had refused to pay under a reservation of rights altogether, Ullico would still not be entitled to summary judgment, as even it concedes that the DOL Investigation, which triggered the policy's defense coverage, was the precise type of claim to which the panel counsel requirement applies.

2

Realizing that its arguments are doomed, Ullico attempts instead to mount an argument that its willful breach was "immaterial." District of Columbia law, however, does not reward policyholders who intentionally breach their policy requirements. Further, even if the law of this jurisdiction had such a novel "immateriality" exception, Ullico's breach was clearly material.

The only thing more stunning than the imaginative arguments in Ullico's motion papers is the fact that Ullico has for so long steadfastly refused to simply select from among the top-tier ERISA law firms on National Union's panel counsel list to defend Ullico so that it could readily avail itself of defense fees and costs. The policy requirement was not in the least bit onerous – every other litigant in the complex Ullico cases before this Court who is covered under the same 2001 Fiduciary Policy has retained panel counsel and complied with billing requirements, and is receiving reimbursement of defense fees and costs from National Union. Ullico, however, has obstinately refused to retain Panel Counsel, despite its contractual requirement to do so.

National Union has gone above and beyond what it was legally required to do, and has provided Ullico (under a full reservation of rights) with those defense fees and costs to which it might be entitled. Ullico has no basis to complain about the problems created by its own actions. More relevant here, it surely is not entitled to summary judgment on any of its vague and conflicting claims and the factual issues that pervade.

## COUNTERSTATEMENT OF GENUINE ISSUES AND UNDISPUTED FACTS

Ullico's "Statement of Undisputed Facts" simply skips most of the "facts" upon which Ullico actually relies, while including numerous other "facts" that are not the least bit material to the coverage matters at issue. National Union respectfully submits the following Counterstatement of Genuine Issues and Undisputed Facts, pursuant to LCvR 56.1, to clarify for

the Court why Ullico's motion must be denied, and National Union's motion granted.  The following facts cannot be disputed:

**Facts Not in Dispute**

*The 2001 Fiduciary Policy and the DOL Investigation Claim*

1.     National Union issued Employee Benefit Plan Fiduciary Liability Insurance Policy No. 874-44-03 to "Ullico Inc. and its Subsidiaries," which was effective for the Policy Period of October 30, 2001 to October 30, 2002 (the "2001 Fiduciary Policy").  A copy of the 2001 Fiduciary Policy is attached to the Declaration of Shannon W. Conway as Exh. 1.[1]

2.     Clause 9 of the 2001 Fiduciary Policy requires that the Insured shall select a defense firm from the list of panel counsel firms attached to the policy as Appendix A to conduct the defense of any claim "with respect to," among other things, a fact-finding investigation by the Department of Labor.  *Id.* at Clause 9.

3.     Clause 2 of the 2001 Fiduciary Policy requires that the Insured "shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer.  Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy."  *Id.* at Clause 2(c).  Clause 2 further requires that the Insured give National Union "full cooperation and such information as the Insurer may reasonably require ... Selection of counsel to defend the Claim made against the Insureds shall be governed by Clause 9 of the policy (if applicable)."  *Id.*

---

[1] The numbered exhibits attached to the Declaration of Shannon W. Conway are hereinafter referred to as "Def. Exh."

4

4.    In April 2002 (during the 2001 Fiduciary Policy period), in connection with its investigation of Ullico, the DOL began issuing numerous subpoenas to Ullico, Ullico-related entities, and its officers and directors.  Ullico's Br. at 5, Valentine Aff. at 2.

5.    The DOL Investigation and related subpoenas arose from or were related to alleged improprieties of Ullico's senior management, including Robert Georgine (Georgine), Joseph A. Carabillo ("Carabillo"), James W. Luce ("Luce") and John K. Grelle ("Grelle").  *See* Def. Exh. 2 (Ullico's Consolidated Counterclaim filed in Case No. 03CV01556), at ¶¶ 23 - 90.

6.    Ullico subsequently provided National Union with notice of the DOL Investigation, and National Union accepted that notice.  Declaration of Lawrence Fine ("Fine Decl."), ¶ 2.  The DOL Investigation triggered the 2001 Fiduciary Policy and the panel counsel requirement contained therein.  *See id.*

7.    Notwithstanding repeated written and verbal requests that it do so, (Fine Decl., Exh. A), Ullico has willfully and steadfastly refused to utilize panel counsel, as required by the express terms of the 2001 Fiduciary Policy.  *Id.,* ¶ 3.

8.    Ullico's counsel is also required to comply with National Union's litigation guidelines.  Fine Decl., ¶ 4.  All panel counsel in this matter do so.  *Id.,* ¶ 7.  Yet, Ullico's counsel has willfully and steadfastly failed to do so.  *Id.,* ¶ 4.

9.    Every other claimant on the 2001 Fiduciary Policy (*e.g.* Luce, Grelle and Carabillo, among others) has utilized panel counsel, and has received reimbursement of defense fees and costs for covered claims.  *Id.,* ¶ 7.

*The 2002 Fiduciary Policy*

10.    National Union issued Employee Benefit Plan Fiduciary Liability Insurance Policy No. 495-38-35 to "Ullico Inc. and its Subsidiaries," which was effective for the Policy Period of October 30, 2002 to October 30, 2003. Def. Exh. 3 at 1 (the "2002 Fiduciary Policy").

11.    Exclusion 5(d) of the 2002 Fiduciary Policy precludes coverage for any claims "alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Act alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time." *Id.,* at Exclusion 5(d).

12.    The claims in the "Underlying Litigation," as defined by Ullico, allege, arise out of, are based upon or are attributable to the facts alleged or to the same Wrongful Acts at issue in the DOL Investigation, and therefore are excluded from coverage under the 2002 Fiduciary Policy.

*The DOL Investigation's Aftermath*

13.    Also in April 2002, Ullico appointed Governor James Thompson as Special Counsel to investigate the events surrounding Ullico's Stock Repurchase Program. Def. Exh. 4 at 72.[2] The Thompson Report concluded, *inter alia*, that:

> A compelling argument exists that directors, particularly those who benefited from self-interested transactions, did not satisfy their fiduciary duties to the Company and its shareholders in connection with [Ullico's stock offer and repurchase] transactions. An equally forceful argument applies to the principal officers, Georgine and Carabillo, who were instrumental in creating and implementing the

---

[2] Def. Exh. 4 contains relevant excerpts from a copy of the Thompson Report, as it is contained in Appendix E to the REPORT ON INVESTIGATION OF ULLICO BY THE U.S. HOUSE OF REPRESENTATIVES' COMMITTEE ON EDUCATION AND THE WORKFORCE. H.R. COMM. ON EDUCATION AND THE WORKFORCE, 108TH CONG., REPORT ON INVESTIGATION OF ULLICO, INC. (COMM. PRINT 2003). Because the Thompson Report is so voluminous, National Union has not included an entire copy as an Exhibit. However, at the Court's request, National Union will be pleased to provide a complete copy.

> stock offer and repurchase programs, and who benefited from
> Ullico stock transactions.

Def. Exh. 4 at 167; *see also* Def. Exh. 2 at ¶ 90.

