POLICY NUMBER:
*874-44-03*

 *American International Companies®*

RENEWAL OF:
*473-68-49*

**Employee Benefit Plan Fiduciary Liability Insurance**

☐ AIU Insurance Company
☐ American International South Insurance Company
☐ Birmingham Fire Insurance Company of Penns.
☐ Granite State Insurance Company
☐ Illinois National Insurance Company
☒ National Union Fire Insurance Company of Pitts., Pa®
☐ National Union Fire Insurance Company of Louisiana
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

---

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

NOTICE: THE INSURER HAS THE DUTY TO DEFEND; HOWEVER, THE INSURED MAY ELECT TO ASSUME THE DUTY TO DEFEND. IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

### DECLARATIONS

ITEM 1. (a) NAMED SPONSOR: *ULLICO INC. AND ITS SUBSIDIARIES*

MAILING ADDRESS: *111 MASSACHUSETTS AVE NW*
*WASHINGTON, DC 20001*

STATE OF INCORPORATION OF THE NAMED SPONSOR:
*District of Columbia*

(b) SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Sponsor

(c) PLAN COVERAGE: any past, present or future Plan defined in Clause 3(k)

ITEM 2. POLICY PERIOD: From: *October 30, 2001*   To: *October 30, 2002*
(12:01 A.M. standard time at the address stated in Item 1.)

ITEM 3. LIMIT OF LIABILITY: _____*$5,000,000*_____
aggregate for all Loss combined (including Defense Costs)

*138200*

63854 (12/95) *COPY*

ITEM 4.  RETENTION:

Natural Person Insured for non-Indemnifiable Loss     None

Sponsor Organization, Plan, or Natural Person Insured for
Indemnifiable Loss                                    $15,000

for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts

ITEM 5.  CONTINUITY DATE:                             October 30, 1998

ITEM 6.  PREMIUM:                                     $20,300

ITEM 7.  NAME AND ADDRESS OF INSURER ("Insurer"):
(This policy is issued only by the insurance company indicated below.)

National Union Fire Insurance Company of Pittsburgh, Pa.

175 Water Street

New York, NY 10038

138200

63854 (12/95)  COPY

**IN WITNESS WHEREOF,** the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_____
SECRETARY

_____
PRESIDENT

_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE DATE

_____
COUNTERSIGNED AT

ARC EXCESS & SURPLUS INC
300 OLD COUNTRY ROAD
MINEOLA, NY 11501

138200

63854 (12/95)   **COPY**

# American International Companies®

**Employee Benefit Plan Fiduciary Liability Insurance**

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 7 of the Declarations, herein called the "Insurer," agrees as follows:

1. **INSURING AGREEMENT**

   This policy shall pay the Loss of each and every Insured arising from a Claim first made against an Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act by any such Insured (or by any employee for whom such Insured is legally responsible).

2. **DEFENSE AGREEMENT**

   (a) **INSURER'S DUTY TO DEFEND**

   Except as hereinafter stated, the Insurer shall have both the right and duty to defend any Claim against an Insured alleging a Wrongful Act, even if such Claim is groundless, false or fraudulent.

   The Insured shall have the right to effectively associate with the Insurer in the defense of any Claim, including but not limited to negotiating a settlement, subject to the provisions of this clause. However, the Insurer shall not be obligated to defend any Claim after the Limit of Liability has been exhausted, or, pursuant to subparagraph (c) below, after the rejection of a settlement offer.

   (b) **INSURED'S OPTION TO ASSUME DEFENSE**

   Notwithstanding the above, the Insureds shall have the right to assume the defense of any Claim made against them. This right shall be exercised in writing by the Named Sponsor on the behalf of all Insureds within thirty (30) days of the reporting of the Claim to the Insurer pursuant to Clause 8 of the policy. Upon receipt of such written request, the Insurer shall tender the defense of the Claim to the Insureds. Once the defense has been so tendered, the Insurer cannot re-assume the defense of the Claim. The Insurer shall have the right to effectively associate with the Insureds in the defense of any Claim, including but not limited to negotiating a settlement. Provided that the Insurer shall be permitted to effectively associate with the Insureds in the defense of any Claim, including but not limited to negotiating a settlement of any Claim, the Insurer's consent to settlements, stipulated judgments and Defense Costs shall not be unreasonably withheld.

