# D'AMATO & LYNCH

## LAWYERS

70 PINE STREET

NEW YORK, N.Y. 10270-0110

TELEPHONE 212/269-0927

CABLE ADDRESS
DAMCOSH

TELEX 960085 DCOS UI NYK

TELECOPIER: 269-3559

LONDON OFFICE

LLOYD'S
ONE LIME STREET
LONDON EC3M 7HA, ENGLAND

TELEPHONE 0207 816 5977
TELECOPIER 0207 816 7257

GEORGE G. D'AMATO
LUKE D. LYNCH (1999)
KENNETH A. SAGAT
LUKE D. LYNCH, JR.
ROBERT E. KUSHNER
RICHARD F. RUSSELL
RONALD H. ALENSTEIN
HARRY J. ARNOLD, JR.
PHILIP J. BERGAN
ROBERT W. LANG
NEAL M. GLAZER
ANDREW R. SIMMONDS
JOHN P. HIGGINS
THOMAS F. BREEN
ALFRED A. D'AGOSTINO, JR.
WILLIAM P. LARSEN, III
ROBERT D. LANG
DAVID A. BOYAR
MARY JO BARRY
BARBARA R. SEYMOUR
HARVEY BARRISON

WILLIAM C. BURTON
CHARLES BRAMHAM
BILL V. KAKOULLIS
THOMAS W. HANLON
JOHN H. FITZSIMONS
MICHAEL L. MANIRE
KEVIN J. WINDELS
SAMUEL F. PANICCIA
ROBERT S. FRASER
STEPHEN F. WILLIG
DEBORAH M. COLLINS
NEIL R. MORRISON
PETER A. STROILI
FRANCES BUCKLEY
DAVID J. KUFFLER

LLOYD J. HERMAN
KEVIN P. CARROLL
LAURIE P. BEATUS
LIZA A. CHAFIIAN

RICHARD S. TROSTLE
JAN H. DUFFALO
JAMES E. TOLAN, II
CATHERINE L. CASAVANT
ROY CAPLINGER
ANNEMARIE J. MAZZONE
EDWARD M. ROTH
CHRISTINE TIERNEY
MARIA T. EHRLICH
THOMAS G. DARMODY
RICHARD F. FERRIGNO
HUMPHREY O. UDDOH
DEEANNA M. GALLA
JUDY Y. CHUNG
JOHN J. MAALOUF
R. DAVID ADES
ARTHUR STEINBERG
JONATHAN L. KRANZ
INGRID A. SMITH

ARTURO M. BOUTIN
THOMAS ZACHARIA
WENDY L. KALNICK
WILLIAM A. CURRAN, I
TAE S. UM
JOHN C. MUCCIFORI
ANNA E. BOMSTEIN
MOLLY Z. BROWN
MAXINE K. NAKAMURA
JAMES L. FUCHS
GERARDO LAPETINA
LAURA S. WEINER
DAVID BERGENFELD
EDWARD R. WILSON
JONATHAN ARKINS
JASON B. GRANT
JARED S. KAPLAN
GAVIN J. CURLEY
BRIAN M. MARGOLIES
BRYAN HA
ASSAF RONEN
ALEXANDER M. RAZI

COUNSEL
ROBERT M. MAKLA         VICTOR F. MUSTELIEF
ALBERT B. LEWIS              ROBERT GILROY
CHARLES H. WITHERWAX  RICHARD G. McGAHREI
               PETER J. THUMSER

October 21, 2004

**Via Facsimile 212-504-5855 and Mail**
Ms. Allison Eisenberg
Frank Crystal & Company
40 Broad Street
New York, NY 10004

Re:  Employee Benefit Plan Fiduciary Liability Insurance
     Insured:    Ullico Inc. and its Subsidiaries ("Ullico")
     Matter :    Carabillo
     A.I. File No.:  434-003952
     Our File No.:   101-69615

Dear Ms. Eisenberg:

We have been retained by AIG Technical Services, Inc. ("AIGTS"), on behalf of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), in connection with the above-referenced matter. Based upon the limited information National Union has received to date, the following will serve to set forth National Union's preliminary coverage position under the Policy after review of: (i) the complaint styled as <u>Joseph A. Carabillo v. Ullico, Inc.</u> filed on July 18, 2003 in the United States District Court, District of Columbia, case no. 03CV01556 ("Carabillo I Complaint"); and (ii) the complaint styled as <u>Joseph A. Carabillo v. Ullico Inc. Pension Plan and Trust, et al</u>. filed on May 13, 2004 in the United States District Court, District of Columbia, case no. 04CV00776 ("Carabillo II Complaint").

