IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ULLICO INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| NATIONAL UNION FIRE | : |
| INSURANCE COMPANY OF | : |
| PITTSBURGH, PA., *et al.* | : |
| | : Civil Action No. 1:06cv00080 (RLJ) |
| Defendant, | : |
| _____ | : |
| | : |
| NATIONAL UNION FIRE | : |
| INSURANCE COMPANY OF | : |
| PITTSBURGH, PA., *et al.* | : |
| | : |
| Counter-Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ULLICO INC. | : |
| | : |
| Counter- Defendant. | : |
| | : |

**DEFENDANT JOHN K. GRELLE'S OPPOSITION
TO NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.'S
<u>MOTION FOR PARTIAL  SUMMARY JUDGMENT</u>**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant John K. Grelle, by his attorneys Offit Kurman, P.A., files this Memorandum in Opposition to National Union Fire Insurance Company of Pittsburgh, Pa.'s ("National Union") Cross-Motion for Partial Summary Judgment, and in support hereof,[1] states:

---

[1] Mr. Grelle reserves his right to incorporate the arguments of other parties as they become known.

1

I.  **INTRODUCTION**

One of National Union's arguments in its pending Cross-Motion for Partial Summary Judgment" (hereinafter "National Union's Memorandum") is that all of the insureds' claims for coverage for the Underlying Litigation "arise from" or "relate to" prior claims for coverage made regarding the U.S. Department of Labor's Investigations (the "DOL Investigations") of Ullico Inc. ("Ullico"). From this, National Union argues that because it awarded some coverage for the DOL Investigations to Ullico and Defendants Grelle, John Carabillo ("Carabillo"), and James Luce ("Luce") (collectively the "Individual Defendants") under Ullico's 2001 Fiduciary Policy, there is no coverage available for any of the Underlying Litigation under Ullico's 2002 Fiduciary Policy. The premise for National Union's argument is that exclusion 5(d) of the 2002 Fiduciary Policy precludes coverage for new claims that arise from or relate to previously reported claims. As demonstrated below, National Union's argument does not warrant summary judgment because the record is insufficient to permit the Court to determine whether the Underlying Litigation arises from, or is related to the DOL Investigations.

II.  **STATEMENT OF FACTS NOT IN DISPUTE**

   **The DOL Investigations**

   1.  In this case, Ullico filed a Motion for Partial Summary Judgment and a supporting Memorandum of Points and Authorities (hereinafter "Ullico's Memorandum") that generally described the Department of Labor's Investigations ("DOL Investigations") of Ullico as subpoenas *duces tecum* (the "Subpoenas") issued during the period of April 2002 through July 2003.  *See* Ullico's Memorandum at pp. 2, 5.

2. Ullico attached copies of the Subpoenas as exhibits to its Memorandum. *See* Exhibit A to Teresa E. Valentine's Affidavit in Support of Ullico's Memorandum.

3. Along with each Subpoena, the relevant DOL Agency issued a generic cover letter that (with minor variations not relevant here) merely explained the general nature of the document requests:

> These documents are necessary and relevant to the above-referenced investigation being conducted by this office pursuant to Section 504 (a)(1) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section 1134 (a)(1), to determine whether any person has violated or is about to violate any provision of Title I of the Act. [2]

*See* Ex. 1 (Subpoenas).

**The Underlying Litigation**

4. Ullico's Memorandum describes the term "Underlying Litigation" as "actions by former senior officers of Ullico," and then lists the following cases: *Carabillo v. Ullico, Inc., et al*., Case No. 1:03:CV01556 ("Carabillo I"); *Carabillo v. Ullico Inc. Pension Plan & Trust, et al., C*ase No. 1:04cv00776. ("Carabillo II"); *Luce v. The Union Labor Life Auxillary Retirement Benefits Plan, et al.,* Case No. 1:03cv1014 ("Luce I"); *Ullico Inc. v. Luce*, Case No. 1:04cv01830 ("Luce II"); *Luce v. Ullico Inc. Pension Plan & Trust, et al,* Case No. 1:05cv851 ("Luce III").

5. Carabillo's claims in Carabillo I allege breach of contract, ERISA, and wrongful termination. The gravamen of Carabillo I is Carabillo's claim that he elected to participate in Ullico's early retirement plan, but that Ullico wrongfully terminated him on

---

[2] The reference lines on the cover letter to each Subpoena are hopelessly overbroad, and merely reference "Ullico, Inc. Pension Plan and Trust" or some other pension plan or fund rather than a specific investigation matter. They do not specify what alleged acts are under investigation. *See* Ex. 1.

