# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ULLICO INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:06cv00080 (RJL) |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, | : | |
| and | : | |
| AMERICAN INTERNATIONAL | : | |
| SPECIALTY LINES INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Counterclaim Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ULLICO INC., | : | |
| | : | |
| Counterclaim Defendant. | : | |

### ULLICO'S OPPOSITION TO NATIONAL UNION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

**SECTION**                                                                                          **PAGE**

I.     Introduction ................................................................................................................. 1

II.    Counterstatement of Genuine Issues ........................................................................... 3

III.   Standard for Partial Summary Judgment ..................................................................... 6

IV.   Argument ..................................................................................................................... 7

        A.    The 2002 Fiduciary Policy obligates National Union to cover the
             Underlying Litigation ........................................................................................ 7

             1.    The plain language of Exclusion 5(d) does not apply to the
                    Underlying Litigation ................................................................................ 7

             2.    District of Columbia courts have not adopted a "but for" test when
                    determining whether a claim arises from or is based upon facts
                    alleged or Wrongful Act alleged in a prior claim, and even if the
                    "but for" test is used, Exclusion 5(d) does not apply ................................. 8

                    a.    District of Columbia courts have not adopted a "but for"
                          test when determining whether a claim arises from or is
                          based upon facts alleged or Wrongful Acts alleged in a
                          prior claim…………………………………………….................... 9

                    b.    Even if the Court determines the "but for" test should be
                          applied, the facts in the instant case do not satisfy such a
                          test ........................................................................................ 11

                    c.    The Undisputed Facts evidence that the Underlying
                        Litigation does not fall within Exclusion 5(d) of the 2002
                        Fiduciary Policy ........................................................................ 15

        B.    Ullico's motion is not only relevant but appropriate ........................................... 16

C.    National Union is required to pay Ullico's defense costs because the panel counsel requirement in Clause 9 does not apply to the Underlying Litigation ........................................................................................................ 16

1.    By its own terms, the panel counsel requirement of Clause 9 of the 2001 Fiduciary Policy applies only to certain types of proceedings and the Underlying Litigation is not among them .................................... 16

2.    Clause 9 of the 2002 Fiduciary Policy does not apply to the Underlying Litigation because of its differing policy language .............. 20

D.    National Union is obligated to pay Ullico's defense costs in the DOL Investigations because any breach of Clause 9 is immaterial and does not void National Union's obligations under the 2001 Fiduciary Policy. ................. 21

V.    Conclusion ...................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)..............................................7

*Board Of Ed. Of Charles Co., Maryland v. St. Paul Fire & Marine Insurance
  Co.*, 420 F. Supp. 491 (D. Md. 1975) ........................................................................22

*First Financial Insurance Co. v. LaPointe*,
  No. 04-0413, 2005 WL. 2218973, at *1 (S.D.N.Y. Sept. 12, 2005)...........................13

*Goodheart-Wilcox Co. v First National Insurance Co. of N. America, Inc.*,
  No. 00C0411, 2001 WL. 501194, at *1 (N.D. Ill. May 8, 2001)..........................12, 13

*Holcomb v. Powell*,
  433 F.3d 889 (D.C. Cir. 2006) ....................................................................................7

*Holman v. Williams,*,
  436 F. Supp.2d 68 (D.C. Cir. 2006)..............................................................................7

*Joseph A. Carabillo v. Ullico Inc.*,
  03cv01556 (D.D.C.)...................................................................................................4, 6

*Mount Vernon Insurance Co. v. Creative Housing Ltd, et al.*,
  668 N.E.2d 404 (N.Y. 1996).......................................................................................13

*Philadelphia Indemnity Insurance Co. v. Maryland Yacht Club, Inc.*,
  742 A.2d 79 (Md. Ct. Sp. App. 1999).........................................................................10

*Shoppers Food Warehouse v. Morneo*,
  746 A.2d 320 (D.C. 2000) ..........................................................................................10

*Sigmund v. Progressive Northern Insurance*,
  374 F. Supp. 2d 33 (D.D.C. 2005) ..............................................................................10

*Spears v. Nationwide Mutual Insurance Co.*,
  254 F. Supp. 2d 144 (D.D.C. 2003) ....................................................................8, 9, 10

*In re Speigel Inc.*,
  No. 03-11540, 2006 WL. 2577825, at *1 (S.D.N.Y. Aug. 16, 2006)..........................20

*Steven v. United General Title Insurance Co.*,
  801 A.2d 61 (D.C. 2002) ......................................................................................15, 22

*U.S. Underwriters Insurance Co. v. Val-Blue Corp.*,
647 N.E.2d 1342 (N.Y. 1995)................................................................13

*Vermont Marble Co. v. Baltimore Contractors, Inc.*,
520 F. Supp. 922 (D.D.C. 1981) ...........................................................22

## STATUTES

§ 502(a)(2), 29 U.S.C. § 1132(a)(2)..........................................................18, 19

Fed. R. Civ. P. 56(c) ...............................................................................7

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ULLICO INC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 1:06cv00080 (RJL) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al., | : | |
| Defendants. | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | : | |
| Counterclaim Plaintiffs, | : | |
| v. | : | |
| ULLICO INC., | : | |
| Counterclaim Defendant. | : | |

### ULLICO'S OPPOSITION TO NATIONAL UNION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff/Counterclaim Defendant, Ullico Inc. ("Ullico"), by and through it attorneys, hereby respectfully submits this Reply Memorandum in Support of its Motion for Partial Summary Judgment and in Opposition to National Union Insurance Company of Pittsburg, Pa.'s ("National Union") Cross-Motion for Partial Summary Judgment.

## I.    Introduction

The only questions brought before this Court in Ullico's Motion for Partial Summary Judgment, were (1) whether the panel counsel requirement of National Union's 2001 and 2002 Fiduciary Policies applied to the Underlying Litigation, and (2) whether the panel counsel

requirement was enforceable against Ullico with respect to the DOL Investigations of Ullico under the 2001 Fiduciary Policy.[1] In response, National Union's Cross-Motion for Partial Summary Judgment raises the question of whether the 2001 and 2002 Fiduciary Policies provide coverage for the claims at issue in the DOL Investigations and the alleged resulting Underlying Litigation.

