# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ULLICO INC.,

          Plaintiff,

       v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, et al.,

         Defendants.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
and
AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY,

         Counterclaim Plaintiffs,

       v.

ULLICO INC.,

         Counterclaim Defendant.

Civil Action No. 1:06cv00080 (RJL)

## AFFIDAVIT OF TIMOTHY W. BURNS IN SUPPORT
## OF ULLICO'S REPLY MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO
## NATIONAL UNION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Timothy W. Burns, being first duly sworn on oath, deposes and states as follows:

1.    I am an attorney licensed to practice in the State of Illinois and the State of Missouri, and admitted *pro hac vice* to practice before the United State District Court for the District of Columbia. I am a partner with the law firm of Neal, Gerber & Eisenberg, which has been retained by Ullico Inc. ("Ullico") to represent it in this insurance coverage matter.

2.    A true and correct copy of James W. Luce's Motion for Judgment in *Luce v. National Union Insurance Company of Pittsburgh, Pa.*, CL 2005 7456 (Va. Cir. Ct.) is attached hereto as Exhibit 1.

3.    A true and accurate copy of a correspondence from R. David Ades of D'Amato & Lynch dated October 11, 2006 is attached hereto as Exhibit 2.

FURTHER AFFIANT SAYETH NOT

_____
Timothy W. Burns


SUBSCRIBED and SWORN to
Before me this *19* day of
January, 2007.

_____

OFFICIAL SEAL
**ILSE GARCIA**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-26-2010

NGEDOCS: 1363254.1

# EXHIBIT 1

VIRGINIA:

IN THE CIRCUIT COURT FOR FAIRFAX COUNTY 2005 NOV 30  PM 3: 20

JAMES W. LUCE          :

    Plaintiff,          :

                 :

v.          :          Law No. **2 0 0 5 - 7 4 5 6**

                 :

NATIONAL UNION FIRE          :
INSURANCE COMPANY OF          :
PITTSBURGH, PA.          :

                 :

Serve:          :
Theodore I. Brenner, Esq.          :
411 E. Franklin Street, Suite 200          :
Richmond, Virginia 23219          :
Registered Agent          :

                 :

    Defendant.          :

## MOTION FOR JUDGMENT

### PARTIES

1.    The Plaintiff James W. Luce ("Luce") is a resident of the Commonwealth of Virginia.  He resides at 10712 Milkweed Drive, Great Falls, Virginia 22026, in Fairfax County, Virginia.

2.    The Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is a corporation domiciled in Pennsylvania with a principal place of business in New York, New York.  At all times material to this dispute, National Union was authorized to transact business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

3.    Jurisdiction in this Court is proper pursuant to Va. Code Ann. § 8.01-328.1(1) and (2).

4.    Venue is proper in this Court in accordance with Va. Code Ann. § 8.01-262(4).

## FACTS

5.    National Union issued an Employee Benefit Plan Fiduciary Liability Insurance Policy to ULLICO Inc. and its subsidiaries.  (National Union Insurance Policy No. 874-44-03, attached hereto as **Exhibit 1** ("the Policy")).

6.    Luce served as Executive Vice President of ULLICO Inc. and Union Labor Life Insurance Company (collectively "ULLICO") for many years.

7.    While employed by ULLICO Luce also served as a Member of the Benefits Committee that administered various ULLICO employee benefit plans.

8.    On May 31, 2003, Luce retired as Executive Vice President of ULLICO Inc. and Union Labor Life Insurance Company.

9.    On October 17, 2003, the Union Labor Life Insurance Company, the Union Labor Life Auxiliary Retirement Benefits Plan and the ULLICO Inc. Non-Qualified Deferred Compensation Plan along with Mark Singleton, in his capacity as a Plan Administrator, filed a Counterclaim against Luce, among others, in *Joseph A. Carabillo v. ULLICO Inc.*, United States District Court for the District of Columbia, Civil Action No. 03-cv-1556.  (Answer and Counterclaim of ULLICO Inc., attached hereto as **Exhibit 2** ("the Counterclaim")).

10.     The Counterclaim asserted various claims for relief against Luce on behalf of ULLICO, the Auxiliary Plan, and the Deferred Compensation Plan based on allegations that Luce had committed violations of the Employment Retirement Income Security Act of 1974, as amended, ("ERISA") and the common law of ERISA.

