## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ULLICO INC.,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Civil Action No. 1:06cv00080 (RJL/AK)** |
| | : |
| **NATIONAL UNION FIRE INSURANCE** | : |
| **COMPANY OF PITTSBURGH, PA, et al.** | : |
| | : |
| **Defendants.** | : |
| | : |

## DEFENDANT/COUNTERCLAIM PLAINTIFF NATIONAL UNION'S
## CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF
## CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

David J. Farber (415899)
Shannon W. Conway (477863)
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Counsel for Defendant/Counterclaim*
*Plaintiff National Union Fire Insurance*
*Company of Pittsburgh, PA*

407051

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT........................................................................................................................3

I.      Ullico's Coverage Demand for the DOL Investigation is a Claim................................3

II.     The 2002 Fiduciary Policy's Exclusion 5(d) Applies to Bar Coverage........................5

III.    The Undisputed Facts Demonstrate that the Underlying Litigation Alleges,
      Arises Out Of, is Based Upon or Attributable To the DOL Investigation.....................7

IV.    Whether Analyzed Under the "But For" or Ullico's Proffered "Sufficient
      Nexus" Test, the Underlying Litigation Alleges, Arises Out Of, is Based
      Upon or Attributable To the DOL Investigation and Coverage is therefore
      Precluded by the 2002 Fiduciary Policy's Exclusion 5(d)...........................................11

CONCLUSION....................................................................................................................14

407051

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Aloha Pacific, Inc. v. California Ins. Guarantee Ass'n,*
    93 Cal.Rptr.2d 148 (Cal.Ct.App. 2000) .......................................................................6

*AT&T Corp. v. Clarendon America Ins. Co.,*
    C.A. No. 04C-11-167 (JRJ), 2006 WL 1382268 (Del.Super. Apr. 13, 2006) ...6, 12, 13

*Bensalem Township v. Int'l Surplus Lines Ins. Co.,*
    No. 91 Civ. 5315, 1992 WL 142024 (E.D. Pa. June 15, 1992),
    *aff'd in part, rev'd in part,* 38 F.3d 1303, 1315 (3d Cir. 1994) ................................6, 7

*Booker v. Robert Half Intern., Inc.,*
    315 F.Supp.2d 94 (D.D.C. 2004) .................................................................................6

*Geller v. Randi,*
    40 F.3d 1300 (D.C. Cir. 1994) .....................................................................................2

*Giraldo v. Dep't of Justice,*
    No. 02-5058, 2002 WL 1461787 (D.C. Cir. July 8, 2002) ...........................................3

*Judicial Watch of Florida, Inc. v. U.S. Dept. of Justice,*
    102 F.Supp.2d 6 (D.D.C. 2000) ...................................................................................2

*Nails v. England,*
    311 F.Supp.2d 116 (D.D.C. 2004) ...............................................................................2

*Seneca Ins. Co. v. Kemper Ins. Co.,*
    No. 02CV10088(PKL), 2004 WL 1145830 (S.D.N.Y. May 21, 2004) ......................12

*Sigmund v. Progressive Northern Ins.,*
    374 F.Supp.2d 33 (D.D.C. 2005) ...............................................................................11

*U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, TZVIE,*
    No. 99-CV-7398DGT, 2004 WL 2191051 (E.D.N.Y. Sept. 30, 2004) .........................6

*W.M. Schlosser Co. v. Maryland Drywall Co.,*
    673 A.2d 647 (D.C. 1996) .............................................................................................6

*Zunenshine v. Executive Risk Indem., Inc.,*
    No. 97 Civ. 5525 (MBM), 1998 WL 483475 (S.D.N.Y. Aug. 17, 1998)................6, 12

## TABLE OF AUTHORITIES (cont'd)

**Page**

**Rules**

Local Rule of Civil Procedure 7.1 ...........................................................................................2

**Other Authorities**

Report on Self-Dealing and Breach of Duty at Ullico, Inc. by the
Majority Staff of the Committee on Governmental Affairs, United States Senate,
108th Cong. (S. Prt. 108-45)......................................................................................................8, 9

