

2001 Ross Avenue
Suite 3000
Dallas, TX 75201-8001
214-758-1500

Facsimile 214-758-1550
www.pattonboggs.com

February 14, 2007

Shannon W. Conway
214-758-6609
sconway@pattonboggs.com

The Honorable Richard J. Leon
U.S. District Court Judge
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

    Re:    *Ullico, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA, et al*, Case No. 06cv00080 (RJL/AK)

Dear Judge Leon:

As counsel for National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), a Defendant in the above-referenced matter pending before this Court, I write to notify the Court that a decision cited by National Union in its Reply Memorandum in Support of its Cross-Motion for Partial Summary Judgment, *AT&T Corp. v. Clarendon America Ins. Co.*, C.A. No. 04C-11-167 (JRJ), 2006 WL 1382268 (Del.Super. Apr. 13, 2006) ("*AT&T Corp. I*"), was recently reversed in part, on other grounds, and remanded to the Delaware Superior Court in a decision decided by the Delaware Supreme Court on February 5, 2007, *AT&T Corp. v. Faraday Capital Ltd.*, No. 236, 2006, 2007 WL 329218 (Del.Supr. Feb. 5, 2007) ("*AT&T Corp. II*"). A copy of the Delaware Supreme Court's decision, which has not yet been published, is appended hereto as Exhibit A.

National Union cited the lower court's decision for its interpretation of the "prior notice" exclusion in National Union's insurance policies as "clear, unambiguous and undeniably broad," (*AT&T Corp. I* at *15) and for its holding that, "[a]s written, the language of this Exclusion encompasses not only any 'Claims,' whether 'directly or indirectly' caused by a 'Wrongful Act,' but also any 'Claims' that in any way involve any 'Wrongful Act,' fact, circumstance or situations alleged in the prior litigation." *Id.* In addition, National Union relied on the *AT&T Corp. I* court's analysis of National Union's "prior notice" exclusion and its application to the facts of that case. *Id.* at *14. These interpretations and holdings of the Delaware Superior Court were not reversed by the Delaware Supreme Court's decision.



The Honorable Richard J. Leon
February 14, 2007
Page 2

A copy of this letter and Exhibit A are simultaneously being served on all counsel in this matter via United States Mail, with a courtesy copy sent via facsimile.

Respectfully submitted,

*Shannon Conway*

Shannon W. Conway


cc:   All Counsel of Record

# EXHIBIT A

Westlaw.

--- A.2d ----
Page 1
--- A.2d ----, 2007 WL 329218 (Del.Supr.)
(Cite as: --- A.2d ----)

**H**
Briefs and Other Related Documents
AT & T Corp. v. Faraday Capital Ltd.Del.Supr.,2007.Only the Westlaw citation is currently available.
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.
Supreme Court of Delaware.
AT & T CORP., Plaintiff Below, Appellant,
v.
FARADAY CAPITAL LIMITED, The Travelers Indemnity Company, Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company Ltd., Twin City Fire Insurance Company, and Zurich American Insurance Company, Defendants Below, Appellees.
No. 236, 2006.

Submitted: Nov. 15, 2006.
Decided: Feb. 5, 2007.

**Background:** Insured brought action against directors and officers (D&O) liability insurers to recover defense and settlement costs for two lawsuits. The Superior Court, New Castle County, Jurden, J., 2006 WL 1382268, entered partial summary judgment in favor of insurers. Interlocutory appeal was permitted.

**Holding:** The Supreme Court, Berger, J., held that each cause of action in lawsuits against insured could constitute a separate claim.

Reversed in part and remanded.

[1] Insurance 217 ⛤2266

217 Insurance
   217XVII Coverage--Liability Insurance
      217XVII(A) In General
         217k2263 Commencement and Duration of Coverage
         217k2266 k. Claims Made Policies. Most Cited Cases
Each cause of action in lawsuits against insured could constitute a separate "claim" within the meaning of claims-made directors and officers (D&O) liability policies; the definitions of "claim" included both a written or oral demand for damages and a civil proceeding initiated against any insured, and, thus, there could be a claim that was not a civil proceeding and a civil proceeding that was not a claim.

[2] Insurance 217 ⛤1814

217 Insurance
   217XIII Contracts and Policies
      217XIII(G) Rules of Construction
         217k1811 Intention
           217k1814 k. Entire Contract. Most Cited Cases
Insurance contracts, like all contracts, are construed as a whole, to give effect to the intentions of the parties.

