UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSEPH A. CARABILLO | : | |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | Case No. 1:04CV00970 (RJL/AK) |
| v. | : | |
| | : | |
| AMERICAN INTERNATIONAL | : | |
| SPECIALTY LINES INSURANCE | : | |
| COMPANY | : | |
| and | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, | : | |
| | : | |
| Defendants/Counterclaim Plaintiffs | : | |
| ----------------------------------------------------- | : | |
| | : | |
| ULLICO INC., | : | |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | Case No. 1:06cv0080 (RJL/AK) |
| v. | : | |
| AMERICAN INTERNATIONAL | : | |
| SPECIALTY LINES INSURANCE | : | |
| COMPANY | : | |
| and | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA, | : | |
| | : | |
| Defendants/Counterclaim Plaintiffs | : | |
| | : | |

<u>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S AND
AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY'S
RULE 26(a)(2) STATEMENT</u>

Defendants/Counterclaim Plaintiffs American International Specialty Lines Insurance

Company ("AISLIC") and National Union Fire Insurance Company of Pittsburgh, PA ("National

410827

Union") (AISLIC and National Union are hereinafter collectively referred to as the "Insurers"), by and through their undersigned counsel, hereby disclose the following expert witness:

> James W. Macdonald, ARM
> Navigant Consulting, Inc.
> 1717 Arch Street, Suite 4800
> Philadelphia, Pennsylvania  19103

Attached as Exhibit 1 is a written report prepared by Mr. Macdonald containing a statement of opinions to be expressed and the basis and reasons therefore, as well as information about the data upon which Mr. Macdonald's opinions are based, his experience and qualifications, and his rate of compensation.

The Insurers reserve the right to disclose additional experts and to supplement Mr. Macdonald's written report upon the completion of discovery.

Dated:  March 2, 2007

Respectfully submitted,

**PATTON BOGGS LLP**

By:
_____/s/_____
David J. Farber (415899)
Shannon W. Conway (477863)
2550 M Street, N.W.
Washington, D.C.  20037
Telephone:  (202) 457-6000
Facsimile:  (202) 457-6315

*Counsel for Defendants/Counterclaim Plaintiffs*
*American International Specialty Lines Insurance*
*Company and National Union Fire Insurance*
*Company of Pittsburgh, PA*

410827                                                                 2

# EXHIBIT 1

# Expert Witness Report

ULLICO, INC.

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

and

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

Expert Report of James W. Macdonald

Navigant Consulting, Inc

Philadelphia, PA

March 2, 2007

# Table of Contents

1.  Introduction.......................................................................3
2.  Qualifications ...................................................................3
3.  Documents Reviewed ........................................................5
4.  Statement of Opinion, Basis, & Reasons..........................7
5.  Other Expert Testimony ...................................................10
6.  Resume .............................................................................11

## 1.    *Introduction*

The purpose of this report is to provide a preliminary opinion based on information provided to date, pending the receipt of additional information from formal discovery, in the Ullico coverage litigation, including but not limited to the order of defense cost payments addressed in John A. Dore's report for Ullico Inc. and Neal, Gerber & Eisenberg LLP dated September 29 2006.

## 2.    *Qualifications*

I have over 35 years of experience in the Commercial Property & Casualty business. In mid-2006, I became a full-time employee for Navigant Consulting, Inc. where I am a Director in the Actuarial & Underwriting Services team. The main focus of my duties involves representing insurers or reinsurers in disputes regarding underwriting practices. My billing rate for this service is $350 per hour.

I have published numerous articles on insurance issues over the last 10 years. Most of the articles focus on whether and exactly how terrorism should be insured. My publications are listed in the resume included in this opinion.

My more than 35 years of experience includes 15 years as a reinsurer, 14.5 years as an insurer, 4 years as a Surplus Lines Broker, and 2 years as a broker and captive insurance company consultant. All of the chapters of my career include involvement with the claims-made policy issues and professional liability issues that are related to the subject of this review.

- I began underwriting various forms of professional liability in 1971 as a casualty facultative underwriter for General Reinsurance Company (4 years) in New York and Montreal.

- From 1975 to 1979 I was a surplus lines and reinsurance broker in Canada specializing on excess liability and professional liability, with manuscript coverage terms on most policies.

- From 1979 to mid-1981 I was a captive specialist for the broker Marsh & McLennan in its NYC headquarters. I specialized in developing customized liability policy wordings for association captives including professional liability and D&O liability.

- From mid-1981 to late 1989 I was the senior underwriter for Munich American Reinsurance in the USA on all professional lines including D&O, ERISA/Fiduciary Liability, all forms of E&O, and Medical Malpractice. In my last three years, our parent company, Munich Re Munich, assigned me the task of personally auditing all of their professional liability treaties with a focus on D&O and related lines including Fiduciary Liability. In 1986 and 1987 I was actively involved in introducing the new ISO claims-made insurance coverage to large and small insurance companies across America.