14.     The Thompson Report also "strongly recommend[ed]" that a return of profits received by those directors "be the remedy in a matter where the directors and officers were so disproportionately favored." Def. Exh. 4 at 174.   In particular, the Thompson Report recommended that Ullico seek or determine whether it should seek a return of profits from each of Individual Defendants Carabillo, Grelle and Luce, as well as Ullico's former chairman, Robert Georgine (also an individual defendant in the Underlying Litigation). *Id.* at 173-77.

15.     "Following the issuance of the Thompson Report ... and at their annual meeting on May 8, 2003, ULLICO's shareholders elected and installed a new Board of Directors." Def. Exh. 2 at ¶ 91.  Ullico's Chairman, Robert Georgine, resigned on that same date, "recognizing that the new Board would otherwise terminate him." *Id.*  On May 30, 2003, Carabillo was terminated for cause. *Id.*  "Grelle resigned on February 25, 2003; and Luce retired effective June 1, 2003." *Id.*

16.     During the above-described activities, Ullico sought coverage for defense fees and costs from National Union under the 2001 Fiduciary Policy.  In its coverage determination letter dated January 15, 2003, National Union agreed to pay defense fees and costs under the 2001 Fiduciary Policy, provided Ullico retained panel counsel, and while reserving all of its rights under the policy. Def. Exh. 5.  National Union's letter explicitly advised Ullico that panel counsel was required to be used pursuant to the express terms of the 2001 Fiduciary Policy. *Id.* at p. 4.

***The Underlying Litigation between Ullico and its Former Officers and Directors***

The Carabillo I Complaint

17.    Not long after his termination, Carabillo filed a lawsuit on July 18, 2003 against Ullico in this Court, Case No. 03cv01556 (the "Carabillo I Complaint"), alleging ERISA violations, breach of contract and wrongful termination. *See* Def. Exh. 6 (Ullico's First Amended Complaint for Damages, Declaratory Judgment and Injunctive Relief ("FAC")), at ¶ 23-24.

18.    In its coverage determination letter dated October 21, 2004 (Def. Exh. 7), National Union advised Ullico that there was no coverage for the Carabillo I Complaint under the 2002 Fiduciary Policy based on Exclusion 5(d), which precludes coverage for claims "alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Act alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time." Def. Exh. 3, Exclusion 5(d).   Under a full reservation of rights, National Union accepted the Carabillo I Complaint under the 2001 Fiduciary Policy, in that the Carabillo claims alleged, arose out of, were based upon and were attributable to the facts alleged or to the same Wrongful Acts at issue in the DOL Investigation. *See* Fine Decl., ¶ 3.

19.    In response to the Carabillo I Complaint, Ullico and four related entities filed a Counterclaim on October 17, 2003 (amended on November 3, 2003) against Carabillo, Grelle, Luce and several other parties, again based upon claims alleging, arising out of, based upon and attributable to the facts alleged or to the same Wrongful Acts at issue in the DOL Investigation (the "Ullico Counterclaim"). *See* Def. Exh. 6, ¶ 25.

8

20.    The defendants in Ullico's Counterclaim, Carabillo, Grelle, Luce and Georgine, each sought coverage for the defense of the Counterclaim, and, as required by the 2001 Fiduciary Policy's Clause 9, retained their respective panel counsel. Fine Decl., ¶ 7.

The Carabillo II Complaint

21.    Carabillo subsequently filed another lawsuit on May 13, 2004 in this Court, Case No. 04cv00776 (the "Carabillo II Complaint"), now naming the Ullico-sponsored benefit plans and related entities as defendants. *See* Def. Exh. 5, ¶ 26. The Carabillo II Complaint contained allegations of ERISA violations for failure to pay Carabillo his pension benefits. *Id.*[3]

22.    National Union advised Ullico that it would accept, without waiver of its rights, the Carabillo II Complaint under the 2001 Fiduciary Policy because the claims alleged, arose out of, were based upon, and were attributable to the facts alleged or to the same Wrongful Acts at issue in the DOL Investigation, and thus subject to coverage under that policy. *See* Def. Exh. 7. National Union therefore agreed to pay defense fees and costs incurred by Ullico for the Carabillo II Complaint, under a full reservation of rights, upon Ullico's agreement to use panel counsel as required by Clause 9 of the 2001 Fiduciary Policy. *Id.*

***National Union's Payment to Ullico for Defense Fees and Costs***

23.    National Union has reimbursed Ullico, under a full reservation of rights, for those defense fees and costs that National Union was able to discern from Ullico's incomplete and redacted invoices were actually incurred in defense of the claims against Ullico, including those incurred in the DOL Investigation and resulting Underlying Litigation. *See* Fine Decl., ¶ 9.

---

[3] Pursuant to this Court's June 3, 2005 Consolidation and Scheduling Order in the now-consolidated *Ullico, Inc. Litigation* pending in Case No. 03cv01556, each of the Complaints, Answers and Counterclaims described herein and in Ullico's brief have been re-filed in the form of a Consolidated Complaint and Consolidated Answer and Counterclaim, Docket Nos. 120 and 121 in Case No. 03cv01556.

Although relegated to a footnote outside of Ullico's Statement of Undisputed Facts, Ullico admits this fact.

**Facts in Dispute**

National Union objects to many of Ullico's purported "undisputed facts" as immaterial to the Court's consideration of the instant motions. These immaterial "facts" and National Union's disputes with respect therewith are set forth in Appendix A attached hereto. Set forth below, however, are National Union's disputes with respect to the facts that are material to Ullico's motion, but which are unsupported or contravened by the evidence available in this litigation.

24.     National Union disputes that Ullico has "incurred substantial fees in excess of $700,000 in connection with [its] defense" of the claims against Ullico in the DOL Investigation. Ullico's Br. at 5. Ullico has tendered defense fees and costs to National Union for a substantially lesser amount, and National Union has reimbursed Ullico for those defense fees and costs determined to have been incurred in defense of covered claims under the 2001 Fiduciary Policy. Fine Decl., ¶ 9.[4]

25.     National Union also disputes that Ullico has "incurred substantial fees in connection with the defense [of the Underlying Litigation] in excess of $6 million." Ullico's Br. at 8. Again, Ullico has tendered defense fees and costs to National Union for a substantially lesser amount (indeed, millions of dollars less). *See* Fine Decl., ¶ 10.[5] Similarly, National Union

---

[4] Notwithstanding National Union's discovery requests, which specifically requested documents concerning the legal fees Ullico contends it incurred in defense of the DOL Investigation and resulting Underlying Litigation, Ullico has yet to produce any such documents in this litigation. Fine Decl., ¶ 12. Moreover, the invoices that Ullico previously submitted to National Union for reimbursement were so incomplete and severely redacted that it was impossible to discern which fees and expenses were incurred in the defense of the claims against Ullico arising out of the DOL Investigation and resulting Underlying Litigation versus which were incurred in pursuing Ullico's affirmative actions. *Id.* at ¶ 8.

[5] Ullico's submission of the McGlone Affidavit with its instant motion is the first document received by National Union even informing it that Ullico has incurred defense costs of "over $7 million." Ullico's Br., McGlone Aff. ¶¶ 4-5; Fine Decl., ¶ 8.