   (c) **GENERAL PROVISIONS** (applicable to both (a) and (b) above)

   The Insurer shall advance Defense Costs prior to the final disposition of a Claim, subject to the other provisions of this policy. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss.

63853 (12/95)  COPY                                                    - 1 -

The Insured shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy.

The Insureds shall give the Insurer full cooperation and such information as the Insurer may reasonably require. The Insurer may make any settlement of any Claim it deems expedient with respect to any Insured subject to such Insured's written consent. If any Insured withholds consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer. Further, in the event the Insurer is defending the Claim pursuant to Clause 2(a) above, then the Insurer shall tender the Claim to the Insureds who shall thereafter at their own expense and on their own behalf negotiate and defend such Claim independently of the Insurer.

Selection of counsel to defend the Claim made against the Insureds shall be governed by Clause 9 of the policy (if applicable).

3. **DEFINITIONS**

   (a) "Administrator" means an Insured with respect to any Wrongful Act described in paragraph (o)(2) of the definition of "Wrongful Act" in this policy.

   (b) "Benefits" means any obligation under a Plan to a participant or beneficiary under a Plan which is a payment of money or property, or the grant of a privilege or perquisite.

   (c) "Claim" means:

      (1) a written demand for monetary relief; or
      (2) a written demand for injunctive relief; or
      (3) a civil or criminal proceeding for monetary or injunctive relief which is commenced by:

         (i) service of a complaint or similar pleading; or
         (ii) return of an indictment (in the case of a criminal proceeding); or
         (iii) receipt or filing of a notice of charges; or

      (4) a formal agency adjudicative proceeding anywhere in the world to which an Insured is subject; or

      (5) any fact-finding investigation by the Department of Labor, the Pension Benefit Guaranty Corporation, or similar governmental agency which is located outside of the United States.

   (d) "Defense Costs" means reasonable and necessary fees, costs and expenses consented to in writing by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured, whether incurred under Clause 2(a), (b) or (c) of this policy, but excluding salaries of Natural Person Insureds or employees of an Insured.

(e) "ERISA" means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revision thereto, or any similar common or statutory law of the United States, Canada or any state or other jurisdiction anywhere in the world to which a Plan is subject. Except to the extent set forth in sub-paragraph (6)(ii) of the definition of "Plan" in this policy, "ERISA" shall not include any law concerning worker's compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

(f) "ESOP" or "ESOP Feature" means any employee stock ownership plan so defined in ERISA, or any other Plan (or portion of a Plan) that is designed to invest primarily in securities of the Sponsor Organization.

(g) "Fiduciary" means a fiduciary as defined in ERISA with respect to a Plan, or a person or entity who exercises discretionary control respecting the management of a Plan or the disposition of its assets.

(h) "Insured(s)" means:

   (1) any Natural Person Insured;

   (2) any Plan(s);

   (3) the Sponsor Organization;

   (4) any other person or entity in his, her or its capacity as a Fiduciary, Administrator or trustee of a Plan who is included in the definition of "Insured" by specific written endorsement attached to this policy.

(i) "Loss" means damages, judgments, settlements and Defense Costs; however, Loss shall not include (1) civil or criminal fines or penalties imposed by law, except for the five percent or less civil penalty imposed upon an Insured under Section 502(i) of the Employee Retirement Income Security Act of 1974, as amended, and the 20 percent or less penalty imposed upon an Insured under Section 502(l) of the Employee Retirement Income Security Act of 1974, as amended, with respect to covered settlements or judgments; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which an Insured is not financially liable or which is without legal recourse to the Insured; (6) Benefits, or that portion of any settlement or award in an amount equal to such Benefits, unless and to the extent that recovery of such Benefits is based upon a covered Wrongful Act and is payable as a personal obligation of a Natural Person Insured; or (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(j) "Natural Person Insured" means any past, present or future natural person director, officer, partner or employee of the Sponsor Organization or a Plan in his or her capacity as a Fiduciary, Administrator or trustee of a Plan.