National Union issued Employee Benefit Plan Fiduciary Liability Insurance under Policy No. 548-03-72 ("Policy") to Ullico. The Policy has a Policy Period of October 30, 2003 to October 30, 2004. The limit of liability is $5,000,000 in the aggregate for all Loss combined (including defense costs) and there is a $250,000 retention for each covered Claim under the Policy.[1]

---

[1] All capitalized terms shall have the meanings ascribed them by the Policy unless otherwise defined herein.

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 2

### The Carabillo I Complaint

The Carabillo I Complaint alleges claims for breach of § 510 of ERISA, breach of contract and wrongful termination against Ullico, Inc. ("Ullico") by Joseph A. Carabillo ("Carabillo"), the former Chief Legal Officer at Ullico. Carabillo alleges that he was employed with Ullico for approximately sixteen years when he was offered early retirement by Ullico pursuant to an early retirement program that the company's board of directors approved on April 16, 2003. The early retirement program provided for, among other things, early retirement to all employees who had been with the company for at least fifteen years and who were at least 55 years of age at the time of retirement. Carabillo alleges that he accepted early retirement which was to begin on June 1, 2003 and was then put on paid administrative leave in order to allow for another individual to replace him as Ullico's Chief Legal Officer. However, Carabillo alleges that on the eve of early retirement, he was terminated from his employment with Ullico pursuant to a letter sent to his home indicating that the company had lost confidence in him and was, therefore, terminating his employment. Carabillo alleges that Ullico terminated his employment in order to interfere with his pension benefits, which included retirement, health and life insurance benefits.

Carabillo asserts the following causes of action against Ullico: (1) ERISA violations; (2) breach of contract; and (3) wrongful termination. Carabillo seeks the following relief: (1) compensatory damages in the amount of $500,000; (2) punitive damages in the amount of $1,000,000; (3) payment of salary through May of 2003 and payment for earned but unused annual leave; (4) declaratory relief regarding his alleged retired status as of June 1, 2003, along with full benefits retroactive to that date; (5) injunctive relief in connection with the withholding of the benefits he alleges he is entitled to; and (6) attorneys fees and costs of suit.

### Carabillo II Complaint

The Carabillo II Complaint arises out of a claim by Carabillo for failure to pay pension benefits against, among others, the Ullico Inc. Pension Plan and Trust ("Pension Plan"), the Administrator of the Pension Plan ("Pension Plan Administrator") and the Administration Committee of the Pension Plan ("Pension Plan Committee"). Carabillo alleges that when he was terminated from employment by Ullico, he had already elected early retirement pursuant to the early retirement program that was approved by the company's board of directors on April 16, 2003 and offered to Carabillo on April 17, 2003. Carabillo alleges that he accepted the offer of early retirement that was to commence on June 1, 2003 by signing the Election and Release Form and returning it to Ullico's director of corporate benefits by May 8, 2003. Carabillo alleges that by virtue of his having elected to accept early retirement, he is entitled to (i) pension benefits under the Pension Plan; (ii) retiree health insurance and life insurance benefits under the Ullico Inc. Employees' Life and Health Welfare Plan ("Welfare Plan"); and (iii) benefits under the Union Labor Life Auxiliary Retirement Benefits Plan ("Auxiliary Plan"). Ullico allegedly refused to pay him these benefits on account of his being terminated from employment.