3

May 31, 2003—a day before beginning his early retirement—and then wrongfully withheld benefits due under the early retirement plan. *See* Ex. 2 (Carabillo I Complaint).

6.  Similarly, the First Amended Complaint filed against Ullico in Luce I asserts that Ullico Executive Vice President James W. Luce ("Luce") qualified and applied for participation in Ullico's early retirement plan and deferred compensation plan, but that Ullico wrongfully retained Luce's benefits in violation of ERISA. *See* Ex. 3 (First Amended Complaint in Luce I).

7.  Ullico is not only defending claims in the Underlying Litigation--it has also asserted affirmative claims against Carabillo, Luce and Grelle (hereinafter, collectively referred to as the "Individual Defendants") under state and federal law. In particular, Ullico's First Amended Complaint in the case *sub judice* describes Ullico's affirmative claims against the Individual Defendants as follows:

> Plaintiff Ullico is engaged in collateral civil litigation with Individual Defendants, the former officers of Ullico, arising out of Individual Defendants' breaches of the fiduciary duties they owed to Ullico, its subsidiaries, and a number of Ullico-sponsored employee benefit plans (collectively, "Underlying Litigation").

Ullico's "First Amended Complaint for Damages, Declaratory Judgment and Injunctive Relief" (Case No. 1:06cv00080).

8.  Ullico's "Amended Answer and Counterclaim" in Carabillo I (the "Carabillo I Counterclaim") (filed October 17, 2003) asserts thirteen affirmative counts against the Individual Defendants, including claims for alleged breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment; professional negligence,

4

and breach of employment agreement. *See* Ex. 4 (Carabillo I Counterclaim) at individual counts.[3]

9.  Similarly, Ullico's "Consolidated Answer and Counterclaim" in *In re Ullico Litigation,* Master Docket and Case Number 1:03CV01556 (RJL), ("The Consolidated Counterclaim") (attached as Exhibit 2 to National Union's Cross-Motion), includes affirmative claims that the Individual Defendants breached duties owed to Ullico. *See* Consolidated Counterclaim at Counts V (¶136)( and Count VI (¶144) (both alleging civil conspiracy).

10.  Notwithstanding the foregoing, National Union filed a Cross-Motion for Summary Judgment that alleges, among other things, that Exclusion 5(d) of Ullico's 2002 Fiduciary Policy precludes coverage to Ullico under the 2002 Policy for the Underlying Litigation. *See* National Union's Memorandum, pp. 15-16.

11.  Exclusion 5(d) of the 2002 Fiduciary Policy states that:

> 5.  National Union shall not be liable to make any payment for Loss in connection with a *Claim* made against an Insured(s):
>
> (d) alleging, arising out of, based upon, or attributable *to the facts alleged*, *or to the same or related Wrongful Act* alleged or contained, *in any claim* which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it my succeed in time.

*See* Ex. 5[4] (National Union's Employee Benefit Plan Fiduciary Liability Insurance

---

[3]  Ullico's Counterclaim in Carabillo I includes claims that arguably arose in 1997-98—before any DOL Investigation. *See Carabillo v. Ullico, Inc., et al.*, Case No. 1:03:CV01556 (RLJ) Amended Answer and Counterclaim ¶¶ 23-35, and individual counts.

[4]  To avoid another voluminous Exhibit, only the portions of the Policy that are discussed herein are attached as an Exhibit. However, should the Court wish to view the entire policy, it appears as Exhibit 3 to National Union's Memorandum Cross Motion.

Policy Number 495-38-35 Policy Period October 31, 2002 to October 30, 2003)

(emphasis added)

       12.    The 2002 Fiduciary Policy defines the term "Claim" as follows:

'Claim' means:

(1) A written demand for monetary, non-monetary or injunctive relief;

(2) a civil, criminal, or arbitration proceeding for monetary, non-monetary, or injunctive relief which is commenced by: (i) the service of a complaint or similar pleading…or;

(3) a formal agency or regulatory adjudicative proceeding to which an insured is subject, or

(4) any fact finding investigation by the U.S. Department of Labor, [or] the Pension Benefit Guaranty Corporation …….