First, National Union asserts that the claims in the Underlying Litigation "arise out of, are based upon or attributable to" the allegations in the DOL Investigations and, thus, are precluded from coverage by Exclusion 5(d) of the 2002 Fiduciary Policy.  Exclusion 5(d) of the 2002 Fiduciary Policy, however, does not apply because the Underlying Litigation does not arise out of, and is not based upon or attributable to the allegations in the DOL Investigations.  There were no allegations.

Second, National Union asserts that the panel counsel requirement of the 2001 Fiduciary Policy applies to the Underlying Litigation because it is "with respect to" the very same matters in the DOL Investigations.  The undisputed facts, however, demonstrate that the claims in the Underlying Litigation do not constitute claims with respect to the DOL Investigations.

Ultimately, National Union has attempted to use the panel counsel requirement as nothing more than a convenient excuse to avoid reimbursing Ullico for its defense costs and to legitimize the inexplicable priority payments made to Joseph A. Carabillo ("Carabillo"), James W. Luce ("Luce"), and John K. Grelle ("Grelle") (collectively the "Individual Defendants").  As such, Ullico is entitled to summary judgment on its motion and National Union's motion must be denied.

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Ullico's Memorandum in Support of its Motion for Partial Summary Judgment.

II.    **Counterstatement of Genuine Issues**

Ullico respectfully submits the following Counterstatement of Genuine Issues in response to the "Undisputed Facts" presented in National Union's Cross-Motion for Partial Summary Judgment. Ullico objects to several of National Union's purported "Undisputed Facts", both material and immaterial, because they are unsupported or contravened by the evidence presently known to the parties and before the Court.

Ullico disputes that "Clause 9 of the 2001 Fiduciary Policy requires that the Insured shall select a defense firm from list of panel counsel firms attached to the policy as Appendix A to conduct the defense of any claim 'with respect to,' among other things, a fact-finding investigation by the Department of Labor." (National Union Br. at 4, ¶ 2.) Clause 9 of the 2001 Fiduciary Policy actually provides: "[t]his clause *only applies* with respect to: (1) an agency proceeding or investigation as defined in either paragraphs (c)(4) or (5) or Clause 3, Definitions, or (2) a class or representative action." (Ullico Compl. Ex. I at Clause 9.[2]) (emphasis added)

Ullico also disputes that the DOL Investigations "and related subpoenas arose from or were related to alleged improprieties of Ullico's senior management, including Robert Georgine ("Georgine")," Carabillo, Grelle and Luce. (National Union Br. at 5, ¶ 5.) The DOL subpoenas only request documents and do not indicate a cause of the DOL investigations. (*See* Valentine Aff. at Ex. A.[3])

Ullico disputes that with respect to the DOL Investigations "[n]otwithstanding repeated written and verbal requests that it do so, (Fine Decl., Exh. A), Ullico has willfully and steadfastly refused to utilize panel counsel, as required by the express terms of the 2001 Fiduciary Policy."

---

[2]    All citations to exhibits attached to Ullico's First Amended Complaint for Damages, Declaratory Judgment and Injunctive Relief are made as follows: "Ullico Compl. Ex. __ at __."
[3]    All citations to exhibits attached to the Affidavit of Teresa E. Valentine dated October 31, 2006 in support of Ullico's Motion for Partial Summary Judgment are made as follows "Valentine Aff. at Ex. __."

(National Union Br. at 5, ¶ 7.)[4]  Ullico is currently being defended in the DOL Investigations by the Groom Law Group which is the successor of Groom and Nordberg – a firm listed as panel counsel on Appendix A of National Union's 2001 and 2002 Fiduciary Policies.  (*See* Ullico Compl. Ex. I at Appendix A; Ullico Compl. Ex. J at Appendix A; Burns Aff. at Ex. B.[5])

Ullico disputes that "Ullico's counsel is also required to comply with National Union's litigation guidelines."  (National Union Br. at 5, ¶ 8.)  Ullico's counsel is not required to comply when National Union has failed to fulfill its obligations under the policies.  The Fiduciary Policies simply do not contains such a requirement.  (*See* Ullico Compl. Ex I and J.)  The Policies give Ullico control of the defense.  Specifically, National Union has only paid $273,382.26 of approximately $7 million of defense costs incurred by Ullico for the DOL Investigations and Underlying Litigation.  (*See* McGlone Aff. ¶ 5. [6])

Further, Ullico disputes that "[e]very other claimant on the 2001 Fiduciary Policy (e.g. Luce, Grelle, and Carabillo, among others) has utilized panel counsel . . ."  (National Union's Br. at 5, ¶ 9.)  Carabillo, Luce and Grelle initially used non-panel counsel prior to switching to O'Melveny & Meyers LLP – a panel counsel firm – to defend them against the Counterclaim asserted by Ullico and Ullico-related entities in *Joseph A. Carabillo v. Ullico Inc.*, 03cv01556 (D.D.C.), under the 2001 Fiduciary Policy.  *See* Pl.'s Ex. 1.[7]

---

[4]   Interestingly, National Union cites as support for this statement Exhibit A of the declaration of Lawrence Fine.  However, Mr. Fine's declaration does not reference nor attach any such an exhibit.

[5]   All citations to exhibits attached to the Affidavit of Timothy W. Burns dated October 31, 2006 in support of Ullico's Motion for Partial Summary Judgment are made as follows "Burns Aff. at Ex. __."

[6]   All citations to the Affidavit of Patrick McGlone dated October 31, 2006 in support of Ullico's Motion for Partial Summary Judgment are made as follows "McGlone Aff. at ¶ __."   All citations to exhibits attached to the McGlone Affidavit are made as follows "McGlone Aff. at Ex. __."