<u>National Union Policy No. 874-44-03</u>

11.     The Named Insured under the Policy is: "ULLICO Inc. and its SUBSIDIARIES. (Declarations Item 1.)   Also included in the Policy definition of "Insured" are:

(1)     any Natural Person Insured:

(2)     any Plan(s);

(3)     the Sponsor Organization; and

(4)     any other person or entity in his, her or its capacity as a Fiduciary, Administrator or trustee of a Plan....

12.     The definition of "Natural Person Insured" includes: "any past, present or future natural person director, partner or employee of the Sponsor Organization or a Plan in his or her capacity as a Fiduciary, Administrator or Trustee of a Plan." **(Exhibit 1 at ¶ 3(j).)**

13.     The Policy defines "Claim" as: "... a written demand for monetary relief; or a written demand for injunctive relief; or a civil or criminal proceeding for monetary or injunctive relief which is commenced by service of a complaint, among other things, or; a formal agency adjudicative proceeding, or; any fact-finding investigation by the Department of Labor, the Pension Benefit Guaranty

3

Corporation, or similar governmental agency which is located outside the United States, for any actual or alleged Wrongful Act of an Insured. (**Exhibit 1** at ¶ 3(c).)

14.    The Insuring Agreement contained in the Policy provides in relevant part, that National Union will provide coverage: "[for] the Loss of each and every insured arising from a Claim first made against an Insured during the Policy Period ... for any actual or alleged Wrongful Act by any such Insured...." (**Exhibit 1** at p.1, "Insuring Agreement".)

15.    Under the Policy, "Wrongful Act" means:

(1)    as respects a Fiduciary, the Plan or the Sponsor Organization: a violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by ERISA; or any matter claimed against an insured solely by reason of his, her or its status as a Fiduciary, the Plan or the Sponsor Organization, but only with respect to a Plan; and

...

(3)    as respects a Natural Person Insured, any matter claimed against him or her arising out of his or her service as a Fiduciary of Administrator of any multiemployer plan as defined by ERISA ....

16.    The Insuring Agreement also contains the following provision requiring the advance of defense costs under the heading "Defense Agreement":

(c)    GENERAL PROVISIONS ...

The Insurer shall advance Defense Costs prior to the final disposition of a Claim, subject to the other provisions of this policy. ...

17.     Under the Policy, "Defense Costs" are defined as:

> ...reasonable and necessary fees, costs and expenses consented to in writing by the Insurer ...resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured, whether incurred under Clause 2(a), (b) or (c) of this policy....

18.     The allegations and claims for relief asserted in the Counterclaim by the Auxiliary Plan and the Deferred Compensation Plan were asserted against Luce as an Employee Benefit Plan Fiduciary and are Claims of Wrongful Acts covered by the Policy.

19.     Luce retained counsel to represent him in defense of the Counterclaim because he was not aware, at the time, of the existence of the Policy, nor was he aware of the fact that ULLICO, allegedly, previously had given notice of a Claim to the insurer under the Policy.

20.     Luce incurred substantial legal fees and expenses in defending himself against the Counterclaim.

21.     In June of 2004, Luce learned of the existence of the Policy when his Counsel received a copy of the Policy from Counsel for ULLICO.

22.     Immediately upon learning of the existence of the Policy, Luce notified National Union of the Counterclaim and demanded that National Union reimburse him for the defense expenses he had already incurred and paid and advance his future defense expenses as they are incurred by the Panel Counsel selected by him and approved by the insurer pursuant to the terms of the Policy.

5

23.     National Union delivered notice of its coverage position and reservation of rights on October 29, 2004. National Union acknowledged that all counts in the Counterclaim against Luce, with the exception of Count IV, were covered claims and that it had a duty to advance defense costs subject to the other terms, conditions and exclusions of the Policy.  (October 29, 2004, Letter to Allison Eisenberg, **Exhibit 3** hereto.)

24.     At National Union's insistence, Luce and the other Counterclaim defendants hired the law firm of O'Melveny & Myers LLP as panel counsel to defend them against the Counterclaim from October 29, 2004, forward.

25.     On September 30, 2004, United States District Judge Richard Leon granted Luce's Motion to Dismiss the Counterclaims, in part, as to Count IV, in a written opinion.  See, *Carabillo v. ULLICO Inc.*, 357 F. Supp. 2d 249 (D.D.C. 2004)

26.     Shortly thereafter, in a letter dated December 14, 2004, National Union, through counsel, advised Luce that in light of the dismissal of Count IV ( as to which the insurer had reserved its rights and denied coverage)  Luce was henceforth "entitled to full coverage from National Union under [the Policy] for defense fees and expenses associated with [the Counterclaim]."  (December 14, 2004, Letter to Allison Eisenberg, **Exhibit 4** hereto.)