Tom Hamburger, "Finance Chief of Unions' Ullico Quits in Protest,"
*The Wall Street Journal*, Mar. 6, 2003....................................................................................8

Tom Hamburger and John Harwood, "Inside Deal: How Union Bosses Enriched
Themselves on an Insurer's Board," *The Wall Street Journal*, April 5, 2002 ..........................8

407051

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ULLICO INC.,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : **Civil Action No. 1:06cv00080 (RJL/AK)** |
| | : |
| **NATIONAL UNION FIRE INSURANCE** | : |
| **COMPANY OF PITTSBURGH, PA, et al.,** | : |
| | : |
| **Defendants.** | : |

## DEFENDANT/COUNTERCLAIM PLAINTIFF NATIONAL UNION'S CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant/Counterclaim Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, hereby submits this Consolidated Reply Memorandum in Support of its Cross-Motion for Partial Summary Judgment, and responds to the Oppositions filed by Plaintiff Ullico, Inc. ("Ullico") and Defendant John K. Grelle ("Grelle") as follows:

### INTRODUCTION

Ullico and Mr. Grelle's oppositions to National Union's Cross-Motion for Partial Summary Judgment dismissing all claims against the 2002 Fiduciary Policy can be distilled to two arguments: first, that the Department of Labor ("DOL") investigation is not a "claim," (*See* Ullico Opp. at 7-8; Grelle Opp. at 9),[1] and second that they have no idea of the subject matter of the DOL investigation which triggered the 2001 Fiduciary Policy. Both responses are patently

---

[1] As referenced herein, Ullico's Opposition to National Union's Cross-Motion for Partial Summary Judgment is cited as "Ullico Opp. At _"; Defendant John K. Grelle's Opposition to National Union Fire Insurance Company of Pittsburgh, PA's Motion for Partial Summary Judgment is cited as "Grelle Opp. at _"; Ullico's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment is cited as "Ullico Br. at _"; and National Union's Memorandum in Opposition to Ullico's Motion for Partial Summary Judgment and in Support of National Union's Cross-Motion for Partial Summary Judgment is cited as "National Union Br. at _".

wrong, and are misconstructions of the 2002 Fiduciary Policy's anti-stacking or "prior notice" provision in Clause 5(d). The "claim" at issue triggering the policy provision is not a DOL claim against Ullico or Grelle, but Ullico's "claim" for <u>coverage</u> under the 2001 Fiduciary Policy – a claim which Ullico most certainly has tendered to National Union, and for which it seeks summary judgment on its affirmative motion. Moreover, the DOL investigation (with or without subpoenas, allegations, or anything else) is defined by the policy as a "claim." Thus, it is beyond dispute that the predicate "claim" triggering Clause 5(d) exists.

As to the second issue, it is beyond dispute that the various litigation claims between the individuals and Ullico (and vice versa) are "alleging, arising out of, based upon or attributable to the facts alleged or to the same or related Wrongful Act alleged and contained in" the DOL investigation. Indeed, Ullico's and Carabillo's own words, quoted at length in National Union's moving papers, concede this plain truth (which, in any event, would be obvious to the Court from its oversight of the underlying litigation). As much as Ullico and Grelle try to recast their prior pleadings, their words are cast in black and white on their own paper. As such, neither Ullico nor Grelle has (or could have) countered National Union's demonstration of the undisputed material facts with counter-facts of their own. Ullico's and Mr. Grelle's claims of "we don't know" are desperate and insufficient to defeat summary judgment here. Thus, National Union's limited Motion should be granted.[2]