[3] Contracts 95 ⛤152

95 Contracts
   95II Construction and Operation
      95II(A) General Rules of Construction
         95k151 Language of Instrument
           95k152 k. In General. Most Cited Cases

Insurance 217 ⛤1822

217 Insurance
   217XIII Contracts and Policies
      217XIII(G) Rules of Construction
         217k1822 k. Plain, Ordinary or Popular Sense of Language. Most Cited Cases
Where contract or insurance policy language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning.

Where contract or insurance policy language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning.

[4] Contracts 95 ⛤143(2)

95 Contracts
   95II Construction and Operation
      95II(A) General Rules of Construction
         95k143 Application to Contracts in General

Case 1:06-cv-00080-RJL   Document 55   Filed 02/14/2007   Page 5 of 9

--- A.2d ----                                                                                    Page 2
--- A.2d ----, 2007 WL 329218 (Del.Supr.)
(Cite as: --- A.2d ----)

          95k143(2) k. Existence of Ambiguity. Most Cited Cases

**Insurance 217 🔑1808**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1808 k. Ambiguity in General. Most Cited Cases
The fact that the parties disagree on the meaning of a contract or insurance policy term does not render that term ambiguous.

The fact that the parties disagree on the meaning of a contract or insurance policy term does not render that term ambiguous.

**[5] Contracts 95 🔑143(2)**

95 Contracts
    95II Construction and Operation
        95II(A) General Rules of Construction
            95k143 Application to Contracts in General
                95k143(2) k. Existence of Ambiguity. Most Cited Cases

**Insurance 217 🔑1808**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1808 k. Ambiguity in General. Most Cited Cases
A contract or insurance policy is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.

A contract or insurance policy is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.

**[6] Insurance 217 🔑2266**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2263 Commencement and Duration of Coverage
                217k2266 k. Claims Made Policies. Most Cited Cases
The term "claim" in claims-made directors and officers (D&O) liability policies means a demand for money damages or other relief, regardless of the form in which that demand is presented.

Court Below: Superior Court of the State of Delaware in and for New Castle County, C.A. No. 04C-11-167.
Upon appeal from the Superior Court. **REVERSED IN PART and REMANDED.**

John E. James, Esquire, and Sarah E. Diluzio, Esquire, of Potterson, Anderson & Corroon, LLP, Wilmington, DE; and John E. Failla, Esquire (argued), and Christopher C. Loeber, Esquire, of Morgan, Lewis & Bockius LLP, New York, NY; Of Counsel: David M. Halbreich, Esquire, and Michel Y. Horton, Esquire, of Morgan, Lewis & Bockius LLP, Los Angeles, CA; and Paul A. Zevnik, Esquire, of Morgan, Lewis & Bockius LLP, Washington, DC, for Appellant.
David A. Denham, Esquire, of Bifferato, Gentilotti, Biden & Balick, LLC, of Wilmington, DE; and Martin J. Flannery, Jr., Esquire, and David A. Richman, Esquire, of Pattison & Flannery, New York, NY, for Appellees Faraday Capital Limited, Certain Underwriters at Lloyd's of London, Certain London Market Insurance Companies and New Hampshire Insurance Company, LTD.
John D. Balaguer, Esquire, and William L. Doerler, Esquire, of White & Williams, LLP, Wilmington, DE; Of Counsel: Geoffrey W. Heineman, Esquire, and Matthew Bryant, Esquire, of Ohrenstein & Brown LLP, New York, NY; and Lauren M. Pape, Esquire, of Ohrenstein & Brown, LLP, Garden City, NY, for Appellee The Travelers Indemnity Company.
Edward M. McNally, Esquire, and Mary B. Matterer, Esquire, of Morris James, LLP, Wilmington, DE; Of Counsel: Michael Manire, Esquire, William P. Larsen, III, Esquire (argued), and Lloyd Herman, Esquire, of D'Amato & Lynch, New York, NY, for Appellee National Union Fire Insurance Company of Pittsburgh, PA.
John C. Phillips, Jr., Esquire, and Brian E. Farnan, Esquire, of Phillips, Goldman & Spence, P.A., Wilmington, DE; Of Counsel: Douglas Mangel, Esquire (argued), John C. Hockenbury, Esquire, and Michael Thames, Esquire, of Drinker, Biddle & Reath, LLP, Washington, DC, for Appellee Twin City Fire Insurance Company.
C. Scott Reese, Esquire, and Noriss E. Cosgrove, Esquire, of Cooch and Taylor, Wilmington, DE; Of Counsel: Randall G. Block, Esquire (argued), and Veena A. Mitchell, Esquire, of Sedgwick, Detert, Moran & Arnold, LLP, San Francisco, CA, for

Case 1:06-cv-00080-RJL   Document 55   Filed 02/14/2007   Page 6 of 9

--- A.2d ----  
--- A.2d ----, 2007 WL 329218 (Del.Supr.)  
(Cite as: --- A.2d ----)

Page 3

Appellee Zurick American Insurance Company.