- At AIG from late 1989 to January 1992 I was the Chief Underwriting Officer of their largest business unit, AIG Risk Management. In my final year (1992) I was the President of American Home's General Casualty Group with responsibility for a large Medical Malpractice unit writing all business on a claims-made basis. During my final two years at AIG, I was selected by senior management as one of small group of senior liability underwriters charged with completing independent underwriting audits directly for senior AIG management. In that capacity I completed professional liability reviews of the National Union and Lexington Insurance Companies.

- From January 1993 through late 1994, I assumed responsibility for six diverse business units including D&O, E&O, and Fiduciary Liability as the Executive Vice President of Specialty Operations at the Continental Insurance Company.

- In late 1994, I became the Group Vice President for CNA insurance companies in Chicago, responsible for the one of the nation's largest books of professional liability at premiums of almost $800 million. This book of business was composed mainly of Medical Malpractice, Hospital and Managed Care E&O & D&O, Lawyers Professional Liability, Architects & Engineers Liability, Accounts Liability, and Real Estate Agents E&O.

- From late 1998 to mid-2000, I was the senior Professional Liability treaty underwriter for the Reliance Reinsurance Corporation with a diverse book of business including one Fiduciary Liability treaty.

- In my first year at ACE, from late 2001 to October 2002, I was the Senior Vice President & Chief Underwriting Officer of their largest business unit, ACE Risk Management. In November 2002, I was promoted to Executive Vice President & Chief Underwriting Officer for all of ACE USA. This included a diverse and growing book of new product rollouts in the E&O, D&O, and Fiduciary lines. During 2005, I represented ACE on the NCCI Residual Market Pool Board. In this capacity, I provided ACE with advice in attempting to resolve disputes with policyholders and issues regarding the compliance with policy terms and conditions.

At AIG, CNA, and at ACE, I was regularly involved in discussions with senior claims management and attorneys on specific claim situations due to the large size of the claim or unusual disputed matters.

Based on my more than 35 years in the insurance business and active involvement as a reinsurer, insurer and broker in all forms of professional liability including fiduciary liability, I am qualified to assist persons from outside the insurance industry regarding the underwriting and claims issues currently under consideration.

## 3.    *Documents Reviewed*

I have reviewed the following documents prior to writing this report:

1.    Employee Benefit Plan Fiduciary Liability Insurance Policy number 874-44-03 issued by National Union Fire Insurance Company of Pittsburgh, Pa., with a policy period from October 30, 2001 to October 30, 2002;

2.    Employee Benefit Plan Fiduciary Liability Insurance Policy number 495-38-35 issued by National Union Fire Insurance Company of Pittsburgh, Pa., with a policy period from October 30, 2002 to October 30, 2003;

3.    Employee Benefit Plan Fiduciary Liability Insurance Policy number 648-03-72 issued by National Union Fire Insurance Company of Pittsburgh, Pa., with a policy period from October 30, 2003 to October 30, 2004;

4.    Directors, Officers and Private Company Liability Insurance Policy number 874-44-10 issued by National Union Fire Insurance Company of Pittsburgh, Pa., with a policy period from October 30, 2001 to October 30, 2002;

5.    Directors, Officers and Private Company Liability Insurance Policy number 495-36-84 issued by National Union Fire Insurance Company of Pittsburgh, Pa., with a policy period from October 30, 2002 to October 30, 2003;

6.    Directors, Officers and Private Company Liability Insurance Policy number 299-96-17 issued by National Union Fire Insurance Company of Pitts., Pa., with a policy period from July 19, 2003 to July 19, 2004;

7.    Insurance Company's Professional Liability Insurance Policy number 279-36-89 issued by American International Specialty Lines Insurance Company, with a policy period from October 30, 2001 to October 30, 2002;

8.    Insurance Company's Professional Liability Insurance Policy number 279-91-19 issued by American International Specialty Lines Insurance Company, with a policy period from October 30, 2002 to October 30, 2003;

9.    Insurance Company's Professional Liability Insurance Policy number 348-92-35 issued by American International Specialty Lines Insurance Company, with a policy period from October 30, 2003 to October 30, 2004;

10.   Ullico, Inc.'s First Amended Complaint for Damages, Declaratory Judgment and Injunctive Relief;

11.   Defendants American International Specialty Lines Insurance Company's and National Union Fire Insurance Company of Pittsburgh, PA's Answer and Counterclaim;

12.   Ullico, Inc.'s Answer and Affirmative Defenses to Defendants American International Specialty Lines Insurance Company's and National Union Fire Insurance Company's Counterclaims;