10

disputes whether Ullico's defense was provided by counsel who were equivalent to, as efficient as, or as cost-effective as National Union's panel counsel.

26.    In addition, National Union disputes whether all of the claims against Ullico in the Underlying Litigation are even covered under the 2001 Fiduciary Policy.  As set forth in National Union's October 21, 2004 coverage determination letter to Ullico, many of the claims asserted by Carabillo do not fall within the coverage provided by the 2001 Fiduciary Policy, which only covers ERISA breach of fiduciary duty and administration claims. *See* Def. Exh. 7.

## ARGUMENT

### I.    Standard on a Motion for Summary Judgment

Summary judgment is proper so long as "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  As the party seeking summary judgment, Ullico bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  A dispute over a material fact exists where, as here, the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  "Indeed, the record must show the movant's right to (summary judgment) with such clarity as to leave no room for controversy, and must demonstrate that his opponent would not be entitled to (prevail) under any discernible circumstances." *Nat'l Assn. of Government Employees v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978) ("Summary

judgment is unavailable if it depends upon any fact that the record leaves susceptible of dispute.") (internal citations and footnotes omitted).

Ullico has utterly failed to identify for the Court those portions of the "depositions, answers to interrogatories, and admissions on file" that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Indeed, the vast majority of its authority for facts are the allegations in its own Complaint, which is not even proper evidence at all. As such, and at this premature summary judgment stage of this litigation, "the evidence of the nonmovant [National Union] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 248.

In contrast, National Union's cross-motion should be granted because all of the undisputed material facts, Ullico's own allegations and even the bulk of its arguments in its motion papers, support a finding by this Court that the 2002 Fiduciary Policy does not apply to provide coverage for any of the claims against Ullico in the DOL Investigation and resulting Underlying Litigation.

## II.    Ullico's Motion is Moot

Remarkably, the entire premise of Ullico's motion is based on its incorrect and disingenuous allegation that National Union has not "fully reimbursed Ullico for its defense costs" incurred in the DOL Investigation and resulting Underlying Litigation. Not only has National Union paid appropriate defense fees and costs (under a full reservation of rights) but Ullico admits as much. *See* Ullico's Br. at n.1. Thus, its motion is moot.

What Ullico may be seeking is some sort of decision from the Court that Ullico is unilaterally entitled to *all* of its defense costs, irrespective of whether they pertain to the defense of covered claims. Ullico's papers, however, predictably gloss over the fact that its defense costs

invoices are virtually unintelligible, directly violate National Union's panel counsel requirements and litigation guidelines, and otherwise contained such insufficient and vague service descriptions and heavy redactions so as to render impossible National Union's determination of whether the bills encompass covered defense fees and costs. Fine Decl., ¶ 8.[6] Indeed, National Union's reimbursement to Ullico informed it of the difficulties created by its billing submissions and requested that Ullico re-submit those invoices in a non-redacted and more intelligible form. *Id.*, ¶ 9.[7] Thus, summary judgment surely is not yet ripe on that issue.

At bottom, Ullico concededly has received its due defense fees and costs. Ullico's apparent dispute with the quantum of the reimbursement has neither been briefed, nor is it appropriate for summary judgment. As such, Ullico's motion is moot and must be denied.

### III. The 2002 Fiduciary Policy Does Not Provide Ullico with Coverage.

#### A. *Ullico's Attempt to Morph the Related Claims into Separate and Distinct Claims Contravenes its Own Admonition of Policy Construction*

Ullico's memorandum begins with a belabored exegesis about the terms and conditions of the 2002 Fiduciary Policy's panel counsel provisions, without ever once addressing the threshold issue of whether the 2002 Fiduciary Policy is even applicable. It is not, and all of Ullico's claims for coverage under the 2002 Fiduciary Policy can be summarily dismissed as requested by National Union's cross-motion.

---

[6] National Union specifically notes that its reimbursement to Ullico was under a complete reservation of rights to assert the defense that Ullico's refusal to comply with the 2001 Fiduciary Policy's panel counsel requirements precludes National Union's obligation to make such reimbursement. *See* Fine Decl., ¶ 9. This defense to coverage is fully briefed herein at Section IV, *infra*.

[7] To the extent that it is not moot, however, Ullico's shocking claim that it now has "over $7 million" in defense costs (Ullico's Br., McGlone Aff. ¶¶ 4-5) upon which it seeks the Court's ruling should be rejected for a separate reason – Ullico has never informed National Union of the fees (*See* Fine Decl., ¶ 10), and thus is in violation of the 2001 Fiduciary Policy's cooperation clauses (Def. Exh. 1 at Clause 2(c)), and National Union's defense counsel litigation guidelines.

As Ullico instructs, to decide whether coverage exists, the Court first must look directly to an insurance policy's language and "give the words used their common, ordinary and popular meaning." Ullico's Br. at 14, 19 (citing cases). The 2002 Fiduciary Policy unambiguously states that National Union:

> shall not be liable to make any payment for Loss in connection with a Claim made against an Insured(s) ... alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Act alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

Def. Exh. 3, at Exclusion 5(d). Courts that have considered similar clauses typically apply a "but for" test when determining whether a claim is based upon or arises out of an earlier claim. *See, e.g., Spears v. Nationwide Mutual Ins. Co.*, 254 F. Supp. 2d 144, 158 (D.D.C. 2003) (using "but for" analysis to determine that insured's injuries would not have occurred but for her "traveling in the car on her way from a meeting in connection with [her business]" and fell within a policy's "coverage territory");[8] *Mount Vernon Ins. Co. v. Creative Housing Ltd., et al.*, 88 N.Y.2d 347 (N.Y. 1996) (policy exclusion for assault held to preclude coverage for negligence claim because latter would have not been pled but for the assault); *Goodheart-Willcox Co. v. First National Ins. Co. of N. Amer., Inc.*, No. 000C0411, 2001 WL 501194 (N.D. Ill. May 8, 2001) (breach of contract exclusion held to apply to copyright infringement claim under "but for" test because claim clearly "arises out of, grows out of and has its origin in the breach of the parties' license agreement ... but for the license agreement, there would be no claim for copyright

---

[8] *But see Sigmund v. Progressive Northern Ins. Co.*, 374 F. Supp. 2d 33, 38 (D.D.C. 2005) (rejecting "but for" analysis solely in context of uninsured motorist policies). Maryland law – to which this jurisdiction often looks for guidance – is equally unresolved. *See Philadelphia Indemnity Ins. Co. v. Maryland Yacht Club, Inc.*, 129 Md.App. 455, 742 A.2d 79 (Md.Ct.Sp.App. 1999) (stating that phrase "arising out of" must be construed on a "contract by contract or case by case basis"). However, as this Court's recent decision in Ullico's cited case, *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.* makes clear, D.C. courts are loathe to broadly construe policy terms in order to create coverage where none exists. *See* 445 F.Supp.2d 37 (D.D.C. 2006).

infringement"); *First Financial Ins. Co. v. LaPointe*, No. 04CV0413, 2005 WL 2218973 (S.D.N.Y. Sept. 12, 2005) (policy's assault exclusion precluded coverage for negligent hiring, supervision and training claim because "the plethora of claims surrounding that injury … are all 'based on' that assault and battery without which [the plaintiff] would have no cause of action.") (quoting *U.S. Underwriters Ins. Co. v. Val-Blue Corp.*, 85 N.Y.2d 821, 823 (1995)).