(k) "Plan" means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title I of the Employee Retirement Income Security Act of 1974, as amended, or any Part thereof, or meets the requirements for qualification under section 401 of the Internal Revenue Code of 1986, as amended, and which is:

63853 (12/95)  COPY                    - 3 -

PAST, PRESENT OR FUTURE WELFARE PLAN

(1) A welfare plan, as defined in ERISA which was, is now, or hereinafter becomes sponsored solely by the Sponsor Organization, or sponsored jointly by the Sponsor Organization and a labor organization, solely for the benefit of the employees of the Sponsor Organization;

PAST OR PRESENT PENSION PLAN

(2) A pension plan as defined in ERISA (other than an ESOP) which was, on or prior to the inception date of the policy, sponsored solely by the Sponsor Organization, or sponsored jointly by the Sponsor Organization and a labor organization, solely for the benefit of the employees of the Sponsor Organization, provided that at any time prior to the inception date of this policy such plan has been reported in writing to the Insurer by the Named Sponsor pursuant to the terms of the application for this policy, or any prior policy or its application issued by the Insurer (or any other member company of American International Group, Inc.) and the Named Sponsor shall have paid any required premium relating to such plan. With respect to any plan not reported to the Insurer pursuant to this paragraph, coverage shall be provided in the event that: (i) the failure to report such Plan was due to inadvertent omission by the Named Sponsor, (ii) upon discovery of such Plan, the Named Sponsor shall notify the Insurer as soon as practicable, provide any information required by the Insurer relating to such Plan and pay any premium required by the Insurer relating to such Plan, (iii) such Plan does not constitute one of the largest (by asset size) five pension plans of the Sponsor Organization and (iv) such Plan was not sold, spun-off or terminated prior to the date the Claim was made;

SOLD OR TERMINATED PLAN

(3) Subject to the requirements of sub-paragraphs (1) and (2) above, coverage under this policy shall apply to any pension or welfare plan that was sold, spun-off or terminated during or prior to the inception date of this policy solely with respect to Wrongful Acts that occurred prior to the date of such sale or spin-off, or in the case of a terminated plan, prior to the final date of asset distribution of such plan, provided that notice of such sale, spin-off or termination is provided to the Insurer before the end of the Policy Period;

CREATED OR ACQUIRED PENSION PLAN

(4) A pension plan as defined in ERISA (other than an ESOP) which, during the Policy Period, becomes sponsored solely by the Sponsor Organization, or sponsored jointly by the Sponsor Organization and a labor organization, solely for the benefit of the employees of the Sponsor Organization, but only upon the condition that within 90 days of it becoming so sponsored, the Named Sponsor shall have provided the Insurer with a completed application for such new plan and agreed to any additional premium or amendment of the provisions of the policy required by the Insurer relating to such new plan. With respect to such new plan, the 90 day reporting condition shall not apply if: (i) such new plan is created or acquired as a result of the Sponsor Organization's acquisition of a corporation whose assets total less than 10% of the total consolidated assets of the Sponsor Organization as of the inception date of this policy, and for whose pension plan the Sponsor Organization provides the Insurer with full particulars before the end of

63853 (12/95) COPY                                - 4 -

the Policy Period, or (ii) such new plan does not constitute one of the largest five pension plans of the Sponsor Organization and the failure to report such Plan within the 90 day reporting period was due to inadvertent omission by the Named Sponsor and upon discovery of such Plan, the Named Sponsor shall notify the Insurer as soon as practicable, provide any information required by the Insurer relating to such Plan and pay any premium required by the Insurer relating to such Plan;

MERGED PLAN

(5) A pension plan which, during or prior to the Policy Period of this policy, has been merged into or consolidated with a pension plan for which coverage is afforded under this policy; and

OTHER PLANS

(6) (i) A plan which is both a welfare plan and a pension plan as defined in ERISA, other than an ESOP, subject to the requirements of Definition (k);

(ii) The following government-mandated programs: unemployment insurance, Social Security or disability benefits, solely with respect to a Wrongful Act defined in paragraph (o)(2) of the definition of "Wrongful Act" in this policy;

(iii) Any other plan, fund or program, including an ESOP, which is included in the definition of "Plan" by specific written endorsement attached to this policy.

Notwithstanding the foregoing, the term "Plan" shall not include any multiemployer plan as defined in ERISA.

(l) "Policy Period" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy; however, to the extent that coverage under this policy replaces coverage in other policies terminating at any time other than 12:01 A.M. on the inception date of such coverage hereunder, then such coverage as is provided by this policy shall not become effective until such other coverage has terminated.

(m) "Sponsor Organization" means the Named Sponsor designated in Item 1 of the Declarations and any Subsidiary thereof.

(n) "Subsidiary" means any past, present or future corporation of which the Named Sponsor owns more than 50% of the issued and outstanding voting stock either directly or indirectly through one or more of its Subsidiaries but only for a Wrongful Act taking place at a time when the Subsidiary was so owned by the Named Sponsor. The term "Subsidiary" shall automatically apply to any new Subsidiary acquired or created during the Policy Period.