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 3

Carabillo asserts the following causes of action in the Carabillo II Complaint: (1) Benefits under the Terms of the Qualified Plan, ERISA § 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B); (2) Interest on Retroactive Benefits Under the Terms of the Qualified Plan, ERISA § 502 (a)(1)(B),(3), 29 U.S.C. § 1132 (a) (1) (B), (3); (3) Benefits from the Welfare Plan, ERISA § 502 (a)(1)(B); 29 U.S.C. § 1132 (a)(1)(B); (4) Refund of all COBRA payments made for Continued Coverage under the Welfare Plan with Interest, ERISA § 502 (a)(1)(B),(3), 29 U.S.C. § 1132 (a)(1)(B),(3); (5) Benefits under the Terms of the Auxillary Plan; ERISA § 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B); (6) Interest on Retroactive Benefits from the Auxillary Plan, ERISA § 502 (a)(1)(B), (3), 29 U.S.C. § 1132 (a)(1)(B), (3); and (7) Attorney's Fees and Costs, ERISA § 502 (a)(1), 29 U.S.C. § 1132 (a)(1). Carabillo seeks the following relief: (1) a declaration that he is eligible to participate in the Early Retirement Program; (2) an award of pension benefits from the Pension Plan pursuant to the Early Retirement Program both prospectively and retroactively to June 1, 2003 with appropriate interest on all retroactive benefits; (3) a declaration that he is eligible to receive retiree benefits from the Welfare Plan; (4) enjoining the Welfare Plan to enroll him as a participant in both its health insurance and life insurance program retroactively to June 1, 2003; (5) an award of a refund of all premiums he has paid for COBRA continuation under the Welfare Plan with appropriate interest thereon; (6) a declaration that he is entitled to participate in the Auxiliary Plan; (7) an award of unreduced pension benefits from the Auxillary Plan both prospectively and retroactively to June 1, 2003 with appropriate interest on all retroactive benefits; and (8) an award of costs and attorneys' fees.

<u>Coverage Evaluation for the Carabillo I Complaint</u>

As an initial matter, please note that the Policy defines "Claim", in pertinent part, as "a civil, criminal or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading..." In that regard, the docket sheet indicates that the Carabillo I Complaint was served upon Ullico on July 18, 2003. On that basis, it appears that the Carabillo I Complaint was first made on July 18, 2003. As you may know, the Policy is a claims-made and reported policy, which provides coverage only for those claims that are first made and reported within the Policy Period of October 30, 2003 to October 30, 2004. To that extent, the Carabillo I Complaint was first made several months before the Policy incepted. Therefore, there is no coverage for the Carabillo I Complaint (Carabillo's claim) under the Policy. However, since the Carabillo I Complaint was made in July of 2003, and without waiver of any of National Union's rights, privileges or defenses, it will be evaluated for coverage under National Union Policy No. 495-38-35 ("02-03 Policy"), which is the prior policy having a term of October 30, 2002 to October 30, 2003.

Please be advised that Exclusion 5 (d) of the 02-03 Policy provides that there is no coverage for any Claim "alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Act** alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time." In that regard, there is no coverage for the Carabillo I Complaint under the 02-03 Policy because the Carabillo I Complaint

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 4

arises out of, is based upon or is attributable to the same Wrongful Act alleged or contained in the DOL investigation matter. Therefore, the Carabillo I Complaint will be handled as part of the DOL investigation matter reported to National Union under Policy No. 874-44-03 ("01-02 Policy") which has a term of October 30, 2001 to October 30, 2002 and for which reservation of rights letters were issued on January 15, 2003, August 6, 2003 and January 19, 2004, respectively (the "ROR letters"). The ROR letters are incorporated herein by reference and made a part hereof and National Union further reserves its rights as articulated later in this letter. Since the operative policy for the Carabillo I Complaint is the 01-02 Policy, it is the provisions of that policy that apply to the Carabillo I Complaint.

Please note that the 01-02 Policy defines Wrongful Act, in pertinent part, to mean: "(1) as respects an **Insured**: a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, but only with respect to a **Plan**." In that regard, there is no coverage for the second and third causes of action to the Carabillo I Complaint (breach of contract and wrongful termination, respectively) because these causes of action do not fall within the 01-02 Policy's definition of Wrongful Act or within the scope of coverage afforded. Therefore, a one-third allocation shall apply to any covered Loss associated with the Carabillo I Complaint under the 01-02 Policy.