*Id.* at § 3 "Definitions."

       13.    In Section 3 - "Definitions," the 2002 Policy defines the term "Wrongful Act" as follows:

(1) as respects an insured, a violation of any of the responsibilities, obligations, or duties imposed upon Fiduciaries by Employee Benefit Law with respect to a Plan; or any matter claimed against an Insured solely by reason of his, her, or its status as a Fiduciary, the Plan, or the Sponsor Organization, but only with respect to a Plan; and….

(2) As respects an Administrator, any act, error, or omission solely in the performance of one or more of the following administrative duties or activities but only with respect to a Plan: (i) counseling, employees, participants, and beneficiaries; or (ii) providing interpretations; or (iii) handling of records; or activities affecting enrollment, termination, or cancellation of employees, participants and beneficiaries under the plan or any matter claimed against an insured solely by reason of his, her, or its status as an Administrator, the Plain, or the Sponsor Organization, but only with respect to a Plan;

(3) as respects a Natural Person Insured, any matter claimed against him or her arising out of his or her service as a Fiduciary or Administrator of any multiemployer plan as defined by ERISA, but only if such service is at the specific written request or direction of the Sponsor Organization and

6

such multiemployer plan is added by specific written amendment attached to this policy….

*Id*. at Section 3 "Definitions."

## III. STATEMENT OF FACTS IN DISPUTE

1. For purposes of this Motion, John Grelle disputes that the moving parties have established what alleged Wrongful Acts were included within the "DOL Investigations." *See e.g.* Ex. 6 (January 15, 2005 letter from Natalie G. Louis of AIG Technical Services to Stuart P. Ross, Esq.).

2. Ullico's moving papers do not specify what Wrongful Acts taken by Ullico, its pension plans, or the Individual Officers were the subject matter of the DOL Investigations. *See e.g.,* Ullico's Memorandum at p. 2, 5. Rather, Ullico's Memorandum and attachments merely state that the DOL issued subpoenas *duces tecum* for documents pertaining to Ullico stock transactions and its employee benefit plans. *Id.*

3. John Grelle disputes that the Subpoenas establish what the Wrongful Acts were that DOL Investigated because the Subpoenas merely request documents--they do not specify the nature and scope of the DOL Investigations, state what subject matter under investigation, or specify any Wrongful Act that was under scrutiny.[5] *See* Ex. 1 (Subpoenas).

4. John Grelle disputes that National Union has established what was involved in the "DOL Investigations." *See* National Union's Memorandum at p. 5, ¶5. National Union's Memorandum vaguely states that DOL Investigation pertained to

---

[5] Ullico's Amended Complaint is equally vague in its description of the DOL Investigations. *See* "Ullico Inc.'s First Amended Complaint for Damages, Declaratory Judgment and Injunctive Relief" at ¶¶ 1,3.

7

"alleged improprieties of Ullico senior management…," but it fails to state what the alleged improprieties were. *Id.*

5. National Union's own exhibits establish that it has no specific understanding of the subject matter of the DOL Investigation. For instance, on January 15, 2003, *after having reviewed the DOL subpoenas*, National Union's claims administrator Natalie Louis wrote to Ullico and stated that National Union's understanding of what was involved in the DOL investigation remained unclear:

> Although the DOL Subpoenas indicate that the DOL has undertaken a fact-finding investigation, *it is unclear whether a Claim has, in fact, been made.* However, National Union will be treating this matter as a Claim against Ullico, *subject to receipt of more detailed information,* further development of the facts and under a full reservation of rights.

Ex. 6; at pp. 1-2 (emphasis added). Because the Subpoena left National Union unclear about what the DOL Investigation involved, National Union asked Ullico to provide "more particularized information" relating to particular DOL subpoenas and a "written report" concerning its understanding of the underlying facts and of the DOL investigation. *Id.* at p. 2.

6. Consequently, because the subject matter of the DOL Investigation has not been established, John Grelle disputes that all claims of the Underlying Litigation arise out of the DOL Investigation.

7. John Grelle disputes that the claims of the Underlying Litigation universally arise from or relate to the DOL's Investigations—some may, others may not—but to the extent that National Union alleges that there is a clear relationship between the Underlying Litigation and the DOL Investigation, a genuine dispute of material fact exists.