[7]   The numbered exhibits attached to the Affidavit of Timothy W. Burns dated January 19, 2007 in support of Ullico's Reply Memorandum in Support of its Motion for Partial Summary Judgment and in Opposition to National Union's Cross-Motion for Partial Summary Judgment are hereinafter referred to as "Pl.'s Ex."

Ullico most certainly disputes that "[t]he claims in the 'Underlying Litigation,' as defined by Ullico, allege, arise out of, are based upon or are attributable 'to the facts alleged, or to the same or related Wrongful Act alleged or contained' in the DOL Investigations, and therefore are excluded from coverage under the 2002 Fiduciary Policy." (National Union's Br. at 6, ¶ 12.) This is a self-serving legal conclusion offered without any factual support.  As Ullico's arguments will show, the claims in the Underlying Litigation do not arise out of, and are not based upon or attributable "to the facts alleged, or to the same or related Wrongful Act alleged or contained" in the DOL Investigations, and, thus, are not excluded under the 2002 Fiduciary Policy.  The DOL Investigation are just that – investigations – and do not allege facts or Wrongful Acts.

Ullico disputes that it sought coverage for defense costs from National Union solely under the 2001 Fiduciary Policy.  (*See* National Union's Br. at 7, ¶ 16.)  Ullico sent notice of the DOL investigations and National Union acknowledged notice.  (*See* National Union's Br. at 5, ¶ 6.)  Ullico sought coverage for defense costs from National Union under both the 2001 and 2002 Fiduciary Policies.  (*See* McGlone Aff. at Ex. B.)

Ullico disputes that "the Carabillo claims alleged, arose out of, were based upon and were attributable to the facts alleged or to the same Wrongful Acts at issue in the DOL Investigation." (National Union Br. at 8, ¶ 18.)  This is a self-serving legal conclusion offered without any factual support.  Ullico's arguments will show, the claims in the Underlying Litigation, including counterclaims, do not arise out of, and are not based upon or attributable "to the facts alleged, or to the same or related Wrongful Act alleged or contained" in the DOL Investigations.

Ullico disputes that the Counterclaim filed by Ullico and related entities against Carabillo, Grelle, Luce and several other parties, in response to the Carabillo I complaint is

"based upon claims alleging, arising out of, based upon and attributable to the facts alleged or to the same Wrongful Acts at issue" in the DOL Investigations.  (National Union's Br. at 8, ¶ 19.) This is also a self-serving legal conclusion offered without any factual support.  Ullico's arguments will show, the claims in the Underlying Litigation, including counterclaims, do not arise out of, and are not based upon or attributable "to the facts alleged, or to the same or related Wrongful Act alleged or contained" in the DOL Investigations.

Ullico disputes that "[t]he defendants in Ullico's Counterclaim, Carabillo, Grelle, Luce and Georgine, . . . as required by the 2001 Fiduciary Policy's Clause 9, retained their respective panel counsel."  (National Union's Br. at 9, ¶ 20.)  As stated before, Carabillo, Luce and Grelle initially used non-panel counsel prior to switching to O'Melveny & Meyers to defend them against the Counterclaim asserted by Ullico and Ullico-related entities in *Joseph A. Carabillo v. Ullico Inc.*, 03cv01556 (D.D.C.) under the 2001 Fiduciary Policy.  *See* Pl.'s Ex. 1.

Finally, Ullico disputes that "National Union has reimbursed Ullico . . . for those defense costs that National Union was able to discern from Ullico's incomplete and redacted invoices were actually incurred in defense of the claims against Ullico, including those incurred in the DOL Investigation and resulting Underlying Litigation."   (National Union Br. at 9, ¶ 23.) National Union's counsel, David Ades, in a letter dated October 11, 2006, explained National Union had hired an outside auditing firm which "indicated that even though other fees and expenses did not fall into any specific category of uncovered fees or costs . . . more information was needed about those fees and expenses in order to determine if they were, in fact, rendered solely in defense of allegation of *violations of ERISA made against Ullico*."  Pl.'s Ex. 2.

### III.    Standard for Partial Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed demonstrate that "there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006); *Holman v. Williams*, 436 F. Supp. 2d 68, 73-74 (D.D.C. 2006).  An issue is "material" if it might affect the outcome of the case under governing law.  *Id.*

## IV.    Argument

### A.    The 2002 Fiduciary Policy obligates National Union to cover the Underlying Litigation.

#### 1.    The plain language of Exclusion 5(d) does not apply to the Underlying Litigation

National Union asserts that Exclusion 5(d) of the 2002 Fiduciary Policy excludes coverage of the Underlying Litigation.  National Union's sole basis for this assertion is the contention that the claims in the Underlying Litigation are "based upon or arise out" of the DOL Investigations.  National Union builds its arguments on the language "whether a claim is based upon or arises out of an earlier *claim*."  While this language is often utilized in contracts, including insurance policies, it is not the language used in the 2002 Policy.  Rather, Exclusion 5(d) of the 2002 Policy precludes coverage only for:

> Loss in connection with a Claim made against an Insured(s) . . . alleging, arising out of, based upon or attributable to the *facts alleged*, or to the same or *related Wrongful Act alleged or contained* in any claim . . .

(Ullico Compl. Ex. J.)

This language is narrower than the reading National Union wants this Court to accept. Even if the DOL Investigations are considered a Claim, this does not satisfy the actual language in Exclusion 5(d) because the DOL Investigations are simply investigations of the facts. Subpoenas have been issued requesting information, and Ullico has responded to the subpoenas.

However, there have been no *facts alleged* nor any *Wrongful Acts alleged* in the DOL Investigations against anyone. Nothing is "at issue" in the DOL Investigations. Indeed, the DOL Investigations have not been terminated nor have they resulted in the issuance of any reports or findings, much less any claims being filed against any party. They are simply investigations. National Union has not and cannot meet its burden on summary judgment because it has not and cannot point to facts alleged or wrongful acts asserted in the DOL Investigations.