27.     Upon information and belief, ULLICO has already reimbursed Carabillo for the reasonable legal fees and expenses he incurred with the firm of Jackson & Kelley in his defense against the Counterclaim prior to the insurer's

appointment of Panel Counsel.  The amount Carabillo was reimbursed is believed to have been in excess of $100,000.00.

28.    Upon information and belief, ULLICO has also already paid Grelle a substantial amount of money as reimbursement for the reasonable legal fees and expenses he incurred with the law firm of Krupin & O'Brien, LLC in his defense against the Counterclaim prior to the appointment of Panel Counsel.

29.    In August 2005, Luce's counsel sent a letter to National Union requesting reimbursement of the reasonable and necessary defense fees and expenses incurred by Luce in defending the Counterclaim prior to the appointment of Panel Counsel at the insurer's expense.

30.    Luce's counsel received no response to that letter.

31.    On October 4, 2005, Luce sent yet another letter to National Union, through counsel, demanding a response to his request for reimbursement of his reasonable expenses for defending himself against the Counterclaim.

32.    Finally, on October 5, 2005, National Union, through counsel, replied to Luce's requests for reimbursement.  In that letter, counsel for National Union confirmed that Luce was "entitled to full coverage under the Policy for defense fees and expenses associated with [the Counterclaim]."  (October 5, 2005, Letter to Emily Harwood Smith, **Exhibit 5**, hereto.)

33.    In the October 5, 2005 letter, National Union's Counsel asked Luce to sign a Reimbursement Agreement as a condition of receipt of the reimbursement payment and to deliver the original to him as soon as possible.

34.    On October 7, 2005, Luce returned a signed Reimbursement
Agreement to Samuel F. Paniccia, counsel to AIG Technical Services, Inc.,
authorized agent of National Union. (October 7, 2005, Letter to Samuel F. Paniccia,
**Exhibit 6** hereto.)

35.    Upon information and belief, an authorized agent of AIG Technical
Services, Inc. signed the Reimbursement Agreement on behalf of National Union.

36.    The reasonable and necessary fees, costs and expenses consented to in
writing by the Insurer and incurred by Luce in the investigation, adjustment and
defense of the covered Claims in the Counterclaim between November 30, 2003 and
October 31, 2004, are $98,311.34.

37.    On October 31, 2005, Luce demanded payment of seventy-five percent
(75%) of that amount, which was the allocation made by the insurer between
covered and non-covered claims.  The demand was made pursuant to the terms of
the Reimbursement Agreement (which reserved all rights of the parties under the
Policy) and the terms of the Policy.

38.    On November 18, 2005, David Ades, "on behalf of National Union,"
replied to the October 31, 2005 demand for reimbursement by way of an electronic
mail (email) message.  That email stated, in pertinent part:

> Please be advised that we were recently informed that
> Ullico has sued National Union and the individual
> defendants (with the exception of Georgine) in the
> Eastern District of Virginia. Ullico is seeking declaratory
> as well as injunctive relief against National Union in an
> effort to enjoin National Union from making any further
> payments under the policy for the benefit of the individual
> defendants. As such, National Union is unable, at this

time, to reimburse Mr. Luce for any defense fees and expenses rendered by your firm. National Union is hoping that everything will get resolved at the mediation in December and that all insureds get reimbursed from the policy for defense fees incurred. However, in view of the recent filing by Ullico, National Union will be unable to make any further payments from the policy until the matter with Ullico is resolved.

39.     The November 18, 2005 email from David Ades was expressly authorized by National Union.

40.     The November 18, 2005 email from David Ades was an authorized communication on behalf of National Union that unequivocally repudiated National Union's existing obligation to perform its reimbursement obligation to Luce in a timely manner under the terms of the Reimbursement Agreement and the Policy.

## COUNT I – BREACH OF CONTRACT
### (Reimbursement Agreement)

41.     Luce incorporates the allegations of fact in paragraphs 1-40 as if set forth fully herein.

42.     Luce and National Union entered into a written Reimbursement Agreement, pursuant to which National Union agreed to reimburse Luce for his reasonable defense fees and costs in defense of the Counterclaim.

43.     Luce has fully satisfied all covenants and conditions of his entitlement to reimbursement under the Reimbursement Agreement.