---

[2] National Union notes that of the four parties (other than National Union and the other insurer AISLIC) involved in this coverage litigation, two parties concede the non-applicability of the 2002 Fiduciary Policy. Neither Joseph A. Carabillo ("Carabillo") nor James W. Luce ("Luce") has opposed National Union's Cross-Motion. "In this court, an unopposed motion [for summary judgment] may be treated as conceded by the nonmoving party." *Judicial Watch of Florida, Inc. v. U.S. Dept. of Justice*, 102 F.Supp.2d 6, 20 (D.D.C. 2000) (citing Local R. LCvR. 7.1(b)) ("In deciding a motion for summary judgment, the court may assume that each fact identified in the movant's statement of material facts is admitted unless controverted by the opposition."); *Geller v. Randi*, 40 F.3d 1300, 1303 (D.C. Cir. 1994) (holding that district court properly treated defendants' motion for summary judgment and motion for sanctions as conceded by Plaintiff under Local Rule 7.1(b)'s predecessor (former LCvR 108(b)); *Nails v. England*, 311 F.Supp.2d 116, 122 (D.D.C. 2004) ("If the opposing party fails to [file an opposition], the court may treat the

Ullico also tries to debate the "but for" analysis typically applied by District of Columbia courts when addressing whether a claim is "based upon" or "arises out of" an earlier claim. Ironically, however, Ullico's recommended "sufficient nexus" test provides it no cover, because the indisputable facts – including Ullico's own allegations and characterizations of the claims for which it seeks coverage – definitively establish the "sufficient nexus" between the DOL Investigation and Underlying Litigation.

## ARGUMENT

### I.     Ullico's Coverage Demand for the DOL Investigation is a Claim

The language contained in the 2002 Fiduciary Policy's Exclusion 5(d), definition of "Claim," and definition of "Wrongful Act" remain undisputed.[3] It is also undisputed that these provisions are unambiguous, and must be enforced as written. *See* Ullico Br. at 14, 19 (stating that, when deciding whether coverage under an insurance policy exists, the Court must look directly to the policy's language and "give the words used their common, ordinary and popular

---

motion as conceded.") (quoting *Giraldo v. Dep't of Justice,* No. 02-5058, 2002 WL 1461787, at \*1 (D.C. Cir. July 8, 2002)).

[3] As previously noted in National Union's opening brief, Exclusion 5(d) provides that National Union "shall not be liable to make any payment for Loss in connection with a Claim made against an Insured(s) ... alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Act alleged **or contained,** in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time." Ullico Br., Exh. 3 at 8 (emphasis added). It is unfortunate that Ullico deletes the full text of the provision when quoting it to try to mislead the Court into thinking the phrase "claim" is the underlying lawsuit. Ullico Br. at 7. It is not. Rather, it is the "claim which has been reported," or the "circumstance of which notice has been given" of a possible claim that controls.

"'Claim' means: (1) a written demand for monetary relief; or (2) a written demand for injunctive relief; or (3) a civil or criminal proceeding ... (4) a formal agency adjudicative proceeding anywhere in the world to which an insured is subject; or (5) **any fact-finding investigation by the Department of Labor,** the Pension Benefit Guaranty Corporation, or similar governmental agency which is located outside of the United States." Ullico Br., Exh. 3 at 3 (emphasis added).

"'Wrongful Act' means: (1) as respects a Fiduciary, the Plan or the Sponsor Organization: a violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by ERISA; or any matter claimed against an Insured solely by reason of his, her or its status as a Fiduciary, the Plan or the Sponsor Organization, but only with respect to a Plan; ... (3) as respects a Natural Person Insured, any matter claimed against him or her arising out of his or her services as a Fiduciary or Administrator of any multiemployer plan as defined by ERISA ..." Ullico Br., Exh. 3 at 7-8.

meaning"); National Union Br. at 14. Moreover, if there were any doubts, the policy *itself* makes crystal clear that a "'Claim' includes: **any fact-finding investigation by the Department of Labor**, the Pension Benefit Guaranty Corporation, or similar governmental agency which is located outside of the United States," (Ullico Br., Exh. 3 at 3 (emphasis added)), with or without subpoenas, testimony, specific allegations, or anything else. Finally, it is undisputed that Ullico tendered notice of a "claim" to National Union that triggered the 2001 Fiduciary Policy. National Union Br. at 5, ¶ 6; Ullico Opp. at 5.