Before BERGER, JACOBS and RIDGELY, Justices.
BERGER, Justice.

*1 In this appeal we consider one aspect of the coverage afforded under certain directors and officers and company liability policies (the D & O policies). The insured seeks coverage, under multiple primary and excess policies, for defense costs and other expenses arising out of two stockholder suits. The Superior Court granted partial summary judgment to the insurers, holding that each lawsuit under consideration constitutes one "Claim," and that both claims were barred under the policies' prior litigation exclusions, among other reasons. We conclude that the trial court misconstrued the term "Claim," and hold that each pleaded cause of action may constitute a separate claim. We do not address the trial court's other determinations, because they were based on the incorrect premise that each lawsuit constituted one claim. On remand, the trial court will be able to reconsider first, how many "Claims" are at issue, and second, how (if at all) the newly identified "Claims" affect the coverage analysis.

Factual and Procedural Background

*1 AT & T Corp. seeks coverage under a series of D & O policies issued to AT & T for different periods from 1997-2007.[FN1] All of the policies are "claims made" policies, and all have exclusions, including exclusions for "prior acts" or "prior litigation." Covering each time period are a primary policy and several excess policies. As the Superior Court explained:

*1 Once the underlying primary policy limits are exhausted by a covered loss, this type of policy structure operates to provide further coverage under each of the excess policies *seriatim*. Under such a structure, an excess insurer's coverage obligations are not triggered until the preceding or underlying excess policy is exhausted. Likewise, and except as otherwise provided by their terms, excess policies generally follow the form of and provide coverage in conformance with the terms, conditions and exclusions of an underlying policy. In this case, the excess policies incorporate the terms, conditions and limitations of the Primary Policies and other underlying excess insurance policies.[FN2]

*1 The four sets of policies at issue are: (1) the "1997 AT & T Program," consisting of a primary policy issued by Certain Underwriters at Lloyd's, London (Lloyd's) and seven excess policies covering the period July 1, 1997 to July 1, 2001; (2) the "2001 AT & T Program," consisting of a Lloyd's primary policy and seven excess policies covering the period July 9, 2001 to July 9, 2002; (3) the "2002 AT & T Program," consisting of a primary policy issued by National Union Fire Insurance Company of Pittsburgh, Pa. (National Union) and twelve excess policies covering the period July 31, 2002 to July 31, 2003; and (4) the "AT & T Run-Off Program," consisting of a Lloyd's primary policy and eight excess policies covering the period July 9, 2001 to July 9, 2007.

*1 AT & T seeks coverage for defense and settlement costs relating to two lawsuits: (1) *Williamson v. AT & T*, Case No. CV 812506, an action filed in California Superior Court in November 2002, which was settled for $400 million [FN3]; and (2) *Leykin v. AT & T*, Case No. 02 CV 1765, an action filed in the United States District Court for the Southern District of New York in March 2002. *Leykin* was dismissed but an appeal is pending. The parties' coverage dispute turns on whether the claims made in *Williamson* and *Leykin* arose before the 2001 AT & T Program took effect on July 9, 2001, and if not, whether those lawsuits were based on "Wrongful Acts" that were the subject of two prior actions filed in 1999 and 2000 respectively.[FN4]

*2 The Superior Court granted the insurers' motions for partial summary judgment,[FN5] concluding that there was no coverage under any of the policies except the 1997 AT & T Program policies. The trial court held that under the policy language, a "Claim" means a "civil proceeding," and that, therefore, the *Williamson* and *Leykin* actions each constituted one "Claim." Starting with the premise that each action constituted a single "Claim," the trial court then had to decide whether those "Claims" were first made during the policy periods applicable to the 2001 AT & T Program, the 2002 AT & T Program or the AT & T Run-Off Program, and if so, whether they were nonetheless excluded from coverage under any of those policy programs. The court concluded that coverage was barred under the "single claim" provisions, and the "prior notice," "prior acts" and "prior litigation" exclusions or the relevant policies. This interlocutory appeal followed.