13. Ullico's Motion for Partial Summary Judgment, including the Affidavits and Exhibits filed therewith;

14. National Union's Cross-Motion for Partial Summary Judgment, and Memorandum in Opposition to Ullico's Motion for Partial Summary Judgment and in Support of National Union's Cross-Motion for Partial Summary Judgment, including the Declarations and Exhibits filed therewith;

15. Ullico's Opposition to National Union's Cross-Motion for Partial Summary Judgment and Reply Memorandum in Support of its Motion for Partial Summary Judgment, including the Affidavit and Exhibits filed therewith;

16. National Union's Consolidated Reply Memorandum in Further Support of Cross-Motion for Partial Summary Judgment, including the Declaration and Exhibits filed therewith;

17. A letter dated October 11, 2006 from R. David Ades of D'Amato & Lynch to Timothy W. Burns, Esq. of the Neal Gerber firm;

18. Ullico Inc.'s Rule 26 (A)(2) Statement (the "Dore Report").

## 4.    *Statement of Opinion, Basis, & Reasons*

I respectfully disagree with the findings and conclusions in the Dore report for the following reasons:

- The central shortcoming in the Dore report is the failure to mention most of the conditions in the fiduciary policies of greatest importance to the current matter under consideration, including, but not limited to:

    1. The critically important condition and duty of the Insured to cooperate with the Insurer in the management of all claims;

2. The "inter-related" wording that ties together all claims directly or indirectly related to the same event or circumstance (making it clear that they are all to be considered first made at the time of the first reported claim), and;

3. Specific directions with which the Insured must comply regarding the choice and use of counsel and the clear explanation of each of the defense costs tendered for reimbursement (including compliance with the specific billing guidelines of the Insurer). Each of these conditions impacts the evaluation and payment of claims and defense fee and cost reimbursements by the Insurer.

- Although Dore's discussion of the "Order of Payments" clause is interesting, it is not relevant to the current matter. I am surprised at the extent of the discussion in his report given that, as Dore notes on page 5, neither National Union fiduciary policy contained an "Order of Payments" condition.

- The Dore report also has an unusual focus on two additional coverage terms: the definition of who is an Insured in the two AIG policies under review, and references to the Insuring Agreement's reference to the Insurer's obligation to pay Loss for "each and every Insured."

- In addition, Dore fails to mention the very important point that insurance policies are "conditional" contracts, which must be performed in good faith by *both* the Insureds and the Insurer. The duty is mutual.

- The conclusion in the Dore report that defense costs need to be paid by an insurer on a "first come first served" basis is only true if each claimant has complied with the cooperation clause and all other relevant conditions in the policy including the billing guidelines.

In the matter under current consideration, it is clear that Ullico has willfully decided not to comply with important policy terms and conditions in the management of the claim, including but not limited to Clause 9 (Pre-Authorized Defense Attorneys) and the AIG billing guidelines. This is a serious issue from and an underwriting and claims perspective, and the approach taken to date by the AIG is, in my opinion, entirely appropriate.

The insurance industry's custom and practice is that, to qualify for reimbursement from a policy such as the ones at issue, the policyholder must demonstrate that:

1. it actually made a payment for covered Loss;

2. such payment was for a service directly relating to the defense of a claim falling within the scope of the policy's coverage;

3. no exclusion, condition or other limiting term in the policy removed the claim from coverage;

4. the service provided was reasonable and necessary to the defense of the Insured;

5. the payment was reasonable in amount; and,

6. the policy's limit of liability has not been exhausted.

The standard insurance industry practice in adjusting claims is that, unless *all of these conditions* are met by the insured, the insurance company is not obligated to make these payments.

When multiple insureds are seeking defense cost reimbursement from the same policy, such as the matter at issue, it is imperative that the insurer scrutinize each equally, applying all of the pertinent terms and conditions of the policy consistently in the assessment of each tendered bill. Payments should then be made, not on the simplistic "first come first served" basis suggested by Mr. Dore, but only after each tendered bill has been reviewed and deemed to satisfy the above listed six requirements, including compliance with specific billing guidelines.

In addition, I expect to be testifying at a later date in this matter on additional issues including, but not limited to, the "Insured v. Insured" exclusion, the "Employed Lawyers" endorsement, the "anti-stacking" clause, and the question of the "materiality" of compliance with the condition at Clause 9 in the policies at issue in these cases. I am unable to opine on these issues in this report because the discovery process has not yet been completed.

I also reserve the right to supplement or amend this opinion as discovery continues.

## 5. *Other Expert Testimony*

RSA versus Commercial Risk (Arbitration) (This is a matter involving a dispute between an insurer and a reinsurer over the underwriting practices by a Managing General Agent).