As set forth above in the Counterstatement of Material Facts, there is little question that but for the issues raised by the DOL Investigation, the Underlying Litigation claims would not have been brought. Thus, it is beyond peradventure that the Carabillo and other claims allege, arise out of, are based upon, and are attributable to the facts alleged or to the same Wrongful Acts at issue in the DOL Investigation.

Even if the Thompson Report (quoted above at pp. 6-7) did not conclusively demonstrate the point, Ullico's own admissions do. For example, Mr. McGlone – Ullico's General Counsel and Affiant here – in 2005 characterized the claims at issue involving Carabillo as based "in part on the grounds that Carabillo breached his fiduciary duties to the company by engaging in a series of improper stock transactions between 1998 and 2001, which caused Ullico to terminate him." Fine Decl., Exh. A. Ullico has also admitted that the DOL Investigation related "to the sale and purchase of Ullico stock" between 1998 and 2001 by Ullico Officers Georgine, Luce, Grelle and Carabillo. Ullico's Br. at 3-5. "As a result, substantially the same set of facts and issues will control both the defense of Carabillo's claims and the pursuit of ULLICO's counterclaims." Fine Decl., Exh. A – the very same facts at issue in the DOL Investigation.[9] Thus, Ullico simply cannot dispute that the Underlying Litigation claims against it are "alleging, arising out of, based upon or attributable to" the facts alleged or to the same Wrongful Acts at

---

[9] Mr. McGlone also states that, with respect to the claims asserted against it by Luce in the Underlying Litigation, "a central issue in each of these cases is whether certain stock transactions engaged in by the former executives were proper…" (*id.*) – again the same questions at issue in the DOL Investigation.

issue in the DOL Investigation. Therefore the claims in the Underlying Litigations are excluded from coverage under the 2002 Fiduciary Policy. *See* Def. Exh. 3, Exclusion 5(d).

If they are covered at all, Ullico's defense fees and costs associated with the Underlying Litigation are only covered by the 2001 Fiduciary Policy. The 2002 Fiduciary Policy simply does not apply. Thus, the Court must deny Ullico's nonsensical request for partial summary judgment that the panel counsel provisions in the 2002 Fiduciary Policy can be ignored or unilaterally written out of existence. Instead, National Union is entitled to summary judgment dismissal of all of Ullico's claims under the 2002 Fiduciary Policy.

**B.      *In the Alternative, Issues of Material Fact Remain as to Whether the Claims Against Ullico Fall Within Exclusion 5(d) of the 2002 Fiduciary Policy, Thereby Precluding Summary Judgment***

Even if the Court were not prepared to declare that the 2002 Fiduciary Policy does not apply, significant issues of material remain that would preclude partial summary judgment in favor of Ullico. Specifically, Ullico must prove that Exclusion 5(d) does not apply before it can request partial summary judgment that "National Union is required to pay Ullico's defense costs because the panel counsel requirement in Clause 9 does not apply to the Underlying Litigation." Ullico's Br. at 14. It is Ullico's burden, as the insured, to demonstrate that the claims against it fall within coverage provided by the 2002 Fiduciary Policy. 17A LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 254:11 ("The principle that the insured has the burden of proving that its claimed loss falls within coverage of the insurance policy is sufficiently established to be described as 'hornbook law.'"); *see also AB Recur Finans v. Nordstrom Ins. Co. of N. Amer.*, 130 F. Supp. 2d 596, 599 (S.D.N.Y. 2001) ("The burden is on the insured to prove that a loss falls within the policy's coverage"). Ullico has failed to meet its burden.[10]

---

[10] Should the Court nevertheless decide to entertain Ullico's arguments with respect to the 2002 Fiduciary Policy's panel counsel provisions, National Union respectfully submits that its arguments regarding the applicability of the

In fact, Ullico has not even bothered to brief this critical issue. In contrast, National Union has disposed of the issue, or has at least raised a genuine issue of material fact as to whether the claims against Ullico in the Underlying Litigation "allege, arise out of, are based upon or are attributable to" the facts alleged or to the same Wrongful Acts at issue in the DOL Investigation, thus invoking Exclusion 5(d) of the 2002 Fiduciary Policy. As such, Ullico's requested summary judgment with respect to the 2002 Fiduciary Policy must be denied.

## IV.    Ullico's Refusal to Comply with the 2001 Fiduciary Policy's Panel Counsel Provisions Precludes Coverage

In light of the above analysis, the Court need only analyze the 2001 Fiduciary Policy's panel counsel requirements. However, in looking at the relevant policy provision, National Union respectfully suggests that the Court sequentially consider the defense of the DOL Investigation, and then the resulting Underlying Litigation, in reviewing the 2001 Fiduciary Policy's panel counsel provision. Each of the two claims is considered below.

### A.    Defense of the DOL Investigation Triggered the 2001 Fiduciary Policy's Clause 9 Panel Counsel Provision.

As Ullico concedes, there is nothing ambiguous about the language of the 2001 Fiduciary Policy's panel counsel provision, which clearly "applies with respect to (1) an agency proceeding or investigation as defined in either paragraphs (c)(4) or (5) of" the policy's definition of a "Claim," which includes "any fact-finding investigation by the Department of Labor..." Def. Exh. 1, Clause 3(c)(5).[11] Ullico also concedes that the DOL Investigation falls within the

---

2001 Fiduciary Policy's panel counsel provision – as set forth in Section IV *infra* – apply with equal force to the 2002 Fiduciary Policy and hereby incorporate the same.

[11] Although Ullico stresses that the panel counsel provision in the 2001 Fiduciary Policy is made up of "unambiguous plain language" (Ullico's Br. at 20), it nevertheless inconsistently (and incorrectly) directs that "the court must resolve [any ambiguities] in favor of the insured." *Id.* at 19. However, the *contra preferentum* doctrine "is not necessarily the case where sophisticated corporations with equal bargaining power are involved." *Certainteed Corp. v. Federal Ins. Co.*, 913 F. Supp. 351, 356 (E.D. Pa. 1995); *see also In re Molten Metal Technology, Inc.*, 271 B.R. 711, 724 (D. Mass. 2002). Certainly where, as here, the insured is an insurance company itself, the protection afforded by the doctrine simply is not necessary. In any event, Ullico is familiar with

application of the panel counsel provision – it was clearly a "fact-finding investigation by the Department of Labor...." *Id.*

While Ullico tries to wriggle out of this concededly plain and unambiguous contractual requirement by invoking an "immateriality" exception found nowhere in law or the policy (an argument addressed below), it is evident that Ullico is not entitled to reimbursement of DOL Investigation defense fees and costs because it failed to simply comply with the explicit and plain policy condition precedent requiring Ullico's use of panel counsel.