(o) "Wrongful Act" means:

(1) as respects a Fiduciary, the Plan or the Sponsor Organization: a violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by ERISA; or any matter claimed against an insured solely by reason of his, her or its status as a Fiduciary, the Plan or the Sponsor Organization, but only with respect to a Plan; and

63853 (12/95)  COPY                      - 5 -

(2) as respects an Administrator, any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a Plan:

   (i)   counseling employees with respect to a Plan; or

   (ii)  providing interpretations with respect to a Plan; or

   (iii) handling of records in connection with a Plan; or

   (iv)  activities affecting enrollment, termination or cancellation of employees under the Plan,

   or any matter claimed against an Insured solely by reason of his, her or its status as an Administrator, the Plan or the Sponsor Organization, but only with respect to a covered Plan;

(3) as respects a Natural Person Insured, any matter claimed against him or her arising out of his or her service as a Fiduciary or Administrator of any multiemployer plan as defined by ERISA, but only if such service is at the specific written request or direction of the Sponsor Organization and such multiemployer plan is added by specific written endorsement attached to this policy, identified as a multiemployer plan and any required premium is paid. In no event shall coverage under this policy extend to a Claim against the Plan itself, its sponsor organization(s) or any other fiduciaries or administrators of such Plan other than a Natural Person Insured.

4. **EXTENSIONS**

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives of a Natural Person Insured in the event of such Natural Person Insured's death or incompetence for alleged Wrongful Acts by such Natural Person Insured prior to such event.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of a Natural Person Insured for all Claims arising solely out of his or her status as the spouse of a Natural Person Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Natural Person Insured and the spouse, or property transferred from the Natural Person Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of a Natural Person Insured, subject to the policy's terms, conditions and exclusions.

5. **EXCLUSIONS**

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

(b) arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act, or any knowing or willful violation of any statute (including but not limited to ERISA);

The Wrongful Act of any Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 5(a) and 5(b)

(c) for discrimination in violation of any law, except that this exclusion shall not apply to discrimination in violation of the Employee Retirement Income Security Act of 1974, as amended;

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Act alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;

(f) for failure to fund a Plan in accordance with ERISA or the Plan instrument or the failure to collect contributions owed to the Plan; except that this exclusion shall not apply to Defense Costs;

(g) alleging, arising out of, based upon or attributable to any act or omission in his, her or its capacity as a Fiduciary or Administrator of any plan, fund or program other than a Plan as defined in this policy, or by reason of his, her or its status as a Fiduciary or Administrator of such other plan, fund or program;

(h) for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including the loss of use thereof, or for libel or slander;

(i) alleging, arising out of, based upon or attributable to any Wrongful Act as respects the Plan taking place at any time when the Sponsor Organization did not sponsor such Plan or when the Natural Person Insured was not a director, officer, partner or employee of the Sponsor Organization or a Plan;

(j) alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

(1) the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

(2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed.

6. **LIMIT OF LIABILITY (FOR ALL LOSS – INCLUDING DEFENSE COSTS)**

The Limit of Liability stated in Item 3 of the Declarations is the limit of the Insurer's liability for all Loss under this policy arising out of all Claims first made against the Insured during the Policy Period or the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, any Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 8(b) or 8(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one aggregate Limit of Liability stated in Item 3 of the Declarations.

Defense Costs, whether incurred under Clause 2(a), (b) or (c) of this policy, are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.

7. **RETENTION CLAUSE**

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 4 of the Declarations, such Retention amount to be borne by the Insured and shall remain uninsured, with regard to all Loss arising out of a Claim made against: (a) the Sponsor Organization, a Plan or any other entity-Insured, or (b) any other Insured whom the Sponsor Organization or the Plan has indemnified or is permitted or required to indemnify ("Indemnifiable Loss"). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

8. **NOTICE/CLAIM REPORTING PROVISIONS**

Notice hereunder shall be given in writing and sent to the address of the Insurer named in Item 7 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a) The Insured(s) shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

(1) any time during the Policy Period or during the Discovery Period (if applicable); or

(2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b) If written notice of a Claim has been given to the Insurer pursuant to Clause 8(a) above, then any Claim which is subsequently made against an Insured and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c) If during the Policy Period or during the Discovery Period (if applicable) the Insured(s) shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against an Insured and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against an Insured and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

9. **PRE-AUTHORIZED DEFENSE ATTORNEYS**

This clause only applies with respect to: (1) an agency proceeding or investigation as defined in either paragraphs (c)(4) or (5) of Clause 3, Definitions, or (2) a class or representative action.