### Coverage Evaluation for the Carabillo II Complaint

As an initial matter, it is our understanding that the Carabillo II Complaint was made on May 13, 2003. On that basis, it would appear that the claim was made during the policy period of the Policy. However, with respect to the Carabillo II Complaint, Endorsement #12 of the Policy states the following:

> It is understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with: (i) any **Claim(s)**, notices, events, investigations or actions referred to in any of items (1) through (3) below; (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Breach of Fiduciary Duty**, **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way related, directly or indirectly, to any **Event(s)**:
>
> (1)   United States Department of Labor issued a subpoena relating to the DOL's investigation of investments in the Playa Vista land development (more specifically in the matter of an investigation of the Plumber & Pipefitters National Pension Fund, Bricklayers & Towel Trades International Pension Fund, National Electrical Benefit Fund, and Carpenters Pension Fund for Southern California as per subpoena dated April 25, 2002)

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 5

      (2)    United States Department of Labor issued a subpoena directed to the ULLICO, Inc. relating to the investigation of ERISA covered plans that are eligible to purchase ULLICO, Inc. stock. (as per DOL subpoena dated April 11, 2002)

      (3)    United States Department of Labor issued a subpoena to the ULLICO, Inc. Pension Plan and Trust relating to investigation being conducted by DOL to determine whether any person has violated or is about to violate any provision of Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S. C. Section 1134 (a) (1). (as per DOL subpoena dated June 11, 2002)

(hereinafter the "**Events**")

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to a related **Breach of Fiduciary Duty** or related **Wrongful Act** alleged in any of the items (1-3) above, regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action, or the same or different claimants, or is brought in the same or different venue, or resolved in the same or different forum.

In that regard, please be advised that there is no coverage under the Policy for the Carabillo II Complaint because the Carabillo II Complaint arises out of the Events (as that term is defined in Endorsement #12 of the Policy). In particular, the Carabillo II Complaint is directly related to the DOL subpoena that is identified as Event (2) of Endorsement #12. Therefore, the Carabillo II Complaint will also be handled as part of the United States Department of Labor ("DOL") investigation reported to National Union under Policy No. 874-44-03 ("01-02 Policy") on October 30, 2002. Again, the ROR letters are incorporated herein by reference and made a part hereof and as further articulated later in this letter. Since the operative policy for the Carabillo II Complaint is the 01-02 Policy, it is the provisions of that policy that apply to the Carabillo II Complaint.

### Terms and Conditions of the 01-02 Policy Applicable to both the Carabillo I Complaint and the Carabillo II Complaint

As an initial matter, the Notice/Claim Reporting Provisions of Section 8(b) of the 01-02 Policy serve to bring both the Carabillo I Complaint and the Carabillo II Complaint within the period of the 01-02 Policy. In that regard, Section 8(b) of the 01-02 Policy provides the following:

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 6

>   (b) If written notice of a Claim has been given to the Insurer pursuant to Clause 8(a) above, then any Claim which is subsequently made against an Insured and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

Since both the Carabillo I Complaint and the Carabillo II Complaint constitute a Claim alleging Wrongful Acts which are the same as or related to the Wrongful Acts alleged or contained in the DOL investigation, the Carabillo I Complaint and the Carabillo II Complaint will be considered to have been reported when the DOL investigation was reported.

Please also note the potential application of the following exclusions from the 01-02 Policy to both the Carabillo I Complaint and the Carabillo II Complaint: Exclusion (a) of the Policy precludes coverage for "the gaining in fact of any profit or advantage to which an Insured was not legally entitled." To the extent that both the Carabillo I Complaint and the Carabillo II Complaint uncover activities that have resulted in the gaining of any profit or advantage or for restitution or disgorgement of amounts wrongfully withheld, Exclusion (a) would serve to preclude coverage for all payments made on account of such wrongdoing.