8. John Grelle disputes that Carabillo I arises from or relates to the DOL Investigations. In Carabillo I, Carabillo claims that Ullico wrongfully terminated him and wrongful retained his benefits—these matters are not stated, alluded to, or in any way mentioned in any of the DOL Subpoenas, and do thus not appear to have any relation to the DOL Investigations. *Compare* Ex. 1 (Subpoenas) with Ex. 2 (Carabillo I Complaint). Likewise, Carabillo I does not mention the DOL Investigation, and appears to have no relation to it. Ex. 2.

9. John Grelle disputes that Luce I arises from or relates to the DOL Investigations. For example, the Complaint in Luce I asserts that Ullico wrongfully retained Luce's benefits, but it makes no mention of the DOL Investigations (the DOL Subpoenas do not mention the matters set out in Luce I, either). *Compare* Ex. 1 (Subpoenas) *with* Ex. 3 (First Amended Complaint in Luce I).

10. Furthermore, while some of Ullico's affirmative claims in the Underlying Litigation may arise from the DOL Investigations, Ullico's own description of its claims in the Underlying Litigation states nothing about DOL Investigations:

> Plaintiff Ullico is engaged in collateral civil litigation with Individual Defendants, the former officers of Ullico, arising out of Individual Defendants' breaches of the fiduciary duties they owed to Ullico, its subsidiaries, and a number of Ullico-sponsored employee benefit plans (collectively, "Underlying Litigation").

Ullico's First Amended Complaint, Case No. 1:06cv0080 at ¶1.

11. Likewise, Ullico's thirteen count "Amended Answer and Counterclaim" in Carabillo I (the "Carabillo I Counterclaim") (filed October 17, 2003) claims that the Individual Defendants breached fiduciary duties to Ullico, aided and abetted those breaches, unjustly enriched themselves; committed professional negligence, and

breached their employment agreement, yet the DOL Subpoenas make no reference to these alleged Wrongful Acts. *Compare* Ex. 1 (Subpoenas) *with* Ex. 4 (*Carabillo v. Ullico, Inc., et al.*, Case No. 1:03:CV01556 (RLJ) Amended Answer and Counterclaim ¶¶ 23-35, and individual counts.

IV.   **SUMMARY JUDGMENT STANDARDS**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

To prevail at summary judgment, the moving party must provide sufficient factual support that it is entitled to judgment as a matter of law by "identifying… portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.*; *Student Loan Marketing Ass'n v. Riley,* 907 F. Supp. 464, 468 (D.D.C. 1995). In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).

V.  **THE COURT SHOULD DENY NATIONAL UNION'S MOTION WITH RESPECT TO EXCLUSION 5(d) BECAUSE WHETHER THE UNDERLYING LITIGATION ARISES FROM THE DOL INVESTIGATION IS IN DISPUTE**

  A.  **It Is Impossible to Determine that the Underlying Litigation Arises from or Relates to the Same Alleged Wrongful Acts At Issue in the DOL Investigations Because the Record Does Not Establish What those Wrongful Acts Are**

National Union's Memorandum argues that exclusion 5(d) of the 2002 Policy precludes coverage for the Underlying Litigation because it arises from or relates to the same alleged Wrongful Act of Ullico's previously reported "Claim" for coverage for the DOL Investigations. National Union's Memorandum states:

> As set forth in the Counterstatement of Material Facts, *there is little question* that but for the issues raised by the DOL Investigation, the Underlying Litigation claims would not have been brought. Thus, it is beyond peradventure that the Carabillo and other claims allege, arise out of, are based upon facts alleged or to the same Wrongful Acts at issue in the DOL Investigation.
>
> \*   \*   \*
>
> Thus, Ullico simply cannot dispute that the Underlying Litigation claims against it are 'alleging, arising out of, based upon, or attributable to' the facts alleged or the same Wrongful Acts at issue in the DOL Investigation. Therefore, the claims in the Underlying Litigation are excluded from coverage under the 2002 Fiduciary Policy.

*See* National Union's Memorandum, pp. 15-16 (emphasis added).

National Union's argument on this issue fails because in order for Exclusion 5 (d) to apply, National Union must show that Claim made for Underlying Litigation Claim is based on, arises out of, or relates to the facts alleged, or to the same or related Wrongful Act of a previously reported claim, *i.e.,* the DOL Investigations. Ex. 5 at Exclusion 5(d). However, because National Union has not made a proper factual showing to establish

11

what facts or Wrongful Acts gave rise to the "Claim" made regarding the DOL Investigation, it cannot establish that the Underlying Litigation arises from or relates to the same alleged Wrongful Acts.[6] *See supra* Disputed Facts ("DF") ¶¶ 2 through 5.