Under District of Columbia law, courts construe the terms of an insurance contract as a matter of law. *Spears v. Nationwide Mutual Ins. Co.*, 254 F. Supp. 2d 144, 152 (D.D.C. 2003) (citations omitted). Accordingly, whether Exclusion 5(d) applies is a question of law for the Court to decide. The Court must interpret the contract objectively based on the language of the policy and the expectations that the insured reasonably could have formed on the basis of that language. *Spears*, 254 F. Supp. 2d at 152. It is more than reasonable that Ullico would have expected coverage for defending against claims filed against it by individuals seeking payment of pension benefits and that did not arise from facts alleged or wrongful acts alleged in an earlier claim, particularly when the earlier claim was a fact-finding investigation that did not allege facts or wrongful acts.

      **2.**      **District of Columbia courts have not adopted a "but for" test when determining whether a claim arises from or is based upon facts alleged or Wrongful Act alleged in a prior claim, and even if the "but for" test is used, Exclusion 5(d) does not apply.**

National Union argues that this Court should use a "but for" test when determining whether the Underlying Litigation arises from or is based upon the DOL Investigations. National Union argues that but for the issues raised by the DOL Investigations, the Underlying Litigation claims would not have been brought. (Nation Union Br. at 15.) Putting aside the issue

discussed above that National Union is relying on language that is not in the 2002 Fiduciary Policy (i.e. whether a claim arises from or is based upon a prior *claim* as opposed to the facts or wrongful acts alleged in a claim), none of the cases cited by National Union supports the argument that a "but for" test should be used by this Court to determine whether Exclusion 5(d) excludes coverage for the defense of the Underlying Litigation.  Contrary to National Union's assertion, District of Columbia courts have not universally adopted the "but for" test.  Indeed, several courts have rejected the use of this test.  Finally, even if the "but for" test were utilized in this case, it does not support National Union's argument that coverage for the Underlying Litigation is precluded by Exclusion 5(d).

> **a.    District of Columbia Courts have not adopted a "but for" test when determining whether a claim arises from or is based upon facts alleged or Wrongful Acts alleged in a prior claim.**

National Union asserts: "Courts that have considered similar clauses [to the exclusion provision] typically apply a 'but for' test when determining whether a claim is based upon or arises out of an earlier claim."  (National Union Br. at 14.)  As support for this sweeping assertion, National Union lists several case cites, including *Spears v. Nationwide Mutual Ins. Co.*, 254 F. Supp. 2d 144, 152 (D.D.C. 2003).  (Nation Union Br. at 14.)  However, *Spears* does not involve a similar clause to the one in this case.  The court in *Spears* was not determining whether a claim arose out of "facts alleged or Wrongful Acts alleged" in a prior claim.  The court in *Spear*s was not even determining whether a claim arose out of a prior claim.  Rather, *Spears* involved a workers' compensation claim and at issue was whether an employee's injuries were covered because they arose out of the employee's own activities.  The clause in question was the clause defining "coverage territory" to include:

> all parts of the world if (1) the injury or damage arise out of . . . (b) the activities of a person whose home is in the [United States], but is away for a short time on [company's business].

*Spears*, 254 F. Supp. 2d at 158.  The insurance company tried to deny coverage for injuries sustained by an employee during a car accident that occurred overseas while the employee was traveling in a car from a business meeting.  *Id.*  The insurance company argued the employee was not injured due to *her* activity because she was not driving the car.  *Id.*  The Court held that since the employee was traveling in the car from a business meeting, her injuries arose out of her activities on company business.  *Id.* at 158-159.  National Union's citation implies that the *Spears* court was reviewing a similar provision that it was in a similar context to the instant case, but those suggestions are contrary to the opinion.  The *Spears* court relied on workers' compensation precedent which has applied the "but for" test.  *Id.* at 159.  The standard adopted in workers' compensation cases as to when an injury arises from employment has no bearing on the case at hand.

Moreover, as National Union is forced to admit in a footnote, District of Columbia courts have rejected the use of the "but for" test in cases outside of the workers' compensation arena. (National Union Br. at 14, n. 8.)[8]  In *Sigmund v. Progressive Northern Insurance*, 374 F. Supp. 2d 33 (D.D.C. 2005), the court examined whether a plaintiff's injuries *arose out of the use* of an uninsured motor vehicle.  When determining whether a plaintiff's injuries arose out of the use of the vehicle, the court held a "sufficient nexus" must exist and rejected the "but for" test, saying the causal connection had to be more than incidental, fortuitous or "but for".  *Id.* at 39 (citations omitted).  *See also Shoppers Food Warehouse v. Morneo*, 746 A.2d 320 (D.C. 2000) (the "but for" test rejected in the context of personal jurisdiction and determining whether a cause of action arose from a defendant's contacts with the forum state).  National Union gives no

---

[8]  Maryland courts do not apply a "but for" test and have not done so in a fiduciary policy context.  *See Philadelphia Indemnity Ins. Co. v. Maryland Yacht Club, Inc.*, 742 A.2d 79 (Md. Ct. Sp. App. 1999) ("the phrase 'arising out of' . . . does not have a single, 'settled meaning' that applies to every insurance policy . . . we construe such phrases 'on a contract by contract or case by case basis . . . .'")

explanation as to why this Court should rely on a workers' compensation claim analysis but ignore the other case law that exists.

> **b.** **Even if the Court determines the "but for" test should be applied, the facts in the instant case do not satisfy such a test.**

The undisputed facts simply do not evidence that "but for" the DOL Investigations, the Underlying Litigation would not have ensued. The Underlying Litigation was commenced because certain Ullico officers sought payment of benefits after resignation, retirement or termination. Unlike in *Spears* where but for the employee traveling from her business meeting she could not have been injured, in the instant case, there is no such causal connection. The Underlying Litigation is in no way dependent on the DOL Investigations.