44.     National Union has failed and refused, despite repeated demand, to fulfill its reimbursement obligations under the Reimbursement Agreement in a timely manner.

9

45.      National Union repudiated its obligation to reimburse Luce in a timely manner under the Reimbursement Agreement.

46.      As a result of National Union's repudiation of its reimbursement obligations, Luce has suffered severe financial loss and damages.

47.      Upon information and belief, National Union did not even conduct an investigation into the factual or legal basis for ULLICO's claims or reasonably assess the likelihood that ULLICO will prevail on its unprecedented and unfounded claim for declaratory and injunctive relief before it hastily repudiated its agreement with Luce.

48.      National Union's refusal to pay in a timely manner defense costs which it has repeatedly admitted it is obligated to pay, despite making payment of defense costs to Carabillo and Grelle, is clearly made in bad faith.  National Union has changed its position and repudiates its obligations to Luce in order to improve the insurer's bargaining position at an upcoming mediation, which is specifically referenced in Ade's November 18, 2005 email.  National Union has repudiated its obligation to pay the costs of Luce's defense and its duty of reimbursement in order to put pressure on Luce to settle or force continued litigation without advancement of defense costs.

49.      The position taken by National Union in the November 18, 2005, email, that it can refuse to fulfill its reimbursement obligations to Luce in a timely manner simply because ULLICO has filed a groundless civil action seeking

10

declaratory and injunctive relief against it, is an outrageous and unreasonable interpretation of its obligations under the Reimbursement Agreement.

50.     The bad-faith conduct of National Union, in refusing to make payment to Luce under the terms of the Reimbursement Agreement, entitles Luce to an award of his attorney's fees under Va. Code Ann. § 38.2-209.A (1950).

WHEREFORE, James W. Luce, by counsel, demands judgment in his favor and against National Union Fire Insurance Company of Pittsburgh, Pa., in the amount of $73,733.51, plus interest and attorneys fees, and for such further and other relief as the Court deems appropriate.

## COUNT II – BREACH OF CONTRACT
### (The Policy)

51.     Luce incorporates the allegations of fact in paragraphs 1-40 as if set forth fully herein.

52.     Luce properly notified National Union of the Counterclaim and has satisfied any and all other conditions precedent to reimbursement of his defense costs under the Policy.

53.     National Union has failed and refused to pay reasonable defense costs due to Luce for his defense of the Counterclaim under the Policy in a timely manner.

54.     National Union's failure to reimburse Luce for his defense costs in connection with the Counterclaim, for the period prior to the appointment of Panel Counsel, in a timely manner, constitutes a breach of National Union's duties under subparagraph (c) of the Defense Agreement in the Policy.

55.    National Union's refusal to pay in a timely manner that which it has repeatedly admitted it is obligated to pay, and after it has already reimbursed Carabillo and Grelle for the same claims, is clearly made in bad faith as a tool to pressure Luce to settle the claims he is asserting and which are being asserted against him in the Counterclaim.

56.    National Union's repudiation of its reimbursement obligations constitutes an unreasonable denial of insurance coverage due to Luce under the plain language of the Defense Agreement in the Policy.

57.    The bad-faith conduct of National Union, in refusing to make the promised payment to Luce under the policy, entitles Luce to an award of his attorney's fees under Va. Code Ann. § 38.2-209.A (1950).

WHEREFORE, James W. Luce, by counsel, demands judgment in his favor and against National Union Fire Insurance Company of Pittsburgh, Pa., in the amount of $73,733.51, plus interest and attorneys fees, and for such further and other relief as the Court deems appropriate.

JAMES W. LUCE,
By counsel

Robert E. Scully, Jr.
Virginia State Bar No. 19218
Emily Harwood Smith
Virginia State Bar No. 65527
REES, BROOME & DIAZ, P.C.
8133 Leesburg Pike, Ninth Floor
Vienna, Virginia 22182
(703) 790-1911
Fax No. (703) 790-5249
Counsel for James W. Luce
K:\12\12410\00005\PLDNGS\motion for judgment.doc