Nevertheless, both Ullico and Grelle advance the untenable position that the DOL Investigation might not be a Claim as that term is used in the 2002 Fiduciary Policy's Exclusion 5(d). *See* Ullico Opp. at 7-8; Grelle Opp. at 11-12. Their argument fails for two reasons. First, the "claim" at issue is what Ullico initially tendered to National Union – not a demand that was later asserted against them related to or arising from the same or related Wrongful Acts at issue. Second, even if it was the later action against Ullico, no one disputes that the term "Claim" is defined by the 2002 Fiduciary Policy to specifically include "any fact-finding investigation by the Department of Labor." Grelle Opp. at 6; Ullico Br., Exh. 3 at 3. Ullico does not dispute, and in fact affirmatively admits, that it previously provided notice to National Union of the DOL Investigation and requested payment of the defense costs incurred in its defense of that claim. Ullico Opp. at 5 ("Ullico sent notice of the DOL Investigations and National Union acknowledged notice."). Ullico's notice was accepted by National Union and its covered defense costs have been reimbursed by National Union under the 2001 Fiduciary Policy, subject to a complete reservation of National Union's rights thereunder. As such, the Claims in the Underlying Litigation, which allege, arise out of, are based upon or attributable to the DOL

4

Investigation of which Ullico provided prior notice to National Union are specifically excluded by the 2002 Fiduciary Policy's Exclusion 5(d).

Ullico and Grelle's briefs only underscore the reasons why the Court must grant National Union's cross-motion. Their implausible position is based solely on their unsubstantiated assertions that the DOL Investigations "have not been terminated," have not "resulted in the issuance of any reports or findings, much less any claims being filed by any party," and that the complaints in the Underlying Litigation assert varying causes of action that the Department of Labor has not asserted, and otherwise make "no mention of the DOL Investigations" (see Ullico Opp. at 7-8; Grelle Opp. at 9), and is simply irrelevant.[4] Indeed, Ullico's newfound argument begs the question of why, if the DOL Investigation was not a Claim, Ullico tendered it as such to National Union, and has steadfastly insisted on National Union's payment of the costs allegedly incurred in defense of that claim under the 2001 Fiduciary Policy. Ullico cannot have it both ways. It filed a claim for the DOL Investigation in 2001. That Claim involves the very same predicate facts and Wrongful Acts concerning the Stock Repurchase Program that gave rise to the raft of litigation that followed. Thus, National Union is entitled to summary judgment holding that Exclusion 5(d) of the 2002 Fiduciary Policy limits coverage to the 2001 Fiduciary Policy. Accordingly, National Union is entitled to summary judgment that Provision 5(d) limits available coverage into the 2001 Fiduciary Policy.

## II.     The 2002 Fiduciary Policy's Exclusion 5(d) Applies to Bar Coverage

Despite the undisputed clarity of Exclusion 5(d), Ullico nevertheless stresses that the exclusionary language "is *narrower* than the reading National Union wants this Court to accept." Ullico Opp. at 7. Yet National Union has never requested any "interpretation" because the

---

[4] Grelle does, however, admit that at least "some" of the "claims of the Underlying Litigation universally arise from or relate to the DOL's Investigations." Grelle Opp. at 8.

5

language in Exclusion 5(d) is clear on its face. Indeed, a recent Delaware decision has confirmed that the provision is "clear, unambiguous and **undeniably broad**." *AT&T Corp. v. Clarendon America Ins. Co.*, C.A. No. 04C-11-167 (JRJ), 2006 WL 1382268, at *15 (Del.Super. Apr. 13, 2006) (emphasis added).[5] The *AT&T Corp.* court, in considering the exact same language in a 2002 National Union insurance policy, held that "[a]s written, the language of this Exclusion encompasses not only any 'Claims,' whether 'directly or indirectly' caused by a 'Wrongful Act,' but also any 'Claims' that **in any way** involve any 'Wrongful Act,' fact, circumstance or situations alleged in the prior litigation." *Id.* (emphasis added). The court went on to find that "'[n]othing in the policy requires that a claim involve precisely the same parties' legal theories, 'Wrongful Act[s],' or requests for relief for [the Prior Notice exclusion] to apply." *Id.* (quoting *Zunenshine v. Executive Risk Indem., Inc.*, No. 97 Civ. 5525 (MBM), 1998 WL 483475, at *4, 5 (S.D.N.Y. Aug. 17, 1998)).