Discussion

*2 [1] The primary policies all contain substantially similar provisions. They provide coverage for

Case 1:06-cv-00080-RJL   Document 55   Filed 02/14/2007   Page 7 of 9

--- A.2d ----
--- A.2d ----, 2007 WL 329218 (Del.Supr.)
(Cite as: --- A.2d ----)

Page 4

"Losses resulting from any Claim first made against the Directors and Officers during the Policy Period for a Wrongful Act." [FN6] A "Claim" is defined, in relevant part, as:

*2 1. any written or oral demand for damages or other relief against any of the Assureds,

*2 2. any civil, [or] criminal, administrative or regulatory proceeding initiated against any of the Assureds.... [FN7]

*2 A "Wrongful Act" is defined as:*2 1. any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty or Employment Practice Violation by the Directors or Officers, ... whilst acting in their respective capacities.... [FN8]

*2 All the policies have numerous, similar, exclusions, including an exclusion for Wrongful Acts that have any facts or circumstances in common with other Wrongful Acts that were the subject of notice given prior to the policy period.

*2 In the trial court, AT & T argued that each alleged misrepresentation, omission, act or breach of fiduciary duty constituted a separate "Claim" because each such act would support a "demand for damages or other relief ..." Using the "demand for damages" definition, AT & T asserted that the *Leykin* action contains "at least" fifteen "Claims" and that the *Williamson* action contains "numerous" "Claims." In response, the insurers argued that the definition of "Claim" specifies two types of "demands for damages"-those that are oral or written *but not* made in a lawsuit; and those that *are* made in a lawsuit or other civil proceeding. According to the insurers, when a demand is made in the form of a lawsuit, one lawsuit equals one "Claim."

*2 The trial court adopted the insurers' analysis and concluded that the Lloyd's primary policy 2001 AT & T Program definition of "Claim" unambiguously provides that each civil proceeding constitutes one separate "Claim." In part, the trial court so concluded because AT & T's argument led to "nonsensical" results. First, if each alleged misrepresentation, omission, act, etc. constituted a separate "Claim," then a "Claim" would be the same as a "Wrongful Act." Second, as the trial court noted, "*no* party, including AT & T itself, can under AT & T's proposed definition of the term, tell the Court exactly how many 'Claims' are allegedly covered by the policies." [FN9] For these reasons, surely such a definition could not be correct.

*3 On appeal, AT & T has modified its argument. AT & T now contends that the number of "Claims" within a complaint equals the aggregated number of causes of action that arise from the same alleged underlying wrongful conduct. Although each cause of action initially might satisfy the definition of "Claim," the exclusion for claims that are based on interrelated wrongful acts reduces the total number of "Claims" presented in the two complaints. [FN10] According to AT & T, the *Williamson* Action contains eleven causes of action that boil down to four separate "Claims:" 1) the "zone of insolvency" claim; 2) the "misappropriation of technology" claim; 3) the "financing and financial condition" claim; and 4) the "March 2000 challenge" claim. The *Leykin* Action, AT & T says, constitutes two "Claims:" 1) the "misappropriation of technology" claim; and 2) the "misrepresentations and omissions" claim. We conclude that AT & T's definition of "Claim" more faithfully reflects the intended meaning of "Claim" in the policies.

*3 [2][3][4][5] Insurance contracts, like all contracts, "are construed as a whole, to give effect to the intentions of the parties. Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning." [FN11] The fact that the parties disagree on the meaning of a term does not render that term ambiguous. "Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." [FN12]

*3 Courts that have addressed the meaning of the term "Claim," as used in liability insurance policies, generally conclude that the term is unambiguous and "means a demand by a third party against the insured for money damages or other relief owed." [FN13] The question presented here is whether the form of that "demand for money damages" is determinative of the number of claims presented. In *Home Ins. Co. of Illinois v. Spectrum Information Technologies, Inc.*,[FN14] the court analyzed language similar to that contained in the policies at issue here, and concluded that the form of demand does not determine the number of claims. The *Spectrum* court found that the term "claim" is not procedural, but textual:

*3 [The insurers'] definition would equate "claim" and "suit" notwithstanding that these terms are treated as separate concepts by the plain language of the [policy]. Once again, Section II(B) of the [policy] defines "claim" as "a written demand by a third party for monetary damages, *including* the institution of suit or a demand for arbitration." Under this

Case 1:06-cv-00080-RJL   Document 55   Filed 02/14/2007   Page 8 of 9

--- A.2d ----
--- A.2d ----, 2007 WL 329218 (Del.Supr.)
(Cite as: --- A.2d ----)