Respectfully Submitted,

James W. Macdonald
Director
Navigant Consulting, Inc.
1717 Arch Street Suite 4800
Philadelphia PA 19103
(215) 832-4441

## 6.    *Resume*

---

# James W. Macdonald ARM

**James W. Macdonald**
Director

**Navigant Consulting**
1717 Arch Street Suite 4800
Philadelphia PA 19103
Main: 215-574-1507
Cell: 215-908-4766
Fax: 215-832-4401

jmacdonald1@navigantconsulting.com

**Professional History**
EVP & Chief Underwriting Officer, ACE USA
VP Professional Liability, APA Insurance Trust
President & COO, C.N.A. HealthPro
Group VP, C.N.A. Professional Liability
President, General Casualty Group, American Home Assurance (AIG)
SVP & CUO, AIG Risk Management
SVP, Casualty Facultative, Munich American Reinsurance Company
VP, Munich American Consulting Services Company
VP, Munich American Intermediaries
Captive Insurance Company Consultant, Marsh McLennan PC
Surplus Lines Broker & MGA, Ian Elliott Limited (Montreal & Toronto)
Casualty Underwriter, General Reinsurance Corporation

**Education**
B.A., English Literature, University of Notre Dame
**Certifications**
Licensed P&C Insurance Agent (PA, 01-03)
Associate in Risk Management
**Professional Associations & Designations**
NCCI, Residual Market Pool Board Member (2005)
RAND Corporation, Institute for Civil Justice, Advisory Board (2004-2005)

Jim Macdonald is a Director in Navigant Consulting's Insurance & Claims practice group. He brings over thirty years of diverse primary and excess casualty insurance and reinsurance experience to Navigant Consulting's Insurance and Claims practice group.

His principal areas of expertise include Excess & Umbrella Insurance, Workers Compensation, Directors & Officers' Liability, Medical and Non-Medical Professional Liability, Contingent Commission Agreements (CCAs) & Producer Services Agreements (PSAs), Products Liability, Environmental Impairment Liability, Employment Practices Liability,, Regulatory Compliance, Captives & Risk Retention Groups, Warranty Insurance, Reinsurance Contracts, Products Recall and Residual Value Insurance. He also has extensive experience with mergers, acquisitions, novations, commutations, and structured reinsurance or insurance agreements.

Prior to joining Navigant Consulting, Macdonald was the Chief Underwriting Officer for one America's largest commercial insurers, with responsibility for underwriting practices, compliance and profitability for over $5 billion in gross premium. He has also served as the President & COO of one of the nation's largest medical malpractice insurers, and the Chief Underwriting Officer of the nation's largest primary casualty risk financing underwriting unit, specializing in Fortune 500 accounts.

Macdonald also has over a dozen years of executive management and underwriting experience with two of the world's largest professional reinsurance groups, specializing in treaty and facultative casualty reinsurance. His prior

Page 11                                3/2/2007

experience as a professional consultant includes the creation of the nation's largest association captive, commutations, and strategic growth opportunities. Macdonald also has experience as a surplus lines broker specializing in excess liability placements and an umbrella managing general agent (MGA). MacDonald is a noted thought-leader on the related issues of extreme event preparedness, terrorism and the federal terrorism insurance program with numerous articles and public speaking engagements.

## RECENT PUBLICATIONS

IRMI, *Review and Preview of the Terrorism Insurance 2006 & 2007*, February 07

IRMI, *The PWG Report on the Future of Terrorism Insurance: Something for Everyone?* November 2006

Cambridge University Press, *Terrorism, Insurance & Preparedness: Connecting the Dots*, Chapter 19 of Seeds of Disaster: Roots of Response, Edited by Auserwald, September 2006

National Underwriter, *Caveat Emptor when buying Terror Cover*, 2/06

IRMI, *Terrorism Risk Insurance Extension Act of 2005*, Risk Report, 2/06

John Liner Review (JLR), *Underwriting Discipline in a Softening Market*, Spring 2005

JLR, *Terrorism, Insurance & TRIA: Are We Asking the Right Questions?* Winter 2004

JLR, *Captives and Terrorism (with William Curcio)*, Spring 2004

Best's Review, *Producing a Winner (with Susan Rivera)*, 03/03

Conning & Company, *Medical Malpractice: A Prescription for Chaos?* 2001

## INDUSTRY BOARDS & ASSOCIATION

ACE INA Insurance Group, Member of the Board of Directors (2002-2005)

National Council of Compensation Insurers (NCCI): *Workers Compensation Residual Market Pool*, Board Member (2005),

Rand Corporation *Institute of Civil Justice*, Advisory Board (2004-2005)

Rand Corporation *Center for Terrorism Risk Management Policy*, Advisory Board (2003-2005)

American Medical Association, *National Patient Safety Foundation*, Executive Committee and Board Member (1996-1998)

American Society of Health System Pharmacists, Advisory Board Member (1997)