**B.    Defense of the Underlying Litigation is Subject to the 2001 Fiduciary Policy's Clause 9 Panel Counsel Provision**

**1.    The matters at issue in the Underlying Litigation are clearly "with respect to" the very same matters at issue in the DOL Investigation.**

For precisely the same reasons, Ullico is not entitled to Underlying Litigation defense fees and costs, in that the Underlying Litigation claims constitute entirely claims "*with respect to* ... any fact-finding investigation by the Department of Labor." Def. Exh. 1, Clause 9 and Definition 3 (emphasis added). Indeed, Ullico itself has conceded as much; Ullico's First Amended Complaint in this litigation alleges:

> Because of the self-dealing of the Individual Defendants, Ullico became the subject of multiple state and federal investigations, including investigations conducted by the [DOL].
>
> \* \* \*
>
> Thereafter, the Underlying Litigation was initially brought by several of the Individual Defendants ... who filed lawsuits against Ullico and the Ullico-sponsored plans. Ullico and the Ullico-sponsored plans then brought counterclaims in the Underlying Litigation against the Individual Defendants arising out of the breach of their fiduciary duties.

---

provisions similar to Clause 9 of the 2001 Fiduciary Policy, for its own Specimen Policy marketed to potential insureds of Ullico allows its insured to select its own defense counsel "subject to the consent of [Ullico] ... and subject to the selected counsel's agreement to comply with the litigation guidelines set forth by [Ullico] for the defense of covered claims." Def. Exh. 8 at p. 1.

Def. Exh. 5, ¶¶ 3, 4. Ullico's allegations in its Counterclaim filed in the Underlying Litigation directly reference the Thompson Report – "a forceful argument exists that certain senior officers of the Company, principally Georgine and Carabillo, violated their duties of loyalty and care to the company" in connection with Ullico's Stock Repurchase Program involving several of its directors and officers (including Georgine, Carabillo, Luce and Grelle). Def. Exh. 2, ¶ 89. Ullico's Counterclaim further alleges that "[i]n the aftermath of the Thompson Report, Ullico became the subject of multiple state and federal investigations, including those conducted by the Department of Labor." *Id.*, ¶ 90. "Following the issuance of the Thompson Report ... and at their annual meeting on May 8, 2003, ULLICO's shareholders elected and installed a new Board of Directors" (*id.* at ¶ 91), and "Georgine resigned on May 8, 2003 ... recognizing that the new Board would otherwise terminate him 'for cause.'" *Id.*, ¶ 92. As a result of the Thompson Report and DOL Investigation, "on May 30, 2003, [Carabillo] was terminated for cause... Grelle resigned on February 25, 2003; and Luce retired effective June 1, 2003." *Id.* Again, Ullico's own words amply demonstrate that the Underlying Litigation clearly alleges, arises out of, is based upon or is attributable to – and therefore constitutes claims "with respect to" the DOL Investigation, "an agency proceeding or investigation as defined in "the 2001 Fiduciary Policy's definition of "Claim" (which specifically includes "any fact-finding investigation by the Department of Labor..."). Def. Exh. 1, Clause 3(c)(5). *See In re Spiegel Inc.*, No. 03-11540, 2006 WL 2577825 (S.D.N.Y. Aug. 16, 2006) (equating the phrase "with respect to" with "related to" and finding that it "is even 'broader in scope' than 'arising out of,' does not require a causal relation ... and is not ambiguous in spite of its breadth"). Thus, just as the defense of the DOL Investigation is subject to the panel counsel requirement, so too is the defense of the Underlying Litigation.

While Ullico stresses the import of this Court's requirement to "first look to the language of the contract," (Ullico's Br. at 14, 19 (citing cases)), Ullico's tortured reading of the 2001 Fiduciary Policy's panel counsel requirement demonstrates that Ullico is actually asking this Court to *ignore* the indisputably unambiguous language of the panel counsel requirement. Asserting that the clause "applies only to an agency adjudicative proceeding or a fact finding investigation by the DOL ... as well as a class or representative action," (Ullico's Br. at 20), Ullico understandably seeks to have this Court ignore that the clause applies **"with respect to"** the DOL Investigation or a class or representative action – a far broader reach.  While Ullico would have the Court read the policy as triggering the panel counsel requirement only if the Underlying Litigation was "in defense of" the DOL Investigation, that simply is not what the policy says.  In light of the plain policy wording, Ullico's further assertion – that "[t]he cases encompassed in the Underlying Litigation do not involve ... fact finding investigations by the DOL" (Ullico's Br. at 20) – is both wrong (it completely contravenes Ullico's own allegations in its First Amended Complaint here and in the Underlying Litigation), and irrelevant.  The panel counsel requirement is triggered at a far different threshold.

### 2.    Courts routinely enforce the panel counsel requirement.

National Union does not ask the Court to enforce an unusual or exotic policy clause. Virtually every court that has ever examined similar "panel counsel" clauses has affirmed its application as fair, reasonable and mandatory.  For example, in *Sphinx Int'l, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 01cv1462, 2002 WL 33804169 (M.D. Fla. Nov. 25, 2002), the court enforced National Union's panel counsel requirements, noting that they were freely bargained for between the parties.  Thus, absent any record evidence that the insured was unaware of the "pre-approved panel list" when they entered into the contract with National

Union, the court stated that:  (1) "there is nothing ambiguous about the provision in National Union's policy requiring Plaintiffs to choose counsel from a pre-approved list of attorneys;" (2) the individual insureds in this case "are sophisticated businessmen who clearly understand how to read a contract;" and (3) "they and the corporate Plaintiff also possessed corporate counsel to advise them on the legal ramifications of the contract."  As such, the court concluded that "there is no public policy reason to abrogate the contract provision regarding choice of legal counsel to which both Plaintiffs and Defendant agreed."  *Id.* at \*7.[12]

Just as in the *Sphinx* case, the plain policy provisions must be enforced.  Indeed, Ullico has not offered a scintilla of explanation why it has utterly failed to comply with the plain and simple panel counsel requirement.  Ullico's obstinacy is particularly confounding given every other litigants'/claimants' ability under the 2001 Fiduciary Policy to find and select from the list of acceptable, able and highly competent panel counsel and proceed accordingly.

In sum, Ullico cannot dispute that the Underlying Litigation resulted from the DOL Investigation.  As such, each and every one of the claims against Ullico is "with respect to" the Claim defined as the "fact-finding investigation by the Department of Labor," and is therefore subject to the concededly unambiguous panel counsel provision of the 2001 Fiduciary Policy.  Once the 2001 Fiduciary Policy's panel counsel requirement was triggered, which even Ullico concedes, the defense of all claims put into that policy – "alleging," "arising out of," "based upon" and "attributable to," and therefore, "with respect to" those original claims – are similarly bound by the same panel counsel requirement.[13]

---

[12] *See also New York State Urban Development Corp. v. VSL Corp.*, 738 F.2d 61 (7th Cir. 1984) (list of law firms provided by insurer to insured for selection of defense counsel satisfied insurer's obligation to provide independent counsel to insured); *Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 832 F.2d 1037 (7th Cir. 1987) (list of firms provided by insurer to insured from which insured could select counsel to defend it was considered reasonable).