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("Panel Counsel Firm(s)") from which a selection of legal counsel shall be made to conduct the defense of any Claim to which this clause applies against an Insured pursuant to the terms set forth below:

In the event the Insurer is operating under a duty to defend pursuant to Clause 2(a) of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. Upon the written request of the Named Sponsor, the Insurer may consent to a law firm selected by the Named Sponsor, whether or not a Panel Counsel Firm, to defend the Insureds, which consent shall not be unreasonably withheld. If at any time thereafter a dispute arises between the Insurer and the Insureds involving the defense of a Claim, the Insurer and the Insured shall select a mutually agreeable replacement defense counsel.

In the event the Insureds have assumed the defense of the Claim pursuant to Clause 2(b) of the policy, then the Insureds shall select a Panel Counsel Firm to defend the Insured. The Insured may select a law firm other than a Panel Counsel Firm at the sole discretion of the Insurer. In addition, with the express prior written consent of the Insurer, which consent shall not be unreasonably withheld, the Insured may select a Panel Counsel Firm different from that selected by other Insureds if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The selection of a Panel Counsel Firm from the attached list to defend the Claim against the Insureds shall be made without regard to the jurisdiction in which the Claim is brought.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Sponsor. At the request of the Named Sponsor, the Insurer may in its discretion add one or more law firms to the attached list of Panel Counsel Firms for the purposes of defending the Claim made against the Insureds. The list of Panel Counsel Firms may also be amended to add, with the consent of the Insurer, which consent shall not be unreasonably withheld, a non-Panel Counsel Firm for the purpose of acting as "local counsel" to assist an existing Panel Counsel Firm, which Panel Counsel Firm will act as "lead counsel" in conducting the defense of the Claim, for Claims brought in a jurisdiction in which the chosen Panel Counsel Firm does not maintain an office.

10. **DISCOVERY CLAUSE**

Except as indicated below, if the Insurer or the Named Sponsor shall cancel or refuse to renew this policy, the Named Sponsor shall have the right, upon payment of an additional premium of 75% of the "full annual premium", to a period of one year following the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said one year period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal.

In the event of a Transaction, as defined in Clause 12, the Named Sponsor shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Named Sponsor may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

11. **CANCELLATION CLAUSE**

   This policy may be canceled by the Named Sponsor at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent. This policy may also be canceled by or on behalf of the Insurer by delivering to the Named Sponsor or by mailing to the Named Sponsor, by registered, certified, or other first class mail, at the Named Sponsor's address as shown in Item 1 of the Declarations, written notice stating when, not less than 60 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

   If this policy shall be canceled by the Named Sponsor, the Insurer shall retain the customary short rate proportion of the premium herein.

   If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium herein.

   Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

   If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

12. **CHANGE IN CONTROL OF NAMED SPONSOR**

   If during the Policy Period:

   a. the Named Sponsor shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or

   b. any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors of the Named Sponsor, or acquires the voting rights of such an amount of such securities;

   (either of the above events herein referred to as the "Transaction")

then this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Sponsor shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Named Sponsor shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

13. **SUBROGATION AND WAIVER OF RECOURSE**

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Insureds' rights of recovery thereof, and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Insureds. In no event shall subrogation be had against any Insured unless the Wrongful Act which gave rise to such subrogation claim against such Insured is excluded from coverage by reason of the terms, conditions and exclusions of this policy.

In the event this policy has been purchased by an Insured other than a Plan, the Insurer shall have no right of recourse against an Insured. Notwithstanding the foregoing, the Insurer shall have a right of recourse against an Insured arising out of a Claim by an Insured against another Insured unless such Claim is instigated and continued totally independent of, and totally without the solicitation of, assistance of or active participation by the Insured claimed against.

It is further provided that in the event of any recovery under this clause, the Limit of Liability of this policy shall be restored to the extent of such recovery after subtracting any costs, expenses or reimbursements incurred by the Insurer in connection therewith.

14. **OTHER INSURANCE**

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

15. **NOTICE AND AUTHORITY**

It is agreed that the Named Sponsor shall act on behalf of all Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right under Clause 2(b) or Clause 10 of this policy.