Exclusion (b) of the 01-02 Policy states that there will be no coverage for any Claim "arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act, or any knowing or willful violation of any statute (including, but not limited to ERISA);"

Exclusion (e) of the 01-02 Policy precludes coverage for any Claim "alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation." In that regard, it our understanding that a lawsuit was filed by a participant and/or the DOL in the Ironworkers Pension Plan against an individual named Jacob West, a trustee of that plan and a former Ullico director, as well as against other former Ullico directors. This Ironworkers lawsuit apparently led to the DOL investigations into Ullico and, ultimately, culminated in the Thompson Report. National Union reserves its rights to the extent that the Ironworkers lawsuit constitutes pending or prior litigation under the terms of Exclusion (e) of the 01-02 Policy.

Exclusion (g) of the 01-02 Policy precludes coverage for any Claim "alleging, arising out of, based upon or attributable to any act or omission in his, her or its capacity as a Fiduciary or Administrator of any plan, fund or program other than a Plan as defined in this policy, or by reason of his, her or its status as a Fiduciary or Administrator of such other plan, fund or program."

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 7

Exclusion (i) of the 01-02 Policy precludes coverage for any Claim "alleging, arising out of, based upon or attributable to any Wrongful Act as respects the Plan taking place at any time when the Sponsor Organization did not sponsor such Plan or when the Natural Person Insured was not a director, officer, partner or employee or the Sponsor Organization or a Plan."

Also, the 01-02 Policy's definition of Loss does not include, among other things, "(2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which an Insured is not financially liable or which is without legal recourse to the Insured; (6) Benefits, or that portion of any settlement or award in an amount equal to such Benefits, unless and to the extent that recovery of such Benefits is based upon a covered Wrongful Act and is payable as a personal obligation of a Natural Person Insured."

Please be advised that pursuant to Section 2 of the 01-02 Policy entitled Defense Agreement, "the Insurer shall have both the right and duty to defend any Claim against an Insured alleging a Wrongful Act, even if such Claim is groundless, false or fraudulent." The 01-02 Policy also provides, pursuant to its NOTICE provisions that the Insured may elect to assume the defense of the Claim. In such a case, the provisions of Section 2(b) of the 01-02 Policy shall apply, including National Union's right to effectively associate with Ullico in the defense of the Claim.

National Union has been advised that Ullico has retained the law firm of Miller & Chevalier to serve as defense counsel in these matters. In that regard, please be advised that because both the Carabillo I Complaint and the Carabillo II Complaint are related to the DOL investigation, Panel Counsel is required for the defense of these claims pursuant to Section 9 of the 01-02 Policy. Miller & Chevalier is not on the Panel Counsel list and, therefore, National Union does not consent to the retention by Ullico of that firm to serve as defense counsel in these matters. **Please inform us as soon as possible which Panel Counsel law firm has been retained to represent Ullico. National Union does not consent to the retention of a non-panel law firm by Ullico.**

Further, pursuant to Section 2(c) of the 01-02 Policy, "The Insured shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy." On that basis, please provide us with: i) a summary of defense counsel's billing rates, ii) the name of the lead attorney at the law firm assigned to these matters and a summary of that person's expertise and experience in handling ERISA lawsuits and iii) a list of the law firm's staff assigned to this matter and their respective titles. In the event there is any settlement offer or demand in these matters, please immediately provide full particulars to the undersigned and a copy of any document setting forth the proposal. National Union is entitled to a reasonable period of time to review, consider or participate in any settlement discussions prior to any settlement agreement being reached. Also, please arrange for defense counsel to separate the defense fees and expenses rendered in connection with the

#187438v1

Ms. Allison Eisenberg
October 21, 2004
Page 8

Carabillo I Complaint from the defense fees and expenses rendered in connection with the Carabillo II Complaint.

The coverage provided by the 01-02 Policy is excess of any other valid and collectible insurance. Please forward to us copies of any other insurance policies under which Ullico has reported these claims, along with any corresponding coverage letters received from such insurer(s).