As discussed in the Statement of Facts in Dispute *supra*, neither Ullico nor National Union's Memoranda identified what Wrongful Acts gave rise to the DOL Investigation, or what the subject matter of the DOL Investigations was. DF ¶¶2, 5. While National Union and other litigants may point to DOL Subpoenas to try to establish what Wrongful Acts were at issue in the DOL investigation, the Subpoenas merely request documents, and do not specify any alleged "Wrongful Acts" or allege wrongdoing of any kind. Ex. 1.

Rather than establish what Wrongful Acts were involved in the DOL Investigations, National Union's Exhibits confirm that National Union is unclear about what the alleged "Wrongful Acts" were. *See* DF ¶ 5 and Ex. 6 (this letter was also attached to National Union's Motion as Exhibit 5). In particular, National Unions' claims administrator, Natalie Louis, wrote to Ullico and expressed her lack of

---

[6] The Policy specifically defines the term "Wrongful Act" as follows:

> (1) as respects and insured, a violation of any of the responsibilities, obligations, or duties imposed upon Fiduciaries by Employee Benefit Law with respect to a Plan; or any matter claimed against an Insured solely by reason of his, her, or its status as a Fiduciary, the Plan, or the Sponsor Organization, but only with respect to a Plan; and….
> (2) As respects and Administrator, any act, error, or omission solely in the performance of one or more of the following administrative duties or activities but only with respect to a Plan: (i) counseling, employees, participants, and beneficiaries; or (ii) providing interpretations; or (iii) handling or records; or activities affecting enrollment, termination, or cancellation of employees, participants and beneficiaries under the plan or any matter claimed against an insured solely by reason of his, her, or its status as an Administrator, the Plain, or the Sponsor Organization, but only with respect to a Plan;
> (3) as respects a natural Person Insured, any matter claimed against him or her arising out of his or her service as a Fiduciary or Administrator of any multiemployer plan as defined by ERISA, but only if such service is at the specific written request or direction of the Sponsor Organization and such multiemployer plan is added by specific written amendment attached to this policy….

*See* Ex. 5 (2002 Policy) Part 3 - "Definitions," "Wrongful Act"

12

understanding of what was at issue in the DOL Investigation. Ex. 6. Ms. Louis asserted that it was "unclear if any Claim ha[d], in fact, been made…" and that she needed more information regarding the underlying facts and investigation." DF ¶ 5; Ex. 6.

The dearth of information in the records about the DOL Investigation renders it impossible for the Court to conclude at summary judgment that the Wrongful Acts alleged in the Underlying Litigation arise out of, are "based upon, or [are] attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained, in any Claim…" that formed the basis of the DOL Investigation. *See* Ex. 5, Exclusion 5(d). Having failed to specify what alleged Wrongful Acts the DOL investigated, National Union cannot establish that the all of the alleged Wrongful Acts of the Underlying Litigation arose out of, or relate to the Wrongful Acts at issue in the DOL Investigations. Ex. 6 at p 1-2. Thus, for want of this critical component of its argument, National Union cannot establish as a matter of law that Exclusion 5(d) of the 2002 policy applies here and precludes coverage under the 2002 policy.

      **B.**    **The Underlying Litigation Does Not Universally Relate To Wrongful Acts that Would Have Been Encompassed By a Claim Made with Respect to the DOL Investigation**

The cover letters accompanying the DOL Subpoenas stated that the DOL issued the Subpoenas under the aegis of ERISA Title I. Ex. 1. The stated purposes of Title I is the "protection of employee benefit rights" along with the "protection of interstate commerce and the interests of participants in employee benefit plans and their beneficiaries….". *See* 29 U.S.C. §1001. Although the record precludes the Court from knowing what alleged Wrongful Acts were at issue in the DOL Investigations, the pleadings (including Ullico's Counterclaims) in the Underlying Litigation allege some

13

claims and Wrongful Acts claims that are not with the scope of the Title I, and thus were not the subjects of the DOL's Investigations.