National Union argues that the Underlying Litigation would not have been brought but for the issues raised by the DOL Investigations. (*See* National Union Br. at 15.) National Union suggests that it is "beyond peradventure" that the Underlying Litigation arose out of, is based upon, and is attributable to the facts alleged or the same Wrongful Acts at issue in the DOL Investigation. (*Id.*) The undisputed facts provide ample doubt to the contrary. The undisputed facts evidence that Georgine, Luce, Grelle and Carabillo (the "Ullico Officers") acted in such a manner as to raise concerns with the Ullico Board. (*Id.* at 6-7.) Following the Thompson Report and the Ullico Shareholders' election and installation of a new board of directors, the Ullico Officers resigned, retired or were terminated. (*Id.* at 7.) Carabillo, Grelle and Luce commenced the actions in the Underlying Litigation seeking payment under Ullico's benefits plans. (*Id.* at 8-9.) While the DOL also commenced investigations into certain stock transactions of Ullico, the DOL was most certainly not investigating whether the Ullico Officers were entitled to certain benefits. Further, the DOL Investigations have not terminated. The DOL has issued no reports, nor has it offered any conclusions or made any findings of wrongdoing by Ullico. The DOL

Investigations are simply not what prompted Carabillo, Grelle and Luce to commence the Underlying Litigation.

The "but for" test requires a close causal connection. For example, in the context of a person being hit by a car while jaywalking, "but for walking across the street outside of the crosswalk, the person would not have been hit by a car." National Union essentially wants the Court to apply the "but for" test as follows: "but for getting out of bed this morning, leaving the house and going to work, leaving work to get lunch and crossing the street outside of the crosswalk, the person would not have been hit by a car" so that getting hit by a car arose out of getting out of bed this morning. The undisputed facts in this case do not evidence a causal connection between the DOL Investigations and the Underlying Litigation.

National Union's reliance on *Goodheart-Wilcox Co. v First National Ins. Co. of N. America, Inc.*, No. 00C0411, 2001 WL 501194, *1 (N.D. Ill. May 8, 2001) is equally misplaced as this case further highlights the lack of causal connection between the DOL Investigations and the Underlying Litigation. In *Goodheart-Wilcox*, GWC marketed a software product under a licensing agreement with ESA. *Goodheart-Wilcox*, 2001 WL 501194 at *1. ESA sued GWC for copyright infringement and breach of contract, and GWC sought indemnification from its insurer. *Id.* at *1-3. The insurance company argued it did not have to indemnify GWC because the policy excluded claims arising out of a breach of any contract or agreement or failure or performance of contract. *Id.* at *3. The court determined that but for the existence for the licensing agreement, there would have been no claim for copyright infringement and therefore the exclusion applied. *Id.* at *7. The court's analysis illustrates why National Union's argument – the "but for" test supports exclusion of coverage for the Underlying Litigation – must fail. Unlike in *Goodheart-Wilcox*, the Underlying Litigation was commenced because certain Ullico

officers were seeking payment of benefits after being terminated, resigning or retiring. At most, the Underlying Litigation exists because of the actions of the former Ullico Officers involved in such litigation. The Underlying Litigation would have existed regardless of whether there were DOL Investigations. Moreover, Ullico's decision to terminate certain of its officers did not arise from the DOL Investigations. Those investigations have not been officially concluded. Ullico's decisions were prompted by its own investigation into fiduciary breaches by its former officers. There is simply not the same connection as in *Goodheart-Wilcox*.

National Union has similar problems with its reliance on *Mount Vernon Ins. Co. v. Creative Housing Ltd, et al.*, 668 N.E.2d 404 (N.Y. 1996), *First Financial Ins. Co. v. LaPointe*, No. 04-0413, 2005 WL 2218973, at *1 (S.D.N.Y. Sept. 12, 2005), and *U.S. Underwriters Ins. Co. v. Val-Blue Corp.*, 647 N.E.2d 1342 (N.Y. 1995). Each of these cases involves a person who was assaulted on someone else's property suing the owner of the property for the owner's negligence, which negligence allegedly allowed the activity that caused the injury suffered by each plaintiff. *Mount Vernon*, 668 N.E.2d at 405; *First Financial*, 2005 WL 2218973, at *1; *U.S. Underwriters*, 647 N.E.2d at 1343. In each case, the owner sought coverage to defend against the suits brought by the injured parties, and in each case, the court determined coverage was excluded by a policy exclusion "for any claim based on Assault or Battery." *Mount Vernon*, 668 N.E.2d at 406-406; *First Financial*, 2005 WL 2218973, at *1-4; *U.S. Underwriters*, 647 N.E.2d at 1343-1344. The New York courts determined that the basis for each of the plaintiff's claims in these cases was assault. *Id.* Since the operative act giving rise to any recovery would have been an assault, not simply negligent hiring or negligent supervision, the policy exclusion for assault prevented coverage. *Id.* Again, putting aside the fact that New York law is not binding on this Court, the operative act giving rise to any recovery in the Underlying Litigation

is certainly not the DOL Investigations.  There is no reason to believe the DOL is investigating whether the Individual Defendants are entitled to benefits.  Unlike the cases cited by National Union, where the assault was the operative act giving rise to recovery, the DOL Investigations are not the operative act giving rise to any basis for recovery in the Underlying Litigation.

Moreover, the purported "Material Facts" National Union relies on to support its argument that they Underlying Litigation would not have been brought but for the DOL Investigations are incorrect, misleading or unsupported by evidence and certainly not undisputed. For example, National Union presents several alleged statements made by Mr. Patrick McGlone, Associate General Counsel of Ullico, as quotes from a document attached as Exhibit A to the declaration of Mr. Lawrence Fine.[9]  (*See* National Union Br. at 15 and n. 9.)  However, Mr. Fine's declaration contains no reference to an Exhibit A and in fact, no Exhibit A is attached. (*See* Fine Decl.)  Indeed, none of the materials filed by National Union includes an Exhibit A. (*See* Def. Exh. 1-8.)  With no evidentiary support, these alleged "quotes" should be stricken and disregarded.  National Union also states "Ullico has also admitted that the DOL Investigation related 'to the sale and purchase of Ullico stock between 1998 and 2001 by Ullico Officers Georgine, Luce, Grelle and Carabillo.  Ullico's Br. at 3-5."  (National Union Br. at 15.)