# EXHIBIT 2

# D'AMATO & LYNCH

## LAWYERS

70 PINE STREET

NEW YORK, N.Y. 10270-0110

TELEPHONE 212-269-0927
WWW.DAMATO-LYNCH.COM
CABLE ADDRESS
DAMCOSH
TELEX 960085 DCOS UI NYK
TELECOPIER: 212-269-3559

LONDON OFFICE

LLOYD'S

ONE LIME STREET

LONDON EC3M 7HA, ENGLAND

TELEPHONE 0207 816 5977
TELECOPIER 0207 816 7257

GEORGE G. D'AMATO
LUKE D. LYNCH (1999)
KENNETH A. SAGAT
LUKE D. LYNCH, JR.
ROBERT E. KUSHNER
RICHARD F. RUSSELL
RONALD H. ALENSTEIN
HARRY J. ARNOLD, JR.
ROBERT W. LANG
NEAL M. GLAZER
ANDREW R. SIMMONDS
JOHN P. HIGGINS
THOMAS F. BREEN
ALFRED A. D'AGOSTINO, JR.
WILLIAM P. LARSEN, III
ROBERT D. LANG
DAVID A. BOYAR
MARY JO BARRY
BARBARA R. SEYMOUR
HARVEY BARRISON

WILLIAM C. BURTON
CHARLES BRAMHAM
BILL V. KAKOULLIS
THOMAS W. HANLON
JOHN H. FITZSIMONS
MICHAEL L. MANIRE
KEVIN J. WINDELS
SAMUEL F. PANICCIA
ROBERT S. FRASER
STEPHEN F. WILLIS
DEBORAH M. COLLINS
NEIL R. MORRISON
PETER A. STROILI
FRANCES BUCKLEY
DAVID J. KUFFLER

LLOYD J. HERMAN
KEVIN P. CARROLL
LAURIE P. BEATUS
LIZA A. CHAFIIAN

JAN H. DUFFALO
JAMES E. TOLAN, II
CATHERINE L. CASAVANT
ROY CAPLINGER
ANNEMARIE J. MAZZONE
EDWARD M. ROTH
MARIA T. EHRLICH
RICHARD F. FERRIGNO
DEEANNA M. GALLA
JUDY Y. CHUNG
R. DAVID ADES
JONATHAN L. KRANZ
ARTURO M. BOUTIN
WENDY J. KALNICK

JOHN C. MUCCIFORI
MOLLY Z. BROWN
MAXINE K. NAKAMURA
GERARDO LAPETINA
LAURA S. WEINER
E. REYNOLDS WILSON
JASON B. GRANT
GAVIN J. CURLEY
BRIAN M. MARGOLIES
ASSAF RONEN
ALEXANDER M. RAZI
ANITA G. BAKER
SOTHEARY JOHNMAR
MELEENA M. BOWERS

COUNSEL

ROBERT M. MAKLA
ALBERT B. LEWIS
PETER J. THUMSER

VICTOR F. MUSTELIER
ROBERT GILROY
RICHARD G. McGAHREN

October 11, 2006

**VIA OVERNIGHT MAIL**
Timothy W. Burns, Esq.
Neil, Gerber & Eisenberg
Two North LaSalle Street
Chicago, IL 60602-3802

> Re:    Employee Benefit Plan Fiduciary Liability Insurance
> Policy No.: 874-44-03 (the "Policy")
> Insured: Ullico Inc. and its Subsidiaries ("Ullico")
> Matter : Stock Repurchase Matter
> A.I. File No.: 434-003376
> Our File No.: 101-69615

Dear Mr. Burns:

Enclosed please find National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") check no. 20753672 in the amount of $273,382.26 made payable to Ullico, Inc ("Ullico"). The enclosed check is being remitted to Ullico "on account" for defense fees and expenses rendered by the law firms of Miller & Chevalier and Feder, Semo & Bard ("Feder Semo"), on behalf of Ullico, in connection with the Stock Repurchase matter.

Due to the complexity of issues and confusion surrounding the billing statements submitted to date by Ullico, AIG Domestic Claims, Inc. ("AIGDC") retained a professional auditing firm to perform an audit of the Miller & Chevalier and Feder Semo billing statements. The auditing firm determined that of the aggregate $4,231,676.21 in billing statements submitted to National Union to date (this amount includes Miller & Chevalier invoices dated 8/8/03 through 12/7/05 and two Feder Semo invoices, both dated 6/15/05), $288,382.26 could be conclusively established as being rendered in defense of Ullico.