The *AT&T* decision follows several other cases, including *Bensalem Township v. Int'l Surplus Lines Ins. Co.*, No. 91 Civ. 5315, 1992 WL 142024 (E.D. Pa. June 15, 1992), *aff'd in part, rev'd in part*, 38 F.3d 1303, 1315 (3d Cir. 1994), when interpreting a similarly-worded "pending litigation" exclusion, the court held that "[t]he language of the policy exclusion is clear and unambiguous: any claim in any way involving the same fact, circumstance, or situation as is the subject of pending litigation is to be excluded from coverage. By the unambiguous use of

---

[5] In a policy exclusion, the words 'arising out of' are deemed to be broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with...." *U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, TZVIE*, No. 99-CV-7398DGT, 2004 WL 2191051, at *6 (E.D.N.Y. Sept. 30, 2004) (internal quotations and citations omitted); *Aloha Pacific, Inc. v. California Ins. Guarantee Ass'n*, 93 Cal.Rptr.2d 148, 162 (Cal.Ct.App. 2000) ("Courts in California and elsewhere have consistently given a broad interpretation to terms such as 'arising out of' in various kinds of insurance provisions"); *Booker v. Robert Half Intern., Inc.*, 315 F.Supp.2d 94, 98 (D.D.C. 2004) (noting that "[t]he language 'arising out of or relating to' the underlying contract or agreement has been interpreted broadly by the Supreme Court"); *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647, 653 (D.C. 1996) (finding that an agreement to indemnify for "any and all claims ... arising out of ... or in connection with ..." was "so broad and sweeping as to plainly reveal an intent to encompass losses incurred in whole or in part by the negligence of the indemnitee).

6

words as broad as 'fact,' 'circumstance' ... it is clear that coverage does not depend upon the pleader's art but rather upon 'underlying' facts." *Id.* at *2.[6] Thus, Ullico's view that the DOL Investigation has "not been terminated," and has not "resulted in the issuance of any reports or findings, much less any claims being filed by any party," (Ullico Opp. at 8), is irrelevant (and, in any event, not true). Clause 5(d) clearly precludes coverage for the Underlying Litigation. Nothing in the unambiguous language of Clause 5(d) requires the conclusion of a Claim before additional claims under the same set of facts may be excluded. It also does not matter that the "Underlying Litigation would have existed regardless of whether there were DOL Investigations." Ullico Opp. at 13. Here, the investigation itself and the subpoenas which form the DOL Investigation and the pleadings in the Underlying Litigation – including Ullico's own allegations and its own characterization of the interrelationship of the facts and allegations against it – leave no doubt and sufficiently evidences that the Underlying Litigation alleges, arises out of, is based upon or attributable to the facts and/or Wrongful Acts that were the basis for the Claim initially reported by Ullico to National Union as respects the DOL Investigation under the 2001 Fiduciary Policy.

### III.    The Undisputed Facts Demonstrate that the Underlying Litigation Alleges, Arises Out Of, is Based Upon or Attributable To the DOL Investigation

The DOL subpoenas – which were issued in connection with its investigation into, *inter alia*, the "ERISA covered Plans that are eligible to purchase ULLICO, Inc. stock" and the "ULLICO, Inc. Pension Plan and Trust," (Ullico Br., Valentine Aff. Ex. A) – required both **testimony** and the production of documents:

---

[6] While the Third Circuit reversed the *Bensalem* district court's order dismissing the township's claims against the insurer to permit discovery into a specific issue in dispute, the Third Circuit explicitly adopted the district court's reading of the "pending litigation" exclusion, stating that "in our view, the policy unambiguously excludes coverage for claims such as the ones at issue here." 38 F.3d at 1315.