Page 5

definition, there may be a "claim" without the institution of a "suit" (*e.g.* by demanding arbitration without or before filing suit), or a "suit" that does not necessarily constitute a "claim" (*e.g.* by filing a suit after arbitration has been demanded). Thus, because the concepts are distinct, a "suit" may contain several discrete "claims," as in this case.[FN15]

**\*4** [6] We agree with this analysis. The policy definitions of "Claim" include both "a written or oral demand for damages ...." and a "civil ... proceeding initiated against any of the Assureds...." Thus, here, as in *Spectrum,* there may be a "Claim" that is not a civil proceeding (where, for example, there is simply a written demand for money damages) and a civil proceeding that is not a "Claim" (where, for example, the civil proceeding seeks relief for the same wrongs that were presented in a prior written demand). The term "Claim" means a demand for money damages or other relief, regardless of the form in which that demand is presented.

**\*4** Thus, we conclude that each cause of action in the *Williamson* and *Leykin* lawsuits may constitute a separate "Claim" within the meaning of the policies at issue. We say "may" because, as AT & T concedes, several of the causes of action arise out of the same underlying wrongful conduct and, as a result, are deemed to be a single "Claim."[FN16] Since neither the parties nor the trial court have addressed this point, we decline to decide, in the first instance, how many separate "Claims" are asserted in the two actions. Only after the "Claims" have been properly identified will it be possible to determine whether there is coverage under the relevant policies.

## Conclusion

**\*4** Based on the foregoing, the decision of the Superior Court is reversed, in part, and this matter is remanded for further action in accordance with this decision. Jurisdiction is not retained.

FN1. AT & T was the largest stockholder of At Home Corporation, a now bankrupt company that provided internet access services. At Home also purchased numerous D & O policies that are the subject of this action. The trial court did not address the At Home policies, however, in this phase of the litigation.

FN2. *AT & T Corp. v. Clarendon America Insurance Co., et al.,* 2006 WL 1382268 at \*1 (Del.Super.) (Footnotes omitted.)

FN3. A related patent action that had been filed in federal court was settled at the same time, but AT & T stipulated to the dismissal of its coverage claims relating to that action.

FN4. The two prior cases were *Pittleman v. At Home Corporation et al.,* C.A. No 17474, a derivative action filed in the Delaware Court of Chancery in October 1999; and *In Re At Home Stockholders Litigation,* Master File No. 413094 (the *San Mateo* action), a consolidated class action filed in California Superior Court in 2000.

FN5. Zurich American Ins. Co.'s motion was for summary judgment, not partial summary judgment.

FN6. Lloyd's primary policy, 2001 AT & T Program, Endorsement 1 at ¶ 4.

FN7. Lloyd's primary policy, 2001 AT & T Program, Endorsement 1 at ¶ 6. The National Union primary policy in the 2002 AT & T Program defines "Claim" as:
(1) a written demand for monetary, non-monetary or injunctive relief;
(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief ...; or
(3) a civil, criminal, administrative or regulatory investigation of an Insured Person....

FN8. Lloyd's primary policy, 2001 AT & T Program, Endorsement 1 at ¶ 12.

FN9. *AT & T Corp. v. Clarendon America Insurance Co., et al.,* 2006 WL 1382268 at \*11 (Del.Super.)

FN10. Thus, if a complaint alleged six causes of action, three of which are each based upon a distinct group of underlying facts, that would constitute two "Claims," for policy purposes.

FN11. *Northwestern National Insurance Co. v. Esmark, Inc.,* 672 A.2d 41, 43 (Del.1996).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----
--- A.2d ----, 2007 WL 329218 (Del.Supr.)
(Cite as: --- A.2d ----)

Page 6

>FN12. *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992).
>
>FN13. *Home Ins. Co. of Illinois v. Spectrum Information Technologies, Inc.*, 930 F.Supp. 825, 846 (E.D.N.Y.1996).
>
>FN14. *Id.*
>
>FN15. *Id.* at 846-47.
>
>FN16. "*See, e.g.:* Lloyd's primary policy, 2001 AT & T Program, Endorsement 1 at ¶ 25 ("More than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to constitute a single Claim....")."

Del.Supr.,2007.
AT & T Corp. v. Faraday Capital Ltd.
--- A.2d ----, 2007 WL 329218 (Del.Supr.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3618616 (Appellate Brief) Reply Brief on Appeal of Plaintiff Below, Appellant AT&T Corp. (Nov. 17, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.