[13] In a single paragraph containing no factual or legal support, Ullico summarily dismisses the genuine issue of material fact regarding whether the Underlying Litigation involves a representative action. Ullico's Br. at 20. This

**C.**    ***There Is No "Immateriality" Exception, And Even If There Was, There Remain Disputes Of Material Fact That Would Preclude Partial Summary Judgment In Favor Of Ullico***

Notwithstanding its position as a sophisticated insured (and insurer), Ullico finally argues that it should be excused from compliance with National Union's 2001 Fiduciary Policy panel counsel requirements because its admitted breach is, in its own view, "immaterial." Ullico's Br. at 22-28.[14] There is, however, no law in this jurisdiction that would support the far-fetched proposition that insurance policy clauses willy-nilly may be violated or ignored if the policyholder does not view the terms as material, and in fact District of Columbia law is to the contrary. Moreover, even if the law were the reverse, numerous disputes of material fact preclude summary judgment in favor of Ullico on its claim that the breach was not material, as there is much more at issue here than just the costs of defense.

**1.    Ullico concedes plain policy wording must be applied as written. No materiality exception applies.**

Ullico, an insurer itself, has no choice but to admit that insurance policies must be enforced as written, and that clauses cannot be added or subtracted at Ullico's whim. Indeed, Ullico (at page 24-25 of its brief) points the Court directly to the law of the District of Columbia on this point, which could not be clearer, *Lexington Ins. Co.*, *supra*, 445 F. Supp. 2d at 37. In

---

is an issue that remains to be resolved and certainly cannot be decided on summary judgment under Ullico's own cited standard. *Id.* at 15. The Court may take judicial notice of the many claims in the Underlying Litigation that are brought, in part and in whole, on behalf of and/or against planned participants, as well as various of Ullico's benefit plans and their administrators and fiduciaries. As such, much of the Underlying Litigation appears to fall precisely within the provisions of ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), as a civil action brought "by a participant, beneficiary or fiduciary for appropriate relief under section 1109 [liability for breach of fiduciary duty] of this title." *Id.* Because any action brought under ERISA § 502(a)(2) "is by definition a representative action on behalf of the plan as a whole," Clause 9 of the 2001 Fiduciary Policy clearly applies. *In re Williams Companies ERISA Litigation*, 21 F.R.D. 416, 422 (N.D. Okla. 2005) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)). To the extent Ullico disagrees, the classification of the Underlying Litigation as a "representative action" is yet another material fact over which a genuine dispute exists, thus precluding Ullico's requested summary judgment.

[14] Presumably Ullico's own policyholders will be quite surprised to learn that their insurer contends its policy clauses can be ignored if they are not, in the policyholder's view, "material" breaches.

that 2006 case, Judge Huvelle granted summary judgment to a group of excess insurers due to

Amtrak's late notice of a claim.  Notwithstanding the fact that most other jurisdictions (including

Maryland) excuse a policyholder's late notice if there is no prejudice to the insurer, the Court

found that the District of Columbia Court of Appeals had no such "prejudice" (which is simply

another way of saying materiality) exception, and that plain policy clauses must be applied as

written.  The Court stated:

> While Amtrak attempts to diminish the importance of the notice
> provisions within the contested agreements by asserting that it,
> rather than its insurers, "had complete control over the
> investigation, defense valuation and settlement" of covered claims
> … the policies in fact provide the railroad's insurers with the right
> to both "investigate any Claim made" and "participate … in the
> defense and control of any Claim…
>
>            * * *
>
> In short, while there are sound justifications for requiring a
> demonstration of actual prejudice by primary or excess insurers
> seeking to avoid liability for late-noticed claims, this Court is not
> in a position to conclude that the District of Columbia Court of
> Appeals would now find them persuasive.

*Id.* at 44-45.[15]  So too here, the panel counsel requirement is a similarly elemental provision of

the 2001 Fiduciary Policy for National Union.[16]  There is no law in the District of Columbia that

---

[15] Other courts in "no prejudice" jurisdictions similarly hold that late notice is a *per se* violation of the applicable policy that voids coverage. *See Steinberg v. Paul Revere Life Ins. Co.*, 73 F. Supp. 2d 358, 361 (S.D.N.Y. 1999); *Gresham v. American Gen. Life Ins. Co. of New York*, 135 A.D.2d 1121, 523 N.Y.S.2d 282 (4th Dep't 1987) (plaintiff's delay in serving notice of claim precluded recovery).  But even in those jurisdictions, unlike the District of Columbia, that impose a materiality requirement by only voiding coverage if the insurer has been prejudiced only start coverage as of the date notice was given, and not before. *Bradley Corp. v. Zurich Ins. Co.*, 984 F. Supp. 1193, 1205 (E.D. Wis. 1997) (limiting "an insurer's liability for the costs of defense of an underlying lawsuit to those costs arising after the insurer received notice"); *Century Indem. Co. v. Aero-Motive Co.*, 318 F. Supp. 2d 530, 544 (W.D. Mich. 2003) (concluding that the insurers "are only obligated to pay defense costs from the date the [insured] requested a defense"); *American Mut. Liability Ins. Co. v. Beatrice Companies, Inc.*, 924 F. Supp. 861, 872 (N.D. Ill. 1996) (insurer has no duty to defend until it receives notice of a claim); *Scottsdale Ins. Co. v. American Empire Surplus Lines Ins. Co.*, 791 F. Supp. 1079 (D. Md. 1992) (same). Following the analogy, then, National Union is not required to assume its duty to defend here until Ullico complies with the requirements of Clause 9.  Nor is National Union required to reimburse any of those defense costs incurred prior to – and outside of – Ullico's compliance with Clause 9.  This Court has agreed in a different context involving contractual preconditions. *See District-Realty Title Ins. Corp. v. Ensmann*, 767 F.2d 1018, 1023 (D.D.C. 1985) (recognizing general rule that one has no duty to perform under a contract containing a condition precedent until the condition occurs").

would support an "immateriality" exception to the insurance policy at issue.[17]  Thus, the Court should reject Ullico's limp and unsupportable reasoning out of hand.

### 2.    Whether Ullico's breach was "immaterial" is a disputed issue of fact.

Although the "immateriality" of Ullico's admitted breach is irrelevant to this Court's consideration of the instant motions, Ullico has completely failed to carry its burden of proof that its breach of the panel counsel was not material.  Among the factors Ullico itself instructs this Court to consider are:

> 1) to what extent, if any, the contract has been performed at the time of the breach.  The earlier the breach the more likely it will be regarded as material. 2) A willful breach is more likely to be regarded as material than … a breach caused by negligence or by extraneous circumstances.  3) A quantitatively serious breach is more likely to be considered material.

Ullico's Br. at 23 (quoting *Greyhound Lines, Inc. v. Bender*, 595 F. Supp. 109, 124 (D.D.C. 1984)).  Here, each prong demonstrates disputes of fact as to whether Ullico's breach was material.  The facts addressing prong one (timing), suggest the breach was material.  Ullico – with full knowledge of the 2001 Fiduciary Policy's unambiguous panel counsel requirement, refused from the very outset of the DOL Investigation to comply with such requirement.  (Ullico

---

[16] In that respect, Ullico's arguments about policy "rescission" are a complete red herring.  Ullico Br. at 27-28. National Union has not sought rescission.  *See Amalgamated Transit Union v. Hinton*, 511 A.2d 433, 436 (D.C. 1986) (rescission "'annuls' the contract as if it had never been made").  As such, Ullico's entire argument – premised on the incorrect assertion that National Union has "refused to perform" or has "rescinded" the 2001 Fiduciary Policy – is inapposite.  Indeed, National Union is "performing" its coverage obligations to other policyholders under the 2001 Fiduciary Policy because they are using panel counsel.