16. **ASSIGNMENT**

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

17. **ACTION AGAINST INSURER**

    No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

    Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against an Insured to determine the Insured's liability, nor shall the Insurer be impleaded by an Insured or his, her or its legal representatives. Bankruptcy or insolvency of an Insured or of his, her or its estate shall not relieve the Insurer of any of its obligations hereunder.

18. **HEADINGS**

    The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

# APPENDIX A

## PANEL COUNSEL
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY

- 1 -

**ARIZONA**

Snell & Wilmer
One Arizona Center
Phoenix, AZ 85004-0001
Primary Contact:
Katherine M. Harmeyer (602) 382-6357

**CALIFORNIA**

Lillick & Charles, L.L.P.
Two Embarcadero Center, Suite 2700
San Francisco, CA 94111
Primary Contact:
D. Ward Kallstrom (415) 984-8282

Littler, Mendelson, Fastiff, Tichy & Mathiason
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Primary Contact:
Ronald J. Cooke (310) 772-7217

Pillsbury Madison & Sutro, L.L.P.
235 Montgomery Street
P.O. Box 7880
San Francisco, CA 94120
Primary Contact:
Robert A. Gordon (415) 983-1782

Sedgwick, Detert, Moran & Arnold
One Embarcadero Center, 16th Floor
San Francisco, CA 94111-3765
Primary Contact:
Julia A. Molander (415) 627-1424

**DISTRICT OF COLUMBIA**

Arent, Fox, Kintner, Plotkin & Kahn
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
Primary Contact:
Carol Connor Flowe (202) 857-6054

Arnold & Porter
555 12th Street, NW
Washington, DC 20004-1206
Primary Contact:
Scott B. Schreiber (202) 942-5000

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Primary Contact:
William J. Kilberg, P.C. (202) 955-8573

Groom and Nordberg
1701 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20006
Primary Contact:
Robert Gallagher (202) 857-0620

Kilpatrick Stockton L.L.P.
700 13th Street, NW, Suite 800
Washington, DC 20005-5923
Primary Contact:
Steven J. Sacher (202) 508-5840

O'Melveny & Myers LLP
555 13th Street, NW, Suite 500 West
Washington, DC 20004-1109
Primary Contact:
Robert N. Eccles (202) 383-5300

Patton Boggs, L.L.P.
2550 M Street, N.W.
Washington, DC 20037
Primary Contact:
Michael A. Curto (202) 457-5611

Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Primary Contact:
Paul J. Ondrasik, Jr. (202) 429-8088

Verner, Liipfert, Bernhard, McPherson & Hand
901 15th Street, NW, Suite 700
Washington, DC 20005
Primary Contact:
Ronald B. Natalie (202) 371-6028

**GEORGIA**

Alston & Bird
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309-3424
Primary Contact:
Gregory C. Braden (404) 881-7497

King & Spalding
191 Peachtree Street
Atlanta, GA 30303-1763
Primary Contact:
Lara B. Robinson (404) 572-3567

*COPY*

# APPENDIX A
## PANEL COUNSEL
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY

- 2 -

**ILLINOIS**

Baker & McKenzie
130 East Randolph Drive
Chicago, IL 60601
Primary Contact:
Michael A. Pollard, Esq. (312) 861-2786

Mayer, Brown & Platt
190 South La Salle Street
Chicago, IL 60603-3441
Primary Contact:
William A. Gordon (312) 701-7164

McDermott, Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096
Primary Contact:
Bill Boles, P.C. (312) 984-7686

Seyfarth, Shaw, Fairweather & Geraldson
55 East Monroe, Suite 4200
Chicago, IL 60603
Primary Contact:
Thomas J Piskorski (312) 269-8925

Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street
Chicago, IL 60601
Primary Contact:
Charles B. Wolf (312) 609-7888

**MASSACHUSETTS**

Hale & Dorr LLP
60 State Street
Boston, MA 02109-1803
Primary Contact:
Neil Jacobs (617) 526-6970

Murphy, Hesse, Toomey & Lehane
44 Farnsworth Street
Boston, MA 02210
Primary Contact:
Katherine A. Hesse, CEBS (617) 479-5000

Peabody & Arnold
50 Rowes Wharf
Boston, MA 02110
Primary Contact:
Robert T. Gill, P.C. (617) 951-4706