AIGTS on behalf of National Union reserves all of National Union's rights, privileges and defenses under the Policy, the 02-03 Policy, the 01-02 Policy, at law and in equity. To the extent that discovery, new information or other developments may later indicate that other terms, conditions, provisions, exclusions or endorsements of the Policy, the 02-03 Policy and of the 01-02 Policy are applicable in addition to those mentioned above, National Union reserves the right to supplement this letter or its coverage defenses if circumstances so warrant. National Union reserves the right to allocate for any uncovered defendants or for any uncovered causes of action asserted in both the Carabillo I Complaint and the Carabillo II Complaint. National Union also reserves the right to deny coverage for these matters and to recover any payments made under the 01-02 Policy (including Defense Costs) if it is determined that all or part of these matters are not covered under the 01-02 Policy. In this regard, enclosed is a Reimbursement Agreement (the "Agreement") confirming that Ullico acknowledges and agrees to return any sums paid under the 01-02 Policy to the extent it may later be determined by a neutral party that there is no coverage for either the Carabillo I Complaint or the Carabillo II Complaint under the 01-02 Policy. Please arrange for Ullico to execute the Agreement and return an executed original to the undersigned as soon as possible.

If you have any questions or comments concerning the above, please do not hesitate to contact us immediately. We await prompt receipt of the above requested information and thank you in advance for your assistance.

Very truly yours,

Samuel R. Paniccia

Enc. (Reimbursement Agreement)

cc:     (Via Facsimile  703-770-7901)
        Daniel Aronowitz, Esq.
        Shaw Pittman
        1650 Tysons Blvd.
        McLean, VA  22102-4859 (w/enc.)

#187438v1

# REIMBURSEMENT AGREEMENT

THIS REIMBURSEMENT AGREEMENT (the "Agreement") is made between AIG Technical Services, Inc. on behalf of National Union Fire Insurance Company of Pittsburgh, Pa ("National Union"), on the one hand, and Ullico Inc. ("Ullico") on the other hand, effective as of the latest date written at the end hereof.

## RECITALS

**WHEREAS,** National Union issued its Employee Benefit Plan Fiduciary Liability Insurance Policy No. 874-44-03 (the "Policy") to Ullico which provides, consistent with its terms and conditions, certain fiduciary liability insurance coverage for the policy period October 30, 2001 to October 30, 2002.

**WHEREAS,** Ullico has provided notice to National Union of (i) the complaint styled as Joseph A. Carabillo v. Ullico, Inc. filed on July 18, 2003 in the United States District Court, District of Columbia, case no. 03CV01556 ("Carabillo I Complaint"); and (ii) the complaint styled as Joseph A. Carabillo v. Ullico Inc. Pension Plan and Trust, et al. filed on May 13, 2004 in the United States District Court, District of Columbia, case no. 04CV00776 ("Carabillo II Complaint") (the Carabillo I Complaint and the Carabillo II Complaint are hereinafter collectively referred to as the "Carabillo Complaints") and National Union has indicated that the Policy potentially covers Ullico for attorneys' fees and costs incurred in connection with the Carabillo Complaints.

#188050v1

3. <u>Reservation of Rights</u>. The parties hereto agree that each party has reserved all rights, claims and defenses under, or with respect to the Policy. No defense of waiver, estoppel or statute of limitations in any reserved or future claims by any of the parties to this Agreement shall commence to run until the final termination of the Carabillo Complaints.

4. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed duly executed and binding.

5. <u>Entire Agreement.</u> The terms and conditions of this Agreement constitute the entire agreement between the parties and there are no other oral or written understandings or agreements between the parties relating to the subject matter of this Agreement. Further, this Agreement shall not be construed to modify any of the terms, conditions or exclusions of the Policy or any of the rights of the parties hereto to which they are otherwise entitled by law.

6. <u>Authority</u>. The parties and signatories hereto represent and warrant that they have read and understand the entire contents of this Agreement and that they have full and complete authority to execute this Agreement.

IN WITNESS WHEREOF, National Union and Ullico (or their duly authorized representatives) execute this Agreement.

    AIG TECHNICAL SERVICES, INC.
    on behalf of
    NATIONAL UNION FIRE INSURANCE
    COMPANY OF PITTSBURGH, PA

    By:_____


    ULLICO

    By:_____

#188050v1