For example, Luce and Carabillo's claims against Ullico are individual claims for breach of contract, wrongful termination and wrongful retention of pension benefits— matters that fall outside of the Title I and the DOL's investigatory power. *See* DF ¶¶8-9 and Ex. 2-3. The Carabillo I and Luce I claims do not mention the DOL Investigations at all, and the DOL's Subpoenas do not mention the subject matter of the Carabillo and Luce claims. *Id.* The same is true with respect to some of Ullico's counterclaims in Carabillo I, which allege that individual officers allegedly breached their fiduciary duties and unjustly enrichment themselves.[7] DF ¶¶10-11; Ex. 4. The DOL Subpoenas do not specify these matters as the topics of their for document requests. Ex. 1.

At a minimum, there is a genuine dispute of material fact as to whether the same or related alleged Wrongful Acts served as the predicates the DOL Investigation and the Underlying Litigation. This is especially true because (as mentioned above) the records does not clearly establish the Wrongful Acts at issue in the DOL Investigation.[8]

    **C.**    **National Union's Argument that "but for the DOL Investigations, the Underlying Litigation Is Conclusory and Lacks Evidentiary Support**

Finally, National Union's Memorandum argues that but for the DOL Investigations, the Underlying litigation would not have arisen. *See* National Union's Memorandum, p. 15. National Union's Memorandum does not cite any support for this

---

[7] Count III of Ullico's Counterclaim in Carabillo I alleges that Grelle (as an alleged fiduciary) breached fiduciary duties, aided and abetted the same, and allegedly was unjustly enriched by purported engaging in self-interested transaction and permitting so-called "waste." Count XIII in Carabillo I alleges a breach of fiduciary duty to Ullico for allowing Ullico to make loans to P&I investors, a company operated by Ullico's former Chairman's (Robert Georgine's) nephew. Ex. 2 (Carabillo I Counterclaim)

[8] For example, Ullico filed its Counterclaims in Carabillo I on October 17, 2003, which alleges Wrongful Acts would fall within the policy period of the 2002 policy.

14

proposition. *Id.* Instead, as discussed in Section V.B., *supra,* the pleadings in the Underlying Litigation refute National Union's conclusion because their claims do not rely upon the DOL Investigations, and, depending on the pleading, either scarcely mention the DOL Investigations or do not mention them at all.

Instead, the record is ripe with information that suggests that other independent events—such as the precipitous decline of the value of Ullico's investments in Global Crossing, or the Individual Defendants' desire to cash out significant sums of money from their retirement plans—would have spawned the Underlying Litigation between Ullico and the Individual Officers even if the DOL Investigations never occurred. *See* Exhibit 2 to National Union's Memorandum (Ullico's Consolidated Counterclaim in Case No. 03cv01556 RJL) at ¶22 (correlating decline Ullico stock value with Global Crossing stock price).

National Union's Cross Motion fails to demonstrate that the Underlying Litigation is causally related to the DOL Investigation. For this reason, and those stated above, National Union's Cross Motion for Summary Judgment fails to satisfy Rule 56 insofar as the narrow issue of whether exclusion 5 (d) of the 2002 Policy bars any coverage under that Policy.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Defendant John Grelle respectfully requests that this Honorable Court deny Ullico's Motion for Partial Summary Judgment.

                                                Respectfully submitted,

<u>1/18/2007</u>                           <u>         /s/                              </u>
Date                                Timothy C. Lynch, Unified Bar No. 461651
                                            tlynch@offitkurman.com
                                            (301) 575-0336
                                            Offit Kurman, P.A.
                                            8171 Maple Lawn Boulevard, Suite 200
                                            Maple Lawn, Maryland 20759


                                             <u>         /s/                              </u>
                                            Eric J. Pelletier, Unified Bar No. 454794
                                            epelletier@offitkurman.com
                                            (301) 575-0339
                                            Offit Kurman, P.A.
                                            8171 Maple Lawn Boulevard, Suite 200
                                            Maple Lawn, Maryland 20759

                                            *Attorneys for Defendant John Grelle*


## CERTIFICATE OF SERVICE

     I hereby certify that on this 18th[th] day of January, 2007 a true and correct copy of John K. Grelle's Opposition To National Union's Cross Motion For Summary Judgment was served electronically upon counsel of records via electronic case filing or as otherwise required by the Local Rules


                                            <u>         /s/                              </u>
                                            Eric Pelletier


I:\53\530038\001\86\Opp to Natl Union's Cross Motion for Sum Jud.01.17.06.doc