---

[9] National Union makes the following unsupported statements:

1. Mr. McGlone characterized the claims at issue involving Carabillo as based "in part on the grounds that Carabillo breached his fiduciary duties to the company by engaging in a series of improper stock transactions between 1998 and 2001, which caused Ullico to terminate him." (National Union Br. at 15.)

2. Mr. McGlone stated (although National Union failed to attribute it to Mr. McGlone but we make this assumption based on the cited source) "[a]s a result, substantially the same set of facts and issues will control both the defense of Carabillo's claims and the pursuit of Ullico's counterclaims."  (It is not clear what bearing this statement has on the whether the Underlying Litigation would have been brought but for the DOL Investigations) (National Union Br. at 15.)

3. Mr. McGlone stated with respect to the claims asserted against it by Luce in the Underlying Litigation, "a central issue in each of these cases is whether certain stock transactions engaged in by former executives were proper . . ."  (National Union Br. at 15. n. 9.)

Nowhere in the cited pages of Ullico's Memorandum in Support of its Motion for Partial Summary Judgment does such an admission exist. (*See* Mem. in Supp. at 3-5.[10]) Finally, even if every unsupported and inaccurate quote were true, it would not save National Union's doomed argument. As articulated above, the Underlying Litigation was in no way dependent on the DOL Investigations.

> **c.    The Undisputed Facts evidence that the Underlying Litigation does not fall within Exclusion 5(d) of the 2002 Fiduciary Policy.**

As a last ditch effort to avoid summary judgment, National Union asserts that issues of material fact remain which preclude the Court from granting Ullico's Motion for Partial Summary Judgment, regarding the applicability of the panel counsel requirement. After making this statement, however, National Union fails to identify any such disputed material facts. Instead, National Union argues that "Ullico must prove that Exclusion 5(d) does not apply before it can request partial summary judgment . . ." Initially, it is obvious that this is not a material issue of *fact*. More importantly, however, this is an inaccurate statement of law. It is a fundamental concept of coverage law that the insurer – National Union in this instance – bears the burden of proving the applicability of any policy exclusions and limitations. *See Steven v. United General Title Ins. Co.,* 801 A.2d 61, 67 (D.C. 2002); 17A LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 254:12. As Ullico illustrates above, National Union has failed to establish that Exclusion 5(d) applies to preclude coverage under the 2002 Fiduciary Policy. National Union has not and cannot meet its burden on summary judgment because it has not and cannot point to facts alleged or wrongful acts asserted in the DOL Investigations. There are no disputed facts on this point.

---

[10]    All citations to Ullico's Memorandum in Support of its Motion for Partial Summary Judgment are made as follows: "Mem. in Supp. at __."

**B.    Ullico's motion is not only relevant but appropriate**.

National Union's argument that Ullico's Motion for Partial Summary Judgment is moot or premature because Ullico has admitted National Union paid appropriate defense fees and costs (National Union Br. at 12) or because Ullico's invoice submissions were somehow deficient such that National Union could not determine what amount was due in reimbursement are red herrings and should be disregarded by this Court.  (National Union Br. at 12-13.)

Ullico has not requested that the Court make any finding as to any specific amount to be awarded to Ullico for reimbursement of its costs.  Rather, as is common practice when a dispute over coverage arises, Ullico has asked the Court to merely make a determination as to coverage in regard to a specific provision of the 2001 and 2002 Fiduciary Policy.  Ullico can and will evidence the costs it has incurred and is entitled to be reimbursed for when that question is at issue.  That being said, however, National Union's contention that Ullico has admitted National Union paid appropriate defense fees and costs is disingenuous at best.  As National Union well knows, and Ullico stated in its Memorandum in Support, supported by a sworn affidavit, in October 2006, National Union sent Ullico a check for $273,382.26 for certain defense costs.  (Ullico's Mem. in Supp. at n. 1; McGlone Aff. at ¶ 5.)  This represents less than 4% of the approximately $7 million Ullico has incurred in defense costs as of October 31, 2006.  (*See* McGlone Aff. at ¶ 5.)

**C.    National Union is required to pay Ullico's defense costs because the panel counsel requirement in Clause 9 does not apply to the Underlying Litigation.**

**1.    By its own terms, the panel counsel requirement of Clause 9 of the 2001 Fiduciary Policy applies only to certain types of proceedings and the Underlying Litigation is not among them.**

National Union contends that Ullico is not entitled to defense fees and costs for the Underlying Litigation because the panel counsel requirement of Clause 9, which applies to the

Department of Labor investigation, also extends to the Underlying Litigation as a "claim[] 'with respect to' . . . any fact finding investigation by the Department of Labor." (National Union Br. at 18.) First, Clause 9 imposes the panel counsel requirement on certain specific types of proceedings and does not extend that requirement to all related claims, as National Union would have it. Second, even if "related claim" language would be read into Clause 9, it is evident that the claims for benefits in the Underlying Litigation are not related to a known claim being investigated by the DOL.

National Union's arguments unsuccessfully attempt to force related claims language on Clause 9. Clause 9 of the 2001 Policy states: "[t]his clause only applies with respect to: (1) an agency proceeding or investigation as defined in either paragraphs (c)(4) or (5) of Clause 3, Definitions, or (2) a class or representative action." (Ullico Compl. Ex. I at Clause 9.) Clause 9 does not contain any language that allows its application to a claim because it is "related to" or "arising out" of a specific proceeding, investigation or action. (*Id.*) The 2001 Fiduciary Policy only contains related claims language in the Notice/Claim Reporting provision. (Ullico Compl. Ex. I at Clause 8(b).) The related claims language is separate and distinct from the panel counsel requirement and cannot be applied to Clause 9, which clearly specifies the proceedings for which an insured must retain panel counsel.

Building on its flawed contract interpretation argument, National Union tries to convince the Court that the Underlying Litigation is related to the DOL Investigations with an artificially constructed series of misleading and inaccurate facts. First, National Union asserts that Ullico "conceded" that the claims in the Underlying Litigation "constitute entirely claims 'with respect to . . . any fact-finding investigation by the Department of Labor.'" (National Union Br. at 18.)