Timothy W. Burns, Esq.
October 11, 2006
Page 2

Furthermore, the auditing firm indicated that even though other fees and expenses did not fall into any specific category of uncovered fees or costs (i.e. redacted billing entries, double billing, work, tasks and expenses related to affirmative claims, billing rate increases, reasonableness of amounts charged for services rendered, etc.), more information is needed about those fees and expenses in order to determine if they were, in fact, rendered solely in defense of allegations of violations of ERISA made against Ullico. We will follow up soon by separate letter with questions relating to some of the billing entries, which may encompass additional defense fees and costs but about which we do not currently have enough information to make an informed determination. Furthermore, the Policy's $15,000 Retention was applied to the Feder Semo bills.  Therefore, enclosed is a reimbursement check in the amount of $273,382.26, which represents a reimbursement payment for legal fees and expenses rendered in the defense of Ullico.

On a going forward basis, all invoices submitted by Ullico for reimbursement under the Policy need to comply with National Union's Defense Counsel Guidelines (the "Guidelines"), the same guidelines Panel Counsel is required to follow. A copy of the Guidelines is hereby enclosed for your review and submission to Ullico and its defense counsel. Please note, however, that the enclosure of the Guidelines shall in no way be construed as consent, implied or otherwise, to Ullico's retention and use of non-Panel Counsel or as a waiver of National Union's rights, privileges and defenses under the Policy, including its rights under the Panel Counsel provisions of the Policy. Ullico and its defense counsel need to comply with all terms and conditions of the Guidelines including, but not limited to: (i) provisions mandating billing in tenth of an hour increments (as opposed to quarter of an hour increments); (ii) provisions mandating itemization and detailed descriptions of all legal services rendered; and (iii) overstaffing guidelines, etc. Also, AIGDC requests that defense counsel for Ullico separate all legal fees and costs incurred in prosecuting Ullico's affirmative claims from all legal fees and expenses incurred in defending Ullico and to establish separate billing files so that the billing review process will be streamlined and to avoid any further delays or prejudice to National Union in this regard.

Please be advised that the enclosed payment by National Union is without waiver of any of National Union's rights, privileges and defenses in the coverage litigation or under the Policy, at law or in equity, including the right to seek reimbursement of all or part of this payment.  National Union also continues to reserve its rights under the Panel Counsel provisions of the Policy and makes this payment by reiterating its position that Ullico is in violation of the terms of the Panel Counsel provisions of the Policy. It remains National Union's position that it owes nothing to Ullico for defense fees and costs in view of Ullico's violations of the Panel Counsel provisions of the Policy but National Union makes this payment in good faith and "on account" in the event or to the extent it may later be determined otherwise.

#246725v1

Timothy W. Burns, Esq.
October 11, 2006
Page 3


If you have any questions or comments concerning the above, please do not hesitate to contact us immediately.

Very truly yours,

R. David Ades

Enc. (Defense Counsel Guidelines; check)

cc:    Patrick McGlone, Esq.
       Ullico, Inc.
       1625 Eye Street, NW
       Washington, D.C.  20006

#246725v1

THIS DOCUMENT CONTAINS A CUSTOM COLORED BACKGROUND AS A SECURITY FEATURE

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH

**Check No.: 20753672**

00014705     **Claim No.: 00003376**     10/10/2006

PAY     **\*\*TWO HUNDRED SEVENTY-THREE THOUSAND THREE HUNDRED**
        **\*\*EIGHTY-TWO DOLLARS AND 26 CENTS\*\***

TO
THE     ULLICO INC. AND ITS SUBSIDIARI                     **Pay** \*\*\*\*\*\*\*\*\*\*$273,382.26
ORDER   711 MASSACHUSETTS AVE, NW
OF      WASHINGTON, DC                                      **VOID AFTER NINETY DAYS**
        20                                        001

FLEET BANK
HARTFORD                          CT                        **AUTHORIZED SIGNATURE**

⑈ 20753672 ⑈  ⑆ 011900445 ⑆     5208 ⑈

## NATIONAL UNION FIRE INSURANCE COMPANY

### DEFENSE COUNSEL GUIDELINES - PENSION

1. Defense counsel will submit to D'Amato & Lynch a list outlining the number of employees, the status of each person working on the case, and the hourly rates charged for each employee. We are amenable to discussing a blended hourly rate for all attorneys working on the matter. Hourly rates and attorneys working on the litigation are not to be changed without National Union's consent.

2. Only one partner will be assigned to the case, unless there are unusual circumstances requiring the use of more than one partner and National Union consents to the use of more than one partner. Paralegals and lower level associates will be used whenever the activity does not require the use of senior personnel (e.g., research, document preparation).

3. Defense counsel will consult National Union before incurring any cost that is not generated internally, except deposition services (e.g., experts, actuaries, outside legal services, etc.).