- Relating to offers to purchase and offers to sell ULLICO stock in which the proposed buyer or seller of such stock was an employee benefit plan or a fiduciary of an employee benefit plan;

- Which reflect purchases, sales, and transaction prices of ULLICO stock, in which the buyer or seller of such stock was an employee benefit plan or a fiduciary of an employee benefit plan;

- Reflecting disbursements by ULLICO with respect to ULLICO stock purchases in which the buyer or seller of such stock was an employee benefit plan or a fiduciary of an employee benefit plan;

- Reflecting the identity of the officers and directors of ULLICO;

- Prepared for ULLICO by James Thompson, Esquire and/or Winston & Strawn ("the Thompson Report") and all documents related to the Thompson Report;

- Relating to compensation paid by ULLICO to Robert Georgine, including employment agreements, bonuses, incentive agreements and deferred compensation; and

- Relating to stock transactions between Robert Georgine and ULLICO...

*Id.* These subpoenas were issued to Ullico in connection with the Department of Labor's investigation, which "focused on whether certain stock transactions violated the Employee Retirement Income Security Act."[7]

As set forth in National Union's opening brief and undisputed by Ullico, in the midst of the DOL Investigation, Ullico appointed Governor James Thompson to investigate the events surrounding Ullico's Stock Repurchase Program, (National Union Br. Ex. 4 at 72), which concluded, *inter alia*, that:

---

[7] REPORT ON SELF-DEALING AND BREACH OF DUTY AT ULLICO, INC. BY THE MAJORITY STAFF OF THE COMMITTEE ON GOVERNMENTAL AFFAIRS, UNITED STATES SENATE, 108TH CONG. (S. Prt. 108-45) at p. 57 (hereinafter the "Senate Majority Report") (citing Tom Hamburger and John Harwood, "Inside Deal: How Union Bosses Enriched Themselves On An Insurer's Board," *The Wall Street Journal*, April 5, 2002; "Finance Chief of Unions' Ullico Quits in Protest," *The Wall Street Journal*, Mar. 6, 2003 ("The Labor Department is investigating whether Ullico board members enriched themselves with the questionable stock deals at the expense of several unions and their pension funds")). Excerpts from the Senate Majority Report and copies of the cited *Wall Street Journal* articles are attached hereto as Exhibits A, B and C of the Declaration of Shannon W. Conway ("Conway Decl."). National Union does not introduce these documents to address the merits of any allegations of liability in the Underlying Litigation. Rather, these documents are attached simply to demonstrate the direct link between the DOL Investigation and the Underlying Litigation.

4864230

> A compelling argument exists that directors, particularly those who benefited from self-interested transactions, did not satisfy their fiduciary duties to the Company and its shareholders in connection with [Ullico's stock offer and repurchase] transaction. An equally forceful argument applies to the principal officers, Georgine and Carabillo, who were instrumental in creating and implementing the stock offer and repurchase programs, and who benefited from Ullico stock transactions.

National Union Br. Ex. 4 at 167; *see also* National Union Br. Ex. 2 at ¶ 90. The obvious relationship between the alleged stock improprieties, the alleged ERISA violations, and other alleged breaches of fiduciary duties which was the basis of the DOL investigation and led to the underlying litigations between the officers/directors and Ullico was echoed in a Report by the United States Senate:

> First, it could be alleged that ULLICO directors and officers who were trustees of pension plans that invested in ULLICO breached the fiduciary duties they owed to those pension plans by participating in stock transactions that deprived the plans of potential profits. Under this theory, it could be alleged that certain directors bought stock cheaply and then participated disproportionately in the 2000 repurchase ... By doing so, these directors and officers denied these funds to larger shareholders, including the very pension plans of which they are also trustees. . . The second theory that could be pursued under ERISA is focused on the failure to disclose relevant information ... one could attempt to make a claim against ULLICO directors who are also pension plan trustees based on those directors' failure to disclose to other fiduciaries or plan participants details regarding the 2000 formal repurchase program and discretionary repurchases of ULLICO stock.[8]

Also left undisputed by Ullico are the facts that,

> Following the issuance of the Thompson Report ... and at their annual meeting on May 8, 2003, ULLICO's shareholders elected and installed a new Board of Directors.... Ullico's Chairman, Robert Georgine, resigned on that same date, "recognizing that the new Board would otherwise terminate him." ... On May 30, 2003,

---

[8] Senate Majority Report, at p. 78.