[17] Nor do any of the cases cited by Ullico help its claim.  For example, Ullico relies heavily on *Hernandez v. Gulf Group Lloyds*, a Texas decision not relevant to the Court's analysis, for its proposition that a breach is not material "if the insurer is not deprived of its expected benefit, and therefore suffers no prejudice."  875 S.W.2d 691, 693 (Tex. 1994); Ullico's Br. at 23.  That Texas state decision dealt with an uninsured motorist claim and the insured's failure to obtain the insurer's consent before entering into a settlement, and only excused performance on the grounds of no prejudice – a theory directly rejected under D.C. law.  *Ranes v. American Family Mutual Ins.*, 569 N.W.2d 359, 361 (Wis. App. 1997), is equally inapposite, in that the court made no determination of whether prejudice existed.  Further, the *Ranes* court held that "the burden is to persuade the factfinder by a preponderance of evidence that no prejudice has been suffered."  *Id.* at 636.  Ullico certainly has not made such a showing here.  The D.C. cases cited by Ullico are similarly of no help; *Travis v. Travis*, 203 A.2d 173, 176 (D.C. 1964) involved a suit between a husband and wife for money, property rights and custody under a separation agreement, and *Ady v. Jenkins*, 104 A. 178, 179 (1918), nearly 100 years old, involved liability for breach of a contract for goods.

offers no exigent circumstance or reason why it could not comply, nor is there one).[18]   The second prong (willfulness or negligence) also supports a finding of material breach.  Even after National Union agreed to reimburse Ullico's defense fees and costs in the DOL Investigation and resulting Underlying Litigation, on the condition that Ullico engage panel counsel, Ullico continued to willfully refuse to comply and its breach even continues to date.  Fine Decl., ¶ 3. Finally, as to the third prong (quantitative significance), Ullico's own request that the Court (without any information) compare "the difference in billing rates of panel counsel and non-panel counsel for the work performed" (Ullico's Br. at 26) reveals a "quantitatively serious" difference, in that it is inconceivable how Ullico could have spent over $6 million defending the underlying claims.  *See* Fine Decl., ¶ 10.  Moreover, such comparison is impossible to make until Ullico produces complete and unredacted billing statements.  Thus, at best there is a dispute of fact precluding any finding that Ullico's breach was "immaterial."[19]

In addition, Ullico has also failed to address the prejudice to National Union.  In fact, National Union has been severely prejudiced in that it has not received from Ullico's non-panel defense counsel any status updates in the over three years in order to evaluate Ullico's liability and the Underlying Litigation plaintiffs' claimed damages.  Fine Decl., ¶ 4.  Nor has National Union been able to associate in the defense of Ullico (much less exercise its right to effectively associate in the defense, as stated in Section 2 of the 2001 Fiduciary Policy) or otherwise

---

[18] In another effort at misdirection, Ullico has vaguely alluded to possible National Union conflicts of interest in defending the various claims as excusing Ullico'ss compliance with the panel counsel precondition to coverage. Ullico's Motion at 2.  Ullico's argument is simply bogus, as no conflicts of interest existed in regard to the DOL Investigation (when only Ullico was the target), when even through the Underlying Litigation no party other than Ullico has found it a problem to comply with Panel Counsel requirements.  There is simply no conflict – nor would one excuse Ullico's requirement to choose among the numerous different firms on National Union's list of panel counsel.

[19] Ullico's breach also has had a material impact on the other insured individuals because Ullico's selection of non-panel defense counsel has purportedly incurred some $7 million in legal fees and costs to date (with no end in sight), dwarfing the fees charged by opposing counsel and which alone would have the effect of exhausting the $5 million policy limit. *See* Fine Decl., ¶ 10.

investigate the facts and participate in the defense strategy of the claims against Ullico.  Id.  Such

investigation and litigation strategy opportunities are forever lost now, to the detriment and

irreparable injury of National Union.  See *Greycoat v. Liberty*, 657 A.2d 764, 769 (D.C. 1995)

(insured's decision not to comply with policy's precondition notice provision "deprived the

insurance companies of the opportunity to plan and implement an appropriate litigation

strategy").[20]

Ullico also adds a fourth factor to its analysis – "the extent to which the injured party will

be deprived 'of the benefit that it justifiably expected'" (Ullico's Br. at 23 (citing Justice Stevens

dissent in *Mobil Oil Exploration & Producing Southeast, Inc. v. U.S.*, 530 U.S. 604, 635 (2000))

– but even that inquiry cannot be so readily decided as Ullico would like, based only upon its

speculation and theories, and cases having nothing to do with the facts here.  See Ullico's Br. at

23-26.  To the contrary, Ullico effectively concedes that prejudice may very well exist to

National Union if it is determined that the defense costs incurred by Ullico's non-Panel Counsel

deprive National Union of the savings benefit it builds into its policies containing the panel

counsel provisions.  What Ullico ignores, however, is the fact that it has also deprived National

Union the ability to ensure that highly qualified and experienced ERISA counsel will efficiently

defend the claims and comply with National Union's defense counsel requirements and litigation

---

[20] Likewise, to the extent the fees and costs purportedly incurred in "defense" of the Underlying Litigation claims against Ullico include the costs associated with pursuing and finalizing Ullico's settlement with Georgine, National Union's required consent was never sought by Ullico nor granted by National Union – yet another material breach of the 2001 Fiduciary Policy.  Def. Exh. 1 at Clause 2(c) ("The Insured shall not ... enter into any settlement agreement ... without the prior written consent of the Insurer").  Again, whether the fees and costs associated with that settlement have been included in Ullico's illegible billing submissions remains a material disputed fact, but National Union obviously would be prejudiced by any requirement that it reimburse Ullico for non-covered "defense" fees and costs.

guidelines and cooperate in enabling National Union to exercise its contractual right to effectively associate in the defense.[21]

Finally, Ullico's own proposed "damages remedy," (Ullico's Br. at 28), itself causes prejudice. National Union will be harmed by being required to incur the costs associated with initiating an action to "seek damages' for Ullico's breach instead of simply enforcing its 2001 Fiduciary Policy as written. Such non-compliance is a material breach because it also places National Union at a competitive disadvantage in the marketplace when inefficient ERISA counsel is retained and because of the added time and expense to investigate the non-panel counsel law firm's experience and qualifications, potential conflicts and coordinating the exchange of information and defense protocol with which panel counsel is already familiar. *See* Fine Decl., ¶ 5. Thus, even if an "immateriality" exception existed in the 2001 Fiduciary Policy, which it does not, disputes of fact preclude partial summary judgment for Ullico on this issue.