**LOUISIANA**

McCalla, Thompson, Pyburn, Hymowitz & Shapiro
650 Poydras Street, Suite 2800
New Orleans, LA 70130
Primary Contact:
Howard Shapiro (504) 524-2499

**MAINE**

MMMB Group
22 Free Street, Suite 201
P.O. Box 17594
Portland, ME 04112-8594
Primary Contact:
Stephan G. Bachelder (207) 761-8100

Pierce Atwood
One Monument Square
Portland, ME 04101
Primary Contact:
William J. Kayatta, Jr (207) 791-1238

**MICHIGAN**

Miller, Canfield, Paddock & Stone, PLC
1200 Campau Square Plaza
99 Monroe Avenue, NW
Grand Rapids, MI 49503
Primary Contact:
Charles S. Mishkind (616) 454-8656

**MINNESOTA**

Dorsey & Whitney L.L.P.
Pillsbury Center South
220 South 6th Street, Suite 1300
Minneapolis, MN 55402-1498
Primary Contact:
Stephen P. Lucke (612) 343-7947

Faegre & Benson, LLP
2200 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402
Primary Contact:
Hubert V. Forcier (612) 336-3000

**COPY**


# APPENDIX A
## PANEL COUNSEL
## EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY

- 3 -

**NORTH CAROLINA**

Poyner & Spruill, LLP
3600 Glenwood Avenue
Raleigh, NC 27612
Primary Contact:
Susanna G. Gibbons (919) 783-6400

**NEW YORK**

Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177-0077
Primary Contact:
Howard Pianko (212) 351-4591

Kramer, Levin, Naftalis & Frankel
919 Third Avenue
New York, NY 10022
Primary Contact:
Michael J. Dell (212) 715-9100

Winthrop, Stimson, Putnam & Roberts
One Battery Park Plaza
New York, NY 10004
Primary Contact:
Susan P. Serota (212) 858-1125

**PENNSYLVANIA**

Dechert Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Primary Contact:
Mary McLaughlin (215) 994-2958

Pepper, Hamilton & Scheetz LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103-2799
Primary Contact:
Susan Katz Hoffman (215) 981-4000

**TEXAS**

Baker & Botts, L.L.P.
910 Louisiana
Houston, TX 77002-4995
Primary Contact:
James R. Raborn (713) 229-1234

Fulbright & Jaworski L.L.P.
1301 McKinney Street, Suite 5100
Houston, TX 77010
Primary Contact:
A.J. Harper II (713) 651-5442

**WASHINGTON**

Perkins Coie
1201 Third Avenue, 40th Floor
Seattle, WA 98101-3099
Primary Contact:
Bruce D. Corker (206) 583-8538

**WISCONSIN**

Reinhart, Boerner, Van Deuren, Norris
& Rieselbach, SC
1000 North Water Street, Suite 2100
P.O. Box 92900
Milwaukee, WI 53202-0900
Primary Contact:
Richard P. Carr (414) 298-8139

*COPY*

## ENDORSEMENT# 1

This endorsement, effective *12:01 am  October 30, 2001*  forms a part of policy number *874-44-03*
issued to *ULLICO INC. AND ITS SUBSIDIARIES*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AUTOMATIC PLAN COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that Clause 2, DEFINITIONS, paragraph (i) (4) is deleted in its entirety and replaced by the following:

(4) (A)  Any pension plan(s) which, during the Policy Period, becomes sponsored solely by the Sponsor Organization, or jointly by the Sponsor Organization and a labor organization, solely for the benefit of the employees of the Sponsor Organization, with assets less than $25,000,000 as of the date the plan becomes so sponsored; and

(B)  Any pension plan(s) which, during the Policy Period, becomes sponsored solely by the Sponsor Organization, or jointly by the Sponsor Organization and a labor organization, solely for the benefit of the employees of the Sponsor Organization, with assets in excess of $25,000,000, but only upon the condition that within 90 days of it becoming so sponsored, the Sponsor Organization shall have provided the Insurer with a completed application for such plan(s), agreed to any additional premium and/or amendment of the provisions of the policy required by the Insurer relating to such new plan(s) and the Insurer shall have added such new plan(s) to Item 1(c) of the Declarations. Further, coverage as shall be afforded respecting such new plan(s) is conditioned upon the Sponsor Organization paying when due any additional premium required by the Insurer relating to such new plan(s).

All other terms and conditions remain unchanged.

END 1

(2/90)   COPY

AUTHORIZED REPRESENTATIVE