National Union claims the following language from Ullico's First Amended Complaint makes this concession:

> Because of the self-dealing of the Individual Defendants, Ullico became the subject of multiple state and federal investigations, including investigations conducted by the [DOL].
>
> * * *
>
> Thereafter, the Underlying Litigation was initially brought by several of the Individual Defendants . . . who filed lawsuits against Ullico and the Ullico-sponsored plans. Ullico and the Ullico-sponsored plans then brought counterclaims in the Underlying Litigation against the Individual Defendants arising out of the breach of their fiduciary duties.

(Ullico Compl., ¶¶ 3, 4; Def. Exh. 6, ¶¶ 3, 4.) There is no concession in that text that all the claims in the Underlying Litigation constitute claims with respect to the DOL Investigations.

The facts are that the Individual Defendants filed suits against Ullico and Ullico-sponsored plans and that Ullico filed counterclaims and an action for breach of fiduciary duty. (Ullico Compl. Ex. A-H.) While there were DOL Investigations commenced (investigations which have not been terminated), the DOL has not shown any indication that it is investigating claims of the Individual Defendants for their benefits.

National Union's position seems to be that because the DOL Investigations exist, everything must be related to or arise from those investigations. This contention ignores the reality. While DOL Investigations have not terminated, the Underlying Litigation was not as a result of the DOL Investigations. Moreover, National Union's argument that the claims in the DOL Investigations are related to the Underlying Litigation is simply not a valid argument. There are no allegations in the DOL Investigations – it is simply an investigation.[11]

---

[11] National Union attempts, through a footnote, to raise a material issue of fact as to whether the Underlying Litigation involves a "representative action". National Union asserts that "much of the Underlying Litigation *appears* to fall precisely within the provision of ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), as a civil action brought 'by a participant, beneficiary or fiduciary for appropriate relief under

As support for its position, National Union gives incorrect cites to Ullico's Memorandum in Support of its Motion for Partial Summary Judgment and misleadingly inserts arguments in the middle of quotes from Ullico's Counterclaim in the *Ullico Inc. Litigation*. For example, National Union asserts that Ullico made the following allegation:

> Ullico makes reference to the Thompson Report – "a forceful argument exists that certain senior officers of the Company, principally Georgine and Carabillo, violated their duties of loyalty and care to the company" in connection with Ullico's Stock Repurchase Program involving several of its directors and officers (including Georgine, Carabillo, Luce and Grelle).

(National Union Br. at 19.)  The allegation is incorrectly cited, but more importantly inaccurate.

What Ullico actually alleged was:

> A forceful argument exists that certain senior officers of the Company, principally Georgine and Carabillo, violated their duties of loyalty and care to the company.

(Def. Exh. 2, ¶ 85.)  By adding the underlined phrase "in connection with Ullico's Stock Repurchase Program involving several of its director and officers (including Georgine, Carabillo, Luce and Grelle)" at the end of the quote, National Union attempts to give the allegation an import it does not have on its own.  In fact this allegation supports the fact that the Underlying Litigation is not the result of the DOL Investigations.

National Union also asserts as fact that:

> As a result of the Thompson Report and DOL Investigation, 'on May 30, 2003, [Carabillo] was terminated for cause . . . Grelle resigned on February 25, 2003; and Luce retire effective June 1, 2003.

---

section 1109 [liability for breach of fiduciary duty] of this title.'  Because any action brought under ERISA § 502(a)(2) 'is by definition a representative action on behalf of the plan as a whole,' Clause 9 of the 2001 Fiduciary Policy clearly applies."  (National Union Br. at 21 n. 13.) (citations omitted) However, the Claims against Ullico by the Individual Defendants, for which Ullico seeks coverage, do not involve actions brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and, therefore, do not trigger the panel counsel requirement.  (*See* Def. Exh. 2; Consolidated Complaint, No. 03cv01556, Docket No. 120.)  Only the Counterclaims made by the Plan involve actions brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

(National Union Br. at 19.)   National Union cites ¶ 92 of Ullico's Counterclaim, but an examination of that paragraph evidences that Ullico makes no allegation that the termination or resignation of certain of Ullico's officers was the result of the DOL Investigations.  (*Id.*; *see also* Def. Exh. 2, ¶ 92)  By adding the underlined phrase in front of the actual language used by Ullico, National Union attempts to mislead this Court into believing that the Underlying Litigation is as a result of the DOL Investigations.  It simply is not.

Finally, National Union offers *In re Speigel Inc.*, No. 03-11540, 2006 WL 2577825, at *1 (S.D.NY. Aug. 16, 2006) a Southern District of New York Bankruptcy decision, for the proposition that "with respect to" is equated to the phrase "related to". (National Union Br. at 19.)   Aside from the fact that this is not binding authority, *Speigel* offers no guidance as it does not interpret the phrase "with respect to" directly and involves an entirely different context and language than is present here.  First, *Speigel* involves the analysis of the phrase "related to" in a footnote which explains that another court has interpreted "related to" to be akin to "with respect to."  *Speigel*, 2006 WL 2577825, at *10 n. 4.  Second, and more significantly, the language the *Speigel* court addresses simply involves the phrase "related to".  *Id.* at *5.  However, the language of Clause 9 does not state the clause applies to claims "related to" or even "with respect to", rather, Clause 9 states it "*only applies* with respect to."  (Ullico Compl. Ex. I. at Clause 9.) Clause 9 is not talking about claims related to a fact-finding investigation by DOL, but to actual claims of a fact-finding investigation by the DOL.  Thus, the language of Clause 9 cannot be interpreted to encompass the Underlying Litigation.

### 2. Clause 9 of the 2002 Fiduciary Policy does not apply to the Underlying Litigation because of its differing policy language.