4. Telephone, postage courier and other delivery services, computer research, meals and travel expenses are to be reimbursed at actual cost. National Union will not reimburse overhead expenses, including word processing performed during business hours. All expenses are to be individually listed on each bill with a specific description of each disbursement.

5. Photocopying will be reimbursed at the lowest rate charged other major clients. The cost per photocopy made in-house will be shown on each statement or be made known to National Union (e.g., .05 cents per copy).

-1-

6.  National Union will not reimburse for:

    a)  extensive research of relatively routine matters within the knowledge of experienced practitioners in the relevant area of law;

    b)  attendance by more that one attorney at routine court proceedings, meetings, depositions, etc.; and

    c)  first class travel or client entertainment.

7.  Defense counsel will formulate litigation strategy and tactics, to the extent practicable. Such strategy and tactics will be reviewed with National Union on an ongoing basis as necessary.

8.  Defense counsel will formulate a defense expense budget in the form attached as Appendix A, with a breakdown for each anticipated activity. The initial budget is to be submitted within 30 days of assignment and is to be revised at intervals of at least once every three months.

9.  Bills are to be submitted **monthly** to D'Amato & Lynch. Bills are to be reimbursed on a <u>quarterly</u> basis, except on non-duty to defend policies.

10. Bills will identify the insured, the original claimant and the National Union file number. Bills will also individually itemize each activity performed by each attorney and paralegal and show a specific description of the service rendered. Time charges are to be shown in intervals of .1 hour or multiples thereof. The bill must also include the total amount of fees and disbursements "billed to date", including the invoiced period.

11. Defense counsel will submit an initial status report within 30 days of assignment in the form attached as Appendix B

-2-

#200829v1

and thereafter status reports are to be submitted at least every 90 days. Less detailed status reports are to be submitted at more frequent intervals if there has been a significant development (e.g., settlement discussion, motion granted, etc.) Status reports will contain the following information:

a)   named insured, name of original claimant, National Union file number, name of the case, court and docket number;

b)   summary of facts:

c)   summary of plaintiffs' claims and relief requested;

d)   analysis of the factual and legal issues;

e)   plans for handling the case and alternative courses of action, with a description of the advantages and risks of each;

f)   preliminary assessment of exposure and the likelihood of prevailing;

g)   if no developments have occurred since the last report, defense counsel should submit a report advising of that fact; and

h)   if the case is tried, defense counsel is to advise daily as to developments during trial.

12.  Defense counsel at all times will identify possibilities of settlement and achieve early and cost-effective settlement of the litigation. Reports as to defense counsel's identification and evaluation of settlement are to be sent to D'Amato & Lynch.

-3-

Appendix A

NATIONAL UNION FIRE INSURANCE COMPANY

DEFENSE EXPENSE BUDGET - PENSION

THIS CASE BUDGET PLAN IS TO BE SUBMITTED WITHIN 30 DAYS AFTER ASSIGNMENT WITH THE FIRST ATTORNEY'S STATUS REPORT. IT SHOULD THEN BE UPDATED AT LEAST EVERY 90 DAYS.

1. Name of Insured:

2. Name of Original Claimant in Underlying Litigation:

3. National Union File Number:

4. Budget Time Period:

| ANTICIPATED ACTIVITY | HOUR | RATE | FEE | EXPENSES | TOTAL |
|---|---|---|---|---|---|
| A. | | | | | |

TOTAL:         _____$____$_____$___

B.

TOTAL:         _____$____$_____$___

-4-

#200829v1

C.

_____

_____

_____

       **TOTAL:**       _____$____$_____$____

D.

_____

_____

_____

       **TOTAL:**       _____$____$_____$____

5.    Last Budget Amount and Time Period: $_____for period _____to _____.

6.    Actual Fees and Expenses for Last Budget Time Period: $_____.

7.    Percentage Variance:_____%

8.    Date Budget Prepared:_____.

9.    Attorney Preparing Budget:_____.

•   If the space provided is insufficient, please add additional pages.

•   This budget is to be revised at intervals of once every three months.