> Carabillo was terminated for cause… "Grelle resigned on February
> 25, 2003; and Luce retired effective June 1, 2003."

National Union Br. 7 at ¶ 15 (citing and quoting National Union Br. Ex. 2 (Ullico's Consolidated Counterclaim) at ¶ 91). While these activities were occurring, Ullico sought coverage for defense fees and costs from National Union and, in its coverage letter dated January 15, 2003, National Union agreed to pay such defense fees and costs under the 2001 Fiduciary Policy so long as Ullico retained panel counsel, and while reserving all of its rights under that policy. National Union Br. Ex. 5.

After the institution of the Underlying Litigation (*see* National Union Br. at 8-9, ¶¶ 17-21), and in correspondence relating to its request for coverage, Ullico's General Counsel (and Affiant here), Patrick McGlone, characterized the claims at issue in the Underlying Litigation as based "in part on the grounds that Carabillo breached his fiduciary duties to the company by engaging in a series of improper stock transactions between 1998 and 2001, which caused Ullico to terminate him." Ullico's Statement of Undisputed Facts also described Carabillo's and the other officers' and directors' improper stock transactions, "self-dealing" and breach of fiduciary duties to the various Ullico employee benefit plans between 1998 and 2001 (Ullico's Br. at 3-4), and then described the DOL Investigation as "relating to the sale and purchase of Ullico stock by ERISA-covered employee benefit plans and fiduciaries with respect to such plans." (Ullico's Br. at 5). Mr. McGlone, in seeking coverage for the Underlying Litigation asserted, "[a]s a result, substantially the same set of facts and issues will control both the defense of Carabillo's claims and the pursuit of ULLICO's counterclaims." Conway Decl. Ex. D. (National Union cited Mr. McGlone's 2005 correspondence, but inadvertently failed to attach it as an Exhibit. The letter is

10

now attached hereto as Conway Decl., Ex. D.).[9] These undisputed facts – all of which are taken from the subpoenas in the DOL Investigation, the allegations in the Underlying Litigation and Ullico's characterization of the same – clearly establish that the Underlying Litigation alleged, arises out of, is based upon or attributable to the DOL Investigation.

### IV. Whether Analyzed Under the "But For" or Ullico's Proffered "Sufficient Nexus" Test, the Underlying Litigation Alleges, Arises Out Of, Is Based Upon or Attributable To the DOL Investigation and Coverage Is therefore Precluded by the 2002 Fiduciary Policy's Exclusion 5(d)

National Union's opening brief provided ample legal support for this Court's adoption of the "but for" analysis typically applied by courts in determining whether a subsequent claim under an insurance policy "arises out of" or is "based upon" a previously reported claim. (National Union Br. at 14-15). Ullico summarily rejects this analysis, attempting to negate the obvious causal connection between the DOL Investigation and Underlying Litigation by distinguishing irrelevant facts, and instead contends that that this court must apply the "sufficient nexus" test used in *Sigmund v. Progressive Northern Ins.*, 374 F.Supp.2d 33 (D.D.C. 2005), an uninsured motorist insurance case. Although Ullico's analysis is incorrect, Ullico's distinction is without a difference, because under either the "but for" or the "sufficient nexus" test, the Underlying Litigation undeniably alleges, arises out of, is based upon or attributable to the DOL Investigation.

Indeed, the determination of whether a "sufficient nexus" exists between the DOL Investigation and the Underlying Litigation – is easily met here based on the undisputed facts and the Underlying Litigation's pleadings. "Claims 'share a sufficient factual nexus when they are based on the same agreement or when they involve the same underlying circumstance.'"

---

[9] Ullico provides no legal authority to support its request that these quotations from *its own correspondence* stricken, nor any support for why National Union cannot attach it here. Should the Court deem it necessary, National Union will be pleased to file an Errata to its cross-moving papers to reflect this Exhibit.