## CONCLUSION

For the foregoing reasons, Defendant/Counterclaim Plaintiff National Union respectfully requests that whatever partial summary judgment relief Ullico is actually seeking be denied. Specifically, to the extent Ullico seeks a summary judgment finding of some undefined "coverage" under the two unspecified insurance policies, as stated in Ullico's motion, its request must be denied. Likewise, to the extent Ullico seeks a summary judgment finding "that no panel

---

[21] Ullico's own brief makes clear that should this Court decide to undertake the "immateriality" analysis, multiple issues of material fact on the issue remain in dispute. For example, Ullico offers much speculation and conjecture as to what National Union's purpose behind the panel counsel requirements "in theory" (Ullico Br. at 25), but offers no factual evidence whatsoever, and has never even sought discovery on the issue. But even its speculated reasonings behind the requirement – to achieve "savings as to defense costs" and "to insure claims against an insured are defended by competent ERISA counsel" (*id.*) – are addressed only with Ullico's own assumptions and facts that have yet to be determined, much less proven. *Id.* at 25-26 ("The use of non-panel counsel does *not necessarily* deprive National Union of a savings of defense costs," and in order to make such determination, "a comparison of the difference in billing rates of panel counsel and non-panel counsel for the work performed must be made").

counsel requirement bars Ullico's coverage for the defense costs from the Underlying Litigation under the 2002 Fiduciary Policy and the 2001 Fiduciary Policy," as requested in its memorandum, that relief also must be denied. Finally, to the extent Ullico seeks a summary judgment finding that it is entitled to coverage "under the 2002 Fiduciary Policy or the 2001 Fiduciary Policy for the costs incurred in the defense of the Underlying Litigation," and "under the 2001 Fiduciary Policy for the costs incurred in the defense of the DOL Investigation," as request it its proposed Order, that too must be denied.

Instead, National Union respectfully requests that the Court enter partial summary judgment holding that the 2002 Fiduciary Policy does not apply to provide coverage the DOL Investigation or the Underlying Litigation, and dismissing all of Ullico's claims as they relate to such policy.


Dated:  December 5, 2006

Respectfully submitted,

**PATTON BOGGS LLP**

By:

_____/s/_____

David J. Farber (415899)
Shannon W. Conway (477863)
2550 M Street, N.W.
Washington, D.C.  20037
Telephone:  (202) 457-6000
Facsimile:  (202) 457-6315

*Counsel for Defendant/Counterclaim Plaintiff National Union Fire Insurance Company of Pittsburgh, PA*

28

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ULLICO INC.,                                    :
                                                :
        Plaintiff                               :
                                                :
    v.                                          :  Civil Action No. 1:06cv00080 (RJL/AK)
                                                :
NATIONAL UNION FIRE INSURANCE                   :
COMPANY OF PITTSBURGH, PA, et al.,              :
                                                :
        Defendants.                             :

## APPENDIX A

Set forth below are those facts in Ullico's "Statement of Undisputed Facts" which National
Union contends are in dispute, but immaterial to the Court's consideration of Ullico's Motion for
Partial Summary Judgment:

1.    National Union disputes that Ullico was the only Ullico-related entity subject to
such investigations. As established by the DOL subpoenas attached to the Affidavit of Teresa
Valentine, the "ULLICO, Inc. Pension Plan and Trust," and other "ERISA covered Plans that are
eligible to purchase ULLICO, Inc. stock" were also the subject of the DOL's investigation.
Ullico's Br., Valentine Aff. at Exh. A.

2.    National Union disputes that "[i]n June 2002, the DOL issued another subpoena
to Ullico" various documents relating to the Qualified Plan. Ullico's Br. at 5. As evidenced in
the June 2002 subpoena referenced by Ullico, that subpoena was issued to the "ULLICO, Inc.
Pension Plan and Trust." Ullico's Br., Valentine Affidavit at Exh. A.

3.    National Union also disputes that "[t]he DOL issued additional subpoenas to
Ullico in January, March, June and August 2003." Ullico's Br. at 5. Again, as evidenced in the
subpoenas referenced by Ullico, the January 2003 subpoena was *not* issued to Ullico, but was

issued to "Robert Georgine, c/o Howard Bard, Esq., Feder, Semo & Bard, PC." Ullico's Br., Valentine Aff. at Exh. A.[22]

4.    National Union disputes that "[o]n February 25, 2003, John Grelle, Chief Financial Officer, resigned" (Ullico's Br. at 6), because that fact has not been conclusively established and cannot be established except through discovery (which is not scheduled to be completed until February 20, 2007) or an affidavit or some other source of verification. Indeed, Ullico cites only its Complaint as the sole source for this "fact." *Id.* Thus, National Union is unable to dispute or concede the date of Grelle's resignation unless and until it obtains access to documents to confirm or refute such fact. Likewise, for the same reasons, National Union is unable to dispute or confirm that "Joseph Carabillo, Chief Legal Officer, was terminated for cause on May 30, 2003 and, James Luce, Executive Vice President, retired June 1, 2003." *Id.* Again, Ullico's sole source for these "facts" is its own Complaint. *Id.* However, in a related proceeding before this Court, Mr. Carabillo alleges that he "was employed by ULLICO, serving as its Vice President and Chief Legal Officer from March 2, 1987 to **June of 2003**." (Docket No. 14 in Case No. 04cv01556, *Carabillo v. AISLIC, et al*) (emphasis added). So to the extent this Court relies on parties' self-serving pleadings to establish or refute "undisputed material facts," Carabillo's termination date is a disputed fact.

5.    National Union disputes that "[u]nfortunately, the exit of the Ullico Officers did not signal the end of their involvement in Ullico's affairs," (Ullico's Br. at p. 6) because the statement makes no sense, and nowhere in the twelve paragraphs and eight exhibits of the FAC cited by Ullico is such a statement made. *See* Ullico Compl. at ¶¶ 19-30; Ullico Compl. Exs. A-H.

---

[22] The letter to Mr. Georgine states that the enclosed "subpoena duces tecum [is] directed to Robert Georgine in connection with the above-referenced investigation." *Id.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ULLICO INC.,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Civil Action No. 1:06cv00080 (RJL/AK)** |
| | : |
| **NATIONAL UNION FIRE INSURANCE** | : |
| **COMPANY OF PITTSBURGH, PA., et al.,** | : |
| | : |
| **Defendants.** | : |

**ORDER**

UPON CONSIDERATION of Plaintiff/Counterclaim Defendant, Ullico, Inc.'s ("Ullico") Motion for Partial Summary Judgment; the Oppositions filed thereto; and Defendant/Counterclaim Plaintiff National Union Fire Insurance Company of Pittsburgh, PA's ("National Union") Cross-Motion for Partial Summary Judgment, it is this _____ day of _____, 2006, hereby:

ORDERED that Ullico's Motion for Partial Summary Judgment is DENIED in all respects; and it is further

ORDERED that National Union's Cross-Motion for Partial Summary Judgment, seeking this Court's finding that the 2002 Fiduciary Policy is not applicable to the claims against Ullico in the DOL Investigation or resulting Underlying Litigation, is GRANTED; and it is further

ORDERED that all of Ullico's claims asserted in its First Amended Complaint under the 2002 Fiduciary Policy are hereby DISMISSED.

Entered this _____ day of _____, 2006.

_____
Richard J. Leon
United States District Judge