Rather than responding to Ullico's argument that Clause 9 of the 2002 Fiduciary Policy does not apply to the Underlying Litigation, National Union hopes to avoid the issue by asserting

Exclusion 5(d) precludes coverage under the 2002 Fiduciary Policy. National Union requests that if the Court determines Exclusion 5(d) does not preclude coverage under the 2002 Fiduciary Policy, the Court simply apply National Union's arguments regarding the applicability of the 2001 Fiduciary Policy panel counsel requirement. (Nation Union Br. at n. 10.) Such a request is entirely inappropriate and demonstrates National Union's complete disregard for the actual language of the policies at issue. There is significant difference between the language of Clause 9 of the 2002 Fiduciary Policy and the language of Clause 9 of the 2001 Fiduciary Policy. Indeed, National Union's entire argument for the applicability of the panel counsel requirement under Clause 9 of the 2001 Fiduciary Policy hinges on the phrase "with respect to." Clause 9 of the 2002 Fiduciary Policy does not contain this phrase. Rather, Clause 9 of the 2002 Fiduciary Policy provides:

> This Clause 9 *applies only to*: (1) a Claim brought by any government entity; (2) a request for coverage for a Voluntary Compliance Loss; or (3) a Claim brought in the form of a class or representative action.

(Ullico Compl. Ex. J. at Clause 9.) (emphasis added) As argued in Ullico's Motion for Partial Summary Judgment and as National Union did not and cannot offer any valid response, it is clear from the plain language of Clause 9 of the 2002 Fiduciary Policy that it does not apply to the Underlying Litigation. Further, the differing language of the 2002 Fiduciary Policy demonstrates that the intent of Clause 9, in both the 2001 and 2002 Fiduciary Policy, was to apply only to certain claims.

> **D.    National Union is obligated to pay Ullico's defense costs in the DOL Investigations because any breach of Clause 9 is immaterial and does not void National Union's obligations under the 2001 Fiduciary Policy**.

National Union argues there is no law in the District of Columbia that would support an "immateriality" exception to the insurance policy at issue, thus taking a position contrary to

fundamental contract principles.  (National Union Br. at 22-24.)   An insurance policy is a contract and, thus, fundamental contract principles apply to the parties' performance under the policy.  *See Steven*, 801 A.2d at 66 (D.C. 2002) (noting that insurance policies are contracts which courts construe applying contract construction principles).  One such fundamental contract principle, the doctrine of material breach, applies with equal force to insurance contracts as to any other contract.  *See Bd. Of Ed. Of Charles Co., Maryland v. St. Paul Fire & Marine Ins. Co.*, 420 F. Supp. 491, 493 (D. Md. 1975) (applying material breach doctrine to property insurance policy).

National Union also argues Ullico's position concerning the immaterial nature of a breach of the panel counsel requirement is a disputed issue of fact.  A party does not materially breach an agreement if finding such a breach to be material would "grossly warp" the purpose of the provision breached and the contract as a whole.  *Vermont Marble Co. v. Baltimore Contractors, Inc.*, 520 F. Supp. 922, 927 (D.D.C. 1981).  As previously argued, the purpose of the panel counsel requirement is twofold – to provide National Union with savings as to defense costs and to insure claims against an insured are defended by competent ERISA counsel.  (Mem. in Supp. at 25.)  National Union has admitted as much when it stated "that [Ullico] has also deprived National Union of the ability to ensure that highly qualified and experienced ERISA counsel will efficiently defend the claims and comply with National Union's defense counsel requirements and litigation guidelines . . ."   (National Union Br. at 26-27.)   Ullico has demonstrated that there would likely not be a benefit of savings and that Ullico was defended by competent counsel.  (Mem. in Supp. 26.)

## V.    Conclusion

Based on the foregoing, Ullico requests that this Court enter partial summary judgment, holding that the panel counsel requirement does not bar coverage for the defense costs from the

Underlying Litigation under the 2001 and the 2002 Fiduciary Policy or the DOL Investigations under the 2001 Fiduciary Policy, deny National Union's request for partial summary judgment because Exclusion 5(d) does not preclude coverage, and award such other relief as the Court may deem just and proper.

ULLICO INC.

/s/ John F. Anderson
By One of Its Attorneys

John F. Anderson
D.C. Bar No. 393764
TROUTMAN SANDERS LLP
1660 International Drive
Suite 600
McLean, VA 22102
(703) 734-4356

Of Counsel:
Timothy W. Burns (*Pro Hac Vice* Admission)
Angela R. Elbert (*Pro Hac Vice* Admission
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, Illinois 60602
(312) 269-8000

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ULLICO INC.,                                        :
                                                    :
            Plaintiff,                              :
                                                    :
    v.                                              :    Civil Action No. 1:06cv00080 (RJL)
                                                    :
NATIONAL UNION FIRE INSURANCE                       :
COMPANY OF PITTSBURGH, PA, et al.,                  :
                                                    :
            Defendants.                             :
                                                    :
NATIONAL UNION FIRE INSURANCE                       :
COMPANY OF PITTSBURGH, PA,                          :
and                                                 :
AMERICAN INTERNATIONAL                              :
SPECIALTY LINES INSURANCE                           :
COMPANY,                                            :
                                                    :
            Counterclaim Plaintiffs,                :
                                                    :
    v.                                              :
                                                    :
ULLICO INC.,                                        :
                                                    :
            Counterclaim Defendant.                 :
                                                    :

**ORDER**

UPON CONSIDERATION of Plaintiff/Counterclaim Defendant, Ullico Inc.'s ("Ullico")
Motion for Partial Summary Judgment; the Oppositions filed thereto; and
Defendant/Counterclaim Plaintiff National Union Fire Insurance Company of Pittsburgh, PA's
("National Union") Cross-Motion for Partial Summary Judgment; the Oppositions filed thereto;
it is this _____ day of _____, 2007, hereby;

ORDERED that Ullico's Motion for Partial Summary Judgment, seeking a finding that
the panel counsel requirement of National Union's 2001 and 2002 Fiduciary Policies does not

apply to the Underlying Litigation and that the panel counsel requirement of the 2001 Fiduciary Policy does not apply to the DOL Investigations, is GRANTED, and it is further

ORDERED that National Union's Cross-Motion for Partial Summary Judgment is DENIED in all respects.

Entered this _____ day of _____, 2007.

_____
Richard J. Leon
United States District Judge