-5-

<u>**Appendix**</u>

<u>B</u>

<u>NATIONAL UNION FIRE INSURANCE COMPANY</u>

<u>ATTORNEY'S STATUS REPORT OUTLINE - PENSION</u>

**THIS REPORT IS TO BE SUBMITTED WITHIN 30 DAYS AFTER ASSIGNMENT WITH THE FIRST CASE BUDGET PLAN. IT SHOULD THEN BE UPDATED EVERY 90 DAYS OR WHENEVER NEW INFORMATION BECOMES AVAILABLE. ANY CHANGES SHOULD BE INDICATED IN BOLD PRINT OR ITALICS.**

TO:                                    CASE NAME:
FROM:                                  INSURED:
DATE:                                  FILE NUMBER:
EXPECTED TRIAL DATE:                   VENUE:

I.  <u>INSURED</u>

    A.  Effectiveness as a witness - rate (from excellent to poor) his/her demeanor, general credibility, memory and particular tendencies as a witness.

    B.  Other Insurance Coverage - type of policy, policy number and/or claim number, carrier name, address and phone number, claim person, type of other insurance clause (excess, escape or prorata), limits, deductible, known coverage defenses and/or reservation of rights (attach copy if available).

II. <u>PLAINTIFF</u>

    A.  Name, address, age, marital status and occupation.

    B.  Effectiveness as a witness - rate (from excellent to

-6-

#200829v1

poor) his/her demeanor, general credibility, memory and particular tendencies as a witness.

C.    Name of plaintiff's attorney and ability.

III.  SUMMARY OF FACTS WHICH ENGENDERED THIS CLAIM


IV.   CO-DEFENDANTS AND/OR THIRD PARTY DEFENDANTS

A.    Identity of parties.

B.    Respective attorneys - names, business address and telephone number.

C.    Factual and legal basis for plaintiff's/cross-complainant's claim against other parties.

D.    Brief summary of probable exposure.

E.    Other Insurance Coverage - type of policy, policy number and/or claim number, carrier name, carrier address, carrier phone number, claims person, type of other insurance clause (excess, escape or prorata), limits, deductible, known coverage defenses and/or reservation of rights (attach copy if available).

V.    WITNESSES

A.    Name, address, age and occupation.

B.    Event perceived.

C.    Effectiveness as a witness - rate (from excellent to poor) his/her demeanor, general credibility, memory

#200829v1

and particular tendencies as a witness.

VI. <u>ANALYSIS OF CLAIM: LIABILITY AND DAMAGES</u>

A.   Plaintiff's theories.

B.   Insured's theories.

C.   Co-defendant's and/or third-party defendant's theories.

D.   Strengths and weaknesses of A, B, and C above.

E.   Chance of defense verdict for insured, co-defendant and/or third party defendant (discuss each separately).

F.   If the insured, co-defendant and/or third party defendant settles, the probability of success in the non-settling defendant(s) obtaining "total indemnity" against the settling defendant (discuss each separately).

G.   Causation issues, e.g., was the insured's alleged negligence a cause in fact of the damages claimed.

H.   Probable damages (compensatory) if case is lost.

I.   Punitive damage exposure? Attorney's fees recoverable?

J.   Probability of contributory negligence finding (i.e., defense verdict) or probable percentage of comparative negligence (i.e., plaintiff's percentage of fault). Note: in comparative negligence jurisdictions, you should indicate whether "pure", 50% or 51% rule is followed.

K.   Probable apportionment of fault among defendants (assign percentages).

-8-

L.  Net exposure (state a dollar amount) to insured after all apportionment and based on probable damages.

M.  Settlement value and basis for evaluation.

N.  Should case be tried? Explain risks.

O.  Brief summary of probable outcome as to both liability and damage issues, indicating whether you consider this a case liability and why.

## III. SETTLEMENT DISCUSSIONS

A.  What is the demand?

    a) Original _____ b) Present _____

B.  What, if anything, have you offered? (If definite offer has not been made, but an indicatory or range has been discussed, so state, listing each indicatory or range figure discussed.)

C.  What can the case be settled for at this time?

D.  Do you believe we should settle? Why?

## VIII. FUTURE HANDLING

A.  In your opinion, is the investigation of this case complete?

B.  If not complete, what further investigation do you suggest and what would it cost?

C.  What further discovery is needed and what would it cost?

#200829v1

D.   Experts - explain need, field, number, probable testimony, cost, and whether plaintiff has one (if so, who and how effective is he/she)?

IX.  <u>LEGAL EXPENSES</u>

A.   What are the total legal expenses to date?

B.   If case is tried, what would be the approximate cost of defense through trial excluding IX(A) above (include the expense described in VIII(D).

X.   <u>JUDGE AND/OR MAGISTRATE</u>

A.   Name.

B.   Judicial philosophy, reputation and experience.

C.   Inclinations toward each party, if any.

[Rev. 8/98]

#200829v1