*AT&T Corp.*, 2006 WL 1382268, at *14 (quoting *Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02CV10088(PKL), 2004 WL 1145830, at * 6 (S.D.N.Y. May 21, 2004)).  For example, in *Zunenshine*, 1998 WL 483475, the court defined the meaning of "sufficient factual nexus" when examining an exclusion to coverage for claims "arising out of, directly or indirectly result from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act" alleged in a pending lawsuit or made the subject to a prior notice of claim. 1998 WL 483475, at *3-4.  The term "Wrongful Act" included "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty" by a director or officer in his official capacity.  In considering coverage for a noteholders' lawsuit against the insured alleging negligent misrepresentation in connection with the purchase of unsecured notes, the court found that the lawsuit fell within the exclusion because the same set of facts was the subject of a previous shareholders' lawsuit from three years prior, which alleged certain violations of securities law and the issuance of materially false and misleading information in public statements. *Id.* at *5.

The *Zunenshine* court drew two conclusions from the exclusionary policy language. First, "[n]othing in the plain language of either exclusion is ambiguous." *Id.* at *15.  Second, with respect to whether the provision excluded the claims at issue, "[n]othing in the Policy requires that a claim involve precisely the same parties, legal theories, 'Wrongful Act[s]' or requests for relief for the … exclusions to apply." *Id.*  The court further stated that "[t]o read the additional terms suggested by the plaintiffs into these exclusions would be at the same time to render them virtually meaningless:  a claim would be excluded only if it were based on an identical lawsuit or were the subject of an identical prior notice given to another insurer." *Id.* at *15-16.

12

The *AT&T Corp.* court similarly considered coverage for several underlying complaints stemming from AT&T's acquisition of At Home Corp. stock in 2000. 2006 WL 1382268. The first wave of underlying complaints, filed in 1999 by shareholders of At Home Corp., alleged various claims on grounds that the proposed transaction would be detrimental to At Home because it would lose valuable opportunities. *Id.*, at *2-3. Subsequent complaints filed in 2000 alleged various breaches of fiduciary duties and sought injunctive relief against AT&T, At Home and certain of both companies' officers and directors. *Id.* at *3-4. The court held that the prior notice exclusion in the AT&T's insurance policy barred coverage for the claims subsequent to the 1999 complaints because the various actions "have as their 'common nexus' many facts, all originating from the March 2000 Transactions. Thus, based on its comparison of the underlying complaints, it is clear to the Court that the March 2000 Transactions, together with the facts, circumstances, and events constituting and attendant to them, tie together the prior and subsequent actions…" *Id.* at *14.

Here, as demonstrated by the undisputed facts surrounding the DOL Investigation and the Underlying Litigation, it is equally clear that the alleged improper stock transactions of Ullico's officers and directors during the period of 1998 and 2001, "together with the facts, circumstances, and events constituting and attendant to them," tie together the DOL Investigation with the Underlying Litigation. The "sufficient nexus" test is clearly met, and the 2002 Fiduciary Policy's Exclusion 5(d)'s "unambiguous and undeniably broad" language clearly applies to exclude coverage.

## CONCLUSION

For the foregoing reasons, Defendant/Counterclaim Plaintiff National Union respectfully requests that the Court enter partial summary judgment holding that the 2002 Fiduciary Policy does not apply to provide coverage for the DOL Investigation or the Underlying Litigation, and dismissing all of Ullico's claims as they relate to the 2002 Fiduciary Policy.


Dated:  February 5, 2007                           Respectfully submitted,


                                        By:     _____/s/_____

                                                David J. Farber (415899)
                                                Shannon W. Conway (477863)
                                                2550 M Street, N.W.
                                                Washington, D.C. 20037
                                                Telephone:  (202) 457-6000
                                                Facsimile:   (202) 457-6315

                                                *Counsel for Defendant/Counterclaim
                                                Plaintiff National Union Fire Insurance
                                                Company of Pittsburgh, PA*

14

4864230